| | |
|---|---|
| 1 | Michael J. Aguirre, Esq., SBN 060402<br>Christopher S. Morris, Esq., SBN 163188 |
| 2 | Maria C. Severson, Esq., SBN 173967<br>AGUIRRE, MORRIS & SEVERSON LLP |
| 3 | 444 West C Street, Suite 210<br>San Diego, CA 92101 |
| 4 | Telephone: (619) 876-5364<br>Facsimile: (619) 876-5368 |
| 5 | Attorneys for Plaintiffs |
| 6 | |
| 7 | |
| 8 | UNITED STATES DISTRICT COURT |
| 9 | SOUTHERN DISTRICT OF CALIFORNIA |
| 10 | |

| | | |
|---|---|---|
| 11 | TAMER SALAMEH, an individual; REAL ESTATE 4 HOSPITALITY, LLC, a | Case No.  09-CV-02739-L-NLS |
| 12 | California limited liability company; ALEKSEY  KATS; DIANA KATS; | **CLASS ACTION FIRST AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL AND STATE SECURITIES LAWS** |
| 13 | MITCHELL J. PEREIRA; GARY A. TORRETTA; ROBERT ALVARENGA; | |
| 14 | ALEXIS COSIO; CESAR MOTA; DENIS B. ROTHE JR; CHARLENE SCHRUFER; | 1.  §12(a)(2) Securities Act of 1933 (Misrepresentation and Omission) |
| 15 | DAVID R. BUSHY; DALE CURTIS; ZONDRA SCHMIDT; DOLORES GREEN; | 2.  Corp Code §25503 (Failure to Qualify)<br>3.  Corp Code §25501 (Misrepresentations and Omissions) |
| 16 | CHRISTY JESKE; TAZIA REYNA; MARY L. WEE SONG; KERRY L. | 4.  Corp Code §25501.5 (Rescission Against Unlicensed Broker-Dealer) |
| 17 | STEIGERWALT; BETH STEIGERWALT; STUART M. WOLMAN; JEFFREY E. | 5.  Corp Code § 25504 (Control Person Liability) |
| 18 | LUBIN AND BARBARA L. LUBIN, INDIVIDUALLY AND AS CO- | |
| 19 | TRUSTEES OF THE LUBIN FAMILY TRUST DATED MARCH 26, 2002; | |
| 20 | MIKAEL HAVLUCIYAN AND THERESE HAVLUCIYAN | **JURY TRIAL DEMANDED** |
| 21 | INDIVIDUALLY AND AS CO-TRUSTEES OF THE HAVLUCIYAN | |
| 22 | FAMILY TRUST;  SADOUX KIM; individually and on behalf of a Class of all | |
| 23 | others similarly situated; | |
| 24 | Plaintiffs, | |
| 25 | v. | |
| 26 | TARSADIA HOTEL, a California Corporation; TUSHAR PATEL, an | |
| 27 | individual; B.U. PATEL, an individual; GREGORY CASSERLY, an individual; 5th | |
| 28 | ROCK LLC, a Delaware limited liability | |

1  company; MPK ONE, LLC, a California
   limited liability company; GASLAMP
2  HOLDINGS, LLC, a California limited
   liability company; PLAYGROUND
3  DESTINATION PROPERTIES, a
   corporation; EAST WEST BANK, a
4  California corporation; BANK OF
   AMERICA, a Delaware Corporation; JP
5  MORGAN CHASE; PROFESSIONAL
   MORTGAGE PARTNERS, INC.;   XBR
6  FINANCIAL SERVICES, LLC, a California
   limited liability company;  ERSKINE
7  CORP, a California Corporation; and DOES
   1 to 100, inclusive,

8
                      Defendants.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NATURE OF ACTION ............................................................................................. 1

THE PARTIES ........................................................................................................ 3

CLASS ALLEGATIONS ........................................................................................ 9

JURISDICTION AND VENUE ............................................................................ 10

HARD ROCK HOTEL SAN DIEGO.................................................................... 10

THE HRHSD PROSPECTUS ............................................................................... 11

MISREPRESENTATIONS AND OMISSIONS .................................................... 11

THE HRHSD INVESTMENT CONTRACT ........................................................ 13

HRHSD PROMOTERS VIOLATED THE LAW .................................................. 16

REGISTRATION WOULD HAVE DISCLOSED FLAWS
IN THE INVESTMENT ........................................................................................ 17

OFFERING WAS NOT FAIR, JUST AND EQUITABLE..................................... 18

CONTROL PERSON AND JOINT AND SEVERAL LIABILITY ......................... 19

UNLICENSED BROKER DEALER LIABILITY .................................................. 19

THE BANKS, THEIR AGENTS AND ASSIGNS, AND DOE DEFENDANTS
PROVIDED FUNDING AND MATERIALLY ASSISTED VIOLATIONS .............. 19

FIRST CLAIM FOR RELIEF................................................................................. 24
§12(a)(2) Securities Act of 1933
Misrepresentation and Omission

SECOND CLAIM FOR RELIEF .......................................................................... 25
Corp Code §25503
Failure to Qualify

THIRD CLAIM FOR RELIEF .............................................................................. 26
Corp Code §25501
Misrepresentations and Omissions

FOURTH CLAIM FOR RELIEF .......................................................................... 26
Corp Code §25501.5
Rescission Against Unlicensed Broker-Dealer against
Playground Destination Properties only

FIFTH CLAIM FOR RELIEF ............................................................................... 27
Corp Code § 25504
Control Person Liability against Patel and Casserly Defendants

CERTIFICATIONPURSUANT TO SECTION 27
OF THE SECURITIES ACT OF 1933

i

**NATURE OF ACTION**

1.     Public investors in the Hard Rock Hotel San Diego (HRHSD) are losing tens of millions of dollars from their failed HRHSD investment properties. The HRHSD promoters sold investment contracts (HRHSD Investment Contracts) to investors without registering the investment agreements with the US Securities & Exchange Commission (SEC) or qualifying them with the California Department of Corporations (DOC), in violation of federal and state investor protection laws.

2.     The HRHSD promoters and issuers did not disclose that they were selling a security. They had filed for an exemption with the California Department of Corporations, but when they made a public offering of the investment contracts, they did not complete the exemption filing with the Dept. of Corporations – a fact concealed by the promoters and issuers.

3.     The HRHSD promoters and issuers did not want the HRHSD Investment Contract to be reviewed by federal and state investment regulators. The promoters knew the SEC Corporate Finance Division would review, from the point of view of investors, the investment features of the HRHSD Investment Contracts to determine if the investor agreements contained material misrepresentations or omitted facts needed to make those stated not misleading. The HRHSD also believed the DOC would not issue a permit for the HRHSD if the DOC determined the HRHSD Investment Contracts were not fair, just and equitable. In order to avoid this scrutiny of the HRHSD Investment Contracts, HRHSD promoters elected to disregard their legal duties to submit the HRHSD Investment Contracts to the federal and state investment regulators.

