1  MAYER BROWN LLP
   JOHN NADOLENCO (SBN 181128)
2  jnadolenco@mayerbrown.com
   CHRISTOPHER P. MURPHY (SBN 120048)
3  cmurphy@mayerbrown.com
   350 South Grand Avenue, 25th Floor
4  Los Angeles, California  90071-1503
   Telephone: (213) 229-9500
5  Facsimile:  (213) 625-0248

6  Attorneys for Defendant
   EAST WEST BANK, a California corporation
7

8              UNITED STATES DISTRICT COURT

9         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11 TAMER SALAMEH, an individual; REAL          Case No. 09-CV-2739-L-CAB
   ESTATE 4 HOSPITALITY, LLC, a California
12 limited liability company; ALEKSEY KATS;     **MEMORANDUM OF POINTS AND**
   DIANA KATS; MITCHELL J. PEREIRA;            **AUTHORITIES OF DEFENDANT EAST**
13 GARY A TORETTA; ROBERT ALVARENGA;          **WEST BANK IN SUPPORT OF**
   ALEXIS COSIO; CESAR MOTA; DENIS B.          **MOTION TO DISMISS FIRST**
14 ROTHE JR; CHARLENE SCHRUFER; DAVID          **AMENDED COMPLAINT FOR**
   R. BUSHY; DALE CURTIS; ZONDRA               **VIOLATION OF FEDERAL AND**
15 SCHMIDT; DOLORES GREEN; CHRISTY            **STATE SECURITIES LAWS**
   JESKE; TAZIA REYNA; MARY L. WEE
16 SONG; KERRY L. STEIGERWALT; BETH            DATE:   May 24, 2010
   STEIGERWALT; STUART M. WOLMAN;              TIME:   10: 30 a.m.
17 JEFFREY E. LUBIN AND BARBARA L.             PLACE:  Courtroom of the Honorable M.
   LUBIN INDIVIDUALLY AND AS CO-                        James Lorenz, United States
18 TRUSTEES OF THE LUBIN FAMILY TRUST                   District Judge
   DATED MARCH 26, 2002; MIKAEL
19 HAVLUCIYAN AND THERESE
   HAVLUCIYAN INDIVIDUALLY AND AS
20 CO-TRUSTEES OF THE HAVLUCIYAN
   FAMILY TRUST; SADOUX KIM; individually
21 and on behalf a Class of all others similarly
   situated,
22
                 Plaintiffs,
23
        v.
24
   TARSADIA HOTEL,  a California Corporation;
25 TUSHAR PATEL, an individual; B. U. PATEL,
   an individual; 5th ROCK LLC, a Delaware
26 limited liability company; MPK ONE LLC,  a
   California limited liability company; GASLAMP
27 HOLDINGS, LLC, a California limited liability
   company;  PLAYGROUND DESTINATION
28 PROPERTIES,  a corporation; EAST WEST

1  BANK, a California corporation; BANK OF
   AMERICA, a Delaware corporation; JP
2  MORGAN CHASE; PROFESSIONAL
   MORTGAGE PARTNERS, INC.; XBR
3  FINANCIAL SERVICES, LLC, a California
   limited liability company; ERSKINE CORP, a
4  California corporation; and DOES 1 to 100,
   inclusive,
5
                    Defendants.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 3

III.    THE FIRST AMENDED COMPLAINT DOES NOT STATE A CLAIM
        AGAINST EAST WEST BANK ......................................................................... 6

IV.     PLAINTIFFS CANNOT STATE A SECURITIES CLAIM AGAINST EAST
        WEST BANK ..................................................................................................... 8

        A.      East West Bank Did Not Offer or Sell Any Securities ......................... 9

        B.      Plaintiffs Have Failed To State Facts Showing That East West Bank Made
                Any Material Misrepresentations Or Omissions Or Is Liable For
                "Materially Assisting" Purported Violations of The Securities Laws ................ 11

        C.      The Claims Under Section 12(a)(2) and Section 25503 are Barred by the
                Statute of Limitations ......................................................................... 13

V.      CONCLUSION .................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. FDIC,*
    973 F.2d 1221 (5th Cir. 1992) ...........................................................................10

*Amoroso v. Southwestern Drilling Multi-Rig P'ship No. 1,*
    646 F. Supp. 141 (N.D. Cal. 1986) ............................................................13, 14

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009).............................................................................1, 6, 7, 8

*Bell Atlantic Corp. v. Twombly,*
    550 U..S. 544 (2007) ..............................................................................1, 6, 7, 8

*Bowdoin v. Robinson,*
    67 Cal. App. 3d 705 (1977) ...............................................................................15

*E.B. Smith v. Am. Nat. Bank and Trust Co.,*
    982 F.2d 936 (6th Cir. 1992) .............................................................................10

*Finkel v. The Stratton Corp.,*
    962 F.2d 169 (2d Cir. 1992)...............................................................................14

*Koehler v. Pulvers,*
    609 F. Supp. 164 (S.D. Cal. 1985) ..............................................................14, 15

*Lubin v. Sybedon Corp.,*
    688 F. Supp. 1425 (S.D. Cal. 1988).............................................................14, 15

