LA BELLA & MCNAMARA, LLP
THOMAS W. MCNAMARA (SBN 127280) tmcnamara@labellamcnamara.com
DANIEL M. BENJAMIN (SBN 209240) dbenjamin@labellamcnamara.com
LOGAN D. SMITH (SBN 212041) lsmith@labellamcnamara.com
401 West A Street, Suite 1150
San Diego, California 92101
Telephone:   (619) 696-9200
Facsimile:   (619) 696-9269

Attorneys for:  Defendant Playground Destination Properties, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMER SALAMEH, et al., | ) Case No.:  09cv2739 DMS (CAB) |
| | ) |
| Plaintiffs, | ) **DEFENDANT PLAYGROUND** |
| | ) **DESTINATION PROPERTIES INC.'S** |
| vs. | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT OF ITS** |
| TARSADIA HOTEL, et al., | ) **MOTION TO DISMISS UNDER FEDERAL** |
| | ) **RULE OF CIVIL PROCEDURE 12(b)(6)** |
| Defendants. | ) |
| | ) Date:   August 13, 2010 |
| | ) Time:   1:30 p.m. |
| | ) Judge:  Hon. Dana M. Sabraw |
| | ) Dept:   Courtroom 10, 2nd Floor |
| | ) |

63356

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... i

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

    I.    The Court Can Deem the Purchase Contracts Incorporated by Reference into the
Complaint on a Motion to Dismiss ....................................................................... 3

    II.   As Demonstrated by Binding Terms of Their Own Signed Representations in the
Contracts Plaintiffs Did Not Purchase the Condominiums as Securities ..................... 5

    III.    Plaintiffs' Claims Are Barred by the Applicable Statute of Limitations ................ 10

        A.    The First Cause of Action under Federal Securities Law Is Barred by the
Applicable Three Year Statute of Limitations as to Almost All Plaintiffs, and under the
One Year Statute as to the Remaining Plaintiffs............................................................. 11

        B.    The Second Cause of Action under California Corporations Code § 25503 Is
Barred by the Absolute Two Year Statute of Limitations ................................................ 13

        C.    The Third Cause of Action under California Corporations Code § 25501 Is Barred
by the Two Year Statute of Limitations Because Plaintiffs Had Notice of the Facts
Constituting the Alleged Violation ................................................................................... 14

        D.    The Fourth Cause of Action under California Corporations Code § 25501.5 Is
Barred by the One Year Statute of Limitations Because Plaintiffs Had Notice of the
Facts Constituting the Violation ....................................................................................... 18

CONCLUSION........................................................................................................... 19

63356

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

63356

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amoroso v. Southwestern Drilling Multi-Rig P'ship No. 1*
646 F. Supp. 141 (N.D. Cal. 1986) ..................................................................... 11

*Armbrister v. Roland Intern. Corp.*
667 F. Supp. 802 (M.D. Fla. 1987) ...................................................................... 17

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......................................................................................... 2, 3

*Bowden v. Robinson*
67 Cal. App. 3d 705 (1977) ................................................................................. 18

*Clegg v. Cult Awareness Network*
18 F.3d 752 (9th Cir. 1994) .................................................................................. 3

*Consol. Mgmt. Group, LLC v. Dep't of Corps.*
162 Cal. App. 4th 598 (2008) ............................................................................ 5, 6

*Cortec Indus., Inc. v. Sum Holding L.P.*
949 F.2d 42 (2d Cir. 1991).................................................................................... 4

*Coto Settlement v. Eisenberg*
593 F.3d 1031 (9th Cir. 2010) ........................................................................... 2, 3

*Deveny v. Entropin, Inc.*
139 Cal. App. 4th 408 (2006) ........................................................................ 15, 16

*Doody v. E.F. Hutton & Co., Inc.*
587 F. Supp. 829 (D. Minn. 1984)........................................................................ 8

*Eisenbaum v. W. Energy Resources, Inc.*
218 Cal. App. 3d 314 (1990) .............................................................................. 15

*Finkel v. The Stratton Corp.*
962 F.2d 169 (2d Cir. 1992)................................................................................ 11

*Huynh v. Chase Manhattan Bank*
465 F.3d 992 (9th Cir. 2006) .............................................................................. 10

*In re Silicon Graphics Inc. Sec. Litig.*
183 F.3d 970 (9th Cir. 1999) ................................................................................ 3

*In re Stac Electronics Securities Litig.*
89 F.3d 1399 (9th Cir. 1996) ................................................... 5, 13

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.*
499 F.3d 1048 (9th Cir. 2007) ................................................... 2, 3

*Jackvony v. RIHT Financial Corp.*
873 F.2d 411 (1st Cir. 1989) ........................................................ 9

*Johnson v. Riverside Healthcare Sys., L.P.*
534 F.3d 1116 (9th Cir. 2008) ................................................... 2, 3

*Knievel v. ESPN*
393 F.3d 1068 (9th Cir. 2005) ..................................................... 3

*Koehler v. Pulvers*
609 F. Supp. 164 (S.D. Cal. 1985) .............................................. 14

*Kramas v. Security Gas & Oil, Inc.*
672 F.2d 766 (9th Cir. 1982) ...................................................... 15

*Kravetz v. U.S. Trust Co.*
941 F. Supp. 1295 (D. Mass. 1996) ............................................. 17

*Leong v. Square Enix of America Holdings, Inc.*
2010 WL 1641364 (C.D. Cal. 2010) .............................................. 4

*Lubin v. Sybedon Corp.*
688 F. Supp. 1425 (S.D. Cal. 1988) ............................................. 14

*Meadows v. Pac. Inland Secs. Corp.*
36 F. Supp. 2d 1240 (S.D. Cal. 1999) .......................................... 16

*Moreland v. Dep't of Corps.*
194 Cal. App. 3d 506 (1987) ........................................................ 6

*Newmark v. H. & H. Products Mfg. Co.*
128 Cal. App. 2d 35 (1954) .......................................................... 9

*One-O-One Enterprises, Inc. v. Caruso*
848 F.2d 1283 (D.C. Cir. 1988) ................................................. 8, 9

