1  Michael J. Aguirre, Esq., SBN 060402
   maguirre@amslawyers.com
2  Christopher S. Morris, Esq., SBN 163188
   cmorris@amslawyers.com
3  Maria C. Severson, Esq., SBN 173967
   mseverson@amslawyers.com
4  AGUIRRE, MORRIS & SEVERSON LLP
   444 West C Street, Suite 210
5  San Diego, CA 92101
   Telephone:  (619) 876-5364
6  Facsimile:  (619) 876-5368

7  Attorneys for Plaintiffs

8
                    UNITED STATES DISTRICT COURT
9
                  SOUTHERN DISTRICT OF CALIFORNIA
10

11
   TAMER SALAMEH, an individual; REAL        Case No.  09-CV-02739-DMS-CAB
12 ESTATE 4 HOSPITALITY, LLC, a
   California limited liability company;
13 ALEKSEY KATS; DIANA KATS;                 **PLAINTIFFS' OPPOSITION TO BANK OF**
   MITCHELL J. PEREIRA; GARY A.              **AMERICA'S MOTION TO DISMISS FIRST**
14 TORRETTA; ROBERT ALVARENGA;               **AMENDED COMPLAINT FOR VIOLATION**
   ALEXIS COSIO; CESAR MOTA; DENIS           **OF FEDERAL AND STATE**
15 B. ROTHE JR; CHARLENE SCHRUFER;           **SECURITIES LAWS**
   DAVID R. BUSHY; DALE CURTIS;
16 ZONDRA SCHMIDT; DOLORES GREEN;
   CHRISTY JESKE; TAZIA REYNA;
17 MARY L. WEE SONG; KERRY L.
   STEIGERWALT; BETH STEIGERWALT;
18 STUART M. WOLMAN; JEFFREY E.              DATE   June 25, 2010
   LUBIN AND BARBARA L. LUBIN,              TIME:  1:30 a.m.
19 INDIVIDUALLY AND AS CO-                  PLACE:  Courtroom of the
   TRUSTEES OF THE LUBIN FAMILY              Honorable Dana M. Sabraw,
20 TRUST DATED MARCH 26, 2002;              United States District Court Judge
   MIKAEL HAVLUCIYAN AND
21 THERESE HAVLUCIYAN
   INDIVIDUALLY AND AS CO-
22 TRUSTEES OF THE HAVLUCIYAN
   FAMILY TRUST;  SADOUX KIM;
23 individually and on behalf of a Class of all
   others similarly situated,
24
                          Plaintiffs,
25
        v.
26
   TARSADIA HOTEL, a California
27 Corporation; TUSHAR PATEL, an
   individual; B.U. PATEL, an individual;
28 GREGORY CASSERLY, an individual; 5th

1   ROCK LLC, a Delaware limited liability
    company; MPK ONE, LLC, a California
2   limited liability company; GASLAMP
    HOLDINGS, LLC, a California limited
3   liability company; PLAYGROUND
    DESTINATION PROPERTIES, a
4   corporation; EAST WEST BANK, a
    California corporation; BANK OF
5   AMERICA, a Delaware Corporation; JP
    MORGAN CHASE; PROFESSIONAL
6   MORTGAGE PARTNERS, INC.;   XBR
    FINANCIAL SERVICES, LLC, a California
7   limited liability company;  ERSKINE
    CORP, a California Corporation; and DOES
8   1 to 100, inclusive,

9                       Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................... 1

II.     DISCUSSION ................................................................................ 1

III.    PLAINTIFFS ARE ENTITLED TO RELIEF ON THEIR FIRST CLAIM .................... 3

    A.   Plaintiffs do not intend to allege an aiding and abetting theory
        under 12(2) ............................................................................. 3

    B.   Underwriter theory does state a claim and Bank is an alleged seller ................... 3

    C.   Bank's judicial notice argument fails ................................................ 4

    D.   The First Claim Satisfies Rule 8 .................................................... 5

        1. Operative complaint alleges proper ........................................... 5

        2. Ninth Circuit cases do not require plaintiffs'
          Allegations to be ignored ...................................................... 6

    E.   The Operative Complaint satisfies Rule(b) ......................................... 7

        1. Fed. R. Civ. P. 9(b) Does Not Apply to Plaintiffs'
          12(2) Claims .................................................................... 7

        2. Plaintiffs' allegations provide requisite details ............................... 8

        3. The FAC does not inappropriately rely on group pleading ..................... 9

        4. Scienter is Not Required ...................................................... 10

    F.   The Operative Compaint's allegations satisfy the
        12(2) statute of limitations ......................................................... 10

IV.     PLAINTIFFS ARE ENTITLED TO RELIEF ON THEIR SECOND CLAIM .............. 10

    A.   Plaintiffs Second Claim under §§ 25110,
        25503, and 25504.1 is not time barred ............................................ 10

    B.   The Second Claim does state a claim for relief .................................... 11

        1. Plaintiffs allege a claim against Bank
          under Corp C § 25110 and § 25503 .......................................... 11

