1  Michael J. Aguirre, Esq., SBN 060402
   maguirre@amslawyers.com
2  Christopher S. Morris, Esq., SBN 163188
   cmorris@amslawyers.com
3  Maria C. Severson, Esq., SBN 173967
   mseverson@amslawyers.com
4  AGUIRRE, MORRIS & SEVERSON LLP
   444 West C Street, Suite 210
5  San Diego, CA 92101
   Telephone:  (619) 876-5364
6  Facsimile:  (619) 876-5368

7  Attorneys for Plaintiffs

8
                     UNITED STATES DISTRICT COURT
9
                   SOUTHERN DISTRICT OF CALIFORNIA
10

11
   TAMER SALAMEH, an individual; REAL          Case No.  09-CV-02739-DMS-CAB
12 ESTATE 4 HOSPITALITY, LLC, a
   California limited liability company;
13 ALEKSEY KATS; DIANA KATS;                    **PLAINTIFFS' OPPOSITION TO EAST**
   MITCHELL J. PEREIRA; GARY A.                 **WEST BANK'S MOTION TO DISMISS**
14 TORRETTA; ROBERT ALVARENGA;                  **FIRST AMENDED COMPLAINT FOR**
   ALEXIS COSIO; CESAR MOTA; DENIS              **VIOLATION OF FEDERAL AND STATE**
15 B. ROTHE JR; CHARLENE SCHRUFER;              **SECURITIES LAWS**
   DAVID R. BUSHY; DALE CURTIS;
16 ZONDRA SCHMIDT; DOLORES GREEN;
   CHRISTY JESKE; TAZIA REYNA;
17 MARY L. WEE SONG; KERRY L.
   STEIGERWALT; BETH STEIGERWALT;
18 STUART M. WOLMAN; JEFFREY E.                  DATE   June 25, 2010
   LUBIN AND BARBARA L. LUBIN,                   TIME:  1:30 a.m.
19 INDIVIDUALLY AND AS CO-                       PLACE:  Courtroom of the
   TRUSTEES OF THE LUBIN FAMILY                   Honorable Dana M. Sabraw,
20 TRUST DATED MARCH 26, 2002;                   United States District Court Judge
   MIKAEL HAVLUCIYAN AND
21 THERESE HAVLUCIYAN
   INDIVIDUALLY AND AS CO-
22 TRUSTEES OF THE HAVLUCIYAN
   FAMILY TRUST;  SADOUX KIM;
23 individually and on behalf of a Class of all
   others similarly situated,
24
                      Plaintiffs,
25
       v.
26
   TARSADIA HOTEL, a California
27 Corporation; TUSHAR PATEL, an
   individual; B.U. PATEL, an individual;
28 GREGORY CASSERLY, an individual; 5th

1   ROCK LLC, a Delaware limited liability
    company; MPK ONE, LLC, a California
2   limited liability company; GASLAMP
    HOLDINGS, LLC, a California limited
3   liability company; PLAYGROUND
    DESTINATION PROPERTIES, a
4   corporation; EAST WEST BANK, a
    California corporation; BANK OF
5   AMERICA, a Delaware Corporation; JP
    MORGAN CHASE; PROFESSIONAL
6   MORTGAGE PARTNERS, INC.;   XBR
    FINANCIAL SERVICES, LLC, a California
7   limited liability company;  ERSKINE
    CORP, a California Corporation; and DOES
8   1 to 100, inclusive,

9                        Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<b>TABLE OF CONTENTS</b>

2    I.      SUMMARY OF ARGUMENT ..................................................................... 1

3    II.     SUMMARY OF RELEVANT FACTS  ........................................................ 1

4    III.    STANDARD FOR A MOTION TO DISMISS ................................................ 3

5    IV.     PLAINTIFFS STATE A 12(2)  CLAIM .................................................... 3

6    V.      PLAINTIFFS STATE A CORP. CODE
             25110, 25503, 25504.1 CLAIM..................................................................... 6
7
             A.      Plaintiffs Claims for 25110, 25503, and 25504.1
8                    Do Not Fail   ............................................................................... 6

9            B.      Plaintiffs Claims  for 25401, 25501, and 25504.1
                     Do Not Fail   ............................................................................. 12
10
     VI.     CONCLUSION        ......................................................................... 13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

