1  Michael J. Aguirre, Esq., SBN 060402
   maguirre@amslawyers.com
2  Christopher S. Morris, Esq., SBN 163188
   cmorris@amslawyers.com
3  Maria C. Severson, Esq., SBN 173967
   mseverson@amslawyers.com
4  AGUIRRE, MORRIS & SEVERSON LLP
   444 West C Street, Suite 210
5  San Diego, CA 92101
   Telephone: (619) 876-5364
6  Facsimile: (619) 876-5368

7  Attorneys for Plaintiffs

8

### UNITED STATES DISTRICT COURT

9

### SOUTHERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| TAMER SALAMEH, an individual; REAL ESTATE 4 HOSPITALITY, LLC, a California limited liability company; ALEKSEY KATS; DIANA KATS; MITCHELL J. PEREIRA; GARY A. TORRETTA; ROBERT ALVARENGA; ALEXIS COSIO; CESAR MOTA; DENIS B. ROTHE JR; CHARLENE SCHRUFER; DAVID R. BUSHY; DALE CURTIS; ZONDRA SCHMIDT; DOLORES GREEN; CHRISTY JESKE; TAZIA REYNA; MARY L. WEE SONG; KERRY L. STEIGERWALT; BETH STEIGERWALT; STUART M. WOLMAN; JEFFREY E. LUBIN AND BARBARA L. LUBIN, INDIVIDUALLY AND AS CO-TRUSTEES OF THE LUBIN FAMILY TRUST DATED MARCH 26, 2002; MIKAEL HAVLUCIYAN AND THERESE HAVLUCIYAN INDIVIDUALLY AND AS CO-TRUSTEES OF THE HAVLUCIYAN FAMILY TRUST;  SADOUX KIM; individually and on behalf of a Class of all others similarly situated, | Case No.  09-CV-02739-DMS-CAB  **PLAINTIFFS' OPPOSITION TO XBR FINANCIAL SERVICES' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR VIOLATION OF FEDERAL AND STATE SECURITIES LAWS**  DATE   June 25, 2010 TIME:  1:30 a.m. PLACE:  Courtroom of the  Honorable Dana M. Sabraw, United States District Court Judge |

Plaintiffs,

v.

TARSADIA HOTEL, a California Corporation; TUSHAR PATEL, an individual; B.U. PATEL, an individual; GREGORY CASSERLY, an individual; 5th

1   ROCK LLC, a Delaware limited liability
    company; MPK ONE, LLC, a California
2   limited liability company; GASLAMP
    HOLDINGS, LLC, a California limited
3   liability company; PLAYGROUND
    DESTINATION PROPERTIES, a
4   corporation; EAST WEST BANK, a
    California corporation; BANK OF
5   AMERICA, a Delaware Corporation; JP
    MORGAN CHASE; PROFESSIONAL
6   MORTGAGE PARTNERS, INC.;  XBR
    FINANCIAL SERVICES, LLC, a California
7   limited liability company;  ERSKINE
    CORP, a California Corporation; and DOES
8   1 to 100, inclusive,

9                            Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    I.      INTRODUCTION ...................................................................................1

3    II.     SUMMARY OF RELEVANT FACTS ..................................................1

4    III.    STANDARD FOR A MOTION TO DISMISS ......................................3

5    IV.     PLAINTIFFS STATE A 12(2) CLAIM .................................................3

6    V.      PLAINTIFFS STATE A CORP. CODE
             25110, 25503, 25504.1 CLAIM............................................................6

7
             A.      Plaintiffs Claims for 25110, 25503, and 25504.1
8                    Do Not Fail ...............................................................................6

9            B.      Plaintiffs Claims for 25401, 25501, and 25504.1
                     Do Not Fail ...........................................................................12

10   VI.     CONCLUSION ....................................................................................13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

## FEDERAL AUTHORITIES

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)..................................................................2

*De La Cruz v. Tormey*
   582 F2d 45 (9th Cir. 1978) ......................................................2

*Hocking v. Dubois*
   885 F2d. 1449 (9th Cir 1989).................................................4, 5

*In re Daou Systems, Inc.*
   411 F. 3d 1006, 1029  (9th Cir. 2005).......................................3

*Pinter v. Dahl*
   486 U.S. 622 (1988) ................................................................3

S.E.C. Release No. 33-5347 ......................................................4, 5