4.     The HRHSD promoters shifted the risk of their HRHSD investment through the HRHSD Investment Contracts to investors. HRHSD promoters sold individual studio and suite investment properties to investors but under the terms of the HRHSD Investment Contract the promoters retained control of the HRHSD studio and suite keys. Under the terms of the HRHSD Investment Contract investors were only permitted to stay in their HRHSD studio and suites only 28 days of the year.

5.     Whether investors made money on their HRHSD investment under the terms of the HRHSD Investment Contract was dependent on the managerial efforts of the HRHSD

1

1   promoters.

2         6.     When investors attempted to get out of the sale before closing because they

3   couldn't obtain financing or didn't want to proceed, they were told they would lose their deposit.

4   HRHSD promoters and issuers concealed the fact that they were selling a security simply dressed

5   up to resemble a real estate transaction. Their denial of the full return of deposit money was

6   unlawful because real estate laws did not govern since the transaction was the sale of a security

7   not yet consummated at the deposit stage.

8         7.     As a direct and proximate result of defendants' violation of investor protection

9   laws, plaintiffs have suffered tens of millions of dollars in damages. The HRHSD is paying

10  plaintiffs only a fraction of what plaintiffs would need to break even on their HRHSD Investment

11  Contracts. For those who financed their investment in HRHSD with bank loans, the HRHSD

12  revenues are materially and substantially less than the loan debt service.

13        8.     HRHSD promoters prepared documents and provided them to potential purchasers

14  to give the false impression that HRHSD investors had a choice about whether to use the HRHSD

15  promoters to manage rentals of investors' HRHSD investment properties, when in fact the

16  promoters structured the HRHSD so that investors were required to rely on the HRHSD

17  promoters to manage rental of the HRHSD investment properties.

18        9.     The HRHSD promoters used classic bait-and-switch techniques to sell investors

19  HRHSD Investment Contracts. Promoters told investors they would be treated like "rock stars" --

20  the HRHSD Investment Contracts would give investors a proverbial back stage pass to the

21  investment opportunity that was HRHSD.

22        10.    In fact the HRHSD Investment Contract was an artifice of deception devised to be

23  used by HRHSD promoters to shift substantial risks of the HRHSD to dazzled investors.

24        11.    This operative complaint has been filed to force the HRHSD promoters to honor

25  their legal duties and make whole the investors who were tricked into buying HRHSD Investment

26  Contracts.

27  / / /

28  / / /

2

**THE PARTIES**

**Plaintiffs**

12.     Plaintiffs individually and on behalf of a Class of all other similarly situated persons described below (collectively, "Plaintiffs"), file this Class Action First Amended Complaint.

13.     Plaintiff Tamer Salameh is a resident of the Southern District of California. Plaintiff is an investor who purchased HRHSD Investment Contracts underwritten by defendant East West Bank.

14.     Plaintiff Real Estate 4 Hospitality, LLC is a California limited liability company whose principal place of business is in the Southern District of California. Plaintiff Real Estate 4 Hospitality, LLC , was an investor who purchased HRHSD Investment Contracts underwritten by defendant East West Bank.

15.     Plaintiffs Jeffrey E. Lubin and Barbara L. Lubin individually and as co-trustees of the Lubin Family Trust dated March 26, 2002 ("Lubin") are residents of or organized under laws of the State of California and reside within the Southern District of California.  Lubin purchased an HRHSD Investment Contract underwritten by WaterStone Bank.

16.     Plaintiffs Aleksey Kats and Diana Kats are residents of the State of California residing within the Southern District of California.  Aleksey Kats and Diana Kats purchased an HRHSD Investment Contract underwritten by defendant East West bank. After this legal action was filed, defendant East West Bank notified plaintiffs it has sold the plaintiffs note to XBR Financial Services, LLC, a California limited liability company.

17.     Mitchell J. Pereira is a resident of the State of California residing within the Southern District of California.  Mr. Pereira purchased an HRHSD Investment Contract underwritten by Professional Mortgage Partners, Inc. (Professional Mortgage Partners).

18.     Gary A. Toretta is a resident of the State of California residing within the Southern District of California.  Mr. Toretta purchased an HRHSD Investment Contract underwritten by Professional Mortgage Partners.

19.     Stuart M. Wolman is a resident of the State of California residing within the

3

Southern District of California. Mr. Wolman purchased an HRHSD Investment Contract underwritten Professional Mortgage Partners.

20. Robert Alvarenga is a resident of the State of California residing within the Southern District of California. Mr. Alvarenga purchased an HRHSD Investment Contract that was underwritten by defendant Bank of America.

21. Alexis Cosio is a resident of the State of California residing within the Southern District of California. Ms. Cosio purchased an HRHSD Investment Contract that was underwritten by Professional Mortgage Partners, later sold to JP Morgan Chase.

22. Cesar Mota is a resident of the State of California residing within the Southern District of California. Mr. Mota purchased an HRHSD Investment Contract underwritten by Professional Mortgage Partners, later sold to JP Morgan Chase.

23. Denis B. Rothe Jr., is a resident of the State of Florida. Mr. Rothe purchased an HRHSD Investment Contract underwritten by Professional Mortgage Partners, then immediately sold to JP Morgan Chase.

24. Charlene Schrufer is a resident of the State of Florida. Ms. Schrufer purchased an HRHSD Investment Contract underwritten by Professional Mortgage Partners, then immediately sold to JP Morgan Chase.

25. Mikael and Therese Havluciyan individually and as trustees of the Havluciyan Trust are residents of the State of California residing within the Southern District of California. Mr. Havluciyan and Ms. Havluciyan individually and as trustees of the Havluciyan family trust purchased an HRHSD Investment Contract underwritten by Bank of America.

26. David J. Bushey is a resident of the State of California residing within the Southern District of California. Mr. Bushy purchased an HRHSD Investment Contract underwritten by East West Bank.

27. Dale Curtis is a resident of the State of California residing within the Southern District of California. Mr. Curtis purchased an HRHSD Investment Contract underwritten by East West Bank.

28. Dale Curtis and David J. Bushey together purchased an HRHSD Investment

4

1  Contract underwritten by Professional Mortgage Partners.

2       29.    Kerry Steigerwalt is a resident of the State of California residing within the

3  Southern District of California. Mr. Steigerwalt purchased an HRHSD Investment Contract with

4  East West Bank.

5       30.    Beth Steigerwalt is a resident of the State of California residing within the

6  Southern District of California. Ms. Steigerwalt purchased an HRHSD Investment Contract with

7  East West Bank.

8       31.    Dolores Green is a resident of the State of California residing within the Southern

9  District of California.  Ms. Green purchased an HRHSD Investment Contract underwritten by

10  Bank of America.

11       32.    Zondra Schmidt is a resident of the State of California residing within the Southern

12  District of California.  Ms. Schmidt purchased an HRHSD Investment Contract underwritten by

13  Bank of America.

14       33.    Christy Jeske is a resident of the State of California residing within the Southern

15  District of California. Ms. Jeske purchased an HRHSD Investment Contract underwritten by

16  Professional Mortgage Partners.

17       34.    Mary L. Wee Song is a resident of Arizona. She purchased three (3) HRHSD

18  Investment Contracts underwritten by East West Bank.

19       35.    Tazia Reyna is a resident of the State of California and resides in Orange County.