*Moore v. Kayport Package Express, Inc.,*
    885 F.2d 531 (9th Cir. 1989) ...............................................................................9

*Pinter v. Dahl,*
    486 U.S. 622 (1988)..........................................................................................9, 10

*Ryder Int'l Corp. v. First Am. Nat. Bank,*
    943 F.2d 1521 (11th Cir. 1991) .........................................................................10

*Schlifke v. Seafirst Corp.,*
    866 F.2d 935 (7th Cir. 1989) .............................................................................10

*SEC v. The Seabord Corp.,*
    677 F.2d 1289 (9th Cir. 1982) ....................................................................11, 13

*Yourish v. California Amplifier,*
    191 F.3d 983 (9th Cir. 1999) ............................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES**

15 U.S.C. § 77a *et seq.* ........................................................................................................1

15 U.S.C. § 77b(a)(11) ..........................................................................................................5

15 U.S.C. § 77l(a)(2) ..................................................................................................... passim

15 U.S.C. § 77m .............................................................................................................3, 13

Corporations Code § 25022 ....................................................................................................5

Corporations Code § 25501 ...............................................................................2, 8, 9, 11, 13

Corporations Code § 25503 ............................................................................................ passim

Corporations Code § 25000 *et seq.* .......................................................................................1

Corporations Code § 25110 .............................................................................................9, 11

Corporations Code § 25501.5 .................................................................................................2

Corporations Code § 25504 ....................................................................................................2

Corporations Code § 25504.1 .................................................................................11, 12, 13

Corporations Code § 25507 .........................................................................................2, 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. Pro. 8(a)(2) .......................................................................................................6

Fed. R. Civ. Pro. 9(b) ..........................................................................................................12

Fed. R. Civ. Pro. 12(b)(6) ................................................................................................6, 15

ii

## I.    **INTRODUCTION**

Defendant East West Bank has no business in this securities case. East West Bank merely loaned money to some of the Plaintiffs so they could buy condominium units in the Hard Rock Hotel San Diego (the "HRHSD"). Those Plaintiffs do not—because they cannot—claim that their underlying loan documents with East West Bank contain *any* misrepresentations. Instead, Plaintiffs claim that the condominium interests they bought from the other Defendants actually were unregistered securities and that East West Bank violated securities laws by providing "material assistance" to the promoters and sellers of these unregistered securities. How? Simply by being one of a number of lenders who loaned money to allow certain Plaintiffs and others to purchase condominiums. When stripped of Plaintiffs' improper conclusory assertions, the ultimate fact alleged against East West Bank—that it was a bank that loaned money—fails to state a claim because it does not provide "more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U..S. 544, 556-57 (2007) (internal quotation marks omitted).) Thus, the Court should dismiss the claims against East West Bank for this reason alone.

But even if Plaintiffs had stated a claim for securities violations against East West Bank, Plaintiffs cannot maintain that claim because Plaintiffs do not—and cannot—allege that East West Bank "offered or sold" securities to Plaintiffs or that Plaintiffs "acquired" securities from the Bank. Plaintiffs claim that the condominium interests they bought, which they refer to as "HRHSD Investment Contracts," were, in reality, securities and thus subject to the 1933 Securities Act (15 U.S.C. § 77a *et seq.*) and the California Corporate Securities Law of 1968 (Corporations Code § 25000 *et seq.*). In their First Amended Complaint ("FAC"), Plaintiffs sue Tarsadia Hotel ("Tarsadia"), the manager of the HRHSD; Tushar Patel, B.U. Patel and Gregory Casserly, who allegedly are officers and directors of Tarsadia; MPK One, LLC ("MPK") and 5th Rock LLC ("5[th] Rock"), which are alleged affiliates of Tarsadia that sold the so-called HRHSD Investment Contracts to Plaintiffs; Playground Destination Properties ("Playground"), which

1

1   allegedly acted as a broker in the sale of the so-called HRHSD Investment Contracts; and East

2   West Bank and a number of other lenders that allegedly loaned money to Plaintiffs to finance

3   their purchases of the so-called HRHSD Investment Contracts.

4          Whether the HRHSD Investment Contracts actually were securities under either federal

5   or state law will undoubtedly be a hotly contested issue in this litigation.  That threshold legal

6   issue, however, is not presented in this Motion because, even pretending that the investment

7   contracts were securities, East West Bank is not alleged to have "offered or sold" securities to

8   Plaintiffs and Plaintiffs did not acquire securities from East West Bank.  More particularly,

9   Plaintiffs allege three claims against East West Bank: the First Claim for Relief under Section

10  12(a)(2) of the 1933 Securities Act, 15 U.S.C. § 77l(a)(2); the Second Claim for Relief under

11  California Corporations Code § 25503; and the Third Claim for Relief under California

12  Corporations Code § 25501.[1]  These statutes only impose liability on those who "offer or sell"

13  securities (Section 12(a)(2)) or from whom securities are "acquired" (§§ 25501, 25503).

14  Plaintiffs do not and cannot allege that East West Bank "offered or sold" any of the purported

15  securities, or that Plaintiffs "acquired" any such purported securities from East West Bank.