*Parrino v. FHP, Inc.*
146 F.3d 699 (9th Cir. 1998) ................................................. 3, 4, 11

*Reiswig v. Dep't of Corps.*
144 Cal. App. 4th 327 (2006) ....................................................... 6

Case No. 09cv2739 DMS (CAB)
**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

63356

*Rendon v. Countrywide Home Loans, Inc.*
2009 WL 3126400 (E.D. Cal. 2009)........................................................ 11

*Rissman v. Rissman*
213 F.3d 381 (7th Cir. 2000) .......................................................... 9, 10

*Sanguinetti v. Viewlogic Sys., Inc.*
1996 WL 33967 (N.D. Cal. 1996) .......................................................... 9

*S.E.C. v. Rubera*
350 F.3d 1084 (9th Cir. 2003) ............................................................. 5

*S.E.C. v. Seabord Corp.*
677 F.2d 1301 (9th Cir. 1982) ...................................................... 11, 13

*S.E.C. v. W.J. Howey Co.*
328 U.S. 293 (1946).......................................................................... 5

*Silver Hills Country Club v. Sobieski*
55 Cal. 2d 811 (1961) ....................................................................... 5

*Simmons v. Cal. Institute of Technology*
34 Cal. 2d 264 (1974) ....................................................................... 9

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) ............................................................. 3

*Steckman v. Hart Brewing, Inc.*
143 F.3d 1293 (9th Cir. 1998) ............................................................. 5

*Warfield v. Alaniz*
569 F.3d 1015 (9th Cir. 2009) ............................................................. 5

**STATUTES**

15 U.S.C.
 § 77l .................................................................................... 11, 14
 § 77m ................................................................................... 11, 13

Cal. Code of Civ. Pro.
 § 338(a) ................................................................................ 18, 19

Cal. Corp. Code
 § 25110 .................................................................................... 13
 § 25410 .................................................................................... 14
 § 25501 ................................................................................ 15, 18
 § 25501.5 .................................................................................. 18
 § 25503 .................................................................................... 13
 § 25504.1 .............................................................................. 13, 15

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

63356

§ 25506 ................................................................................................................ 18, 19
§ 25506(b) ................................................................................................................ 15

**OTHER AUTHORITIES**

California Assembly Bill 2167
    § 2, 2004 Cal. Legis. Serv. Ch. 575, CA Legis. 575 (2004) ................................................ 18

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

63356

Defendant Playground Destination Properties Inc. ("Playground") respectfully submits this memorandum of points and authorities in support of its motion to dismiss Plaintiffs' First Amended Complaint ("FAC") with prejudice.

## INTRODUCTION

Plaintiffs purchased condominium units at the Hard Rock Hotel San Diego ("Hard Rock Hotel") in 2006.  In December of 2009, Plaintiffs brought this putative class action in which they claim that the condominium units were really securities and therefore subject to federal and state securities laws.  Based solely upon securities laws, Plaintiffs assert four causes of action against Playground (one under federal law, three under state law) and seek to rescind their real estate purchases and be awarded damages.  (FAC ¶¶ 144-160).[1]

Playground was the third-party real estate brokerage company hired by the developer of the Hard Rock Hotel to list and market the condominium units to be developed.  As such, Playground was not the developer or seller of the condominium units at the Hard Rock Hotel.  Instead, Playground's real estate agents assisted in the sale of the individual condominium units.  (FAC ¶ 38).

The condominium units were sold pursuant to real estate purchase agreements, including a "Purchase Contract and Escrow Instructions" ("Purchase Contract") and "Acknowledgement and Agreement Addendum" ("Addendum"),[2] which are described in – and which are at the heart of – the FAC.  As the third-party real estate broker, Playground was not a party to the Purchase Contracts which were executed between each purchaser of a condominium unit, on the one hand, and 5th Rock, LLC, as the developer, on the other.  However, those contracts had express representations, integration, and non-reliance clauses that covered representatives of the seller, including Playground.

The Purchase Contracts are among the documents which the FAC misleadingly refers to as "HRSD Investment Contracts."  For purposes of this motion, the Purchase Contracts

---

[1] There is a fifth cause of action, but Playground is not named in it.
[2] The Addendums were incorporated by reference into the Purchase Contract.  *See* Purchase Contract ¶ 21.

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

63356

should be deemed incorporated by reference into the FAC.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (In deciding "a motion to dismiss, [the court] may consider materials [1] incorporated into the complaint or [2] matters of public record.") (citing *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)).

The Purchase Contracts dictate that Plaintiffs' claims fail as a matter of law.  *See generally* Declaration of Stephen Fina ("Fina Decl.") and attached exhibits.  Specifically, in each and every Purchase Contract, each and every Plaintiff expressly and individually agreed that he, she, or it was "purchasing the unit for its real estate value and not as an investment" and that "neither seller nor any of its employees or agents have represented or offered the property as an investment opportunity."  *Id.* at ¶ 19.  Indeed, each and every Plaintiff not only signed the contracts with this language – *all Plaintiffs expressly initialed this particular language* agreeing that they were *not* purchasing the condominium units as investments and had *not* been told that the condominiums units were investments.  This language expressly prevents Plaintiffs from maintaining that they bought the condominium units as investments subject to the securities laws.

These Purchase Contracts also establish that the named Plaintiffs acquired their condominium units in 2006.  By the time they brought suit in December 2009, their claims were untimely under the operative statutes of limitation for the federal and state securities claims.  On that additional basis, the claims should be dismissed with prejudice.

For these two independent reasons, Playground asks that the Court dismiss this lawsuit with prejudice.

## **ARGUMENT**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a] complaint must, at a minimum, plead 'enough facts to state a claim for relief that is plausible on its face.'"  *Johnson v. Riverside Healthcare Sys., L.P.*, 534 F.3d 1116, 1122 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...."  *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)).

## I.   The Court Can Deem the Purchase Contracts Incorporated by Reference into the Complaint on a Motion to Dismiss.

On a motion to dismiss, the Court "may consider materials [1] incorporated into the complaint or [2] matters of public record."  *Coto Settlement*, 593 F.3d at 1038 (citing *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)); *accord Sprewell*, 266 F.3d at 988 (judicially noticeable materials) (citation omitted); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (materials deemed incorporated by reference) (citation omitted).