        2. Plaintiffs do state a primary claim for
          under § 25110 and § 25504.1 ................................................. 11

V.      PLAINTIFFS ARE ENTITLED TO
    RELIEF ON THEIR THIRD CLAIM ................................................... 12

    A.   Plaintiffs do state a claim under § 25401 and § 25501 ............................. 12

    B.   Plaintiffs do state a claim under §25401 and §25504.1 ............................. 12

i

1      C.      Plaintiffs third claim is not time barred...............................................13

2   VI.     CONCLUSION          ......................................................................13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL AUTHORITIES

### CASES

*Ackerman v. Northwestern Mut. Life Ins. Co.*
 172 F. 3d 467, 469 (7th Cir. 1999)..................................................9

*Bell Atl. Corp. v. Twombly*
 550 U.S. 544 (2007)...........................................................................7

*Hocking v. Dubois*
 885 F2d. 1449 (9th Cir 1989)........................................................6, 7

*In re Daou Systems, Inc.*
 411 F. 3d 1006, 1029  (9th Cir. 2005).............................................3

*In re Alliance Equipment Lease Program Securities Litigation*
 2002 WL 34451621, 12 (S.D. Cal. 2002) ....................................8, 12

*Knievel v. ESPN*
 393 F. 3d 1068 (9th Cir. 2005).........................................................4

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group PLC*
 2010 WL 1172694 (S.D.N.Y. 2010)..................................................4

*Pinter v. Dahl*
 486 U.S. 622 (1988) ................................................................3, 4, 12

*Rosenberg v. CNA Fin. Corp.*
 2005 U.S. Dist. LEXIS 15578 (2005) ...............................................9

*Rubke v. Capital Bancorp Ltd*
 551 F 3d 1156 (9th Cir. 2009)......................................................7, 8

*Swartz v. KPMG LLP*
 476 F. 3d 756 ......................................................................................9

*Watkinson v. Mortgageit*
 2010 U.S. Dist. LEXIS 53540..........................................................3

*Williamson v. Tucker*
 645 F.2d 404, 424-25 (5th Cir. 1981) ...............................................6

*Wilshire Westwood Assocs. V. Atlantic Richfield Corp.*

881 F.2d 801, 803 (9th Cir. 1988).................................................................1, 5,10, 11,

*United States v. Ritchie*
        342 F.3d 903 (9th Cir. 2003)..........................................................................4

*Tse v. Ventana Med. Sys.*
        (2002, 3d Cir Del) 297 F3d 210, 2002 US App LEXIS 13970.........................8


**STATUTES**

15 USCS
        § 77b(1) ....................................................................................................3,7
        § 77b(2) ........................................................................................................3
        § 77b(11) ......................................................................................................3

15 USC
        § 11      ........................................................................................................4
        § 77m ..........................................................................................................4

17 C.F.R.
        § 240.10b-5 ...............................................................................................7, 8

**RULES**

Fed. R. Civ. P. 201 ........................................................................................2

Fed. R. Civ. P. 9(b) .......................................................................................7


<u>**NON-FEDERAL AUTHORITIES**</u>

**CASES**

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*
        158 Cal. App. 4th 226 (2007) ..............................................................8, 12, 13

*Ashcroft v. Iqbal*
        129 S. Ct. 1937 (2009)..........................................................................6, 7

*Johnson v. Haberman & Kassoy*
        201 Cal. App. 3d 1468 (1988) .....................................................................11

*Lazar v. Superior Court*
        12 Cal.4th 631 (1996) ...........................................................................8, 12

*Nymark v. Heart Fed. Savings & Loan Assn.*
        (1991) 231 Cal. App. 3d 1089.......................................................................3

*Soderberg v. McKinney*

(1996) 44 Cal. App. 4th 1760 ...................................................................9, 10

*Sylve v. Riley*
15 Cal. App. 4th 23 (1993) ...........................................................................11


*65 Butterfield v. Chicago Title Ins. Co.*
70 Cal. App. 4th 1047 (1999) ........................................................................11

**STATUTES**

California Corporations Code
§25110.................................................................................7, 8, 10, 11
§25401.......................................................................7, 8, 10, 11, 12, 13
§25501.........................................................................................7, 13
§25503................................................................................7, 8, 10,11
§25504.1....................................................................7, 8, 11, 12, 13
§25506(b) ..............................................................................................13
§25507.................................................................................................10

# I.

## INTRODUCTION

Bank of America (Bank) is alleged to have financed the sale of $14,450,870 in unregistered and unqualified Hard Rock Hotel San Diego (HRHSD) investment contract securities -- the attributes of which were misrepresented to investors to conceal the fact that federal and state securities officials had not approved the sale as required by the fundamental protection provided investors under the law. In other words, Bank ventured into profit-making transactions it was prohibited from engaging in by federal and state securities laws. The result was the very harm that the federal and state securities laws were directed at preventing. The Hard Rock Hotel San Diego, located in a sweet spot next to San Diego's downtown ball park, is a bust. A property that should be thriving even in these difficult days of our economy is collapsing because Bank and its co-defendants disregarded the investment safety rules. Bank asks the Court to misread procedural rules, ignore legal mandates, and close its eyes to economic reality in order to relieve Bank of the consequences of its unlawful conduct. The motion should be denied.