3
## FEDERAL AUTHORITIES

4
*Ackerman v. Northwestern Mut. Life Ins. Co.*
        172 F. 3d 467 (7th Cir. 1999) ................................................................12

5
*Ashcroft v.Iqbal*
6        129 S. Ct. 1937 (2009) .........................................................................5, 6

*Bell Atl. Corp. v. Twombly*
7        550 U.S. 544 (2007)..........................................................................2, 3,6

8
*De La Cruz v. Tormey*
9        582 F2d 45 (9th Cir. 1978) ...................................................................3

*Hocking v. Dubois*
10        885 F2d. 1449 (9th Cir 1989).........................................................4, 6, 7

11
*In re Daou Systems, Inc.*
12        411 F. 3d 1006, 1029 (9th Cir. 2005).......................................................6

*Pinter v. Dahl*
13        486 U.S. 622 (1988)...............................................................................6

14
*Rosenberg v.CNA Fin Corp.*
        2005 U.S. Dist. LEXIS 15578 (2005) ..................................................12
15

S.E.C. Release No. 33-5347.........................................................................3
16

SEC Release No. 33-5347.... ...................................................................5, 8
17

18
*Tse v. Ventana Med. Sys.*
        (2002, 3d Cir Del) 297 F3d 210, 2002 US App LEXIS 13970......................11
19

*Williamson v. Tucker*
20        *645 F.2d 404, 424-25 (5th Cir. 1981)* ...............................................5, 8

*Wilshire Westwood Assocs. V. Atlantic Richfield Corp.*
21        881 F2d 801, 803 (9th Cir. 1988)..........................................................3, 9

22

23
## STATUTES

24
15 USCS
        § 77b(1) ................................................................................................6
25        § 77b(2) ................................................................................................6
        § 77b(11) ..............................................................................................6
26        § 77j(b) ................................................................................................11

27
17C.F.R.
        § 240.10b-5 ..........................................................................................11

28

ii

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................................................... 11


**NON-FEDERAL AUTHORITIES**

*65 Butterfield v. Chicago Title Ins. Co.*
    (1999) 70 Cal.App.4th 1047 ................................................................................. 9

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*
    158 Cal. App. 4th 226 (2007) ....................................................................... 9,10,11

*Johnson v. Haberman & Kassoy*
    201 Cal. App. 3d 1468 (1988) ............................................................................. 9

*Lazar v. Superior Court*
    12 Cal.4th 631 (1996) ................................................................................... 10,11

*Sylve v. Riley*
    15 Cal. App. 4th 23 (1993) ................................................................................. 9


**STATUTES**

**California Corporations Code**
    §24503 ................................................................................................................ 9
    §25110 ................................................................................................. 8, 10, 11
    §25401 .................................................................................................. 10,11, 12
    §25501 ............................................................................................................. 11
    §25503 ................................................................................................... 9, 10,11
    §25504 .............................................................................................................
    §25504.1 ............................................................................................... 10, 11,12
    §25505.1 ................................................................................................... 9,11
    §25507 ................................................................................................................ 8

# I.

## INTRODUCTION

East West Bank (Bank) is alleged to have financed the sale of unregistered and unqualified Hard Rock Hotel San Diego (HRHSD) investment contract securities the attributes of which were misrepresented to investors to conceal the fact that federal and state securities officials had not approved the sale as required by the fundamental protection provided investors under the law.  In other words, Bank ventured into a profit making transactions it was prohibited from engaging in by federal and state securities laws.  The result was the result the federal and state securities laws were directed at preventing.  The Hard Rock Hotel San Diego, located in a sweet spot next to San Diego's downtown ball park, is a bust.  A property that should be thriving even in these difficult days of our economy is collapsing because Bank and its co-defendants disregarded the investment safety rules.  Bank asks the court to misread procedural rules, ignore legal mandates, and close it eyes to economic reality in order to relieve Bank of the consequences of Bank's unlawful conduct.  The motion should be denied.