*Williamson v. Tucker*
   645 F.2d 404, 424-25 (5th Cir. 1981) .......................................5

*Wilshire Westwood Assocs. V. Atlantic Richfield Corp.*
   881 F.2d 801, 803 (9th Cir. 1988)..........................................2, 6


## STATUTES

15 USCS
   § 77b(1) ................................................................................3
   § 77b(2) ................................................................................3
   § 77b(11) ..............................................................................3
   § 77m ...................................................................................2


## NON-FEDERAL AUTHORITIES

*65 Butterfield v. Chicago Title  Ins. Co.*
   (1999) 70 Cal.App.4th 1047.....................................................6

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*
   158 Cal. App. 4th 226 (2007) ..................................................7

*Finalco, Inc. v. Roosevelt,*
   235 Cal. App. 3d 1301.(1991) .................................................1

*Johnson v. Haberman & Kassoy*
   201 Cal. App. 3d 1468 (1988) .................................................6

ii

*Lazar v. Superior Court*
    12 Cal.4th 631 (1996) ..................................................................................7

*Manufacturers Hanover Trust Co. v. Robinson*
    (1993) 157 Misc. 2d 651; 597 N.Y.S.2d 986; 1993 N.Y. Misc. LEXIS 170....................1

*Sylve v. Riley*
    15 Cal. App. 4th 23 (1993) .........................................................................6

**STATUTES**

**California Uniform Commercial Code**
    §3302  .........................................................................................................1

**California Corporations Code**
    §25110.........................................................................................................7
    §25401.........................................................................................................7
    §25501.........................................................................................................8
    §25503.........................................................................................................7
    §25504.1...................................................................................................5, 7
    §25507.........................................................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.

# INTRODUCTION

XBR Financial Services LLC is a mystery.  After this action was filed against defendant East West Bank (Bank), several plaintiffs were notified the Bank had assigned plaintiffs' notes obtained as a result of the alleged securities law violations to defendant XBR Financial Services LLC (XBR).  [First Amended Complaint "FAC" ¶49] Why would XBR buy notes that were made in violation of securities laws, after the claims were filed?

XBR provides a possible answer with its contention that the FAC purchased negotiable instruments from a bank that merely provided some plaintiffs with mortgage loans. (Motion Memo 2:3-5)  Plaintiffs' claims against XBR seem to be governed by *Finalco, Inc. v. Roosevelt*, 235 Cal. App. 3d 1301.  (1991)

In *Finalco* defendant purchased from a company two units of undivided co-ownership interests in certain computer equipment leased to plaintiff, paying some cash and executing a note for the balance. In theory, defendant was not to be required to make payments on the note because payments would be covered by plaintiff's lease payments. The note was assigned to plaintiff. Plaintiff filed suit for the balance due on the note, defendant cross-claimed based on violations of federal and state securities laws.  The plaintiff was allowed to proceed to trial but was unable to present adequate poof of his alleged claims.  The *Finalco* court reviewed the evidence and found nothing to suggest the defendant was aware of any tortious scheme *Finalco, Inc. v. Roosevelt*, 235 Cal. App. 3d 1301, 1305. Unlike the facts in this case, there was no pending case alleging securities law violations when the assignment of interests was made to the would-be holder in due course.  See, *Manufacturers Hanover Trust Co. v. Robinson* (1993) 157 Misc. 2d 651; 597 N.Y.S.2d 986; 1993 N.Y. Misc. LEXIS 170.  Moreover, unlike in *Finalco*, XBR does not appear to be a bona fide holder in due course. In order to be a holder in due course XBR had to purchase plaintiffs' notes for value, in good faith, without notice that the instrument has been dishonored. *Cal U Com Code § 3302.* (Prior holder in due course of promissory notes indorsed in blank,

1

which it transferred to a party allegedly guilty of fraud, is not, upon reacquisition of the notes

from such party, entitled to enforce the notes as a holder in due course.)

## II.

## LEGAL STANDARD FOR A MOTION TO DISMISS

As Justice Souter noted, the complaint pleading requirements "simply calls for enough

fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.