20  Ms. Reyna purchased an HRHSD Investment Contract underwritten by JP Morgan Chase.

21       36.    Sadoux Kim is a resident of the State of California. Mr. Kim purchased an

22  HRHSD Investment Contract underwritten by Professional Mortgage Partners.

23       37.    Each of the Plaintiffs, including those listed by name in the caption and above,

24  (collectively, Plaintiffs) acquired or purchased a Hard Rock Hotel San Diego Investment

25  Contract, as described more fully herein.

26       / / /

27       / / /

28       / / /

5

1     **Defendants**

2         38.    The promoters who engaged in the unlawful activities alleged are defendants

3 Tarsadia Hotels, a California Corporation (Tarsadia); Tushar Patel, Chairman of Tarsadia; B.U.

4 Patel, founder and Vice Chairman of Tarsadia; Greg Casserly, agent and President of Tarsadia; 5th

5 Rock LLC, a Delaware limited liability company and seller of the HRHSD studios and suites, and

6 also the HRHSD operator; MPK ONE, LLC, a California limited liability company doing

7 business in the Southern District of California and the manager of 5th Rock LLC; Playground

8 Destination Properties, a corporation, sales broker for the HRHSD Investment Contracts; East

9 West Bank, a California corporation; JP Morgan Chase; Bank of America; Erskine Corporation,

10 a California corporation that provided mortgage/financing services and arranged financing with

11 defendant Professional Mortgage Partners, Inc.; XBR Financial Services, who bought notes from

12 other bank defendants; and other banking company defendants that assisted, participated in, and

13 funded the investment contracts in whole or part (collectively, the "Defendants").

14         39.    Those defendants not previously named are substituted in as formerly named

15 "Doe" defendants.

16         40.    Defendant 5th Rock LLC is a Delaware limited liability company doing business

17 in the Southern District of California. Defendant 5th Rock LLC was the developer and one of the

18 sellers of the HRHSD Investment Contracts.

19         41.    Gaslamp Holdings LLC (Doe defendant 1) is a California limited liability

20 company doing business in the Southern District of California. Gaslamp Holdings LLC is the

21 owner of the ground upon which HRHSD is built. Gaslamp Holdings LLC entered into a ground

22 lease with 5th Rock LLC.

23         42.    Defendants MPK ONE, LLC, is a California limited liability company doing

24 business in the Southern District of California. MPK ONE LLC is the controlling entity that

25 manages 5th Rock LLC. MPK ONE LLC executed the sales documents by which the investment

26 contracts and properties -- studio and suites -- were sold to investors.

27         43.    Defendant Tarsadia Hotels (Tarsadia) is a California Corporation doing business in

28 the Southern District of California. Tarsadia is HRHSD's operator.

6

44.     Defendant Tushar Patel is the Chairman of defendant Tarsadia. In the Southern District of California, he engaged in material and substantial wrongdoing underlying and forming the basis of the claims alleged in this operative complaint.

45.     B.U. Patel is the Vice Chairman and founder of defendant Tarsadia.   In the Southern District of California, defendant B.U. Patel engaged in material and substantial wrongdoing underlying and forming the basis of the claims alleged in this operative complaint.

46.     Defendant Gregory Casserly was at all relevant times the President of defendant Tarsadia. He joined defendant Tarsadia in 1998.   In the Southern District of California, defendant Casserly engaged in material and substantial wrongdoing underlying and forming the basis of the claims alleged in this operative complaint.

47.     Defendant Playground Destination Properties, Inc. (Playground) is a Washington corporation doing business in the Southern District of California. At all relevant times, Playground materially and substantially assisted in the unlawful sale of unregistered and unqualified HRHSD investment contracts.

48.     Defendant East West Bank, a California Corporation, materially assisted in the unlawful sale of approximately **$42,726,435** of unqualified and unregistered HRHSD Investment Contracts.

49.     XBR Financial Services (Doe defendant 2) is a California limited liability company. After this legal action was filed, defendant East West Bank notified several plaintiffs that it has sold the plaintiffs note to XBR Financial Services, LLC.

50.     Defendant JPMorgan Chase & Co. (JPMorgan Chase, Doe defendant 3), a financial holding company incorporated under Delaware law in 1968. Defendant JP Morgan Chase is added to the operative complaint as doe defendant 3.  Defendant JP Morgan Chase materially assisted in the unlawful sale of approximately **$7,349,895** of unqualified and unregistered HRHSD Investment contracts.

51.     Defendant Professional Mortgage Partners, Inc. (Doe defendant 4) is a Chicago-based mortgage banking firm.  Defendant Professional Mortgage Partners materially assisted in the unlawful sale of approximately **$38,536,730** of unqualified and unregistered HRHSD

7

1    Investment Contracts.

2         52.      Defendant Bank of America is a Delaware corporation, a bank holding company

3    and a financial holding company under the Gramm-Leach-Bliley Act. Bank of America's

4    principal executive offices are located in the Bank of America Corporate Center, Charlotte, North

5    Carolina. Bank of America is added to the operative complaint in place of Doe defendant 5.

6    Defendant Bank of America (Doe Defendant 5) materially assisted in the unlawful sale of

7    approximately **$14,450,870** of the unregistered and unqualified HRHSD Investment Contracts.

8         53.      Defendant Erskine Corp operates under the name the Erskine Group is a division

9    of CalCon Mutual Mortgage Corporation; both companies have their principal places of business

10   in San Diego County.  The Erskine Group is added to the operative complaint as Doe defendant 6.

11   Defendant Erskine Group materially assisted in the unlawful sale of the unregistered and

12   unqualified HRHSD Investment Contracts as a co-underwriter of HRHSD Investment Contracts.

13        54.      Defendant Erskine Corporation is a California corporation run by two brothers,

14   Joshua Erskine and Shane Erskine. Erskine Corp. provided mortgage and financing services

15   steering most if not all Investment Contract financing to defendant Professional Mortgage

16   Corporation. Together with Professional Mortgage Partners, and as its agent, materially assisted

17   in the unlawful sale of unqualified and unregistered HRHSD Investment Contracts.

18        55.      Defendants offered and sold, or materially assisted the offer and sale of

19   approximately $195,757, 613 of HRHSD Investment Contracts.  Fifth Rock appears to have

20   purchased about $22,940,514.