16  According to the Complaint, those activities were performed by other Defendants.  East West

17  Bank did not offer or sell the purported securities, but instead was one of several lenders that

18  loaned money to Plaintiffs to finance the purchase of these purported securities from other

19  Defendants.  Thus, East West Bank simply cannot be liable for the alleged securities violations.

20         Finally, Plaintiffs' First Claim for Relief under 15 U.S.C. § 77l(a)(2) and Second Claim

21  for Relief under Corporations Code § 25503 are also barred by the statute of limitations.  The

22  Plaintiffs who borrowed money from East West Bank purchased their condominium interests for

23  the most part in May, 2006, the exception being Salameh who purchased his on December 1,

24  2006.  But Plaintiffs did not file suit until December 8, 2009 (Salameh) or March 15, 2010 (the

25  others), more than three years later.   Corporations Code § 25507 provides an absolute limit of

---

[1]      Plaintiffs also allege a fourth claim for relief under Corporations Code § 25501.5 (unlicensed broker-dealer liability), but that is against Defendant Playground only; and a fifth claim for relief under Corporations Code § 25504 (control person liability), against Tushar and B.U. Patel and Gregory Casserly only.

2

1   two years for claims under § 25503.   Section 13 of the 1933 Act, 15 U.S.C. § 77m, provides an

2   absolute limit of three years for claims under Section 12(a)(2).  Plaintiffs' claims under Sections

3   12(a)(2) and 25503 are therefore untimely and barred by the statute of limitations.

4   **II.     FACTUAL BACKGROUND**

5       According to the FAC, people who purchased the so-called HRHSD Investment

Contracts were required to execute three core documents: (1) Purchase Contract and Escrow

Instructions, (2) Unit Maintenance and Operations Agreement (Operations Agreement), and (3)

Tarsadia Hotel's Hard Rock Hotel Rental Management Agreement (RMA).  FAC ¶ 86.  Plaintiffs

do not attach these documents to the Complaint or specifically allege who the parties to these

agreements were (apart from Plaintiffs).   However, the allegations of the FAC suggest that 5th

Rock and MPK were parties to the Purchase Contracts as sellers, see *id.* ¶¶40, 42; the other party

to the Operations Agreements was 5th Rock as operator, see *id.* ¶¶ 87, 90, 93; and the other party

to the RMAs was Tarsadia as rental manager, see *id.* ¶¶ 76, 84, 86.

14      These inferences are confirmed by those actual contracts.  Although Plaintiffs fail to

attach the documents to the FAC, the Court can take judicial notice of the "writings that formed

the core of the HRHSD Investment Contract".   *Id.* ¶ 86; see Request for Judicial Notice ("RJN")

filed concurrently herewith.   The Purchase Contracts and Escrow Instructions executed by the

Plaintiffs allegedly borrowing from East West Bank were all executed by MPK on behalf of 5th

Rock.  RJN Ex A at 13 (Bushey); Ex. B at 13 (Dale and Michele Curtis); Ex. C at 13 (Aleksey

Kats);   Ex. D at 11 (Salameh); Ex E at 13 (Mary L. Wee Song);  Ex. F at 13 (Mary L. Wee

Song); Ex. G at 13 (Mary L. Wee Song); Ex. H at 13 (Kerry and Beth Steigerwalt).  Likewise the

Operations Agreements were all executed by MPK on behalf of 5th Rock.   RJN Exs.  I-Y.

Finally, the RMAs were all executed by Tarsadia.  RJN Exs. Z-GG.   The face of the "core"

transaction documents shows that East West Bank was not a party to any of these transactions.

25      Thus Plaintiffs do not – and cannot – allege that East West Bank was a party to or in any

way participated in these "core" transactions with the Plaintiffs who borrowed from East West

Bank.  According to the FAC, all East West Bank did was to lend money to certain purchasers of

the so-called HRHSD Investment Contracts to finance their purchases.  FAC ¶¶ 13, 16, 26-27,

3

28827082

128, 131. Furthermore, there is no allegation that those who purchased the so-called HRHSD Investment Contracts were required to obtain financing from East West Bank, or obtain financing from anyone: "[i]nvestors paid cash for *or* arranged for financing to purchase the HRHSD studios or suites." *Id.* ¶ 85 (emphasis added). Plaintiffs concede that a number of other lenders (apart from East West Bank) also financed the purchase of the so-called HRHSD Investment Contracts. *Id.* ¶¶ 50-54, 134-37.

Plaintiffs also allege that the "promoters and issuers" of the so-called HRHSD Investment Contracts "engaged in a series of misrepresentations and omissions regarding the securities" sold to Plaintiffs. FAC ¶ 72. They allegedly did not disclose and concealed the fact that they were selling unregistered securities. *Id.* ¶ 73. They supposedly misrepresented the applicability of the securities laws. *Id.* ¶ 74. They allegedly misrepresented the availability of financing. *Id.* ¶ 75. According to the FAC, the "key misrepresentation" was that "Tarsadia's rental program was not mandatory and not a condition of ownership, when as a matter of economic and practical reality, the Tarsadia rental program was mandatory and a condition of ownership." *Id.* ¶ 76. A related omission was that the reason for misrepresenting the Tarsadia's rental management agreement was not mandatory was an attempt to conceal that the purported HRHSD Investment Contract was an unregistered public offering of a security. *Id.* ¶ 78. The "promoters and issuers" also allegedly misrepresented their intent with respect to the Home Owner Association ("HOA") and did not timely disclose the amount of the HOA fees. *Id.* ¶ 80.