The incorporation by reference doctrine is particularly applicable to this case.  Courts are permitted "to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  *Knievel*, 393 F.3d at 1076 (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)).  The Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."  *Id*. (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that district court properly considered documents attached to motion to dismiss that described the terms of plaintiff's health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity), *superseded on other grounds by* Pub. L. No. 109-2, 199 Stat. 4)).

In cases where securities claims are alleged, the purchase agreements can be incorporated.  For example, in *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991), the appellate court upheld the district court's consideration of a stock purchase agreement and an offering memorandum attached to the defendant's Rule 12(b)(6) motion where the plaintiff alleged securities fraud.  *Id.* at 47-48.  The Ninth Circuit cited *Cortec* with approval in *Parrino*, 146 F.3d at 706.  The application of the rule in a securities setting is just a corollary to the more general rule that a sales contract referenced in a complaint is deemed incorporated by reference.  *See, e.g., Leong v. Square Enix of America Holdings, Inc.*, 2010 WL 1641364, at *1 & n.1, *6 (C.D. Cal. 2010) (considering the terms of the plaintiffs' contract with the defendant under the incorporation by reference doctrine on a motion to dismiss and finding that those terms contradicted the allegations offered by the plaintiffs that sought to characterize the contract as illegal).

The Plaintiffs' FAC is full of hyperbole and misleading descriptions of the operative contracts in an effort to depict them as investment contracts.  This includes Plaintiffs' misleading characterization to the Purchase Contracts as "Investment Contracts" from the very first paragraph of the complaint.  (*See* FAC ¶ 1).  In truth, as Plaintiffs finally admit in a paragraph buried well into the FAC, the actual agreements they signed were not "Investments Contracts," but included, among others, a "(1) Purchase Contract and Escrow Instructions; (2) Unit Maintenance and Operating Agreement (Operating Agreement) [and] (3) Tarsadia Hotel's Hard Rock Hotel San Diego Rental Management Agreement (RMA)."  (FAC ¶ 86). Since Playground was not the developer or seller, but was instead the third-party real estate broker, Playground was not a party to any of these agreements with Plaintiffs.  However, it did receive certain protections in those contracts as the real estate broker of the seller.

Playground has submitted true and correct copies of the Purchase Contract and Escrow Instructions and accompanying Acknowledgment and Agreement Addendum for each named Plaintiff with the Fina Declaration in support of this motion to dismiss.  Based upon these documents, as will be discussed below, it can be shown as a matter of law that: (1) Plaintiffs are unable to state claims upon which relief can be granted because their claims

1  contradict their binding representations in the relevant contracts; and (2) Plaintiffs' causes of

2  action are barred by the statute of limitations.

3  Although Plaintiffs' attempt to avoid these issues by not attaching the contracts and

4  by making a conclusory allegation as to timeliness and alleged representations made, the

5  Court is "not required to accept as true conclusory allegations which are contradicted by

6  documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293,

7  1295-96 (9th Cir. 1998) (affirming dismissal of securities class action) (citing *In re Stac*

8  *Electronics Securities Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996)).  Thus, for the reasons

9  given below, the FAC should be dismissed with prejudice.

10  **II.  As Demonstrated by Binding Terms of Their Own Signed Representations in the**
    **Contracts, Plaintiffs Did Not Purchase the Condominium Units as Securities.**

11

12  Plaintiffs throw around words such as "Investors" and "Investment Contracts" in the

13  FAC as though these are magical talismans which somehow transform the purchase of

14  condominium units into the sale of securities.  This is not so.  To prevail on any of their

15  claims, Plaintiffs have to actually show that they purchased the condominium units as

16  securities.  However, the express language of the Purchase Contracts establish exactly the

17  opposite – it shows that Plaintiffs expressly agreed they were not purchasing the
    condominium units as securities.

18

19  In *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) ("*Howey*"), the Supreme Court

20  established the "economic realities" test to determine what constituted a security under

21  federal law.  The Ninth Circuit has distilled *Howey* "into a three-part test requiring '(1) an

22  investment of money (2) in a common enterprise (3) with an expectation of profits produced

23  by the efforts of others.'"  *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009) (quoting

24  *S.E.C. v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003) (alterations in original).

25  In comparison, under state law, "California courts have applied, either separately or

26  together, two distinct tests: (1) the 'risk capital' test described in [*Silver Hills Country Club*

27  *v. Sobieski*, 55 Cal. 2d 811, 815 (1961)], and (2) the federal test described in [*Howey*]."

28  C*onsol. Mgmt. Group, LLC v. Dep't of Corps.*, 162 Cal. App. 4th 598, 609-10 (2008).  "A

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

63356

transaction is a security [under California law] if it satisfies either test."  *Id.* at 610 (citing *Reiswig v. Dep't of Corps.*, 144 Cal. App. 4th 327, 334 (2006)).  "The 'risk capital' test requires a consideration of the following factors: (1) whether funds are being raised for a business venture or enterprise; (2) whether the transaction is offered indiscriminately to the public at large; (3) whether the investors are substantially powerless to effect the success of the enterprise; and (4) whether the investors' money is substantially at risk because it is inadequately secured."  *Reiswig*, 144 Cal. App. 4th at 334 (quoting *Moreland v. Dep't of Corps.*, 194 Cal. App. 3d 506, 519 (1987)).