# II.

## DISCUSSION

Bank misreads the operative complaint. Bank claims plaintiffs have alleged they are losing money "on their respective purchases of condominium units." (Bank Motion Memo 1:7) In fact, the operative complaint alleges plaintiffs were losing money from "investment contracts:"

> 1. Public investors in the Hard Rock Hotel San Diego (HRHSD) are losing tens of millions of dollars from their failed HRHSD investment properties. The HRHSD promoters sold investment contracts (HRHSD Investment Contracts) to investors without registering the investment agreements with the US Securities & Exchange Commission (SEC) or qualifying them with the California Department of Corporations (DOC), in violation of federal and state investor protection laws. (First Amended Complaint [FAC] 1:1)

The FAC alleges Bank acted as underwriters of the HRHSD Investment Contract

1

1   offering in providing the essential financing needed to consummate the sales of

2   $14,450,870 HRHSD Investment Contracts.  (FAC ¶¶ 146, 52, 56, 82-94, 137).  All 23

3   plaintiffs do not seek relief against Bank, contrary to Bank's contention. (Motion Memo

4   1:12-13)

5        Next, Bank proffers as judicial notice its contested interpretation of selected

6   provisions of some of the underlying transaction documents. For example, Bank asserts

7   plaintiffs bought condominiums (Motion Memo 1:6-8) but the operative complaint alleges

8   they bought investment contracts (FAC ¶¶ 2, 8, 82-94)

9        The Court may take judicial notice of adjudicative facts only if they are "not

10  subject to reasonable dispute" and are "clearly within the domain of the indisputable." Fed

11  Rule Civil Proc Rule 201; See Notes, Fed Rule Civil Proc Rule 201; *Wilshire Westwood*

12  *Assocs. V. Atlantic Richfield Corp.,* 881 F.2d 801, 803 (9th Cir. 1988) (Court may take

13  judicial notice of statements contained in writings but not of a party's assertion of what the

14  contents mean).

15       Bank erroneously claims that the plaintiffs have failed to allege material information

16  plaintiffs did not receive. (Motion Memo 2:1-5) However, in their operative complaint under the

17  heading MISREPRESENTATIONS AND OMISSIONS plaintiffs detail the material information

18  they did not receive. (FAC ¶¶ 70-81) The transaction was presented as the sale of a

19  condominium-hotel with a voluntary rental agreement when in fact it was the sale of an

20  investment security with a mandatory rental agreement.  (FAC ¶¶ 70-81)

21       The operative complaint alleges that Bank knew or was reckless in not knowing the rental

22  agreement was misrepresented as voluntary, when it was mandatory, in order to create a pretext

23  for not registering or qualifying the HRHSD investment contracts with the SEC and Department

24  of Corporations. (FAC ¶¶ 139) Defendants are alleged to have known that had the HRHSD

25  investment contracts been presented to the SEC or Department of Corporations the offering

26  would not have been allowed to go forward without substantial and material revision. (FAC ¶¶

27  77-83, 139)  The operative complaint alleges a public offering of the HRHSD investment

28  contracts were made after Bank's co-defendants filed for an exemption with the California

2

1   Department of Corporations (FAC ¶ 2)

2       Bank then argues it owed plaintiffs no duty of disclosure based on *Nymark v. Heart Fed.*

3   *Savings & Loan Assn.* (1991) 231 Cal. App. 3d 1089, 1096.  However, *Nymark* does not give

4   Bank blanket liability protection.  The operative complaint alleges facts demonstrating that Bank

5   did owe a duty of disclosure to the plaintiffs.  See, *Soderberg v. McKinney* (1996) 44 Cal. App.

6   4th 1760 (negligent misrepresentation case reinstated); *Watkinson v. Mortgageit* 2010 U.S. Dist.

7   LEXIS 53540 (whether bank owes duty to plaintiffs involves the balancing of various factors)

8                         **III.**

9         **PLAINTIFFS ARE ENTITLED TO RELIEF ON THEIR FIRST CLAIM**

10   A.     **Plaintiffs do not intend to allege an aiding and abetting theory under 12(2)**

11       Plaintiffs' 12(2) theory of liability against Bank is not based on an aiding and abetting

12   theory.  Rather, the operative complaint alleges Bank "participated in the sale of the unregistered

13   HRHSD Investment securities by acting as underwriters of the HRHSD Investment Contract

14   offering in providing the essential financing needed to consummate the sales of HRHSD

15   Investment Contracts."  (FAC ¶ 114)   Thus, plaintiffs allege Bank violated § 12(2) based on a

16   *participation in* the sale, rather than aided and abetted the promoters who sold.