East West Bank argues that they provided financing for a simple condominium purchase. Yet East West Bank fails to acknowledge it had a prior existing relationship with the other defendants and assisted their co-defendants in transferring the risks of the investment from defendants to plaintiffs. (First Amended Complaint [FAC] ¶ 128)  East West does not explain to this Court that it helped transfer investment risk to unknowing "condo" investors after it was exposed on the hotel project from its $88 million construction loan and $30 million in letters of credit to HRHSD for a total of approximately $111 million.  (FAC ¶ 129) East West remains silent about the allegation that it materially assisted in the unlawful sale of the HRHSD Investment Contracts with the intent of generating proceeds from those sales in an amount sufficient to pay the $111 million East West Bank had advanced to pay for the construction and development of the HRHSD. East West Bank materially assisted the sale of the HRHSD Investment Contracts by acting as an underwriter and providing financing. (FAC ¶ 131) It was motivated to assist hotel defendants in light of its $88 million construction promissory note from 5th Rock LLC in favor of East West bank, which got paid off in February 2008, just after the

1

1    hotel's December 2007opening.  (FAC ¶ ¶ 67, 132)

2                                                    II.

3                                   SUMMARYOF FACTS

4           East West did not just "do what banks typically do, and are supposed to do: make loans. "

5    (East West Motion, p. 7:9-10)  The operative complaint alleges the Bank acted as underwriters of

6    the HRHSD Investment Contract offering in providing the essential financing needed to

7    consummate the sales of $42,726,435 HRHSD Investment Contracts.  (FAC ¶ 130) Rather, it

8    exposed itself to an $88 million risk with hotel defendants, then loaned out $42 million for the

9    securities -- a bet that paid off in light of its almost immediate receipt of its $88 million within

10   two months. (FAC ¶ ¶ 67, 132)

11          Investors were required to execute three writings that formed the core of the HRHSD

12   Investment Contract: (1) Purchase Contract and Escrow Instructions; (2) Unit Maintenance and

13   Operating Agreement (Operations Agreement); (3) Tarsadia Hotel's Hard Rock Hotel San Diego

14   Rental Management Agreement (RMA).  East West assisted with funding so as to help promoters

15   further their plan. (FAC ¶ 68)  Title would not have transferred but for the financing it provided.

16          The operative complaint alleges that Bank knew or was reckless in not knowing the rental

17   agreement was misrepresented as voluntary, when it was mandatory, in order to create a pretext

18   for not registering or qualifying the HRHSD investment contracts with the SEC and Department

19   of Corporations. Defendants are alleged to have known that had the HRHSD investment contracts

20   been presented to the SEC or Department of Corporations the offering would not have been

21   allowed to go forward without substantial and material revision. (FAC ¶¶ 140-143)  The operative

22   complaint alleges the a public offering of the HRHSD investment contracts were made after the

23   Bank's co-defendants filed for an exemption with the California Department of Corporations

24   (FAC ¶ 2)

25                                                   III.

26                       STANDARD FOR A MOTION TO DISMISS

27          The Bank argues plaintiffs are required to allege the grounds showing there are entitled to

28   relief citing *Bell Atlantic v. Twombly* 550 U.S. 544, 556 (2007)  As Justice Souter noted the

                                                     2

1  complaint pleading requirements "simply calls for enough fact to raise a reasonable expectation

2  that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint

3  may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and

4  that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

5  (2007)

6      A 12(b)6 motion tests the legal sufficiency of the claims in the complaint. The

7  Court must decide whether facts alleged, if true, would entitle plaintiff to some form of

8  legal remedy. *De La Cruz v. Tormey,* 582 F2d 45, 48 (9th Cir. 1978)

9

### A.  The Court Should Deny Request for Judicial Notice

10     Bank attempts to convert its motion to dismiss into a Rule 56 summary judgment motion.

11  It's telling that Bank cites no securities case supporting its contention that the court can resolve

12  the factual question of whether Bank participated in the sale of the HRHSD investment contracts

13  at this stage.  *Wilshire Westwood Assocs. V. Atlantic Richfield Corp.,* 881 F.2d 801, 803 (9th Cir.

14  1988) (Court may take judicial notice of statements contained in writings but not of a party's

15  assertion of what the contents mean).