And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and that a recovery is very remote and unlikely. *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007)

A 12(b)6 motion tests the legal sufficiency of the claims in the complaint. The

Court must decide if whether facts alleged, if true, would entitle plaintiff to some form of

legal remedy. *De La Cruz v. Tormey* 582 F2d 45, 48 (9th Cir. 1978)

## III

## THE FIRST CLAIM FOR RELIEF 12(2) SHOULD NOT BE DISMISSED

### A.   <u>Limitations Does Not Bar Claims</u>

The complaint was first filed on 8 December 2009. A § 12(2) claim must be brought

within one year after the discovery of the untrue statement or omission, or after such discovery

should have been made by the exercise of reasonable diligence, or more than three years after the

sale. See, 15 U.S.C. § 77m. The operative complaint alleges the plaintiffs were required to

execute three writings that formed the core of the HRHSD investment contract: (1) the purchase

contract; (2) the unit maintenance agreement; and (3) the rental agreement. (FAC § 86)

The complaint alleges plaintiffs discovered the basis for their case after plaintiffs

consulted legal counsel. (FAC § 81) XBR cannot properly rest its argument that the statue of

limitations has rune based on the Bank's selective use and interpretation of documents under the

guise of a request for judicial notice. *Wilshire Westwood Assocs. V. Atlantic Richfield Corp.,* 881

F.2d 801, 803 (9th Cir. 1988) (Court may take judicial notice of statements contained in writings

2

1   but not of a party's assertion of what the contents mean).

2   **B. The Operative Complaint Alleges Necessary Facts**

3
4       XBR is incorrect when it argues that plaintiffs have not alleged sufficient facts to state a §

    12(2) claim.  The Ninth Circuit follows the reasoning of *Pinter v. Dahl*, 486 U.S. 622 (1988) in
5
    determining seller liability under section 12(2). *In re Daou Systems, Inc.*, 411 F. 3d 1006, 1029
6
    (9th Cir. 2005) in which the court found plaintiffs' allegations were sufficient to state a §12(2)
7
    claim, reversed the district court's contrary ruling and directed further review by the district court
8
    of the remaining § 12(2) elements. *Id* at 1029. In *Pinter*, the Court acknowledged seller liability
9
    extends to those who solicit a purchase of a security when "motivated at least in part by a desire
10
    to serve his own financial interests or those of the securities owner." *Id.* at 647.
11
        Under § 12(2) the term "security" includes investment contract and any note or evidence
12
    of indebtedness [15 USCS § 77b(1)] and the terms "sale" or "sell" include every contract of sale
13
    or disposition of a security or interest in a security for value [15 USC §77b(2)].  Under 12(2) the
14
    term "underwriter" includes any person who participates or has a direct or indirect participation in
15
    the distribution of any security or participates or has a participation in the direct or indirect
16
    underwriting of any such undertaking. 15 USC 77b(1)(11)
17
        In this case, XBR stands in the shoes of East West Bank (Bank).  Plaintiffs were in privity
18
    with Bank.  (FAC ¶¶ 48, 130)  Bank underwrote the sale of $42,726, 435 of the HRHSD
19
    investment contracts -- a portion of which were assigned to XBR (FAC ¶¶ 48, 130) Bank stepped
20
    outside normal bank boundaries and used depositor funds to fund the sale of the HRHSD
21
    investment contract. Bank holds a security interest in the HRHSD investment contract.  If a
22
    plaintiff decides not to pay the full purchase price the HRHSD investment contract reverts
23
    through foreclosure to the Bank.
24
        Plaintiffs allege Bank participated in the sale of the HRHSD investment contracts.
25
    Plaintiffs allege Bank provided "the essential financing needed to consummate the sales of the
26
    HRHSD investment contracts" and Bank "participated in the sale" by "acting as underwriters of
27
    the HRHSD Investment Contract offering in providing the essential financing needed to
28

3

1   consummate the sales of HRHSD Investment Contracts ." (FAC ¶¶ 86, 141, 146) Thus, plaintiffs

2   have satisfied the seller pleading requirement.

3        Plaintiffs allege detailed allegations showing the HRHSD interest were securities. (FAC

4   ¶¶ 82-94) The Securities & Exchange Commission (SEC) S.E.C. Release No. 33-5347 lays out

5   the factors tending to show an offering of a security involving condominiums:

6        In summary, the offering of condominium units in conjunction with any one of the
7        following will cause the offering to be viewed as an offering of securities in the
        form of investment contracts:
8

9        1. The condominiums, with any rental arrangement or other similar service, are
        offered and sold with emphasis on the economic benefits to the purchaser to be
10       derived from the managerial efforts of the promoter, or a third party designated or
11       arranged for by the promoter, from rental of the units.