21        56.      Table 1 illustrates the amounts underwritten by defendants East West Bank, JP

22   Morgan Chase, Professional Management Partners and Bank of America:

23        / / /

24        / / /

25        / / /

26        / / /

27        / / /

28        / / /

8

| Table 1<br>Bank | Amount of HRHSD Investment Contracts Underwritten |
|---|---|
| East West Bank | $42,726,435 |
| rgan Chase | $7,349,895 |
| Professional Mortgage Partners | $38,536,730 |
| Bank of America | $14,450,870 |
| Total | $103,063,930 |

57. The true names and capacities of those defendants sued herein as DOES 6 through 50, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs, who sue those defendants by such fictitious names. When the DOE parties' true names and capacities and their actual involvement in the matters alleged herein are ascertained, Plaintiffs will amend this complaint to accurately reflect the same.

58. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named defendants designated hereunder as a DOE is responsible in some manner for the occurrences alleged herein, and that Plaintiffs' damages as herein alleged were proximately caused or contributed to by their conduct.

59. Plaintiffs are informed and believe and thereon allege that at all relevant times herein, each of the defendants was the agent, employee, partner, joint venture, alter ego, and/or co-conspirator of one or more of the remaining defendants and in doing the acts alleged herein, was acting within the purpose, course and scope of such agency, employment joint venture or conspiracy, and with the consent, permission or ratification of one or more remaining defendants.

## CLASS ALLEGATIONS

60. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(1), and (b)(3) on behalf of all persons (the "Investors") who were sold and who purchased HRHSD Investment Contracts (referred to as "HRHSD Investment Contract" or HRHSD Securities").

61. Plaintiffs sue as representative parties on behalf of all members of the class of

9

purchasers of HRHSD Investment Securities. The class is so numerous that joinder of all of the several hundred purchasers of the HRHSD Investment Securities would be impracticable. There are fundamental questions of law and fact common to the class including whether the elements of the federal and state investor protection law claims can be satisfied.

62.    The claims of the representative parties are typical of the claims of the class. The representative parties and counsel will fairly and adequately protect the interests of the class. The common questions of law and fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

63.    The contracts identified in this operative complaint that collectively form the HRDSD Investment Contracts are contracts of adhesion. To the extent those contracts purport to restrain a party's ability to proceed in this action, those provisions are unconscionable and unenforceable.

**JURISDICTION AND VENUE**

64.    The claims herein arise under Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l (a)(2), and Section 15 of the Securities Act, 15 U.S.C. § 77o. This Court has subject matter and supplemental jurisdiction of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. §§ 1331 and 1337, 1367(a).

65.    Venue is proper in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b). The violations of law alleged herein occurred in substantial part in this District, within which the sale of the Hard Rock Investment Securities to Class members occurred, and within which the investment properties are located.

66.    In connection with the acts and practices alleged herein, Defendants used the U.S. Mail and facilities of interstate commerce.

**HARD ROCK HOTEL SAN DIEGO**

67.    HRHSD is a 12-story building located at 207 5th Avenue, San Diego, California, located at the entrance to the San Diego's historic Gaslamp Quarter, across the street from the San

1    Diego Convention Center, and one block from PETCO Park. It opened December 15, 2007.

2        68.    HRHSD has 420 guestrooms, consisting of 244 studios, 159 Hard Rock Suites,

3    and 17 Rock Star Suites. HRHSD also has 40,000 square feet of meeting and event space.

4    Tarsadia is the HRHSD hotel manager.

5                 **THE HRHSD PROSPECTUS**

6        69.    The HRHSD Investment Contracts were offered and sold to investors by use of

7    uniform advertisements, emails, letters, or other communications, written or by television, which

8    offered the HRHSD Investment Contracts for sale and which confirmed the sale of the HRHSD

9    Investment Contracts. The writings making up the prospectus included, but were not limited to,

10   the 1 August 2007 Tarsadia's Optional Rental Management Program FAQ.

11          **MISREPRESENTATIONS AND OMISSIONS**

12       70.    Defendants' legal duty was to register and qualify the HRHSD Investment

13   Contracts -- a process that would have caused defendants to disclose the material information

14   required by those investor protection agencies explaining how defendants organized the HRHSD

15   investment to achieve its investment objectives.

16       71.    Instead, the promoters distracted investors with claims that HRHSD was a hot new

17   scene, and place to be seen. HRHSD promoters successfully marketed the sizzle of the HRHSD

18   investment opportunity without going through the legally required process of registration and

19   qualification.

20       72.    Defendant HRHSD Investment Contract promoters and issuers engaged in a series

21   of misrepresentations and omissions regarding the securities it sold to Plaintiffs.

22       73.    Defendants did not disclose, and in fact concealed, that they were selling a security

23   for which they had filed for an exemption with the California Department of Corporations. After

24   doing so, they made a public offering of the investment contracts, but did not complete the

25   exemption filings with the Department, so as to conceal the sale of securities. In the sales process,

26   they followed a pattern of concealing information that would have revealed they were actually

27   selling a security in a public offering without certification and registration.

28       74.    Investors were induced to purchase investment contracts disguised as real estate

1    transactions.  After putting down a deposit of tens of thousands of dollars, Plaintiff investors were

2    told that they would lose their deposit if they wanted out pursuant to laws governing real estate

3    transactions. Defendants' statements to Plaintiffs were misrepresentations because real estate laws

4    did not govern the transactions; Rather, the transaction was a sale of securities that would not

5    have been consummated at the deposit stage.

6         75.    Defendants misrepresented to investors that sought financing that they would

7    qualify for and receive long-term financing. However, Defendants materially assisted with and/or

8    provided short-term financing, often couple with misrepresentations that they could refinance

9    with long term financing down the road. Defendants knew or reasonably should have known

10   these representations were not true.

11        76.    Another key misrepresentation and omission revolved around the defendants'

12   rental management agreement and program.  Defendants falsely represented that defendant

13   Tarsadia's rental program was not mandatory and not a condition of ownership, when as a matter

14   of economic and practical reality, the Tarsadia rental program was mandatory and a condition of

15   ownership. It was not feasible, as plaintiffs were to later discover, for investors to operate his or

16   her own rental management system separate from the HRHSD, given the control 5th Rock LLC

17   exercised over investors' studios and suites, under the terms of the Operations Agreement.

18   Defendant Tarsadia, an affiliate of 5th Rock LLC and under the common control of the Patel

19   defendants and defendant Casserly, was the manager of the HRHSD and investors' exclusive

20   rental agent.

21        77.    Defendants represented that investors were not required to participate in Tarsadia's

22   rental management program and that the decision was entirely up to investors. This representation

23   was false and untrue in that plaintiffs were required to participate in Tarsadia's rental

24   management program and the decision was not entirely up to investors.   Under the terms of the

25   operations agreement, 5th Rock LLC, under the common control of Tarsadia, Patel defendants and

26   Casserly, retained control of investors' studios and suites as alleged in this operative complaint

27   such that separate rental management by investors was not feasible.  Defendants made these

28   misrepresentations in Tarsadia's Optional Rental Management Program FAQ.