Tellingly, the FAC fails to allege any facts from which it could be plausibly inferred that East West Bank was one of the "promoters [or] issuers" engaging in any of these misrepresentations or omissions. In fact, there are no allegations that East West Bank was involved in the marketing and promotion of these purported securities. There is no allegation that East West Bank prepared or distributed any literature, advertisements, prospectuses or other marketing materials concerning these condominium interests. There is no allegation that East West Bank drafted or prepared any of the transactional documents whereby these condominium interests were sold to Plaintiffs and others. There is no allegation that East West Bank had any role in "Tarsadia's rental program," the subject of the alleged "key misrepresentation" and

4

related omission.  Indeed, the only activity alleged against East West Bank is that it financed the purchase of some of these condominium interests.  But there is no claim that these loans were unlawful or that the loan documentation contained any material misrepresentations or actionable omissions concerning the "Tarsadia rental program" or anything else.

Plaintiffs attempt to make what East West Bank (and the other lenders) did appear to be more sinister by describing them as "underwriting" or being "underwriters" for the purported securities.    FAC ¶¶ 15-36, 56, 130-31, 134-35, 137, 146, 150.  But the underlying factual allegations are the same: Plaintiffs merely allege that East West Bank and the other lenders loaned money to the Plaintiffs to finance their purchase of the condominium interests.  There is - - and can be -- no suggestion that East West Bank (or the other lenders) were "underwriters" in the sense that that term is used in state and federal securities laws.    Under both federal[2] and state[3] securities laws, an underwriter purchases securities from the issuer to sell those securities to third parties in either a public or private offering.  However, East West Bank fails to qualify as an "underwriter" on both counts: Plaintiffs do not and cannot allege that East West Bank purchased the purported securities from the issuer (5th Rock), nor that it sold the purported securities to Plaintiffs. As explained above, the transaction documents show that the purported securities (condominium interests) were sold to Plaintiffs by 5th Rock.  RJN Exs. A-H.

---

[2]    Under Section 2(a)(11) of the 1933 Act, 15 U.S.C. § 77b(a)(11:

The term "underwriter" means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

[3]    Under California Corporations Code § 25022:

"Underwriter" means a person who has agreed with an issuer or other person on whose behalf a distribution is to be made (a) to purchase securities for distribution or (b) to distribute securities for or on behalf of such issuer or other person or (c) to manage or supervise a distribution of securities for or on behalf of such issuer or other person.

5

## III.    THE FIRST AMENDED COMPLAINT DOES NOT STATE A CLAIM AGAINST EAST WEST BANK

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that plaintiffs provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Conclusory allegations are insufficient to meet this standard. *Iqbal*, 129 S.Ct. at 1949. Instead, plaintiffs must allege *facts* that, if proven, would entitle them to relief. *Id.*; Fed. R. Civ. Pro. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires more than just "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Additionally, a complaint must supply more than just any conceivable set of facts tending to support a claim, but "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for misconduct alleged." *Id.* at 556. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*, 127 S.Ct. at 1949-50, quoting *Twombly*, 550 U.S. at 557 (brackets omitted). Given the conclusory allegations made, the Supreme Court in *Iqbal* ultimately found that the respondent's complaint had not "nudged [his] claims … across the line from conceivable to plausible." 127 S.Ct. at 1950-51. As the *Iqbal* Court summarized:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 …. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

6

1    *Iqbal*, 127 S.Ct. at 1949-50.

2        Here, the FAC does not meet these governing standards. Plaintiffs simply fail to allege

3    any *facts* showing that East West Bank could be liable for the supposed transactions in purported

4    unregistered securities. Nothing links East West Bank to the promotion, marketing and sale of

5    these condominium interests in 2006. Furthermore, the transactional documents that the Court

6    should judicially notice show that East West Bank did not make loans to any of the Plaintiffs

7    until October through December **2007**, *more than one year after* Plaintiffs purchased their

8    condominium interests (in May, 2006 and at the beginning of December, 2006). RJN Exs. HH-

9    XX (promissory notes). All East West Bank did was what banks typically do, and are supposed

10   to do: it made loans. But that is not illegal or a basis for liability.[4] Certainly, it does not begin

11   to "state[] a plausible claim for relief" as required under *Iqbal* and *Twombly*.

12       Attempting to redescribe what East West Bank did as "materially assisting" the sale of

13   unregistered securities or the violation of the law (FAC ¶¶ 48, 128, 130-31, 150) does not cure

14   Plaintiffs' failure to state a claim. Although Plaintiffs hope to make it sound as if East West Bank

15   did something really sinister, these claims are "legal conclusions" or "mere conclusory

16   statements," and thus the Court need not assume they are true. *Iqbal*, 129 S.Ct. at 1949. The

17   few facts alleged are that East West Bank made loans to some of the Plaintiffs to finance their

18   purchase of condominium interests. This hardly states a claim for relief against East West Bank.