As a matter of law, Plaintiffs cannot satisfy the tests for the condominium units to be constituted securities.  The Plaintiffs purchased condominium units and both ***knew*** and ***agreed*** that they were not purchasing the units as investments in an enterprise or business venture   (a required element to be a security).  Specifically, if the Court examines the contracts attached to the Fina Declaration, it will see that all Plaintiffs initialed a paragraph of the Purchase Contract – which they also separately signed – that explicitly stated:

> 19. <u>PURCHASE NOT AN INVESTMENT</u>. BY PLACING HIS, HER, THEIR INITIALS IN THE SPACE PROVIDED HEREIN BELOW, BUYER EXPRESSLY ACKNOWLEDGES THAT:
>
> (a)   BUYER IS PURCHASING THE UNIT FOR ITS REAL ESTATE VALUE AND NOT AS AN INVESTMENT;
>
> (b)   NEITHER SELLER NOR ANY OF ITS EMPLOYEES OR AGENTS HAVE REPRESENTED OR OFFERED THE PROPERTY AS AN INVESTMENT OPPORTUNITY FOR APPRECIATION OF VALUE OR AS A MEANS OF OBTAINING INCOME FROM THE RENTAL THEREOF; AND
>
> (c)   NEITHER SELLER NOR ANY OF ITS EMPLOYEES OR AGENTS HAVE MADE ANY STATEMENTS OR REPRESENTATIONS AS TO RENTAL OR OTHER INCOME THAT MAY BE DERIVED FROM THE UNIT OR AS TO ANY OTHER ECONOMIC BENEFIT, INCLUDING POSSIBLE ADVANTAGES UNDER FEDERAL OR STATE TAX LAWS, TO BE DERIVED FROM THE PURCHASE AND/OR OWNERSHIP OF THE UNIT.

(Purchase Contract at ¶ 19) (capitalization in original).  *See generally* Fina Decl. and attached exhibits marked as "A" (*e.g.*, Exhibit 1A, Exhibit 2A, etc.).

The Purchase Contract also goes on to state:

(i)      NO REPRESENTATIONS.  Buyer acknowledges and agrees that, except as specifically set forth in this Contract, Buyer is not relying upon any agreements, understandings, inducements, promises, representations, or warranties, express or implied (collectively "**Representation(s)"**) made by sales person, employee or agent of Seller…  Buyer expressly waive[s] any claim for damages or for cancellation of this Agreement because of any Representations made by Seller[']s agents, employees or sales persons other than as expressly contained in this Agreement.

(*Id*. at ¶ 20(i) (emphasis in original)).

Further, each Plaintiff also signed and acknowledged receipt of the Addendum, which stated:

4.      REPRESENTATIONS AND WARRANTIES. It is understood and agreed that there have been no representations, warranties or inducements made to Buyer except those herein set forth, and that no representation, promise, or warranty has been made by Seller or any duly authorized agent of Seller, including but not limited to (a) Seller obtaining any Loan for Buyer or guaranteeing that Buyer will obtain any Loan; (b) the investment potential of the Unit; or (c) future development or traffic patterns in any area adjacent to Project.

*      *      *

12.     NO RENTAL REPRESENTATIONS. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT: (A) SELLER AND ITS AGENTS ARE NOT MAKING ANY REPRESENTATIONS AS TO THE FEASIBILITY OF RENTING THE UNIT OR OTHERWISE GENERATING INCOME OR DERIVING ANY OTHER ECONOMIC BENEFIT FROM OWNERSHIP OF THE UNIT; (B) SELLER AND ITS AGENTS HAVE MADE NO REPRESENTATIONS (NOR IS ANYONE AUTHORIZED TO DO SO) CONTRARY TO THIS SECTION WITH RESPECT TO THE TAX TREATMENT OR ANY OTHER ECONOMIC BENEFIT OR CONSEQUENCE RELATING TO THE PURCHASE OF THE UNIT; (C) SELLER MAY, AS A CONDITION OF CLOSING, REQUIRE OF BUYER. ANY BROKERS INVOLVED IN THE SALE OR AGENTS OF SUCH BROKERS. OR ANYONE ELSE CONNECTED IN ANY WAY WITH THE OFFER TO SELL AND THE PURCHASE OF THE UNIT. THE EXECUTION AND DELIVERY TO SELLER OF SUCH WAIVERS, AFFIDAVITS. OR OTHER DOCUMENTS AS MAY FROM TIME TO TIME BE REQUIRED BY SELLER TO SATISFY SELLER THAT THE OFFER TO SELL AND THE PURCHASE OF THE UNIT ARE NOT IN VIOLATION OF ANY FEDERAL OR STATE SECURITIES LAWS OR REGULATIONS.

13. NO ORAL REPRESENTATIONS. BUYER ACKNOWLEDGES AND AGREES THAT BUYER HAS NOT RELIED AND SHALL NOT RELY ON ANY COMMENT, REPRESENTATION OR DESCRIPTION OF THE PROJECT, ITS AMENITIES, THE COMMON AREAS, OR THE UNIT, THAT ARE NOT CONTAINED IN THE CONTRACT OR DOCUMENTS SPECIFICALLY REFERENCED IN THE CONTRACT OR OTHERWISE. ANY SUCH COMMENT, REPRESENTATION OR DESCRIPTION NOT CONTAINED IN THE CONTRACT OR REFERENCED DOCUMENTS

63356

DOES NOT CONSTITUTE A REPRESENTATION OR WARRANTY BY SELLER,  NOTWITHSTANDING BY WHOM MADE OR UPON WHOSE BEHALF SUCH COMMENT, REPRESENTATION OR DESCRIPTION IS PURPORTED TO BE MADE. NO AGENT OF SELLER IS AUTHORIZED BY SELLER TO MAKE, GIVE OR PROVIDE ANY SUCH COMMENT, REPRESENTATION OR DESCRIPTION NOT CONTAINED IN THE CONTRACT OR THE REFERENCED DOCUMENTS.

(Addendum ¶¶ 4, 12, 13) (capitalization in original).  *See generally* Fina Decl. and attached exhibits marked as "B".[3]

Plaintiffs' FAC ignores this binding language and indeed conspicuously fails to even disclose the issue to the Court.  Yet, based upon this language, all Plaintiffs individually and expressly acknowledged and agreed that they did not purchase the condominium units as investments in a common enterprise or business venture, and that they were not sold the condominium units based upon such a premise.

Integration and non-reliance clauses like those executed in this case are permissible under the securities laws because they are not waivers of rights, but rather are evidence of buyers' non-reliance on other alleged misrepresentations.  *See Doody v. E.F. Hutton & Co., Inc.*, 587 F. Supp. 829, 832 (D. Minn. 1984) (holding that counter-claimant in a securities case could not recover where alleged misrepresentations were contrary to the counter-claimants' express acknowledgment in an integration clause that no such representations had been made).