17   **B.**     **Underwriter theory does state a claim and Bank is an alleged seller**

18       Under § 12(2) the term "security" includes investment contract and any note or evidence

19   of indebtedness [15 USCS § 77b(1)] and the terms "sale" or "sell" include every contract of sale

20   or disposition of a security or interest in a security for value [15 USC §77b(2)].  Under 12(2) the

21   term "underwriter" includes any person who participates or has a direct or indirect participation in

22   the distribution of any security or participates or has a participation in the direct or indirect

23   underwriting of any such undertaking. 15 USC 77b(1)(11)

24       The Ninth Circuit follows the reasoning of *Pinter v. Dahl*, 486 U.S. 622 (1988) in

25   determining seller liability under section 12(2). *In re Daou Systems, Inc.,* 411 F. 3d 1006, 1029

26   (9th Cir. 2005) in which the court found plaintiffs' allegations were sufficient to state a §12(2)

27   claim, reversed the district court's contrary ruling and directed further review by the district court

28   of the remaining § 12(2) elements. *Id* at 1029.

3

1    In *Pinter*, the Court acknowledged seller liability extends to those who solicit a purchase of a

2    security when "motivated at least in part by a desire to serve his own financial interests or those

3    of the securities owner." *Id.* at 647.

4         In this case, Bank was in privity with plaintiffs.  (FAC ¶ 52) Bank underwrote the sale of

5    $14,450,870 of the HRHSD investment contracts. (FAC ¶ 137) Bank stepped outside normal

6    bank boundaries and used depositor funds to fund the sale of the HRHSD investment contract.

7    Bank holds a security interest in the HRHSD investment contract.  If a plaintiff decides not to pay

8    the full purchase price the HRHSD investment contract reverts through foreclosure to the Bank.

9         Bank argues that underwriters only have liability under 15 USC § 11 for false registration

10   statements citing a footnote in *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland*

11   *Group PLC,* 2010 WL 1172694 (S.D.N.Y. 2010) Once again, Bank attacks a claim that is not

12   alleged in the operative complaint.

13        In fact, plaintiffs do allege that Bank participated in the sale of the HRHSD investment

14   contracts.  Plaintiffs allege Bank provided "the essential financing needed to consummate the

15   sales of the HRHSD investment contracts" and Bank "participated in the sale" by "acting as

16   underwriters of the HRHSD Investment Contract offering in providing the essential financing

17   needed to consummate the sales of HRHSD Investment Contracts ." (FAC ¶¶ 86, 141, 146) Thus,

18   plaintiffs have satisfied the seller pleading requirement.

19   **C.    Bank's judicial notice argument fails**

20        Bank attempts to convert its motion to dismiss into a Rule 56 summary judgment motion

21   which the bank impliedly acknowledges by its citation of *Knievel v. ESPN* 393 F. 3d 1068, 1076-

22   77 (9th Cir. 2005). In *Knievel*, the court put a single picture in the context of the entire website

23   containing that picture to evaluate a defamation claim.  *Knievel* differs greatly from the instant

24   case where Bank now seeks to introduce various documents for their interpretation of the contents

25   therein. Bank also cites *United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)**,** a civil case arising

26   out of the seizure of property during the execution of a criminal search warrant.  In *Ritchie,* the

27   court declined to consider documents outside the pleadings.  *Id.*at 908.

28        It's telling that Bank cites no securities case supporting its contention that the court can

4

1   resolve the factual question of whether Bank participated in the sale of the HRHSD investment

2   contracts at this stage. *Wilshire Westwood Assocs. V. Atlantic Richfield Corp.,* 881 F.2d 801, 803

3   (9th Cir. 1988) (Court may take judicial notice of statements contained in writings but not of a

4   party's assertion of what the contents mean).

5   **D.      The First Claim Satisfies Rule 8**

6   **1. Operative complaint alleges proper**

7   Plaintiffs allege detailed allegations showing the HRHSD interest were securities. (FAC

8   ¶¶ 82-94) The Securities & Exchange Commission (SEC) S.E.C. Release No. 33-5347 lays out

9   the factors tending to show an offering of a security involving condominiums:

> In summary, the offering of condominium units in conjunction with any one of the
> following will cause the offering to be viewed as an offering of securities in the
> form of investment contracts:
>
> 1. The condominiums, with any rental arrangement or other similar service, are
> offered and sold with emphasis on the economic benefits to the purchaser to be
> derived from the managerial efforts of the promoter, or a third party designated or
> arranged for by the promoter, from rental of the units.
>
> 2. The offering of participation in a rental pool arrangement; and
>
> 3. The offering of a rental or similar arrangement whereby the purchaser must hold
> his unit available for rental for any part of the year, must use an exclusive rental
> agent or is otherwise materially restricted in his occupancy or rental of his unit. In
> all of the above situations, investor protection requires the application of the
> federal securities laws.