16     Next, the Bank proffers as judicial notice its contested interpretation of selected

17  provisions of some of the underlying transaction documents. For example, the Bank

18  asserts plaintiffs bought condominiums, alleges they bought investment contracts. It then

19  asks the Court to compare the date of a purchase agreement abd the date of the closing on

20  the loan. Weighing of the facts and interpreting the writings is not proper at the Motion to

21  Dismiss Stage.

## IV.

## PLAINTIFFS' FAC STATES A CLAIM AGAINST EAST WEST

### A.    Plaintiffs Borrowed Money from East West for Securities

25     Plaintiffs allege detailed allegations showing the HRHSD interest were securities. (FAC

26  ¶¶ 82-94) The Securities & Exchange Commission (SEC) S.E.C. Release No. 33-5347 lays out

27  the factors tending to show an offering of a security involving condominiums:

28

3

In summary, the offering of condominium units in conjunction with any one of the following will cause the offering to be viewed as an offering of securities in the form of investment contracts:

1. The condominiums, with any rental arrangement or other similar service, are offered and sold with emphasis on the economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units.

2. The offering of participation in a rental pool arrangement; and

3. The offering of a rental or similar arrangement whereby the purchaser must hold his unit available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit. In all of the above situations, investor protection requires the application of the federal securities laws.

The operative complaint alleges: (1) the HRHSD investment contracts shifted the investment risk to plaintiffs. (FAC ¶ 4); (2) the promoters emphasized the economic benefits investors would derive from the promoters managing of the rental of the units. (FAC ¶ 84); (3) The HRHSD agreement gave promoters the right to manage HRHSD with broad exclusive authority. (FAC ¶ 87); (4) Investors were not issued keys and all keys were controlled by the promoters (FAC ¶ 89); Investors were limited to staying in the units to 28 days per year. (FAC ¶ 88); Investors were required to pay the promoters for managing their units. (FAC ¶ 90); whether investors made money was dependent on the managerial efforts of promoters (FAC 5); and finally the failure of rental income caused plaintiffs losses (FAC ¶ 7)

It is well established that a condominium could be classified as a security. In *Hocking v. Dubois* 885 F2d. 1449, 1460-61 (9th Cir 1989), the Court reversed the district court's dismissal of a condominium investment securities case. The Court as a threshold matter noted that an investment contract is not necessarily missing "where the tangible interest which is sold has intrinsic value independent of the success of the enterprise as a whole." *Id.* at 1455. The Court

4

1   further cited the 1973 SEC Release No. 33-5347 related to condominium securities: "Release
2   5347 puts developers and promoters on notice of three situations which the SEC views as
3   involving the offering of a security." *Id.* at 1456.

4       Ironically, the *Hocking* court relying on *Williamson v. Tucker, 645 F.2d 404, 424-25 (5th*
5   *Cir. 1981)* found a security to be present because a condominium was operated as a hotel:

6       The third factor suggested in *Williamson* provides the closest fit to an investment
7       in a resort condominium involving an RPA. Hocking's investment is a unit in a
        resort condominium, **allegedly operated as a hotel**, with many investors pooling
8       their units together. In order for Hocking to replace HCP, he would have to gain
9       the votes of 75 percent of participating investors. These facts alone create a real
        question whether Hocking was stuck with HCP as a rental manager. Had Hocking
10      purchased a residential condominium for investment purposes, to be rented out to
11      long-term tenants, then it would have been a relatively easy matter to switch rental
        agents. **Managing a resort operated as a hotel**, which solicits guests from the
12      mainland and charges nightly rates for short-term visits, may be a much more
13      difficult service to replace than that of a long-term leasing agent. The commercial
        viability of a one-room hotel does not strongly argue for separate management.
14      The individual investor may have no choice but to place his condominium in the
15      rental pool, if he is to receive significant rental income.

16      Like the *Hocking* plaintiffs, Plaintiffs have satisfied the pleading requirements related to the
17  securities element of § 12(2).

18      1.   **Ninth Circuit Cases Do Not Support a Motion to Dismiss in this Case**
19      Bank cites *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and argues that plaintiffs' allegations are
20  not plausible.  The operative complaint alleges the HRHSD investment contracts were not
21  registered or qualified with the SEC or Department of Corporations.  An exemption notice was
22  filed with the Department of Corporations admitting the investments were securities but did not
23  complete the exemption requirements.  A public offering of the HRHSD investment contracts was
24  made.  The owners did not get keys to their units, could only stay there 28 days a year, and rental
25  of the units was managed exclusively by promoters.  East West Bank, with knowledge of these
26  facts, stepped outside the role of normal lending and underwrote $42,726,435 worth of the
27  investment contracts.  (FAC ¶ 7) Investors have lost substantial funds because of the rental
28

1   income has been insufficient. This is an outcome the securities laws are designed to prohibit.