12       2. The offering of participation in a rental pool arrangement; and

13
        3. The offering of a rental or similar arrangement whereby the purchaser must hold
14       his unit available for rental for any part of the year, must use an exclusive rental
15       agent or is otherwise materially restricted in his occupancy or rental of his unit. In
        all of the above situations, investor protection requires the application of the
16       federal securities laws.

17

18       The operative complaint alleges: (1) the HRHSD investment contracts shifted the

19   investment risk to plaintiffs. (FAC ¶ 4); (2) the promoters emphasized the economic benefits

20   investors would derive from the promoters managing of the rental of the units. (FAC ¶ 84); (3)

21   The HRHSD agreement gave promoters the right to manage HRHSD with broad exclusive

22   authority. (FAC ¶ 87); (4) Investors were not issued keys and all keys were controlled by the

23   promoters (FAC ¶ 89); Investors were limited to staying in the units to 28 days per year. (FAC ¶

24   88); Investors were required to pay the promoters for managing their units. (FAC ¶ 90); whether

25   investors made money was dependent on the managerial efforts of promoters (FAC 5); and finally

26   the failure of rental income caused plaintiffs losses (FAC ¶ 7)

27       XBR failed to cite *Hocking v. Dubois* 885 F2d. 1449, 1460-61 (9th Cir 1989), a case in

28

4

which the Court reversed the district court's dismissal of a condominium investment securities case. The Court as a threshold matter noted that an investment contract is not necessarily missing "where the tangible interest which is sold has intrinsic value independent of the success of the enterprise as a whole." *Id.* at 1455.  The Court further cited the 1973 SEC Release No. 33-5347 related to condominium securities: "Release 5347 puts developers and promoters on notice of three situations which the SEC views as involving the offering of a security." *Id.* at 1456.

Ironically, the *Hocking* court relying on *Williamson v. Tucker, 645 F.2d 404, 424-25 (5th Cir. 1981)* found a security to be present because a condominium was operated as a hotel:

> The third factor suggested in *Williamson* provides the closest fit to an investment in a resort condominium involving an RPA. Hocking's investment is a unit in a resort condominium, **allegedly operated as a hotel**, with many investors pooling their units together. In order for Hocking to replace HCP, he would have to gain the votes of 75 percent of participating investors. These facts alone create a real question whether Hocking was stuck with HCP as a rental manager. Had Hocking purchased a residential condominium for investment purposes, to be rented out to long-term tenants, then it would have been a relatively easy matter to switch rental agents. **Managing a resort operated as a hotel**, which solicits guests from the mainland and charges nightly rates for short-term visits, may be a much more difficult service to replace than that of a long-term leasing agent. The commercial viability of a one-room hotel does not strongly argue for separate management. The individual investor may have no choice but to place his condominium in the rental pool, if he is to receive significant rental income.

///

Like the *Hocking* plaintiffs, Plaintiffs have satisfied the pleading requirements related to the securities element of § 12(2). Thus, plaintiffs have satisfied the seller pleading requirement.

## IV.

## THE SECOND CLAIM FOR RELIEF SHOULD NOT BE DISMISSED

### A. <u>Plaintiffs' State Law Claims Are Not Time Barred</u>

Again, the complaint was filed 8 December 2009.  Corp Code § 25507 (a) provides no action can be brought for materially assisting the sale of unqualified securities under 25504.1 unless brought before the expiration of two years after the violation upon which it is based or the

5

1   expiration of one year after the discovery by the plaintiff of the facts constituting such violation,

2   whichever shall first expire.

3          The operative complaint alleges the plaintiffs were required to execute three writings that

4   formed the core of the HRHSD investment contract: (1) the purchase contract; (2) the unit

5   maintenance agreement; and (3) the rental agreement. (FAC § 86)  The bank relies solely on the

6   date of the purchase contract and does not mention the dates of the unit maintenance agreement or

7   the rental agreement.  Plaintiff contends that the sales of the securities were made until after the

8   three agreements were executed and the sale escrows closed.  The question of the date of sale is a

9   question of fact, under these circumstances.  The question of when there has been a belated

10  discovery of the cause of action is ordinarily a question of fact. *Johnson v. Haberman & Kassoy*

11  (1988) 201 Cal. App. 3d 1468, 1476; *see Sylve v. Riley* (1993) 15 Cal. App. 4th 23, 26 (whether

12  reasonable diligence was exercised is generally a question of fact that precludes summary

13  judgment); *see also 65 Butterfield v. Chicago Title Ins. Co.* (1999) 70 Cal. App. 4th 1047, 1054

14  (resolution of statute of limitations issue normally question of fact)].