12

78.    Defendants omitted to disclose that the reason they misrepresented the rental management agreement as *not* mandatory is that they were attempting to conceal the fact that the HRHSD Investment Contract transaction was an unregistered, public offering of a security. Defendants prepared and approved the Tarsadia's Optional Rental Management Program FAQ with the intent of creating a false written record that the rental management was not a condition of ownership to make it less likely that the investment would be recognized for what it was -- the public offering of a security. Defendants aided and materially assisted each other in the misrepresentations so as to close the deals with the plaintiff investors.

79.    Plaintiffs had no control over the rental management of their studios and suites and were prohibited under the mandatory Operations Agreement from having control over their studios and suites. This lack of control prevented and continues to prevent Plaintiffs from ever being able to separately manage the rental of their studios and suites.

80.    Defendants made material misrepresentations as to the Home Owner Association. Defendants did not disclose that their intent was to use their control over the HOA to increase HOA fees to make up for revenue shortfalls. Defendants further did not disclose the amount of the HOA fees to Plaintiffs before they provided money to Defendants.

81.    Plaintiffs are bringing this action within: one (1) year after discovery of the untrue statements or the omissions of material facts alleged herein; within one (1) year after discovery of the untrue statements and omissions should have been made by the exercise of reasonable diligence; and within three (3) years of the sale of the HRHSD Investment Contracts. Plaintiffs did not discover the facts on which this action is based until after consulting with counsel, which was less than a year before the filing of this operative complaint.

### THE HRHSD INVESTMENT CONTRACT

82.    The HRHSD Investment Contract provided for investors to obtain an ownership interest in individual HRHSD studios or suites. Promoters made a public offering of the HRHSD Investment Contracts through press releases and public marketing programs, including television ads on target market specific channels like MTV, with the intent and effect of inducing investors to purchase HRHSD Investment Contracts for up to the 244 Studios, 159 Hard Rock Suites, and

13

1   17 Rock Star suites.

2       83.     The HRHSD promoters used advertising, sales literature, promotional

3   arrangements and oral representation that emphasized to investors the economic benefits investors

4   would derive from the HRHSD promoters and their agents' efforts in renting investors' studio

5   and suites.

6       84.     The HRHSD promoters told investors Tarsadia was an "approved rental manager

7   provider" hired to manage HRHSD.  Promoters emphasized the economic benefits investors

8   would derive from Tarsadia's managing the rental of investors' studio and suites.  The promoters

9   told investors Tarsadia's objective was "to maximize revenue by renting the participating suites

10  the most number of nights at the highest possible rate." Promoters, in reference to the rental

11  program, told investors "We've got the team. We've got the ideas. We've got the experience.

12  Now we want you."

13      85.     Under the HRHSD Investment Contract investors bought one or more of the

14  studios or suites from $350,000 to more than $2,000,000.  Investors paid cash for or arranged for

15  financing to purchase the HRHSD studios or suites.

16      86.     Investors were required to execute three writings that formed the core of the

17  HRHSD Investment Contract: (1) Purchase Contract and Escrow Instructions; (2) Unit

18  Maintenance and Operating Agreement (Operations Agreement); (3) Tarsadia Hotel's Hard Rock

19  Hotel San Diego Rental Management Agreement (RMA).  Further, the banks named in this

20  complaint as named parties or by their involvement assisted with funding so as to help promoters

21  further their plan.

22      87.     Under the HRHSD Operation Agreement, defendant 5th Rock LLC had the right to

23  manage HRHSD and was vested with the exclusive authority and right to:

24      •   accept reservations, enforce check-in and check-out procedures, perform
            housekeeping services;
25      •   issue room keys (including to plaintiffs and investors);
        •   collect service and other charges;
26      •   collect and remit transient occupancy taxes;
        •   provide such personnel as are necessary to accomplish the defined services.
27      •   purchase and replace linens, towels, blankets and the like within the Studio and
            suites (costs to be paid by plaintiffs);
28      •   connect plaintiffs' unit telephones to the Hard Rock Hotel switchboard;

14

- arrange for basic cable or satellite television service to the Hotel Unit;
- operate the mini-bars and otherwise sell alcoholic beverages and foot in the studio and suites.

88. Investors were limited to staying in their Studio and suites to an aggregate maximum of 28 days during each calendar year. The investment was organized so that plaintiffs could only sell their units subject to the same 28-day aggregate non-residential condition.

89. Investors were not issued keys to their studios and suites. All keys to the electronic locking device system are maintained by the HRHSD. Investors can gain access to their studios and suites only through the HRHSD, and are first required to deliver a credit card to the HRHSD to establish a credit account with respect to plaintiffs' studio or suite.

90. Under one of the agreements that forms the HRHSD Investment Contract -- the Operating Agreement -- plaintiffs pay defendant 5th Rock LLC a service and management fee for each day plaintiffs use their studios and suites of $90 per day for a studio, $125 per day for a one-bedroom suite, and $150 per day for a Rock Star suite. The service and management fee is due and payable upon each check-out. The service and management fee is set to increase not less than 4% per year.

91. If defendant 5th Rock LLC performs extraordinary or additional services in connection with their studios and suites, plaintiffs are required to pay defendant 5th Rock LLC all costs incurred in performing such extraordinary and additional services. Plaintiffs have to pay defendant 5th Rock LLC 10% of the costs incurred in performing such extraordinary or additional services.

92. Defendant 5th Rock LLC may at its election deduct all costs incurred in connection with the extraordinary or additional services from any revenue that may be collected from a Guest that is otherwise payable to plaintiffs under the HRHSD Investment Contract.

93. Plaintiffs were required to agree that plaintiffs would cooperate and in no way interfere with or impede 5th Rock LLC in the operation and management of the Hard Rock Hotel. Plaintiffs were required to agree to indemnify defendant 5th Rock LLC.

94. Plaintiffs were not permitted to sell their studios and suites without first giving

15

1   written notice to defendant 5th Rock LLC of the terms of the proposed sale of plaintiffs' studios

2   and suites.  Defendant 5th Rock had five days from the date of receipt of plaintiffs' notice of

3   intent to sell to elect to exercise a right of first refusal.

4   **HRHSD PROMOTERS VIOLATED THE LAW**

5        95.    Defendants violated Section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. §

6   77l(a)(1) (the "Securities Act"), by failing to register with the U.S. Securities and Exchange

7   Commission ("SEC") the offering of Hard Rock Hotel Investment Contracts. (No claim for relief

8   under Section 12(a)(1) of the Securities Act of 1933 is being asserted.)

9        96.    Defendants violated California Corporations Code § 25110 because they offered

10   and sold in California an issuer transaction. The HRHSD Investment Contracts sales had not been

11   qualified under the relevant sections of the California Corporations Code and therefore

12   defendants are liable to plaintiffs under California Corporations Code § 25503.

13        97.    Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. § 77l because they

14   made material misrepresentations of fact and omitted to state material facts needed to make those

15   stated not misleading in connection with the offer and sale of the HRHSD Investment Securities.