19   According to Plaintiffs, East West Bank "materially assisted" its co-defendants' violations by

20   acting as an underwriter (FAC ¶¶ 130-31, 150). But as pointed out above, the use of

21   "underwriter" is a misnomer, and what Plaintiffs are really alleging is that East West Bank made

22   loans to some of the Plaintiffs to finance their purchase of the condominium interests. Again,

23   that hardly is illegal and does not begin to "state[] a plausible claim for relief" as required under

24   *Iqbal* and *Twombly*.

25

26   _____

27   [4]    Plaintiffs also allege that East West Bank made an $88 million construction loan and
     issued $30 million in letters of credit to "HRHSD" [sic] (FAC ¶ 129, 132-33). But Plaintiffs do
28   not begin to state a plausible claim for relief, as required under *Iqbal* and *Twombly,* by accusing
     a bank of making loans and issuing letters of credit.

28827082

1      Plaintiffs attempt to make the plot seem even more sinister by asserting that East West

2  Bank "assisted [its] co-defendants in transferring the risks of the investment to plaintiffs and

3  from defendants by transferring funds to the defendants and preparing documents obligating

4  plaintiffs to pay through a loan for the fund transfer to defendants." FAC ¶ 128.  But this too is

5  just a roundabout way of saying that East West Bank loaned money to some of the Plaintiffs to

6  finance the purchase of their condominium interests—and that is fully consistent with East West

7  Bank *not* being liable to Plaintiffs.

8      Even assuming *arguendo* that these allegations are "consistent with" East West Bank

9  being liable, they do not begin to "state[] a plausible claim for relief" as required under *Iqbal* and

10  *Twombly* because they fail to allege more than that East West Bank did something completely

11  legal—it made loans.   The FAC fails to provide "more than a sheer possibility that [East West

12  Bank] has acted unlawfully. . . .  Where a complaint pleads facts that are merely consistent with

13  [East West Bank's] liability, it stops short of the line between possibility and plausibility of

14  entitlement to relief." *Iqbal*, 129 S.Ct. at 1949.  Thus, the Court should dismiss East West Bank

15  because Plaintiffs have not stated a plausible claim against it.

## IV.   <u>PLAINTIFFS CANNOT STATE A SECURITIES CLAIM AGAINST EAST WEST BANK</u>

18      Even pretending that Plaintiffs stated a claim against East West Bank under *Iqbal* and

19  *Twombly,* they have not done so under the securities statutes they rely upon.  Under Section

20  12(a)(2) of the 1933 Securities Act, 15 U.S.C. § 77l(a)(2), "[a]ny person who … *offers or sells* a

21  security … by means of a prospectus or oral communication which includes an untrue statement

22  of a material fact or omits to state a  material fact necessary in order to make the statements, in

23  light of the circumstances under which they were made, not misleading … shall be liable … to

24  the person purchasing such security from him …."  (Emphasis added.)  For our purposes the two

25  essential elements are that a defendant liable under Section 12(a)(2) must (1) "offer or sell" a

26  security (2) through a material misrepresentation or omission.

27     A similar analysis applies to Corporations Code § 25501: "[a]ny person who violates

28  Section 25401 shall be liable to the person who purchases the security from him . . . . ."  Section

1    25401 models the language of Section 12(a)(2): "it is unlawful for any person to *offer or sell* a

2    security in this state … by means of a written or oral communication which includes an untrue

3    statement of a material fact or omits to state a material fact necessary in order to make the

4    statements made, in light of the circumstances under which they were made, not misleading."

5    (Emphasis added.)  Thus, to establish a violation of Corporations Code § 25501, Plaintiffs again

6    must allege and prove that the defendant (1) sold or offered securities (2) through a material

7    misrepresentation or omission.

8         Plaintiffs also claim that defendants violated Corporations Code § 25110 by selling the

9    interests in condominium units as unqualified securities, and are therefore liable under

10   Corporations Code § 25503.  FAC ¶ 149-51.  Pursuant to Section 25503, "[a]ny person who

11   violates Section 25110 … shall be liable to any person *acquiring* from him the security sold in

12   violation of such section…."  (Emphasis added.)  Thus, liability under Corporations Code §

13   25503 (like liability under Corporations Code § 25501 and 15 U.S.C. §77l(a)(2)) requires that

14   the defendant must sell the security to the plaintiff, or, putting it another way, the plaintiff must

15   acquire the security from the defendant.