Indeed, current Supreme Court Justices Ginsburg and Breyer authored opinions in separate cases while Circuit Court Judges addressing this point.  Both ruled that in a securities or fraud case, a plaintiff cannot claim reliance upon representations by an opposing party where the alleged representations are contrary to the plaintiff's acknowledgments and representations in an integration clause or a prospectus.  Thus, in *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C. Cir. 1988), Justice Ginsburg wrote:

---

[3] As explained in paragraph 4 of the Fina Declaration, Playground has not yet located copies of the Addendums that accompanied four of the Plaintiffs' Purchase Contracts, though the others were located.  However, the language in each addendum was the same and each Plaintiff in the Purchase Contract acknowledged receipt of the Addendum, which was then incorporated by reference into the Agreement.  (*See* Purchase Contracts ¶ 21).

> Were we to permit plaintiffs' use of the defendants' prior representations (and defendants' nondisclosure of negotiations inconsistent with those representations) to defeat the clear words and purpose of the Final Agreement's integration clause, 'contracts would not be worth the paper on which they are written.' ...   On a matter of such large significance to the parties' bargain, silence in a final agreement containing an integration clause-in the face of prior explicit representations-must be deemed an abandonment or excision of those earlier representations.

*Id*. at 1287 (citations omitted).

Similarly, in *Jackvony v. RIHT Financial Corp.*, 873 F.2d 411 (1st Cir. 1989), Justice Breyer concluded that where a company's prospectus warned investors not to rely on oral representations not contained therein, and where the relevant contract also disclosed that there was no binding agreement to keep the entity independent, then the plaintiff could not have reasonably relied on any alleged contrary representations.  *Id*. at 415-17 (citations omitted); *see also Sanguinetti v. Viewlogic Sys., Inc.*, 1996 WL 33967, at *17-18  (N.D. Cal. 1996) (concluding that Justice Ginsburg's decision in *One-O-One* was consistent with Ninth Circuit law and applying that ruling to dismiss claims because "[w]hen contracts clearly state the nature of the parties' intentions, reliance upon outside representations is unjustifiable").

In this case, any purported reliance by Plaintiffs on representations that the condominium units were being sold as investments is flatly contradicted by the fact that each agreed in the integration and non-reliance clauses that no such investment was being made. Plaintiffs cannot now reverse course and contradict the clear terms of their agreement.  *See id*.  This principle is recognized not only in securities cases, but also more generally under the parol evidence rule.  *E.g.*, *Newmark v. H. & H. Products Mfg. Co.*, 128 Cal. App. 2d 35, 37-38 (1954) (parol evidence rule bars introduction of evidence "directly at variance with the terms of the written instrument") (citing, *inter alia*, *Simmons v. Cal. Institute of Technology*, 34 Cal. 2d 264, 274 (1974)).

Defendants (quite properly) insisted on including the integration and non-reliance clauses in each contract so that the parties' intentions were crystal clear:  The condominium units were not being marketed or sold as securities.  Of course, Plaintiffs will no doubt seek to dismiss these contract clauses as boilerplate.  Judge Easterbrook of the Seventh Circuit rejected this argument thoroughly in *Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000):

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

63356

A non-reliance clause is not identical to a truthful disclosure, but it has a similar function: it ensures that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which are less subject to the vagaries of memory and the risks of fabrication.

Memory plays tricks. Acting in the best of faith, people may "remember" things that never occurred but now serve their interests. Or they may remember events with a change of emphasis or nuance that makes a substantial difference to meaning. Express or implied qualifications may be lost in the folds of time. A statement such as "I won't sell at current prices" may be recalled years later as "I won't sell." Prudent people protect themselves against the limitations of memory (and the temptation to shade the truth) by limiting their dealings to those memorialized in writing, and promoting the primacy of the written word is a principal function of the federal securities laws.

\*        \*        \*

[Plaintiff] calls the no-reliance clauses "boilerplate," and they were; transactions lawyers have language of this sort stored up for reuse. But the fact that language has been used before does not make it less binding when used again. Phrases become boilerplate when many parties find that the language serves their ends. That's a reason to enforce the promises, not to disregard them. People negotiate about the presence of boilerplate clauses.... Judges need not speculate about the reason a clause appears or is omitted, however; what matters when litigation breaks out is what the parties actually signed.

Contractual language serves its functions only if enforced consistently. This is one of the advantages of boilerplate, which usually has a record of predictable interpretation and application. If as [Plaintiff] says the extent of his reliance is a jury question even after he warranted his non-reliance, then the clause has been nullified, and people in [Plaintiff's] position will be worse off tomorrow....

*Id*. at 384-85 (citations omitted).

In sum, Plaintiffs cannot prevail on their securities claims because they agreed that they were not purchasing their condominium units as an investment in any type of business venture or enterprise. As they represented, agreed, and acknowledged, they were just purchasing real estate. The claims should be dismissed with prejudice.

## III.    Plaintiffs' Claims Are Barred by the Applicable Statute of Limitations.

The Court may dismiss an action under Rule 12(b)(6) with prejudice where "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (affirming dismissal with prejudice) (quoting *Jablon v. Dean Witter & Co*., 614 F.2d 677, 682 (9th Cir. 1980)). This rule also applies where documents that can be considered on a motion to dismiss (whether based on judicial notice or

incorporation by reference) demonstrate that a claim is untimely. *Rendon v. Countrywide Home Loans, Inc.*, 2009 WL 3126400, at *3, *8-9 (E.D. Cal. 2009) (dismissing action challenging validity of real estate loans on a variety of grounds, including that loan documents referred to in the complaint, which could be considered on a motion to dismiss, showed that certain of the claims were untimely) (citing, *inter alia*, *Parrino*).   Here, the relevant Purchase Contracts show that Plaintiffs' claims are barred by the applicable statutes of limitations for the federal and state law claims.

### A.   The First Cause of Action under Federal Securities Law Is Barred by the Applicable Three Year Statute of Limitations as to Almost All Plaintiffs, and under the One Year Statute as to the Remaining Plaintiffs.