The operative complaint alleges: (1) the HRHSD investment contracts shifted the

investment risk to plaintiffs. (FAC ¶ 4); (2) the promoters emphasized the economic benefits

investors would derive from the promoters managing of the rental of the units. (FAC ¶ 84); (3)

The HRHSD agreement gave promoters the right to manage HRHSD with broad exclusive

authority. (FAC ¶ 87); (4) Investors were not issued keys and all keys were controlled by the

promoters (FAC ¶ 89); Investors were limited to staying in the units to 28 days per year. (FAC ¶

88); Investors were required to pay the promoters for managing their units. (FAC ¶ 90); whether

5

1   investors made money was dependent on the managerial efforts of promoters (FAC 5); and finally

2   the failure of rental income caused plaintiffs losses (FAC ¶ 7)

3         Bank cites *Hocking v. Dubois* 885 F2d. 1449, 1460-61 (9th Cir 1989), a case in which the

4   Court reversed the district court's dismissal of a condominium investment securities case. The

5   Court as a threshold matter noted that an investment contract is not necessarily missing "where

6   the tangible interest which is sold has intrinsic value independent of the success of the enterprise

7   as a whole." *Id.* at 1455. The Court further cited the 1973 SEC Release No. 33-5347 related to

8   condominium securities: "Release 5347 puts developers and promoters on notice of three

9   situations which the SEC views as involving the offering of a security." *Id.* at 1456.

10        Ironically, the *Hocking* court relying on *Williamson v. Tucker, 645 F.2d 404, 424-25 (5th*

11  *Cir. 1981)* found a security to be present because a condominium was operated as a hotel:

12  
> The third factor suggested in *Williamson* provides the closest fit to an investment
> in a resort condominium involving an RPA. Hocking's investment is a unit in a
> resort condominium, **allegedly operated as a hotel**, with many investors pooling
> their units together. In order for Hocking to replace HCP, he would have to gain
> the votes of 75 percent of participating investors. These facts alone create a real
> question whether Hocking was stuck with HCP as a rental manager. Had Hocking
> purchased a residential condominium for investment purposes, to be rented out to
> long-term tenants, then it would have been a relatively easy matter to switch rental
> agents. **Managing a resort operated as a hotel**, which solicits guests from the
> mainland and charges nightly rates for short-term visits, may be a much more
> difficult service to replace than that of a long-term leasing agent. The commercial
> viability of a one-room hotel does not strongly argue for separate management.
> The individual investor may have no choice but to place his condominium in the
> rental pool, if he is to receive significant rental income.

22       Like the *Hocking* plaintiffs, Plaintiffs have satisfied the pleading requirements related to the

23  securities element of § 12(2).

24  **2. Ninth Circuit cases do not require plaintiffs' allegations to be ignored**

25      Bank cites *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and argues that plaintiffs' allegations are

26  not plausible. The operative complaint alleges the HRHSD investment contracts were not

27  registered or qualified with the SEC or Department of Corporations. An exemption notice was

6

1   filed with the Department of Corporations admitting the investments were securities but did not

2   complete the exemption requirements.  A public offering of the HRHSD investment contracts was

3   made.  The owners did not get keys to their units, could only stay there 28 days a year rental of

4   the units was managed exclusively by promoters.  The Bank defendant with knowledge of these

5   facts stepped outside the role of normal lending and underwrote $14,450,870 of the investment

6   contracts.  Investors have lost substantial funds because of the rental income has been

7   insufficient.  This is an outcome the securities laws are designed to prohibit.  *Hocking v. Dubois*

8   885 F. 2d 1449 (9th Cir. 1989). This case does not violate the strictures of *Ashcroft v. Iqbal,* 129

9   S. Ct. 1937 (2009)

10          **3. The operative complaint does not rely on formulaic claims for relief**

11          Bank argues two paragraphs in the operative complaint are outlawed by *Bell Atl. Corp. v.*

12   *Twombly*, 550 U.S. 544 (2007) (Motion Memo 10: 14) because they are formulaic.  Again, Bank

13   overstates its authority.  *Twombly* requires a plaintiff to provide the grounds for the relief it

14   seeks; a formulaic recitation of the elements of a cause of action will not do.  Here, Plaintiffs *do*

15   provide the grounds for the relief sought.  The two quoted paragraphs appear at the end of the

16   detailed allegations and are based on the earlier allegations as stated.  (Operative Complaint ¶

17   144)

18   **E.     The Operative Complaint satisfies Rule 9(b)**

19          **1. Fed. R. Civ. P. 9(b) Does Not Apply to Plaintiffs' 12(2) Claims**

20          The  Bank argues that Rule 9(b)'s heightened pleading requirements should apply to all of

21   plaintiffs claims because plaintiffs' claims sound in fraud citing *Rubke v. Capital Bancorp Ltd*

22   551 F 3d 1156, 1161 (9th Cir. 2009).  Bank relies on the fact that plaintiffs alleges a claim under

23   California Corporations Code § 25504.1 which provides for secondary liability for those who

24   materially assist sales of unqualified securities (Corp Code §§ 25110, 25503) or sales made on the

25   basis of material misrepresentations or omissions of fact (§§ 25401,25501)

26          Moreover, Corp C §§ 25401, 25501 are modeled on § 12(2) of the Securities Act of 1933,

27   and have less stringent requirements than 15 USCS § 77(b) and 17 C.F.R. § 240.10b-5 regarding

28   both scienter and causation.  For example, Corp C § 25401 does not require civil plaintiffs to

7

1   demonstrate the exacting scienter standard required for 17 C.F.R. § 240.10b-5 claims. *Tse v.*

2   *Ventana Med. Sys.* (2002, 3d Cir Del) 297 F3d 210, 2002 US App LEXIS 13970.