2   *Hocking v. Dubois* 885 F. 2d 1449 (9th Cir. 1989). This case does not violate the strictures of

3   *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009)

4        Bank argues portions of the operative complaint are outlawed by *Bell Atl. Corp. v.*

5   *Twombly,* 550 U.S. 544 (2007) Again, Bank overstates its authority. *Twombly* requires a plaintiff

6   to provide the grounds for the relief it seeks; a formulaic recitation of the elements of a cause of

7   action will not do.  Here, Plaintiffs *do* provide the grounds for the relief sought.  The two quoted

8   paragraphs appear at the end of the detailed allegations and are based on the earlier allegations as

9   stated.  (FAC ¶ 144)

10   **B**     **Plaintiffs State a Securities Claim that East West Bank Participated in Security Sale**

11        Plaintiffs 12(2) theory of liability against the Bank alleges Bank "participated in the sale

12   of the unregistered HRHSD Investment securities by acting as underwriters of the HRHSD

13   Investment Contract offering in providing the essential financing needed to consummate the sales

14   of HRHSD Investment Contracts." (Operative Complaint ¶ 114)   Thus, plaintiffs' allege Bank

15   violated § 12(2) based on its participation in the sale.

16        Under § 12(2) the term "security" includes investment contract and any note or evidence

17   of indebtedness [15 USCS § 77b(1)] and the terms "sale" or "sell" include every contract of sale

18   or disposition of a security or interest in a security for value [15 USC §77b(2)].  Under 12(2) the

19   term "underwriter" includes any person who participates or has a direct or indirect participation in

20   the distribution of any security or participates or has a participation in the direct or indirect

21   underwriting of any such undertaking. 15 USC 77b(1)(11)

22        The Ninth Circuit follows the reasoning of *Pinter v. Dahl*, 486 U.S. 622 (1988) in

23   determining seller liability under section 12(2). *In re Daou Systems, Inc.,* 411 F. 3d 1006, 1029

24   (9th Cir. 2005) in which the court found plaintiffs' allegations were sufficient to state a §12(2)

25   claim, reversed the district court's contrary ruling and directed further review by the district court

26   of the remaining § 12(2) elements. *Id* at 1029.  In *Pinter*, the Court acknowledged seller liability

27   extends to those who solicit a purchase of a security when "motivated at least in part by a desire

28   to serve his own financial interests or those of the securities owner." *Id.* at 647.

6

1    In this case, Bank was in privity with plaintiffs. (FAC ¶¶ 48, 130)  Bank underwrote the

2  sale of $42, 726,435 of the HRHSD investment contracts securities (FAC ¶¶ 48, 130) Moreover,

3  East West Bank was motivated at least in part by a desire to to assist hotel defendants in light of

4  its $88 million construction promissory note from 5th Rock LLC in favor of East West bank,

5  which got paid off in February 2008, just after the hotel's December 2007opening.  (FAC ¶ ¶ 67,

6  132)  Bank stepped outside normal bank boundaries and used depositor funds to fund the sale of

7  the HRHSD investment contract. Bank holds a security interest in the HRHSD investment

8  contract.  If a plaintiff decides not to pay the full purchase price, the HRHSD investment contract

9  reverts through foreclosure to the Bank.  These allegations sufficiently allege the Bank was a

10  seller of the HRHSD investment contract securities.

11    In fact, plaintiffs do allege the Bank participated in the sale of the HRHSD investment

12  contracts.  Plaintiffs allege the Bank provided "the essential financing needed to consummate the

13  sales of the HRHSD investment contracts" and Bank "participated in the sale" by "acting as

14  underwriters of the HRHSD Investment Contract offering in providing the essential financing

15  needed to consummate the sales of HRHSD Investment Contracts ." (FAC ¶¶ 86, 141, 146) Thus,

16  plaintiffs have satisfied the seller pleading requirement, as the title would not have passed had

17  financing not occurred for those plaintiffs with East West loans.