15         The complaint alleges plaintiffs discovered the basis of their legal action after plaintiffs

16  consulted legal counsel.  (FAC § 81) Bank cannot properly rely on its selective use and

17  interpretation of documents under the guise of a request for judicial notice. *Wilshire Westwood*

18  *Assocs. V. Atlantic Richfield Corp.,* 881 F.2d 801, 803 (9th Cir. 1988) (Court may take judicial

19  notice of statements contained in writings but not of a party's assertion of what the contents

20  mean).

21  **B. The Operative Complaint Alleges Necessary Facts for Failure to Qualify Claim**

22         XBR argues the allegations of the FAC are insufficient to state a claim against XBR.

23  However, XBR stands in the shoes of Bank.  The operative complaint alleges the plaintiffs were

24  required to execute three writings that formed the core of the HRHSD investment contract: (1) the

6

1    purchase contract; (2) the unit maintenance agreement; and (3) the rental agreement. (FAC § 86)

2       Corp Code § 25504.1 provides liability for those who "materially assist" sales of

3    unqualified securities in violation of section 25110 with intent to deceive.  The FAC alleges the

4    Bank materially assisted in the unlawful sale of more than $42,726,435 (a portion of which were

5    assigned to XBR) of unqualified and unregistered HRHSD investment securities with knowledge

6    that the HRHSD investment contracts had not been registered or qualified by acting as the

7    underwriter of the HRHSD investment contract offering in providing the essential financing

8    needed to consummate the sales of the HRHSD investment contracts.  (FAC ¶¶137, 138, 141)

9    Plaintiffs have alleged a valid materially assistance violation under § 25504.1 based on the

10    underlying §§ 25110, 25503 violations.

**V.**

**THE THIRD CLAIM FOR RELIEF SHOULD NOT BE DISMISSED**

14       Corp Code § 25504.1 provides that any person who "materially assists" in a violation of

15    § 25401, "with intent to deceive or defraud, is jointly and severally liable with any other person

16    liable" for the violation. In California, the Supreme Court has repeatedly indicated that "intent to

17    defraud" is the intent "to induce reliance" on the knowing misrepresentation or omission. *Lazar v.*

18    *Superior Court,* (1996) 12 Cal.4th 631, 638. Thus, when a complaint alleges facts to show the

19    Bank materially assisted the sales of the HRHSD investment contracts and intended to induce the

20    investors to rely on representations known to be false or misleading, the complaint properly

21    alleges a claim for liability under  § 25504.1. *Apollo Capital Fund LLC v. Roth Capital Partners,*

22    *LLC,* (2007) 158 Cal. App. 4th 226, 257.

23       In this case, the operative complaint alleges that Bank materially assisted in the unlawful

24    sale of over $42,000,000 of unqualified and unregistered HRHSD investment securities with

25    knowledge that the HRHSD investment contracts had not been registered or qualified by acting as

26    the underwriter of the HRHSD investment contract offering in providing the essential financing

27    needed to consummate the sales of the HRHSD investment contracts.  (FAC ¶¶ 48,130)  Further,

28    the Bank knew or should have known that the HRHSD rental program was mandatory and that

1   the reason their co-defendants were misrepresenting the rental agreement program was voluntary

2   was to conceal the fact that the defendants were making a public offering of HRHSD investment

3   securities. (FAC ¶ 143) Plaintiffs have alleged valid § 25504.1 claims based on the underlying §

4   25501 claims.

**VI.**

**CONCLUSION**

Upon these premises XBR's motion should be denied or plaintiffs should be granted leave
to amend their complaint to bring it into conformity with the Court's ruling.

Respectfully submitted,

AGUIRRE, MORRIS & SEVERSON LLP

Dated:  June 11, 2010                    ___/s/ Maria C. Severson____
Maria C. Severson
mseverson@amslawyers.com

8