16        98.    Defendants violated California Corporations Code § 25401 because they offered

17   and sold in California the HRHSD Investment Securities in this State by means of written or oral

18   communications which included an untrue statement of a material fact or omitted to state a

19   material fact necessary in order to make the statements made, in the light of the circumstances

20   under which they were made, not misleading.

21        99.    Defendants actually filed for an exemption with the California Department of

22   Corporations.  After doing so, they made a public offering of the investment contracts, but did not

23   complete the exemption filings with the Department, so as to conceal the sale of securities.

24        100.    Under Corporations Code § 25501 defendants are persons who violated § 25401

25   and are therefore liable to the plaintiffs because plaintiffs are persons who purchased the HRHSD

26   Investment Securities from defendants and because defendants are persons who sold the securities

27   to plaintiffs.  Plaintiffs sue alternatively for rescission and/or for damages.

28        101.    Under California statutory law plaintiffs are entitled to recover damages from

16

defendants and/or to rescind the HRHSD Investment Contracts because defendants made material misrepresentations or omitted to state material facts upon which plaintiffs relied and therefore suffered foreseeable damages.

**REGISTRATION WOULD HAVE DISCLOSED FLAWS IN THE INVESTMENT**

102.    Had defendants complied with their legal duties they would have been required to file a registration statement with the SEC describing in detail the Hard Rock Investment Contract. The Hard Rock Hotel Registration Statements would have had two principal parts: Part I is the prospectus, the legal offering or "selling" document. In the prospectus defendants would have been required as the issuers of the HRHSD Investment Contracts to describe the important facts about the defendants' business operations, financial condition, and management.

103.    Defendants would have been required to provide the HRHSD Prospectus to those to whom the opportunity to buy a HRHSD was presented.

104.    Part II of the HRHSD Registration Statement would have contained additional information that the defendants would not have been required to provide to plaintiffs.

105.    The SEC Division of Corporation Finance's mission would have reviewed the HRHSD registration statement information to make sure investors were provided with material information in order to make an informed investment decision to buy the HRHSD Investment Security.

106.    SEC staff would have examined the HRHSD registration statements for compliance with disclosure requirements. Those parts of the filing that appeared incomplete or inaccurate would have been identified in a letter to defendants from SEC staff. Defendants would have been required to file a correcting or clarifying amendment to the Hard Rock Registration Statement.

107.    During this process defendants would have been required to disclose the essential financial information and mode of operations.

108.    Defendants would not have demanded a "deposit" that they claimed was nonrefundable under the guise of a real estate transaction.

109.    Defendants failed to comply with their legal duty to register the Hard Rock

17

1    Investment Contracts with the SEC in violation of §12(a)(1) of the Securities Act. Defendants

2    also misrepresented to plaintiffs that defendants were not required to register the offering with

3    SEC, when in fact they were required to register in violation of § 12(a)(2) of the Securities Act.

4    **OFFERING WAS NOT FAIR, JUST AND EQUITABLE**

5    110.    The HRHSD Investment Contract was a security in an issuer transaction that was

6    not qualified under the California Corporations Code (Corp Code). 5th Rock LLC admitted it was

7    an issuer and that it was selling securities, consisting of membership interests in a 28 October

8    2004 Notice of Transaction 5th Rock LLC filed with the California Commissioner of Corporations

9    on 28 October 2004. A full, true and correct copy of the Notice of Transaction is attached hereto

10   as Exhibit 1.

11   111.    Defendants were required under Corp Code § 25110 to qualify the HRHSD

12   Investment Contracts in California before offering and selling it to California investors including

13   plaintiffs.

14   112.    Plaintiffs purchased HRHSD Investment Contracts that were required to be but

15   were not qualified under the California investor protection law.  Plaintiffs sue to recover the

16   consideration they paid for the HRHSD Investment Contracts with interest thereon at the legal

17   rate, less the amount of any income received there from.

18   113.    Plaintiffs hereby tender their HRHSD Investment Contracts, including the studios

19   and suites units plaintiffs purchased.

20   114.    In violation of Corp Code § 25401 defendants sold to plaintiffs HRHSD

21   Investment Contracts by means of written or oral communication which included an untrue

22   statement of a material fact or omitted to state a material fact necessary in order to make the

23   statements made, in the light of the circumstances under which they were made, not misleading.

24   115.    Defendants violated Corp § 25401 because they sold to plaintiffs HRHSD

25   Investment Contracts by means of untruthful information and thus are liable to plaintiffs who

26   purchased the HRHSD Investment Contracts from defendants. Plaintiffs sue in this action for

27   rescission and/or for damages.

28   ///

18

## CONTROL PERSON AND JOINT AND SEVERAL LIABILITY

116.   The Patel defendants and defendant Greg Casserly directly or indirectly control Tarsadia, a corporation liable to plaintiffs under Corp Code §§ 25501 or 25503.  The Patel defendants and defendant Casserly are principal executive officers or directors of the Tarsadia corporation, which is so liable.

117.   Defendant Playground Destination Properties, agent of defendants Tarsadia and 5th Rock LLC, materially aided in the act or transaction constituting the violations and is also liable jointly and severally with and to the same extent as the remaining defendants.

118.   Defendant Erskine Corporation and the bank defendants materially aided in the act or transaction constituting the violations and are also liable jointly and severally with and to the same extent as the remaining defendants.

## UNLICENSED BROKER DEALER LIABILITY

119.   Plaintiffs purchased HRHSD Investment Contracts from Defendant Playground Destination Properties when defendant Playground Destination Properties was required to be registered as a broker-dealer and had not at the time of the sale applied for and secured from the commissioner a required broker-dealer certificate.

120.   Plaintiffs bring this action for rescission of the sale of the HRHSD Investment Contracts to recover the consideration plaintiffs paid for the HRHSD Investment Contracts plus interest at the legal rate, less the amount of any income received on the HRHSD Investment Contract pursuant to Corp Code § 25501.5.

## THE BANKS, THEIR AGENTS AND ASSIGNS, AND DOE DEFENDANTS
## PROVIDED FUNDING AND MATERIALLY ASSISTED VIOLATIONS

EAST WEST BANK

121.   The East West Bank is the wholly owned subsidiary of East West Bancorp Inc., a bank holding company incorporated in Delaware on August 26, 1998. The East West Bank's principal office is located at 135 N. Los Robles Avenue, 7th Floor, Pasadena, California 91101, and the telephone number is (626) 768-6000.

19

122. The East West Bank offers a broad spectrum of personal and commercial banking services to small and medium-sized businesses, business executives, professionals, and other individuals.

123. The East West Bank's principal officers include Dominic Ng. Mr. Ng serves as the Chairman, the President and the Chief Executive Officer of East West Bank. Douglas P. Krause is an Executive Vice President, the Chief Risk Officer, a General Counsel and a Corporate Secretary of East West Bank. William J. Lewis is an Executive Vice President and the Chief Credit Officer. Mr. Lewis joined the Bank in 2002. Julia Gouw is President and Chief Operating Officer of East West Bank. Thomas J. Tolda was the Chief Financial Officer and Executive Vice President of the East West Bank. Irene H. Oh is the current Executive Vice President and Chief Financial Officer of East West Bank.