16        Here, Plaintiffs have failed to state a securities claim against East West Bank because

17   Plaintiffs do not—and cannot—allege that the Bank sold or offered Plaintiffs securities or that

18   Plaintiffs acquired securities from the Bank.   Plaintiffs also do not—and cannot—allege that

19   East West Bank made any of the alleged material misrepresentations or omissions necessary for

20   liability under Plaintiffs' First and Third Claims for Relief. And Plaintiffs' First and Second

21   Claims for Relief are time barred in any event.

22        **A.     East West Bank Did Not Offer or Sell Any Securities**

23        A "seller" for the purposes of Section 12 of the 1933 Act is one who passes title to or

24   solicits the purchase of a security.  *Pinter v. Dahl,* 486 U.S. 622, 641-55 (1988).   Although

25   *Pinter* addresses Section 12[a](1) of the 1933 Act, the Ninth Circuit has held that that "*Pinter*

26   provides the standard for determining liability as a 'seller' under section 12[a](2) as well as

27   under section 12[a](1) of the Securities Act of 1933." *Moore v. Kayport Package Express, Inc.,*

28   885 F.2d 531, 536 (9th Cir. 1989).  Significantly, federal courts routinely find that banks are not

1   "statutory sellers" under Section 12(a)(2) of the 1933 Securities Act. *See, e.g., E.B. Smith v.*

2   *Am,. Nat. Bank and Trust Co.,* 982 F.2d 936, 941-42 (6th Cir. 1992) (bank that did not pass title

3   to or solicit purchase of securities was not liable as a statutory seller under section 12[a](2) of the

4   1933 Act); *Ackerman v. FDIC,* 973 F.2d 1221, 1223 (5th Cir. 1992) (bank that played no part in

5   offering and did not become involved in transaction until four months later was not a "statutory

6   seller" of unregistered securities); *Ryder Int'l Corp. v. First Am. Nat. Bank,* 943 F.2d 1521,

7   1530-34 (11th Cir. 1991) (bank was neither "seller" nor "offeror" of commercial paper and

8   therefore was not liable under Section 12[a](2) of the 1933 Act); *Schlifke v. Seafirst Corp.,* 866

9   F.2d 935, 940-41 (7th Cir. 1989) (bank that did not actively participate in solicitation of investors

10  was not liable under Section 12[a](2) of the 1933 Act).

11          Here, while there are precious few allegations against East West Bank, it is clear that

12  Plaintiffs do not allege—because they cannot—that East West Bank passed title to the purported

13  securities to them. In fact, both the allegations of FAC ¶¶ 40, 42 and the transaction documents

14  (RJN Exs. A-H) make it clear that title was passed by Defendants 5th Rock and MPK. *See* FAC ¶

15  40 (alleging that 5th Rock sold HRHSD Investment Contracts) and ¶ 42 (alleging MPK

16  controlled 5th Rock and "executed the sales documents by which the investment properties—

17  studios and suites—were sold to investors"). Furthermore, Plaintiffs do not allege that East West

18  Bank "solicited" the purchase of these alleged securities. Indeed, such a claim would be

19  inconsistent with the fact that East West Bank did not loan money to any of the Plaintiffs until

20  October through December **2007**, RJN Exs. HH-XX— *more than one year after* Plaintiffs

21  purchased their condominium interests in May and December, 2006**,** *id.* Exs A-H. The most

22  Plaintiffs might claim is that East West Bank was indirectly and collaterally involved in these

23  alleged securities transactions. However, "§ 12's failure to impose express liability for mere

24  participation in unlawful sales transactions suggests that Congress did not intend that the section

25  impose liability on participants collateral to the offer or sale." *Pinter,* 486 U.S. at 650. Thus, the

26  Court should dismiss the First Claim for Relief  alleged against East West Bank pursuant to

27  Section 12(a)(2) of the 1933 Act because Plaintiffs do not and cannot allege that East West Bank

28  offered or sold or passed title to the alleged securities to them.

10

The same analysis proves fatal to Plaintiffs' claims under Corporations Code § 25501 (Third Claim for Relief) and 25503 (Second Claim for Relief).  Under Corporations Code §§ 25501, "liability [is] limited to actual sellers."  *SEC v. The Seabord Corp.*, 677 F.2d 1289, 1296 (9th Cir. 1982).  Since Plaintiffs do not claim that East West Bank was an "actual seller" of the condominium interests, and the pertinent transaction documents confirm that it was not, the Court should dismiss Plaintiffs' claims against East West Bank under Corporations Code § 25501.  Plaintiffs' claims under Section 25503 likewise fail because Plaintiffs cannot allege that they "acquire[d]" their condominium interests from East West Bank.  Again, both the allegations of the FAC (¶¶ 40, 42) and transaction documents (RJN Exs. A-H) make it clear that Plaintiffs acquired their condominium interests from Defendants 5th Rock and MPK, not from East West Bank.  Indeed, East West Bank did not loan money to Plaintiffs until a year after Plaintiffs acquired their condominium interests (*id.* Exs. HH-XX).

In short, all the claims alleged against East West Bank, under Section 12(a)(2) of the 1933 Securities Act or Corporations Code §§ 25501 and 25503, fail to state a claim on which relief can be granted because East West Bank did not sell or solicit the purchase of the condominium interests to Plaintiffs.