Plaintiffs' first cause of action (FAC ¶¶ 144-47) is brought under § 12(a)(2) of the Securities Act of 1933 (codified at 15 U.S.C. § 77l).   The applicable statute of limitations is set forth in Section 13 of the 1933 Securities Act (codified at 15 U.S.C. § 77m).   It provides that claims must be brought "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ... [and] [i]n no event ... more than three years ... after the sale." 15 U.S.C. § 77m (emphasis added).   The three year statute of limitations is absolute. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982) ("the statutory language requires the conclusion that Congress meant the bar to be absolute.").

Accrual of the three year limitations period begins when the parties enter a binding contract for the sale of securities.   "[A] sale occurs for § 12(a)(2) purposes when 'the parties obligate themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time.'" *Finkel v. The Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992) (quoting *Amoroso v. Southwestern Drilling Multi-Rig P'ship No. 1*, 646 F. Supp. 141, 143 (N.D. Cal. 1986)).

Here, with the exception of three condominium units, the dates of Plaintiffs' Purchase

///

///

Contracts are between May 18, 2006 and December 1, 2006.[4]  This is more than three years prior to Plaintiffs' filing of their initial complaint on December 8, 2009.  Thus, as to the vast

_____

[4] Specifically:

- Plaintiff Tamer Salameh's Purchase Contract for ten units was completed on December 1, 2006;

- Plaintiff Aleksey Kats' Purchase Contract was completed on May 18, 2006;

- Plaintiff Mitchell J. Pereira's Purchase Contract was completed on May 18, 2006;

- Plaintiff Gary A. Torretta's Purchase Contract was completed on May 18, 2006;

- Plaintiff Alexis Cosio's Purchase Contract was completed on May 18, 2006;

- Plaintiff Cesar Mota's Purchase Contract was completed on May 18, 2006;

- Plaintiff Denis B. Rothe, Jr.'s Purchase Contract was completed on May 18, 2006;

- Plaintiff Charlene Schrufer's Purchase Contract was completed on May 18, 2006;

- Plaintiff David R. Bushy's Purchase Contract was completed on May 18, 2006;

- Plaintiff Dale Curtis' Purchase Contract was completed on May 18, 2006;

- Plaintiff Zondra Schmidt's Purchase Contract was completed on May 18, 2006;

- Plaintiff Dolores Green's Purchase Contract was completed on May 18, 2006;

- Plaintiff Christy Jeske's Purchase Contract was completed on May 18, 2006;

- Plaintiff Mary L. Wee Song's Purchase Contract for three units was completed on May 18, 2006;

- Plaintiff Kerry L. Steigerwalt's Purchase Contract was completed on May 18, 2006;

- Plaintiff Beth Steigerwalt's Purchase Contract was completed on May 18, 2006;

- Plaintiff Stuart M. Wolman's Purchase Contract was completed on May 18, 2006;

- Plaintiffs Jeffrey E. Lubin's Purchase Contract was completed on May 18, 2006 (Jeffrey E. Lubin is joined as a Plaintiff by Barbara L. Lubin, as they are the co-trustee of the Lubin Family Trust, which made the purchase); and

- Plaintiff Sadoux Kim's Purchase Contract was completed on May 18, 2006.

majority of the Plaintiffs, the absolute three year time limit applies to completely foreclose their federal law cause of action.  *See Seabord Corp.*, 677 F.2d at 1308 (three year time limit is absolute and not subject to equitable tolling).

The only Purchase Contracts at issue signed within the three years before this suit was filed are the three condominium units acquired by four Plaintiffs – Robert Alvarenga, Tazia Reyna, and (purchasing one unit as co-trustees) Mikael Havluciyan and Therese Havluciyan. Their Purchase Contracts are dated December 12, 2006.  Because these purchases occurred just barely less than three years before suit was brought, these claims are potentially timely under the three-year statute of limitations.  However, they remain subject to the one-year statute of limitations that applies "one year after the discovery of the untrue statement or the omission or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  As indicated by its plain language, this statute of limitations is an inquiry notice standard.  *In re Stac Electronics Securities Litig.*, 89 F.3d 1399, 1411 (9th Cir. 1996).  Here, as set forth in Argument § III(C), *infra*, the duty to inquire arose at the time Plaintiffs entered into the Purchase Contracts – if not earlier.  Accordingly, the federal claims by these remaining four Plaintiffs also are subject to dismissal as untimely under 15 U.S.C. § 77m.

**B.     The Second Cause of Action under California Corporations Code § 25503 Is Barred by the Absolute Two Year Statute of Limitations.**

Plaintiffs' second cause of action alleges that Defendants violated California Corporations Code § 25110 (sale of unqualified security) or materially assisted such violations under Corporations Code § 25504.1.  The right to bring a private civil cause of action challenging the allegedly unqualified sale as a violation of § 25110 is created by Corporations Code § 25503.

---

(*See* Fina Decl. Exhibits).  Not included in this list is Plaintiff Real Estate 4 Hospitality, LLC because it did not acquire any units directly, but is instead operated by Plaintiff Tamer Salameh.  (S*ee* FAC at Certification Pursuant to Section 27 of the Securities Act of 1933). Also not included is Plaintiff Diana Kats because she acquired her interest through an assignment by Plaintiff Aleksey Kats.  (*See* Fina Decl. Ex. 2C).

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

63356

1    Claims brought under § 25503 are subject to a two year/one year statute of limitations

2    as set forth in Corporations Code § 25507(a).  That section states:

3        No action shall be maintained to enforce any liability created under Section
         25503 (or Section 25504 or Section 25504.1 insofar as they relate to that

4        section) unless brought before the expiration of two years after the violation
         upon which it is based or the expiration of one year after the discovery by the

5        plaintiff of the facts constituting such violation, whichever shall first expire.

6    Cal. Corp. Code § 25507(a).

7    This two-year statute of limitations is absolute and not subject to tolling.  *Lubin v.*

8    *Sybedon Corp.*, 688 F. Supp. 1425, 1452-53 (S.D. Cal. 1988) ("section 25507's two-year

9    statute of limitations has been found to be absolute and not subject to equitable tolling")

10   (citing *Koehler v. Pulvers*, 609 F. Supp. 164, 169 (S.D. Cal. 1985)).