3        While Corp Code § 25504.1 makes liable any person who, with intent to defraud,

4   materially assists in any violation of Corp C. §§ 25110 (sale of unqualified security) or 25401

5   (sale on the basis of material misrepresentations) the terms do not have the same meaning as Rule

6   10(b)-5.  In California, the Supreme Court has repeatedly indicated that "intent to defraud" as it

7   relates to § 25504.1 is the intent "to induce reliance" on the knowing misrepresentation or

8   omission. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.

9        Bank's use of *Rubke* to make the case that plaintiffs' § 25504.1 claim sounds in fraud and

10   thus the scienter pleading requirements apply is misplaced since plaintiffs do not allege a Rule

11   10(b)5 case.  Moreover, Bank's citation to *In re Alliance Equipment Lease Program Securities*

12   *Litigation* 2002 WL 34451621, 12 (S.D. Cal. 2002) for the proposition that a plaintiff must show

13   classic aiding and abetting elements is in error in light of *Apollo Capital Fund LLC v. Roth*

14   *Capital Partners, LLC*, (2007) 158 Cal. App. 4th 226, 253.  Thus, when the complaint alleges

15   facts to show Bank materially assisted the sales of the HRHSD investment contracts and intended

16   to induce the investors to rely on representations known to be false or misleading, the complaint

17   properly alleges a claim for liability under section § 25504.1.  *Apollo Capital Fund LLC v. Roth*

18   *Capital Partners, LLC*, (2007) 158 Cal. 4th 226, 257.

19        **2.  Plaintiffs' allegations provide requisite details**

20        This case involves a simple fact pattern. Bank is alleged to have participated in and to

21   have materially assisted the unlawful sale of $14,450,870 worth of unqualified and unregistered

22   HRHSD investment contracts to plaintiffs with knowledge that the HRHSD investment contracts

23   were not registered or qualified as required by law.  It is also alleged that Bank knew or should

24   have known that sales were made to plaintiffs based upon material misrepresentations that the

25   HRHSD investment contracts were required to be registered or qualified by the SEC or the

26   Department of Corporations.  (FAC § 137) In so acting the Bank violated § 12(2) of the 1933

27   Securities Act (FAC ¶ 144 *et seq*) , §25504.1 based on violation of the qualification requirement

28   law § 25110 (FAC ¶ 148 *et seq*) and material misrepresentations based on violation of § 25401

8

1  (FAC ¶ 152 *et seq*).  Bank's citation *of Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F. 3d

2  467, 469 (7th Cir. 1999)

3        In *Ackerman,* Justice Posner[1] explains that the defensible purpose of the heightened

4  pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation

5  before filing a fraud complaint. *Id.* at 469.  In this case, the essential grounds of the complaint are

6  alleged in the operative complaint.  The HRHSD investment contracts were not registered or

7  qualified.  Bank funded $14,450,870 of the sales of the HRHSD investment contracts.  Under the

8  HRHSD investment contracts, plaintiffs relied on the managerial efforts of the promoters to rent

9  their units.  The lack of rental income has cost plaintiffs substantial damages.

10        Bank's reliance on *Ackerman* however, is inapposite. The instant case, unlike *Ackerman,*

11  is not a case in which different misrepresentations were made to different plaintiffs at different

12  times by different people. This case is one in which plaintiffs allege a material omission based on

13  the fact that all of the plaintiffs were excluded from receiving knowledge of the information that

14  the HRHSD investment contracts were required to be registered and qualified.  *Rosenberg v. CNA*

15  *Fin. Corp.*, 2005 U.S. Dist. LEXIS 15578 (2005)

16        **3. The FAC does not inappropriately rely on group pleading**

17        Again, plaintiffs made their allegations against the defendant banks with clarity.  The

18  theory of the case does not involve the wide open fraud addressed in the Bank's cited authority.

19  *Swartz v. KPMG LLP* 476 F. 3d 756, 764-765.