18    The operative complaint alleges: First, the HRHSD investment contracts shifted the

19  investment risk to plaintiffs. (FAC ¶ 4)  Second, the promoters emphasized the economic benefits

20  investors would derive from the promoters managing of the rental of the units. (FAC ¶ 84) Third,

21  the HRHSD agreement gave promoters the right to manage HRHSD with broad exclusive

22  authority. (FAC ¶ 87)  Fourth, investors were not issued keys and all keys were controlled by the

23  promoters (FAC ¶ 89) Fifth, investors were limited to staying in the units to 28 days per year.

24  (FAC ¶ 88)  Sixth, investors were required to pay the promoters for managing their units (FAC ¶

25  90) whether investors made money was dependent on the managerial efforts of promoters. (FAC

26  5)  Seventh, the failure of rental income caused plaintiffs losses (FAC ¶ 7)

27    Bank failed to cite *Hocking v. Dubois,* 885 F2d. 1449, 1460-61 (9th Cir 1989), a case in

28

7

which the Court reversed the district court's dismissal of a condominium investment securities case. The Court as a threshold matter noted that an investment contract is not necessarily missing "where the tangible interest which is sold has intrinsic value independent of the success of the enterprise as a whole." *Id.* at 1455.  The Court further cited the 1973 SEC Release No. 33-5347 related to condominium securities: "Release 5347 puts developers and promoters on notice of three situations which the SEC views as involving the offering of a security." *Id.* at 1456.

Ironically, the *Hocking* court relying on *Williamson v. Tucker, 645 F.2d 404, 424-25 (5th Cir. 1981)* found a security to be present because a condominium was operated as a hotel:

> The third factor suggested in *Williamson* provides the closest fit to an investment in a resort condominium involving an RPA. Hocking's investment is a unit in a resort condominium, **allegedly operated as a hotel**, with many investors pooling their units together. In order for Hocking to replace HCP, he would have to gain the votes of 75 percent of participating investors. These facts alone create a real question whether Hocking was stuck with HCP as a rental manager. Had Hocking purchased a residential condominium for investment purposes, to be rented out to long-term tenants, then it would have been a relatively easy matter to switch rental agents. **Managing a resort operated as a hotel**, which solicits guests from the mainland and charges nightly rates for short-term visits, may be a much more difficult service to replace than that of a long-term leasing agent. The commercial viability of a one-room hotel does not strongly argue for separate management. The individual investor may have no choice but to place his condominium in the rental pool, if he is to receive significant rental income.

Like the *Hocking* plaintiffs, Plaintiffs have satisfied the pleading requirements related to the securities element of § 12(2).  Thus, plaintiffs have satisfied the seller pleading requirement.

## V.

## PLAINTIFFS STATE A  CORP. CODE 25110, 25503, 25504.1 CLAIM

A.    **Plaintiffs Claims for 25110, 25503, 25504.1 Do Not Fail**

The Bank claims that plaintiffs do not allege the HRHSD investment contracts are securities is wrong.  (See discussion under IV above )  Bank argues § 25110 has a 1 year statute of limitations that has expired.  However, Corp Code § 25507 (a) provides for a 2 year statute of limitations. The question of whether the statute of limitations has expired is a question of fact that

8

1   cannot be resolved at this stage of the case. *Johnson v. Haberman & Kassoy,* (1988) 201 Cal.

2   App. 3d 1468, 1476.

3         The Bank next argues that it is not primarily liable under Corp Code § 25503.  Plaintiffs

4   do not intend to allege a primary liability claim against the Bank under Corp Code § 24503. See,

5   *Apollo Capital Fund LLC v. Roth Capital Partners LLC,* (2007) 158 Cal App. 4th 226, 257.

6         The Bank cites the 2 year statute of limitations for Corp Code § 25505.1 claims and asks

7   the court to resolve the factual question of when the statute began to run as a matter of law when

8   it must be reserved for resolution as a question of fact. *Johnson v. Haberman & Kassoy,* (1988)

9   201 Cal. App. 3d 1468, 1476.