124. The East West Bank Commercial Lending segment is comprised of commercial real estate which principally generates commercial loans and deposits through the lending offices located in East West Bank's northern and southern California production offices. The Commercial Lending segment generated 50% of the total revenue of East West Bank Inc.

125. The East West Bank markets its services through its 69 branches located in the Los Angeles metropolitan area, Orange County, the San Francisco Bay area. The East West Bank owns East West Mortgage Securities, LLC which is engaged in private label securitization activities of the East West Bank.

126. On 11 February 2010 the Congressional Oversight Panel found that almost 3,000 of the country's 8,100 banks and thrifts had "problematic exposure" to commercial real estate and related loans. East West Bank meets the Congressional Oversight Panel's criteria for "CRE-concentrated" and show significant weakness.

127. East West bank's ratio of net charge-offs (actual loan losses) to average loans was a high 5.16% for 2009. The East West Bancorp owes the federal government $306.5 million in Troubled Asset Relief Program money. East West Bank has had significant commercial loan losses.

128. Defendant East West bank had a prior existing relationship with the other

20

1    defendants and assisted their co-defendants in transferring the risks of the investment to plaintiffs

2    and from defendants by transferring funds to the defendants and preparing documents obligating

3    plaintiffs to pay through a loan for the fund transfer to defendants.  Defendant East West Bank's

4    and other Doe defendants' material assistance of defendants' violations was a substantial factor in

5    causing plaintiffs' damages.

6        129.    East West Bank advanced an $88 million construction loan and $30 million in

7    letters of credit to HRHSD for a total of approximately $111 million.

8        130.    East West Bank materially assisted the unlawful sale of unqualified and

9    unregistered securities by acting as an underwriting for over $42,726,435 of HRHSD Investment

10   Contracts.

11       131.    East West Bank materially assisted in the unlawful sale of the HRHSD Investment

12   Contracts with the intent of generating proceeds from those sales of HRHSD Investment

13   Contracts in an amount sufficient to pay the $111 million East West Bank had advanced to pay

14   for the construction and development of the HRHSD.  East West Bank materially assisted the sale

15   of the HRHSD Investment Contracts by acting as an underwriter and providing financing

16       132.    East West Bank was the beneficiary of a deed of trust dated 12 August 2005 and

17   executed by defendant 5th Rock LLC securing the $88 million HRHSD construction promissory

18   note from 5th Rock LLC in favor of East West bank.  East West Bank memorialized 5th Rock

19   LLC's payment of the $88 million HRHSD construction promissory note by way of a full

20   reconveyance dated 15 February 2008 (DOC # 2008-0086687) filed with the San Diego

21   Recorders Office on 20 February 2008.

22       133.    East West Bank was the beneficiary of a deed of trust dated 30 October 2008 made

23   by 5th Rock LLC securing the $33 million East West Bank letters of credit.  East West Bank

24   memorialized 5th Rock LLC's payment of the $30 million by way of a full reconveyance dated 4

25   June 2008 (Doc # 2008-03090833 from East West Bank to 5th Rock LLC.

26

27

28



134.    Defendant JPMorgan Chase (Doe defendant 3) materially assisted in the unlawful sale of unqualified and unregistered HRHSD Investment Contracts by acting as an underwriter for the sale of approximately **$7,349,895** HRHSD Investment contracts with knowledge that the HRHSD Investment Contracts were not registered or qualified, as required by law.  Further, defendant JP Morgan Chase (Doe defendant 3) knew or should have known that sales were made to plaintiffs based upon material misrepresentations that the HRHSD Investment Contracts were not required to be registered or qualified by the SEC and the California Department of Corporations.



135.    Defendant Professional Mortgage Partners (Doe defendant 4) materially assisted in the unlawful sale of unqualified and unregistered HRHSD Investment Contracts by underwriting approximately **$38,536,730** of unqualified and unregistered HRHSD Investment Contracts with knowledge that the HRHSD Investment Contracts were not registered or qualified, as required by law.  Further, defendant Professional Management Partners (Doe defendant 4) knew or should have known that sales were made to plaintiffs based upon material misrepresentations that the HRHSD Investment Contracts were not required to be registered or qualified by the SEC and the California Department of Corporations.

136.    Defendant Erskine Corporation, by and through its agents, materially assisted in the unlawful sale of unqualified and unregistered HRHSD Investment Contracts by acting as

22

agent for Professional Mortgage Partners and coordinated the financing of the investment.



**Bank of America**

137.    Defendant Bank of America (Doe defendant 5) materially assisted in the unlawful sale of unqualified and unregistered HRHSD Investment Contracts by underwriting approximately **$14,450,870** of unqualified and unregistered HRHSD Investment Contracts with knowledge that the HRHSD Investment Contracts were not registered or qualified, as required by law.  Further, defendant Bank of America (Doe defendant 5) knew or should have known that sales were made to plaintiffs based upon material misrepresentations that the HRHSD Investment Contracts were not required to be registered or qualified by the SEC and the California Department of Corporations.

138.    Defendants East West Bank, JP Morgan Chase (Doe defendant 3), Professional Mortgage Partners (Doe defendant 4), and Bank of American (Doe defendant 5) and the remaining Doe defendants materially assisted in the sale of the unqualified and unregistered HRHSD Investment Contracts that were sold in violation of Corp Code §Section 25110 and 25401, and § 12(1) of the 1933 Securities Act.

139.    Defendants East West Bank,  JP Morgan Chase (Doe defendant 3), Professional Mortgage Partners (Doe defendant 4), and Bank of American (Doe defendant 5) and the remaining Doe defendants knew, or were reckless in not knowing their co-defendants were misrepresenting that the HRHSD rental program was not mandatory in order to give the false impression to plaintiffs that the HRHSD Investment Contracts did not have to be registered with the SEC or qualified by the California Department of Corporations.

140.    Defendants East West Bank, JP Morgan Chase (Doe defendant 3), Professional Mortgage Partners (Doe defendant 4), and Bank of American (Doe defendant 5) and the remaining Doe defendants knew or was reckless in not knowing the reason their co-defendants were misrepresenting that the rental program was voluntary was to conceal the fact that

23

1    defendants were making an unlawful public offering of the HRHSD Investment Securities in

2    violation of the California and federal securities laws.

3        141.    Defendants East West Bank, JP Morgan Chase (Doe defendant 3), Professional

4    Mortgage Partners (Doe defendant 4), and Bank of American (Doe defendant 5) and the

5    remaining Doe defendants provided substantial assistance in the unlawful sale of the unqualified

6    HRHSD Investment Contracts in violation of Corp Code §Section 25110 and 25401 by acting as

7    underwriters of the HRHSD Investment Contract offering in providing the essential financing

8    needed to consummate the sales of HRHSD Investment Contracts.