**B.** **Plaintiffs Have Failed To State Facts Showing That East West Bank Made Any Material Misrepresentations Or Omissions Or Is Liable For "Materially Assisting" Purported Violations of The Securities Laws**

In their Second and Third Claims for Relief, under the California Securities Act, Plaintiffs also attempt to base East West Bank's liability on its purported "material assistance" in the violation of the securities law.  FAC at 25:13-14, ¶¶ 149-150, 153.  Plaintiffs also specifically cite Corporations Code § 25504.1, which bases liability on material assistance.  FAC at 25:13, 26:3, 26:7.  Under Corporations Code § 25504.1:

> Any person who materially assists in any violation of Section 25110, 25120, 25130, 25133, or 25401, or a condition of qualification under Chapter 2 (commencing with Section 25110) of Part 2 of this division imposed pursuant to Section 25141, or a condition of qualification under Chapter 3 (commencing with Section 25120) of Part 2 of this division imposed pursuant to

11

1

2

3

> Section 25141, or an order suspending trading issued pursuant to Section 25219, *with intent to deceive or defraud*, is jointly and severally liable with any other person liable under this chapter for such violation.   (Emphasis added)

4

5

6

7

8

9

10

11

12

13

14

15

16

Plaintiffs have failed to state a "material assistance" claim under the California Securities Act, for several reasons.  First, as explained above, East West Bank's alleged material assistance consisted solely in making loans to some of the Plaintiffs to finance their purchase of the condominium interests that Plaintiffs allege to be unregistered securities.  But, as also explained, East West Bank cannot be held liable for making loans, especially when there is no claim that the loans were unlawful or that the loan documentation contained any material misrepresentations or omissions.  Plaintiffs attempt to flesh out their material assistance claim by claiming that East West Bank was an "underwriter" (FAC ¶¶ 130-31, 150), but, as explained, that is simply a misleading description of what East West Bank actually did – it made loans.  There are no facts alleged suggesting that East West Bank acted as an "underwriter" as that term is used in the securities laws.  Indeed, the facts alleged and the transaction documents that the Court should judicially notice are plainly inconsistent with any claim that East West Bank acted as an "underwriter."

17

18

19

20

21

22

Second, Plaintiffs do not and cannot allege that East West Bank acted "with intent to deceive or defraud", which is a required element for liability as a material assister under Corporations Code § 25504.1.  Furthermore, if Plaintiffs had alleged this, the FAC would "sound in fraud" and Plaintiffs would then be  required to comply with the specificity requirements of Federal Rule of Civil Procedure 9(b) (providing that "in all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity.")

23

24

25

26

27

28

Under Rule 9(b), "the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999).  However, the FAC does not come close to complying with Rule 9(b).  Plaintiffs do not identify any specific statements made by East West Bank, when those statements were made or who made them, let alone explain how and why such statements are false or misleading.  Plaintiffs set forth a number of alleged misrepresentations and omissions at  FAC ¶¶ 73-80.  But

12

28827082

these misrepresentations and omissions were engaged in by the "promoters and issuers" of the purported securities, *id.* ¶ 72, and there is no allegation that East West Bank was either a promoter or issuer. Again, there are no allegations that East West Bank was involved in the marketing and promotion of the purported securities. There is no allegation that East West Bank prepared or distributed any literature, advertisements, prospectuses or other marketing materials concerning these condominium interests. There is no allegation that East West Bank drafted, prepared or was a party to any of the transactional documents selling the condominium interests to the Plaintiffs. And there is no allegation that East West Bank solicited anyone to purchase these condominium interests.

Plaintiffs also allege that East West Bank (and the other lenders) knew or were reckless in not knowing certain alleged facts. FAC ¶¶ 139-40, 142-43. But this fails to identify any false or misleading statements by East West Bank and thus fails to provide any factual basis for a claim that East West Bank acted "with the intent to deceive or defraud" as is required for liability under the "material assistance" provisions set forth in Corporations Code § 25504.1.

Thus, there is no factual basis alleged in the Complaint to support any plausible claim that East West Bank made a material misrepresentation or omission. Since a material misrepresentation or omission is a required element for Plaintiffs' claims under Section 12(a)(2) of the 1933 Securities Act (the First Claim for Relief) and Corporations Code § 25501 (the Third Claim for Relief), those claims fail to state a claim against East West Bank for this additional reason.

## C.   **The Claims Under Section 12(a)(2) and Section 25503 are Barred by the Statute of Limitations**

The First and Second Claims for Relief fail for yet another reason: they are time barred. Section 13 of the 1933 Securities Act, 15 U.S.C. § 77m, provides that "[i]n no event shall any such action be brought to enforce a liability created ... under section [12(a)(2)] of this title more than three years after the sale." "[T]he statutory language requires the conclusion that Congress meant the bar to be absolute . . . ." *Seabord Corp.,* 677 F.2d at 1308. The three year statute of limitations begins when the parties enter a binding contract for the sale of securities. *Amoroso*

1  *v. Southwestern Drilling Multi-Rig P'ship No. 1,*  646 F. Supp. 141, 143 (N.D. Cal. 1986); *see*

2  *also Finkel v. The Stratton Corp.,* 962 F.2d 169, 173 (2d Cir. 1992) ("a sale occurs for § 12[a](2)

3  purposes when 'the parties obligate [ ] themselves to perform what they had agreed to perform

4  even if the formal performance of their agreement is to be after a lapse of time.'") (citing and

5  quoting *Amoroso, supra*).[5]