11   Neither the California Supreme Court nor any published decision of the California

12   Court of Appeal appears to have addressed the issue of when the two-year statute of

13   limitations for a claim under Section 25503 begins to run.  However, the claims are untimely

14   no matter which possible analysis is conducted.  If the statute of limitations for claims under

15   Corporations Code § 25503 runs *from the date the offering should have been registered*, *see*

16   *Lubin*, 688 F. Supp at 1452-53, then the Purchase Contracts suggest that was during or before

17   May 2006. If the statute runs *from the date the parties were contractually bound* to the

18   purchase and sale of the purported securities (as with Section 12(a)(2) of the 1933 Act,

19   discussed above), then, as explained above, the Purchase Contracts were binding on all of the

20   Plaintiffs on or before December 12, 2006. In either case, Plaintiffs' claims under

21   Corporations Code § 25503 were not asserted until at least December 8, 2009 and are

22   therefore barred by the absolute two-year statute of limitations provided by Corporations

23   Code § 25507(a).

24       **C.    The Third Cause of Action under California Corporations Code § 25501
                 Is Barred by the Two Year Statute of Limitations Because Plaintiffs Had

25               Notice of the Facts Constituting the Alleged Violation.**

26   Plaintiffs' third cause of action alleges that Defendants violated California

27   Corporations Code § 25410 (making of material misrepresentation or omission in connection

28   with the sale of a security) or materially assisted such violations under Corporations Code §

25504.1.   The actual right to bring a private cause of action challenging the allegedly unqualified sale as a violation of § 25410 is created by Corporations Code § 25501.

This statute of limitations for claims alleging material misrepresentations or omissions contains similar language to the statute that applies to the sale of unqualified securities, but the time periods are different.  Thus, claims brought under Corporations Code § 25501  are subject to a five year/two year statute of limitations as set forth in Corporations Code § 25506(b).  That section states:

> No action shall be maintained to enforce any liability created under Section 25500, 25501, or 25502 (or Section 25504 or Section 25504.1 as they are related to those sections) unless brought before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, <u>whichever shall first expire</u>.

Corporations Code § 25506(b) (emphasis added).

Obviously, the five year absolute statute of limitations has yet to run, so the question is whether, based upon Plaintiffs' well-pled allegations and the facts of which the court can take judicial notice or can deem incorporated by reference, have more than two years passed since Plaintiffs discovered "facts" constituting such violation?     *See* Corporations Code § 25506(b).  The answer is "yes," as a matter of law.

The standard in section 25506 is an objective one that takes into account the concept of "inquiry" notice.  In the recent California Court of Appeal decision of *Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408, 419-23 (2006), the court examined this issue in detail, ultimately holding that "inquiry notice is sufficient to trigger the running of the limitations period under section 25506."  *Id*. at 423.  In reaching this holding, the court followed the Ninth Circuit, which also has held that inquiry notice starts the statute of limitations running under section 25506.  *See id*. at 419-22 (citing, *inter alia*, *Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 770-71 (9th Cir. 1982)).[5]

---

[5] In reaching this holding, the California Court of Appeal rejected as inapplicable dicta (limited at best to cases involving alleged breaches of fiduciary duty) the prior decision of *Eisenbaum v. W. Energy Resources, Inc.*, 218 Cal. App. 3d 314, 325-26 (1990), which had

Applying the inquiry notice standard to this case, the primary misrepresentation alleged is that the Defendants held out the condominium units as real estate (when allegedly they were securities) and that the primary omission involved failing to disclose that the condominium units were really securities.  (FAC ¶¶ 1-2, 6, 70-74).  As add on allegations, Plaintiffs also claim that there were misrepresentations and omissions concerning the availability of long term financing, the terms of the rental management agreement, the terms of the operating agreement, and the structure of the home owners' association ("HOA") rates. (FAC ¶¶ 75-80).  Yet, Plaintiffs fail to explain why these facts could not have been discovered when Plaintiffs first purchased the condominium units in 2006.  Instead, Plaintiffs offer only a conclusory allegation that their actual discovery was less than one year ago.  (*See* FAC ¶ 81).

These allegations fall well short of allegations that would show Plaintiffs' claims are timely.  Registration (or lack thereof) of securities is a matter of public record and, had Plaintiffs exercised reasonable diligence, they would have discovered in 2006 that the condominium units were not registered as "securities."  *See Meadows v. Pac. Inland Secs. Corp.*, 36 F. Supp. 2d 1240, 1251 (S.D. Cal. 1999) ("since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities").  Here, Plaintiffs' unregistered securities claims accrued no later than the date when they signed the Purchase Contracts, at which point they were on notice to inquire as to any suspicions they had that the contracts were for securities.

Further, Plaintiffs' allegations revolve around the Purchase Contracts they signed back in 2006 to purchase their units.  As discussed in greater detail above, each Purchase Contract stated that the condominium units were not being sold as investments and each Plaintiff was required to initial his or her agreement that the condominium units had not been marketed as investments.  (*See* Purchase Contract ¶ 19).  If, as Plaintiffs allege, this contract

---

interpreted identical statute of limitations language in Corporations Code § 25507 as requiring actual, as opposed to inquiry notice.  *See Deveny*, 139 Cal. App. 4th at 421-22.

provision stating that the condominium units were not being sold as investments was contradicted by representations made to Plaintiffs that the units were investments (*see*, *e.g.*, FAC ¶¶ 71, 83-84)[6], then this contradiction itself placed Plaintiffs on inquiry notice as of the date they signed the contracts to investigate whether the condominium units were being sold in violation of securities laws. *Kravetz v. U.S. Trust Co*., 941 F. Supp. 1295, 1305-09 (D. Mass. 1996) (collecting numerous securities cases and other authorities where a plaintiff is charged with inquiry notice based upon possession of documents disclosing a potential issue, and then ruling that "as a result of numerous offering documents that they received . . . , which specifically contradicted the oral representations allegedly made by the defendants, the [plaintiffs] were placed on inquiry notice of their claims"); *cf. Armbrister v. Roland Intern. Corp*., 667 F. Supp. 802, 813-14 (M.D. Fla. 1987) (holding that plaintiffs were on notice as to fraud claims as of the date they signed contracts, if not before, where contract disclosed potential issues and plaintiffs failed to investigate at that time).