20        Bank cites the allegation that the defendants offered and sold $195,757,613 of HRHSD

21  investment contracts.  (Motion Memo 13:23)  However, Bank omits the fact that this is simply the

22  aggregate amount of the entire amount of HRHSD investment contracts sold.  However, Bank is

23  specifically informed that the claim against Bank is for its sale of $14,450,870.  (FAC ¶ 137)

24  *Swartz* was a Racketeer Influenced and Corrupt Organizations (RICO) and fraud case.  While, the

25  Court dismissed the RICO claim it allowed the fraud based on civil conspiracy to proceed,

26  finding the district court erred in concluding that appellant could not demonstrate reasonable

27  _____

28  [1] Justice Posner has publicly acknowledged the need for strict regulation in light of the financial crisis that has struck the nation.  See, Posner, Richard A. *A Failure of Capitalism.*

9

1   reliance on the alleged misrepresentations as a matter of law under the allegations in the

2   complaint. *Id.* at 763.

3          **4. Scienter is Not Required**

4          The operative complaint alleges that the Bank knew the HRHSD investment contract

5   securities should have been but were not registered or qualified with the SEC or Department of

6   Corporations. It alleges that Bank knew its customers were not told of those facts.  Plaintiffs are

7   not required to allege more to support this simple and straight forward theory of recovery.

8   **F. The Operative Complaint's allegations satisfy the 12(2) statute of limitations**

9          The complaint was first filed on 8 December 2009.  A § 12(2) claim must be brought

10  within one year after the discovery of the untrue statement or omission, or after such discovery

11  should have been made by the exercise of reasonable diligence, or more than three years after the

12  sale.  See, 15 U.S.C. § 77m.  The operative complaint alleges the plaintiffs were required to

13  execute three writings that formed the core of the HRHSD investment contract: (1) the purchase

14  contract; (2) the unit maintenance agreement; and (3) the rental agreement. (FAC § 86)  Bank

15  relies solely on the date of the purchase contract and does not mention the dates of the unit

16  maintenance agreement or the rental agreement.  The Court can note the dates of the rental

17  agreements included but not discussed in the Bank's papers are all within 3 years of the filing of

18  the operative complaint e.g. (Hayes Request for Judicial Request Ex. G)

19         The complaint alleges plaintiffs discovered the basis for their case after plaintiffs

20  consulted legal counsel.  (FAC § 81) Bank cannot properly rest its argument that the statue of

21  limitations has rune based on the Bank's selective use and interpretation of documents under the

22  guise of a request for judicial notice. *Wilshire Westwood Assocs. V. Atlantic Richfield Corp.*, 881

23  F.2d 801, 803 (9th Cir. 1988) (Court may take judicial notice of statements contained in writings

24  but not of a party's assertion of what the contents mean).

25                           **IV.**

26     **PLAINTIFFS ARE ENTITLED TO RELIEF ON THEIR SECOND CLAIM**

27  **A.**     **Plaintiffs Second Claim under §§ 25110, 25503, and 25504.1 is Not Time Barred**

28         Again, the complaint was filed 8 December 2009.  Corp Code § 25507 (a) provides no

10

1  action can be brought for materially assisting the sale of unqualified securities under 25504.1

2  unless brought before the expiration of two years after the violation upon which it is based or the

3  expiration of one year after the discovery by the plaintiff of the facts constituting such violation,

4  whichever shall first expire.

5        The operative complaint alleges the plaintiffs were required to execute three writings that

6  formed the core of the HRHSD investment contract: (1) the purchase contract; (2) the unit

7  maintenance agreement; and (3) the rental agreement. (FAC § 86)  The bank relies solely on the

8  date of the purchase contract and does not mention the dates of the unit maintenance agreement or

9  the rental agreement.  Plaintiff contends that the sales of the securities were made until after the

10  three agreements were executed and the sale escrows closed.  The question of the date of sale is a

11  question of fact, under these circumstances.   The question of when there has been a belated

12  discovery of the cause of action is ordinarily a question of fact. *Johnson v. Haberman & Kassoy*

13  (1988) 201 Cal. App. 3d 1468, 1476; *see Sylve v. Riley* (1993) 15 Cal. App. 4th 23, 26 (whether

14  reasonable diligence was exercised is generally a question of fact that precludes summary

15  judgment); *see also 65 Butterfield v. Chicago Title Ins. Co.* (1999) 70 Cal. App. 4th 1047, 1054

16  (resolution of statute of limitations issue normally question of fact)].

17        The complaint alleges plaintiffs discovered the basis of their legal action after plaintiffs

18  consulted legal counsel.  (FAC § 81) Bank cannot properly rely on its selective use and

19  interpretation of documents under the guise of a request for judicial notice. *Wilshire Westwood*

20  *Assocs. V. Atlantic Richfield Corp.,* 881 F.2d 801, 803 (9th Cir. 1988) (Court may take judicial

21  notice of statements contained in writings but not of a party's assertion of what the contents

22  mean).

23  **B.**     **The Second Claim does state a claim for relief**

24        **1. Plaintiffs allege a claim against Bank under Corp C. §§ 25110 and 25503**

25        Plaintiffs do not seek to allege a claim against the Bank under Corp Code § 25503.

26        **2. Plaintiffs do state a primary claim for relief under § 25110, and § 25504.1**

27        Corp C. § 25504.1 provides liability for those who "materially assist" sales of unqualified

28  securities in violation of section 25110 with intent to deceive.  The Bank's citation to *In re*

11

1  *Alliance Equipment Lease Program Securities Litigation* 2002 WL 34451621, 12 (12 S.D. Cal.