10        The operative complaint alleges the plaintiffs were required to execute three writings that

11   formed the core of the HRHSD investment contract: (1) the purchase contract; (2) the unit

12   maintenance agreement; and (3) the rental agreement. (FAC § 86)  The bank relies solely on the

13   date of the purchase contract and does not mention the dates of the unit maintenance agreement or

14   the rental agreement.  Plaintiff contends the sales of the securities were not made until after the

15   three agreements were executed and the sale escrows closed.  The question of the date of sale is a

16   question of fact, under these circumstances.   The question of when there has been a belated

17   discovery of the cause of action is ordinarily a question of fact. *Johnson v. Haberman & Kassoy,*

18   (1988) 201 Cal. App. 3d 1468, 1476; *see Sylve v. Riley* (1993) 15 Cal. App. 4th 23, 26 (whether

19   reasonable diligence was exercised is generally a question of fact that precludes summary

20   judgment); *see also 65 Butterfield v. Chicago Title Ins. Co.,* (1999) 70 Cal. App. 4th 1047, 1054

21   (resolution of statute of limitations issue normally question of fact)].

22        The complaint alleges plaintiffs discovered the basis of their legal action *after* plaintiffs

23   consulted legal counsel.  (FAC § 81)  Relying on Bank's proffered documents in support of its

24   complaint, Bank cannot properly rely on its selective use and interpretation of documents under

25   the guise of a request for judicial notice. *Wilshire Westwood Assocs. V. Atlantic Richfield Corp.,*

26   881 F.2d 801, 803 (9th Cir. 1988) (Court may take judicial notice of statements contained in

27   writings but not of a party's assertion of what the contents mean).

28        Corp Code § 25504.1 provides liability for those who "materially assist" sales of

9

1  unqualified securities in violation of section 25110 with intent to deceive.  The FAC alleges the

2  Bank materially assisted in the unlawful sale of more than $42,000,000 of unqualified and

3  unregistered HRHSD investment securities with knowledge that the HRHSD investment contracts

4  had not been registered or qualified by acting as the underwriter of the HRHSD investment

5  contract offering in providing the essential financing needed to consummate the sales of the

6  HRHSD investment contracts.  (FAC ¶¶137, 138, 141)  Plaintiffs have alleged a valid materially

7  assistance violation under § 25504.1 based on the underlying §§ 25110, 25503 violations.

8

9  **B.    Plaintiffs Claims for 25401, 25501, and 25504.1 Do Not Fail**

10        Corp Code § 25504.1 provides that any person who "materially assists" in a violation of

11  § 25401, "with intent to deceive or defraud, is jointly and severally liable with any other person

12  liable" for the violation. In California, the Supreme Court has repeatedly indicated that "intent to

13  defraud" is the intent "to induce reliance" on the knowing misrepresentation or omission. *Lazar v.*

14  *Superior Court,* (1996) 12 Cal.4th 631, 638. Thus, when a complaint alleges facts to show the

15  Bank materially assisted the sales of the HRHSD investment contracts and intended to induce the

16  investors to rely on representations known to be false or misleading, the complaint properly

17  alleges a claim for liability under  § 25504.1. *Apollo Capital Fund LLC v. Roth Capital Partners,*

18  *LLC*, (2007) 158 Cal. App. 4th 226, 257.

19        In this case, the operative complaint alleges that Bank materially assisted in the unlawful

20  sale of over $42,000,000 of unqualified and unregistered HRHSD investment securities with

21  knowledge that the HRHSD investment contracts had not been registered or qualified by acting as

22  the underwriter of the HRHSD investment contract offering in providing the essential financing

23  needed to consummate the sales of the HRHSD investment contracts.  (FAC ¶¶ 48,130,) Further,

24  the Bank knew or should have known that the HRHSD rental program was mandatory and that

25  the reason their co-defendants were misrepresenting the rental agreement program was voluntary

26  was to conceal the fact that the defendants were making a public offering of HRHSD investment

27  securities. (FAC ¶ 143) Plaintiffs have alleged valid § 25504.1 claims based on the underlying §

28  25501 claims.

10

# VI.

## THE OPERATIVE COMPLAINT SATISFIES RULE 9(B)

A. **Fed. R. Civ. P. 9(b) Does Not Apply to Plaintiffs' 12(2) Claims**

East West Bank argues that Rule 9(b)'s heightened pleading requirements should apply to all of plaintiffs claims. Bank relies on the fact that plaintiffs alleges a claim under California Corporations Code § 25504.1 which provides for secondary liability for those who materially assist sales of unqualified securities (Corp Code §§ 25110, 25503) or sales made on the basis of material misrepresentations or omissions of fact (§§ 25401,25501)

Moreover, Corp C §§ 25401, 25501 are modeled on § 12(2) of the Securities Act of 1933, and have less stringent requirements than 15 USCS § 78j(b) and 17 C.F.R. § 240.10b-5 regarding both scienter and causation.  For example, Corp C § 25401 does not require civil plaintiffs to demonstrate the exacting scienter standard required for 17 C.F.R. § 240.10b-5 claims. *Tse v. Ventana Med. Sys.* (2002, 3d Cir Del) 297 F3d 210, 2002 US App LEXIS 13970.