9        142.    Defendants East West Bank, JP Morgan Chase (Doe defendant 3), Professional

10   Mortgage Partners (Doe defendant 4), and Bank of American (Doe defendant 5) and the

11   remaining Doe defendants knew or with reasonable diligence should have known that the rental

12   program was mandatory, and that the reason their co-defendants were misrepresenting the rental

13   program was voluntary was to conceal the fact that defendants were making a public offering of

14   the HRHSD Investment Securities.

15       143.    Each of the defendants knew or should have known that the plaintiffs who

16   purchased HRHSD Investment Contracts via bank financing provided by the bank underwriter

17   defendants that take out financing would not be available to refinance their loans which were

18   short term interest only for short durations.  This information was material information to

19   plaintiffs who bought HRHSD Investment Contracts through financing provided by the bank

20   defendants.

### FIRST CLAIM FOR RELIEF

**§12(a)(2) Securities Act of 1933**
**Misrepresentation and Omission**

24       144.    Plaintiffs incorporate each and every allegation alleged in the preceding

25   paragraphs as though fully set forth herein.

26       145.    Defendants are persons who offered and sold HRHSD Investment Contracts by the

27   use of means or instruments of transportation or communication in interstate commerce or of the

28   mails, by means of a prospectus or oral communication, which includes an untrue statement of a

24

---

1    material fact or omits to state a material fact necessary in order to make the statements, in the

2    light of the circumstances under which they were made, not misleading.

3        146.    Defendants East West Bank, XBR Financial Services (Doe defendant 2), JP

4    Morgan Chase (Doe defendant 3), Professional Mortgage Partners (Doe defendant 4), and Bank

5    of American (Doe defendant 5), Erskine Corp. (Doe Defendant 6)  and the remaining Doe

6    defendants participated in the sale of the unregistered HRHSD Investment securities by acting as

7    underwriters of the HRHSD Investment Contract offering in providing the essential financing

8    needed to consummate the sales of HRHSD Investment Contracts.

9        147.    Upon these premises defendants are liable to plaintiffs for the consideration

10   plaintiffs paid for such HRHSD Investment Contract with interest thereon, less the amount of any

11   income received thereon, upon the tender of such security, or for damages if appropriate.

12                          **SECOND CLAIM FOR RELIEF**

13                          **Corp Code §§25110, 25503, 25504.1**
                            **Failure to Qualify, Material Assistance**
14

15       148.    Plaintiffs incorporate each and every allegation alleged in the preceding

16   paragraphs as though fully set forth herein.

17       149.    The Defendants are persons who violates § 25110 or who materially assisted the

18   violation of § 25110 are therefore are liable to plaintiffs who are persons who acquired from

19   defendants the HRHSD Investment Contract securities in violation of § 25110.

20       150.    Defendants East West Bank, XBR Financial Services (Doe defendant 2), JP

21   Morgan Chase (Doe defendant 3), Professional Mortgage Partners (Doe defendant 4), and Bank

22   of American (Doe defendant 5), Erskine Corp. (Doe Defendant 6)  and the remaining Doe

23   defendants materially assisted the violation §Section 25110 by acting as underwriters of the

24   HRHSD Investment Contract offering in providing the essential financing needed to consummate

25   the sales of HRHSD Investment Contracts.

26       151.    Upon these premises defendants are liable to plaintiffs for the consideration

27   plaintiffs paid for such HRHSD Investment Contract with interest thereon, less the amount of any

28   income received thereon, upon the tender of such security, or for damages if appropriate.

## THIRD CLAIM FOR RELIEF

### Corp Code §§ 25401, 25501, 25504.1
**Misrepresentations and Omissions, Material Assistance**

152.    Plaintiffs incorporate each and every allegation alleged in the preceding paragraphs as though fully set forth herein.

153.    Defendants are persons who violated Corp Code §§ 25401, 25501, 25504.1 because they offered for sale and sold in the State of California the HRHSD Investment Contracts by means of written or oral communications which included an untrue statement of a material fact or omitted s to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading or materially assisted in such violation.

154.    Plaintiffs are persons who purchased the HRHSD Investment Contracts from defendants.  Upon these premises plaintiffs sue for rescission or for damages.

### FOURTH CLAIM FOR RELIEF

### Corp Code §25501.5
**Rescission Against Unlicensed Broker-Dealer against
Playground Destination Properties only**

155.    Plaintiffs incorporate each and every allegation alleged in the preceding paragraphs as though fully set forth herein.

156.    Defendants are persons who violated Corp Code §25501.5 because an unlicensed broker-dealer, they offered for sale and sold in the State of California the HRHSD Investment Contracts that were securities.

157.    Plaintiffs are persons who purchased the HRHSD Investment Contracts from defendants.  Upon these premises plaintiffs sue for rescission and/or for damages.

/ / /

/ / /

/ / /

/ / /

26

## FIFTH CLAIM FOR RELIEF

### Corp Code § 25504
### Control Person Liability against Patel and Casserly Defendants

158.    Plaintiffs incorporate each and every allegation alleged in the preceding paragraphs as though fully set forth herein.

159.    Defendants Patel and Casserly, directly and indirectly, controlled persons liable under §§ 25501 and 25503 as set forth in this operative complaint and are liable jointly and severally with and to the same extent as such persons under their control.

160.    Upon these premises plaintiffs sue for rescission and/or for damages.

WHEREFORE plaintiffs pray as follows:

UPON ALL CLAIMS FOR RELIEF

1.    Damages in an amount according to proof at trial

2.    Alternatively, an order of recession together with the return by defendants of all consideration paid by plaintiffs less any appropriate income offset.

3.    For reasonable attorneys fees and costs; and

4.    All other relief deemed appropriate by the Court;

Respectfully submitted,

AGUIRRE, MORRIS & SEVERSON LLP

Dated:  December 8, 2009

Maria C. Severson

27

## CERTIFICATION PURSUANT TO
## SECTION 27 OF THE SECURITIES ACT OF 1933

I, Tamer Salameh, declare in the form of this sworn certification:

1.      I have an ownership interest in Real Estate 4 Hospitality, LLC and am authorized to act on its behalf to bring this action. I, on behalf of myself and Real Estate 4 Hospitality, LLC, am seeking to serve as a representative party on behalf of the class of all purchasers of Hard Rock Hotel San Diego) Investment Contracts sold as "condo-hotel" units.

2.      I have reviewed the Complaint and hereby authorize its filing.

3.      I did not did not purchase the HRHSD Investment Contracts – the securities -- that are the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under this title.

4.      I am willing to serve as a representative party on behalf of the class of purchasers of the purported HRHSD Investment Securities, including providing testimony at deposition and trial, if necessary.

5.      I purchased 10 purported HRHSD Investment Contracts that are the subject of the complaint during the class period specified in the complaint.

6.      I have not served or proposed to serve as a representative party on behalf of a class. I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the court in accordance paragraph 4 of §27 of the Securities Act of 1933.  Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class.

Dated:  December 8, 2009

_____
Tamer Salameh

17

COMPLAINT