6       Here, the parties contractually bound themselves by executing the Purchase Contract and

7  Escrow Instructions, RJN Exs. A-H.  For example, pursuant to the Purchase Contract and Escrow

8  Instructions, "Buyer shall pay the Purchase Price in the amount set forth in the Transaction

9  Summary together with any additional amount required to pay Buyer's actual closing costs,

10  prorations and loan costs as follows: . . . ." *Id.* at § 3.  With the exception of Plaintiff Salameh,

11  the Plaintiffs who borrowed from East West Bank executed and became bound by this Purchase

12  Contract in May, 2006.  RJN Exs A-C, E-H at 13.  The purchase contract for Salameh was dated

13  November 27, 2006, *id.* Ex. D  at 1, was executed by Salameh as Buyer on November 22, 2006,

14  *id.* at 11, and by Defendants 5th Rock and MPK as Seller on December 1, 2006. *Ibid.* Thus, the

15  latest date upon which Salameh and 5th Rock were contractually bound was December 1, **2006**.

16  Plaintiffs did not file suit until December 8, **2009** (in the case of Salameh) and March 15, 2010

17  (in the case of the other borrowers from East West Bank), more than three years after the

18  Plaintiffs who borrowed from East West Bank entered into binding contracts for sale of the

19  alleged securities.  Plaintiffs' claims under Section 12(a)(2) of the 1933 Securities Act (the First

20  Claim for Relief) were thus filed more than three years after the sales of those securities and are

21  therefore barred by the statute of limitations.

22       Under Corporations Code § 25507(a), "[n]o action shall be maintained to enforce any

23  liability created under Section 25503 unless brought before two years after the violation upon

24  which it is based . . . ."  This two-year statute of limitations is absolute and not subject to tolling.

25  *Lubin v. Sybedon Corp.,* 688 F. Supp. 1425, 1452-53 (S.D. Cal. 1988); *Koehler v. Pulvers,* 609

---

27  [5]     Neither the Ninth Circuit nor the Supreme Court has addressed the issue of when the
three-year statute of limitations begins to run on a claim under Section 12(a)(2) of the 1933
28  Securities Act.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS; NO. 09-CV-2739- L-CAB

28827082

1    F. Supp. 164, 169 (S.D. Cal. 1985). "This limitation is imposed to prevent purchasers from

2    employing the remedies for violation of the qualification provisions to shift the risk of a bad

3    investment to the seller." *Bowdoin v. Robinson,* 67 Cal. App. 3d 705, 712 (1977); *see also*

4    *Koehler,* 606 F. Supp. at 170 (same).

5      Neither the California Supreme Court nor any published decision of the California Court

6    of Appeal has addressed the issue of when the two-year statute of limitations for a claim under

7    Section 25503 begins running. If the statute of limitations for claims under Corporations Code §

8    25503 runs from the date the offering should have been registered, *see Lubin,* 688 F. Supp at

9    1452-53, then the Purchase Contracts and Escrow Instructions (RJN Exs. A-H) suggest that was

10    some time in or before May, **2006**. If the statute runs from the date the parties were contractually

11    bound to the purchase and sale of the purported securities (as with Section 12(a)(2) of the 1933

12    Act, discussed above), then, as explained above, the purchase contracts for the Plaintiffs who

13    borrowed from East West Bank (RJN Exs. A-H) were binding on the parties as of May, **2006** or

14    December 1, **2006** at the latest. In either case, Plaintiffs' claims under Corporations Code §

15    25503 were not asserted until December 8, **2009** at the earliest. They are thus barred by the

16    absolute two-year statute of limitations provided by Corporations Code § 25507(a) and

17    Plaintiffs' Second Claim for Relief fails for this reason as well.

18    **V.**     **CONCLUSION**

19      For the reasons stated above, the Court should grant the Motion of Defendant East West

20    Bank to dismiss this action against East West Bank pursuant to Federal Rule of Civil Procedure

21    12(b)(6) for failure to state a claim upon which relief can be granted.

22    DATED: April 14, 2010          MAYER BROWN LLP

23                                  JOHN NADOLENCO
                                 CHRISTOPHER MURPHY

24

25                                By: s/John Nadolenco

26                                  John Nadolenco
                                 Attorneys for Defendant EAST WEST BANK

27                                  E-Mail: jnadolenco@mayerbrown.com

28

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS; NO. 09-CV-2739- L-CAB

28827082

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; and that I served the individuals on the service list attached hereto the following documents:

Original of:

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT EAST WEST BANK IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR VIOLATION OF FEDERAL AND STATE SECURITIES LAWS**

**Filed April 14, 2010 on the ECF system and served pursuant to General Order No. 550, with:**

- **Michael J Aguirre**
  **maguirre@amslawyers.com,**

- **Lynn T Galuppo**
  **lgaluppo@coxcastle.com**

- **Bryan D Sampson**
  **bsampson@sampsonlaw.net**

- **Maria C Severson**
  **mseverson@amslawyers.com**

- **Spyglass Partners, Inc.**
  **bsampson@sampsonlaw.net**

s/John Nadolenco
John Nadolenco
E-mail: jnadolenco@mayerbrown.com

CERTIFICATE OF SERVICE; 09-CV-02739-L-NLS