In this case, Plaintiffs took no actions for years. It was only when the value of their real estate declined that they sought out legal counsel to try to craft a way to get them out of

---

[6] A similar contradiction exists with regard to the allegation in the FAC that Defendants told Plaintiffs they could get long-term financing. (*See* FAC ¶ 75). In actuality, Plaintiffs each signed addendums confirming no such representations had been made:

> 15. FINANCING. Seller may make available to Buyer the names of lenders who may be interested in providing financing in connection with the purchase of the Unit; however, the terms and conditions of any such financing shall be determined at the sale and absolute discretion of such lenders. **No representation or warranty is made by Seller with respect to the availability of any financing, any third party lender or any lender's loan program, including, without limitation, the interest rate or other terms of such financing, for how long such financing will be available, when or if Buyer will qualify for such financing, or the administration or enforcement of the loan**. Buyer must stay in contact with his, her or their lender.

(Addendum ¶ 15 (emphasis added)). Taking as true for the sake of argument Plaintiffs' allegation that contrary representations were made, this obvious contradiction with the written contract terms as to long-term financing at minimum placed Plaintiffs on inquiry notice. (Moreover, as discussed *supra* in Part II, Plaintiffs are not even free in the first place to make allegations contrary to the terms of the integrated contracts that set out what representations were made to them and what representations they relied upon.)

their condominium unit purchases.  That is exactly the type of dilatory conduct the statutes of limitations for securities claims are designed to prevent.  *Cf. Bowden v. Robinson*, 67 Cal. App. 3d 705, 712 (1977) (noting as to a different California securities statute of limitations that it was "imposed to prevent purchasers from employing the remedies for violation of the qualification provisions to shift the risk of a bad investment to the seller.").

In sum, because Plaintiffs knew of the relevant facts more than two years before bringing suit when they signed the Purchase Contracts – or at minimum were on inquiry notice to learn of those facts at that time when they contracted to purchase the condominium units – the statute of limitations has expired as a matter of law.

### D. The Fourth Cause of Action under California Corporations Code § 25501.5 Is Barred by the One Year Statute of Limitations Because Plaintiffs Had Notice of the Facts Constituting the Violation.

Plaintiffs' fourth cause of action (and last against Playground) alleges that Playground violated California Corporations Code § 25501.5 because its salespersons (who were licensed real estate agents) were not licensed as securities broker-dealers.  Corporations Code § 25501.5 is a relatively new statute, and there is little case law interpreting it.  Further, there is no express reference to which statute of limitations the Legislature intended to have apply to this clause of action.

This new cause of action was adopted as part of California Assembly Bill 2167, § 2, 2004 Cal. Legis. Serv. Ch. 575, CA Legis. 575 (2004).  That same law applied the five year/two year statute of limitations set forth in Corporations Code § 25506 to claims under Corporations Code § 25501, and it thus appears that it was intended also to apply to claims under Corporations Code § 25501.5.  If that is the case, then the analysis as to the third cause of action also applies to the fourth cause of action, and this claim is barred under the two-year inquiry notice standard.

Alternatively, the claim would be covered by the catch-all statute, Code of Civil Procedure § 338(a), which applies to all new statutory causes of action where no specific statute of limitations is given.  Section 338(a) provides that there is a three year statute of

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

63356

limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture."  Here, accepting Plaintiffs' allegations as true, their claims against Playground as an unlicensed broker-dealer accrued no later than when they executed the sales contract that Playground allegedly brokered.  As stated, except as to four plaintiffs, all of the Plaintiffs signed their sales contracts on various dates in 2006 that are all more than three years before Plaintiffs brought suit on December 8, 2009.

The only exceptions are Plaintiffs Robert Alvarenga, Tazia Reyna, and Mikael and Therese Havluciyan.  They signed their contracts on December 12, 2006.  Thus, subject to further discovery, it is possible that the claims of these four plaintiffs might be timely as to solely this cause of action assuming *arguendo* Code of Civil Procedure § 338(a) applies.

Accordingly, if not dismissed on the other grounds stated, this claim also should be dismissed with prejudice as barred by the statute of limitations (1) as to all Plaintiffs if the statute of limitations in Corporations Code § 25506 applies, and (2) as to all but the four identified Plaintiffs if the statute of limitations in Code of Civil Procedure § 338(a) applies.[7]

## CONCLUSION

Plaintiffs are purchasers of luxury hotel condominium units.  They bought those units with their eyes wide open at what turned out to be the height of the real estate market bubble.  Now that the real estate bubble has popped, Plaintiffs have obtained counsel in an effort to avoid the consequences of their own previous decisions.  A simple question in this case is: Would Plaintiffs ever have brought suit arguing that their condominium units were securities if the value of the real estate had not declined?  The only truthful answer is "no."  Playground was hired to sell real estate – condominium units.  That is what it did.  It should not be required to incur the expense of defending this suit simply because the real estate market

---

[7] Playground notes that throughout this brief it has utilized as the operative date for the statute of limitations the date when Plaintiffs' Purchase Contracts became binding based upon the acceptance of the contracts by the seller.  As to some of the contracts, however, the date of the Plaintiffs' signature is days or weeks earlier.  Should this case proceed past the pleading stage, Playground reserves the right to argue that, under certain of the applicable statutes of limitations and the doctrine of laches, this earlier date can be the operative date.

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS**

63356

declined several years later after Plaintiffs purchased their condominium units.  For all the reasons discussed above, Plaintiffs' efforts to recast the condominium units as securities fail as a matter of law.  Playground respectfully requests the Court dismiss Plaintiffs' claims with prejudice pursuant to Federal Rule of Evidence 12(b)(6).[8]

DATED: June 9, 2010                    LA BELLA & MCNAMARA, LLP


                                       By:   /s/ Thomas W. McNamara
                                       Thomas W. McNamara
                                       Attorneys for Playground Destination
                                       Properties, Inc.

---

[8] The claims in this action may be subject to arbitration and/or judicial reference. Playground reserves the right to file a motion to compel arbitration or reference if the claims are not dismissed.