2  2002) is misplaced.  Again, the Supreme Court has repeatedly indicated that "intent to defraud" is

3  the intent "to induce reliance" on the knowing misrepresentation or omission. *Lazar v. Superior*

4  *Court*  (1996) 12 Cal.4th 631, 638.

5       In this case the operative complaint alleges that Bank materially assisted in the unlawful

6  sale of $14,450,870 of unqualified and unregistered HRHSD investment securities with

7  knowledge that the HRHSD investment contracts had not been registered or qualified by acting as

8  the underwriter of the HRHSD investment contract offering in providing the essential financing

9  needed to consummate the sales of the HRHSD investment contracts.  (FAC ¶¶137, 138, 141)

10                                    **V.**

11       **PLAINTIFFS ARE ENTITLED TO RELIEF ON THEIR THIRD CLAIM**

12  **A.**     <u>**Plaintiffs do state a claim under §§ 25401, 25501**</u>

13       Plaintiffs do not attempt to state a claim against Bank based on a primary liability theory

14  under Corp Code §25401.  Section § 12(2) of the 1933 Securities Act has been construed by

15  federal courts to "include in the statutory seller status at least some persons who urged the buyer

16  to purchase." *Pinter v. Dahl* 486 U.S. 622, 644 (1988)  [statutory seller status extends "to the

17  person who successfully solicits the purchase, motivated at least in part by a desire to serve his

18  own financial interests or those of the securities owner"]. However, California has extended

19  secondary liability through specific sections and California Courts have not found it necessary to

20  expand the definition of seller as a result.  *Apollo Capital Fund LLC v. Roth Capital Partners,*

21  *LLC*, (2007) 158 Cal. App. 4th 226, 253.

22  **B.**     <u>**Plaintiffs do state a claim under §25401, 25504.1**</u>

23       Corp Code § 25504.1 provides that any person who "materially assists" in a violation of

24  section 25401, "with intent to deceive or defraud, is jointly and severally liable with any other

25  person liable" for the violation. In California, the Supreme Court has repeatedly indicated that

26  "intent to defraud" is the intent "to induce reliance" on the knowing misrepresentation or

27  omission. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638. Thus, when a complaint alleges

28  facts to show the Bank materially assisted the sales of the HRHSD investment contracts and

                                    12

1    omission. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638. Thus, when a complaint alleges

2    facts to show the Bank materially assisted the sales of the HRHSD investment contracts and

3    intended to induce the investors to rely on representations known to be false or misleading, the

4    complaint properly alleges a claim for liability under section 25504.1. *Apollo Capital Fund LLC*

5    *v. Roth Capital Partners, LLC*, (2007) 158 Cal. App. 4th 226, 257.

6           In this case, the operative complaint alleges that Bank materially assisted in the unlawful

7    sale of $14,450,870 of unqualified and unregistered HRHSD investment securities with

8    knowledge that the HRHSD investment contracts had not been registered or qualified by acting as

9    the underwriter of the HRHSD investment contract offering in providing the essential financing

10   needed to consummate the sales of the HRHSD investment contracts.  (FAC ¶¶137, 138, 141)

11   Further, the Bank knew or should have known that the HRHSD rental program was mandatory

12   and that the reason their co-defendants were misrepresenting the rental agreement program was

13   voluntary was to conceal the fact that the defendants were making a public offering of HRHSD

14   investment securities. (FAC ¶ 143)

15   **C.     Plaintiffs third claim is not timed barred**

16          Again, the complaint was filed 8 December 2009. Corp Code §25506 (b) provides that no

17   action shall be maintained to enforce any liability created under §§ 25501 and 25504.1 unless

18   brought before the expiration of five years after the act or transaction constituting the violation or

19   the expiration of two years after the discovery by the plaintiff of the facts constituting the

20   violation, whichever shall first expire. Plaintiffs are admittedly within the 5 year period.

21          The complaint alleges plaintiffs discovered the basis of their legal action after plaintiffs

22   consulted legal counsel within 3 years of the sale of the investment contracts.  (FAC§ 81) The

23   Court need not consider Bank's query as to whether the statute has run as it has clearly not.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

13

1

## VI.

## CONCLUSION`

2

3    For the reasons stated the motion to dismiss should be denied. Alternatively, plaintiffs

4    should be allowed to amend the complaint to bring it into conformity with the Court's rulings.

5                                                    Respectfully submitted,

6

7                                                    AGUIRRE, MORRIS & SEVERSON LLP

8

9

10   Dated:  June 11,  2010                          s/ Maria C. Severson
                                                     Attorney for Plaintiff
11                                                   mseverson@amslawyers.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO BANK OF AMERICA'S MOTION TO DISMISS