While Corp Code § 25504.1 makes liable any person who, with intent to defraud, materially assists in any violation of Corp C. §§ 25110 (sale of unqualified security) or 25401 (sale on the basis of material misrepresentations) the terms do not have the same meaning as Rule 10(b)-5.  In California, the Supreme Court has repeatedly indicated that "intent to defraud" as it relates to § 25504.1 is the intent "to induce reliance" on the knowing misrepresentation or omission. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.

Because the complaint alleges facts to show Bank materially assisted the sales of the HRHSD investment contracts and intended to induce the investors to rely on representations known to be false or misleading, the complaint properly alleges a claim for liability under section § 25504.1. *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, (2007) 158 Cal. App. 4th 226, 257.

B. **Plaintiffs' allegations provide requisite details**

This case involves a simple fact pattern. Bank is alleged to have participated in and to have materially assisted the unlawful sale of more than $42,000,000 worth of unqualified and unregistered HRHSD investment contracts to plaintiffs with knowledge that the HRHSD

11

1  investment contracts were not registered or qualified as required by law.  It is also alleged that

2  Bank knew or should have known that sales were made to plaintiffs based upon material

3  misrepresentations that the HRHSD investment contracts were required to be registered or

4  qualified by the SEC or the Department of Corporations.  (FAC § 137) In so acting the Bank

5  violated § 12(2) of the 1933 Securities Act (FAC ¶ 144 *et seq*) , §25504.1 based on violation of

6  the qualification requirement law § 25110 (FAC ¶ 148 *et seq*) and material misrepresentations

7  based on violation of § 25401 (FAC ¶ 152 *et seq*).  Bank's citation *of Ackerman v. Northwestern*

8  *Mut. Life Ins. Co.*, 172 F. 3d 467, 469 (7th Cir. 1999)

9          In *Ackerman,* Justice Posner[1] explains that the defensible purpose of the heightened

10  pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation

11  before filing a fraud complaint. *Id.* at 469.  In this case, the essential grounds of the complaint are

12  alleged in the operative complaint.  The HRHSD investment contracts were not registered or

13  qualified.  Bank funded  more than $42,000,000 of the sales of the HRHSD investment contracts.

14  Under the HRHSD investment contracts, plaintiffs relied on the managerial efforts of the

15  promoters to rent their units.  The lack of rental income has cost plaintiffs substantial damages.

16          Bank's reliance on *Ackerman* however, is inapposite. The instant case, unlike *Ackerman,*

17  is not a case in which different misrepresentations were made to different plaintiffs at different

18  times by different people. This case is one in which plaintiffs allege a material omission based on

19  the fact that all of the plaintiffs were excluded from receiving knowledge of the information that

20  the HRHSD investment contracts were required to be registered and qualified.  *Rosenberg v. CNA*

21  *Fin. Corp.*, 2005 U.S. Dist. LEXIS 15578 (2005)

22      C.  **Scienter is Not Required**

23          The operative complaint alleges that the Bank knew the HRHSD investment contract

24  securities should have been but were not registered or qualified with the SEC or Department of

25  Corporations. It alleges that Bank knew its customers were not told of those facts.  Plaintiffs are

26  not required to allege more to support this simple and straight forward theory of recovery.

27  _____

28  [1] Justice Posner has publicly acknowledged the need for strict regulation in light of the financial crisis that has struck the nation. See, Posner, Richard A. *A Failure of Capitalism.*

12

**VII.**

**CONCLUSION**

For the reasons stated the motion to dismiss should be denied. Alternatively, plaintiffs should be allowed to amend the complaint to bring it into conformity with the Court's rulings.

Respectfully submitted,

AGUIRRE, MORRIS & SEVERSON LLP

Dated:  June11, 2010                                   /s/ Maria C. Severson

Maria C. Severson
mseverson@amslawyers.com

13