1  BRYAN CAVE LLP
   Robert E. Boone, California Bar No. 132780
2  Email: reboone@bryancave.com
   Edward M. Rosenfeld, California Bar No. 49943
3  Email: emrosenfeld@bryancave.com
   Timothy L. Hayes, California Bar No. 175958
4  Email: tlhayes@bryancave.com
   120 Broadway, Suite 300
5  Santa Monica, CA 90401
   Telephone: (310) 576-2100
6  Facsimile: (310) 576-2200

7  Attorneys for Defendant
   BANK OF AMERICA, N.A. erroneously sued
8  as "Bank of America, a Delaware corporation"

9              UNITED STATES DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  TAMER SALAMEH, an individual; REAL ESTATE 4 HOSPITALITY, LLC, a California 12  limited liability company; ALEKSEY KATS; DIANA KATS, MITCHELL J. PEREIRA; 13  GARY A. TORRETTA; ROBERT ALVARENGA; ALEXIS COSIO; CESAR 14  MOTA; DENIS B. ROTHE JR; CHARLENE SCHRUFER; DAVID R. BUSHY; DALE 15  CURTIS; ZONDRA SCHMIDT; DOLORES GREEN; CHRISTY JESKE; TAZIA REYNA; 16  MARY L. WEE SONG; KERRY L. STEIGERWALT; BETH STEIGERWALT; 17  STUART M. WOLMAN, JEFFREY E. LUBIN AND BARBARA L. LUBIN, 18  INDIVIDUALLY AND AS CO-TRUSTEES OF THE LUBIN FAMILY TRUST DATED 19  MARCH 26, 2002; MIKAEL HAVLUCIYAN AND THERESE HAVLUCIYAN 20  INDIVIDUALLY AND AS CO-TRUSTEES OF THE HAVLUCIYAN FAMILY TRUST, 21  SADOUX KIM; individually and on behalf of a Class of others similarly situated, 22 23              Plaintiffs, v. 24  TARSADIA HOTEL, a California 25  Corporation; TUSHAR PATEL, an individual; B.U. PATEL, an individual; GREGORY 26  CASSERLY, an individual; 5th ROCK LLC, a Delaware limited liability company; MPK 27  ONE, LLC, a California limited liability company; GASLAMP HOLDINGS, LLC, a 28  California limited liability company; | CASE NO. 09-CV-2739-DMS-CAB<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BANK OF AMERICA, N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR ALLEGED VIOLATIONS OF FEDERAL AND STATE SECURITIES LAWS<br><br>Date:   June 25, 2010<br>Time:   1:30 p.m.<br>Place:  Courtroom of the Honorable Dana M. Sabraw, United States District Judge |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  PLAYGROUND DESTINATION
   PROPERTIES, a corporation; EAST WEST
2  BANK, a California corporation; BANK OF
   AMERICA, a Delaware Corporation; JP
3  MORGAN CHASE; PROFESSIONAL
   MORTGAGE PARTNERS, INC.; XBR
4  FINANCIAL SERVICES, LLC, a California
   limited liability company; ERSKINE CORP., a
5  California Corporation; and DOES 1 to 100,
   inclusive,
6
           Defendants.
7

Bank of America, N.A.("BANA"), incorrectly sued as "Bank of America, a Delaware corporation," herewith replies to the June 11, 2010 opposition brief ("Opp. Br.") filed by the twenty-three persons ("Plaintiffs") who sued BANA in the first amended complaint ("FAC").

## I. THE FIRST CLAIM FOR RELIEF SHOULD BE DISMISSED.

### A. Plaintiffs failed to address the authorities that require dismissal of the FAC.

BANA's opening brief cited decisions of the U.S. Supreme Court in *Pinter*,[1] the Ninth Circuit in *Moore* and *Daou*[2] and the Southern District in *Alliance Equipment*[3] each holding that Section 12(a)(2) imposes liability *only* on persons who are "directly involved" in "the actual solicitation of a securities purchase." *In re Daou Systems, Inc.*, *supra*, 411 F.3d at 1029. BANA's opening brief also pointed out that the FAC does not allege that BANA was involved in the "solicitation" process. *See, e.g.*, FAC, ¶ 69, in which Plaintiffs did not mention any alleged role played BANA when "[t]he HRHSD Investment Contracts were offered and sold to investors by use of uniform advertisements, emails, letters, or other communications, written or by television, which offered the HRHSD Investment Contracts for sale and which confirmed the sale of the HRHSD Investment Contracts." In response, Plaintiffs did not identify allegations in the FAC that BANA played any role when "[t]he HRHSD Investment Contracts were offered and sold to investors." Nor did Plaintiffs offer to amend their pleading to interpose the requisite allegations. Instead, Plaintiffs either mis-cited or omitted to cite *Pinter*, *Moore, Daou* and *Alliance Equipment*:

**<u>Pinter</u>:** Plaintiffs say that, "[i]n *Pinter*, the Court acknowledged seller liability *extends* to those who solicit a purchase of a security . . . " (emphasis added). Opp. Br. 4:1-2. In fact, *Pinter limited* "seller liability" under Section 12(a)(2) to "those who solicit a purchase of a security." In explaining its reasons for imposing this outer limit, the Court in *Pinter* pointed out that "solicitation of a buyer is perhaps the most critical stage of the selling transaction," that "solicitation is the stage at which an investor is most likely to be injured, that is, by being

---

[1] *Pinter v. Dahl*, 486 U.S. 622 (1988).

[2] *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 537 (9th Cir. 1989) and *In re Daou Systems, Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005).

[3] *In re Alliance Equipment Lease Program Securities Litigation*, 2002 WL 34451621, at *7-8 (S.D.Cal. 2002) (collecting cases).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

persuaded to purchase securities without full and fair information" and that "solicitation" "is the first stage of a traditional securities sale to involve the buyer, and it is directed at producing the sale." 486 U.S. at 646-647. Based on *Pinter*, Courts routinely dismiss Section 12(a)(2) claims against banks. *See, e.g. Schlifke v. Seafirst Corp.,* 866 F.2d 935, 940-41 (7th Cir. 1989) (a bank that does "not actively participate in the solicitation of investors" is not a "seller" under Section 12(a)(2)).[4] As in *Schlifke,* there is no allegation that BANA "actively participate[d] in the solicitation of investors." In the words of *Pinter*, the FAC does not allege that BANA did anything at the relevant "stage" that was "directed at producing the sale."

***Moore* and *Daou*:** Plaintiffs did not cite *Moore* and disingenuously told the Court that *Daou* "directed further review by the district court of the remaining § 12(2) elements." [Opp. Br. 3:27-28]. Plaintiffs thus omitted to mention that, in *Daou*, at 1029, the Ninth Circuit remanded the case because "[t]he district court failed to reach the issue of whether Daou and the individual defendants were 'directly involved' in the actual solicitation of a securities purchase" and instructed the District Court on remand that, in order "[t]o establish liability under section 12(a)(2), a plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain." No such allegation appears in the FAC.

***Alliance Equipment*:** Plaintiffs did not address Judge Jones' decision in *Alliance Equipment* insofar as it related Section 12(a)(2). Plaintiffs thus omitted to mention the fact that Judge Jones, in dismissing Section 12(a)(2) claims against an insurance broker whose sales literature was sent to "securities" buyers, warned against efforts to "reincarnate the very same substantial-factor test long ago rejected by the Supreme Court" *Id.* at *10. Before *Pinter* rejected the "substantial factor" test, plaintiffs could seek relief under Section 12(a)(2) based on the

---

[4]   *See also Smith v. American Nat. Bank and Trust Co.*, 982 F.2d 936, 942 (6th Cir. 1992) ("the facts alleged are not sufficient to make the defendant bank a person who 'offers or sells a security . . . .' [when] [t]he complaint does not allege that the bank passed title to any shares of . . . stock or offered to do so [nor] does the complaint allege that the bank solicited an offer from plaintiff . . . to buy the stock"); *Crawford v. Glenns, Inc.*, 876 F.2d 507, 511-512 (5th Cir. 1989) (defendant whose "lending activities were similar to those of a bank," was not a "seller").

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  "concept of substantial participation in the sales transaction." *Alliance Equipment* at *7 citing

2  *Pinter* at 651.

### B.  The Plaintiffs have ignored Judge Jones' warning.

Despite Judge Jones' warning against efforts to "reincarnate" Section 12(a)(2) liability based on "substantial participation" in an offering, Plaintiffs seek Section 12(a)(2) relief on the basis that BANA "participated" in the Hard Rock offering by "providing . . . financing . . . to consummate the sales of HRHSD Investment Contracts," *e.g.,* as follows (emphasis added):

> 146.  Defendants East West Bank, XBR Financial Services . . . , JP Morgan Chase . . . , Professional Mortgage Partners . . . , and Bank of American . . . , Erskine Corp. . . . <u>*participated in the sale of the unregistered HRHSD Investment securities by acting as underwriters of the HRHSD Investment Contract* offering in providing the essential financing needed to consummate the sales of HRHSD Investment Contracts</u>.

In reliance on this "participation" allegation, Plaintiffs, at Opp. Br. 3:20-23, argue that "[u]nder 12(2) [sic] the term 'underwriter' includes any person who participates or has a direct or indirect participation the distribution of any security or participates or has a participation in the direct or indirect underwriting of any such undertaking.  15 USC 77b(1)(11) [sic]." Plaintiffs thus refer to Section 2(a)(11) of the Act, 15 USC 77b(a)(11), which defines the term "underwriter" by reference to the word "participate," as follows:

> The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or <u>*participates*</u> or has a <u>*direct or indirect participation*</u> in any such undertaking, or <u>*participates*</u> or has <u>a participation in</u> the direct or indirect underwriting of any such undertaking . . . .   (Emphasis added.)

Similarly, Plaintiffs, at Opp. Br. 4:28-5:1, argue that the Court, at this stage of the case, cannot "resolve the factual question of whether Bank participated in the sale." These "underwriter" ("participation") allegations and arguments lack any semblance of merit.

### 1.  **"Participation" (without "solicitation") does not create Section 12(a)(2) liability.**

*Pinter* holds that "substantial participation in the sales transaction" does not give rise to "seller" liability. 486 U.S. at 651. Plaintiffs do not allege dealings with BANA before obligating themselves to purchase and pay for their condominium units and/or the alleged "securities."

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**2. "Underwriters" are not liable under Section 12(a)(2).**

Section 12(a)(2) does not impose civil liability on "underwriters." Instead, Section 12(a)(2) imposes liability on "[a]ny person who . . . offers or sells a security." "The 'offers or sells' clause limits § 12(a)(2) liability to two narrow classes of defendants: (1) immediate sellers . . . ; and (2) those who solicit purchases to serve their 'own financial interests or those of the securities owner.' *Pinter v. Dahl,* 486 U.S. 622, 644 n. 21, 646 . . . ." *In re Countrywide Financial Corp. Securities Litigation,* 588 F.Supp.2d 1132, 1183 (C.D.Cal. 2008). The only provision of the Act that imposes civil liability on "underwriters" is Section 11(a)(5), which provides as follows:

> In case any part of the registration statement . . . contained an untrue statement of a material fact . . . ., any person acquiring such security . . . may . . . sue— (1) every person who signed the registration statement;  (2) every person who was a director . . .; (3) every person . . . named in the registration statement as being or about to become a director . . . ; (4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him . . . ;  (5) *every underwriter with respect to such security*." (Emphasis added). 15 U.S.C. 77k(a)(5).

"The term 'underwriter' refers to the defined term for one of the five enumerated classes of individuals subject to liability under § 11 of the Securities Act."[5] In response to this outcome-determinative point, Plaintiffs, at Opp. Br. 4:11-12, argue that "Bank attacks a claim that is not alleged." But that, of course, was *precisely* BANA's point: Plaintiffs do not seek relief under the only civil liability provision in the Act as to which the term "underwriter" is apposite.

**3. BANA was not an "underwriter."**

According to Plaintiffs, BANA became an "underwriter" when it "participated" in the alleged "securities" offering by "providing . . . financing . . . to consummate the sales of HRHSD Investment Contracts." [FAC ¶ 146]. But this allegation does not make BANA an "underwriter." "An underwriter is one who has purchased stock from the issuer with an intent to resell to the public." *G. Eugene England Foundation v. First Federal Corp.*, 663 F.2d 988, 989 (10th Cir. 1973). *See In re Lehman Bros. Sec. & ERISA Litig.,* 681 F.Supp.2d 495, 499 (S.D.N.Y. 2010):

> The Rating Agencies' alleged activities may well have had a good deal to do with the composition and characteristics of the pools of mortgage loans and the credit

---

[5] *See New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, 2010 WL 1172694, *3 ftn. 5 (S.D.N.Y. 2010).

enhancements of the Certificates that ultimately were sold. *But there is nothing in the complaint to suggest that they participated in the relevant undertaking - that of purchasing the securities here at issue, the Certificates - from the issuer with a view to their resale*. The Section 11 claim therefore is insufficient in law. (Internal quotations omitted; emphasis added.)

Here, as in *Lehman*, "there is nothing in the complaint to suggest that [BANA] participated in the *relevant* undertaking - that of purchasing the securities here at issue." Likewise, as in *First Federal*, BANA did not "purchase[] stock from the issuer with an intent to resell to the public."

### 4. BANA owed no disclosure duties to Plaintiffs.

"To state a claim under Sections 11 and 12(a)(2), a plaintiff must allege that the defendants had a legal obligation to disclose the allegedly omitted information." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F.Supp.2d 243, 248 (S.D.N.Y. 2003). Plaintiffs concede, Opp. Br., 3:2-7, that, under the "general rule," "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991). Plaintiffs say, however, that "[t]he operative complaint alleges facts demonstrating that Bank did owe a duty of disclosure." *Id*. But the cases they cite, Opp. Br. 3:5-7, create a 6-part test for overcoming the "general rule" and Plaintiffs have failed to cite allegations in the FAC to satisfy this test.

### 5. Plaintiffs' Section 12(a)(2) claims are time-barred.

The Plaintiffs did not respond to BANA's opening brief argument, at 14:24-25, that "[t]he FAC does not plead facts indicating the exercise of 'reasonable diligence' to extend the 1-year limitations period." Nor could they. At all relevant times, Plaintiffs were on notice that they were buying unregistered "securities." *Meadows v. Pacific Inland Securities Corp.*, 36 F.Supp.2d 1240, 1251 (9th Cir. 1999) ("since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities"); *Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1451 (S.D.Cal. 1988) (same); *In re Rexplore, Inc. Securities Litigation*, 671 F.Supp. 679, 687 (N.D.Cal. 1987) (same).

//

//

1    **C.     The First Claim did not comply with Rule 8(a).**

2    Plaintiffs agree that *Iqbal* and *Twombly*[6] impose a duty on them to present a "plausible"
3    claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that
4    allows the court to draw the reasonable inference that the defendant is liable for the misconduct
5    alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). "Determining whether a
6    complaint states a plausible claim for relief [is] . . . a context-specific task that requires the
7    reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Here, BANA
8    submits, the FAC falls well below the minimal standards imposed by Rule 8(a).

9    **The Plaintiffs' do not "plausibly" describe the DOC exemption notice.** Plaintiffs say
10   their claims are "plausible" because BANA supposedly acted "with knowledge" that "[a]n
11   exemption notice was filed with the Department of Corporations admitting the [Hard Rock]
12   investments were securities." Opp. Br. 6:28-7:6. The FAC does not set forth how and when
13   BANA supposedly acquired this alleged "knowledge." Instead, FAC ¶ 110 alleges that "5th Rock
14   LLC admitted . . . it was selling securities, consisting of membership interests in a 28 October
15   2004 Notice of Transaction 5th Rock LLC filed with the California Commissioner of Corporations
16   on 28 October 2004." It seems, therefore, that Plaintiffs allege that BANA supposedly received
17   constructive "knowledge" as to the contents of the "28 October Notice." The Court can take
18   judicial notice of the contents of "28 October Notice." *United States v. Ritchie*, 342 F.3d 903, 908
19   (9th Cir. 2003). Even a quick glance at the "28 October Notice" [2nd RJN, Exhibit R] reveals the
20   implausibility of Plaintiffs' claim that BANA would gain "knowledge," or even a suspicion, that
21   "5th Rock LLC admitted . . . it was selling securities." The "28 October 2004 Notice," *id*., does not
22   refer to the "Promoters'" offering of $103 million of "securities" at issue in this case [FAC ¶ 56]
23   but instead it refers to a sale for $2,500 of "membership interests" in "5th Rock, LLC" itself:

24   //
25   //
26   //

---

[6]   *Ashcroft v. Iqbal,* ---U.S. ----, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

> (Department of Corporations Use Only)
> Fee Paid $ _____
> Receipt No. _____
>
> Department of Corporations File No., if any: _____
> Insert File number(s) of Previous Filings Before the Department if any
>
> FEE: $25.00  $35.00  $50.00  $150.00
> Circle the appropriate amount of fee. See Corporations Code Section 25608(c), and note below.
>
> [Note: Pursuant to Corporations Code Section 25608.3 (See Commissioner's Release No. 115-C dated December 6, 2001), the maximum filing fee associated with the Corporations Code Section 25102(f) notice has been reduced from $300 to $150, effective January 1, 2002]
>
> DEPT. OF CORPORATIONS RECEIVED LOS ANGELES  04 OCT 28 AM 9
>
> **COMMISSIONER OF CORPORATIONS**
> **STATE OF CALIFORNIA**
> **NOTICE OF TRANSACTION PURSUANT TO CORPORATIONS CODE SECTION 25102(f)**
>
> A.  Check One:   Transaction under   (X) Section 25102(f)   ( ) Rule 260.103
>
> 1. Name of Issuer: __5th Rock, LLC, a California limited liability company__
> 2. Address of Issuer: 620 Newport Center Drive, Fourteenth Floor / Newport Beach, CA / 92660
>    Mailing Address: 620 Newport Center Drive, Fourteenth Floor / Newport Beach, CA / 92660
> 3. Area Code and Telephone Number: (949) 610-8000
> 4. Issuer's state (or other jurisdiction) of incorporation or organization: California
> 5. Title of class or classes of securities sold in transaction: membership interests
> 6. The value of the securities sold or proposed to be sold in the transaction, determined in accordance with Corporations Code Sec. 25608(g) in connection with the fee required upon filing this notice, is (fee based on amount shown in line (iii) under Total Offering):
>
> |  | California | Total Offering |
> |---|---|---|
> | (a)(i) in money | $2,500.00 | $2,500.00 |
> | (ii) in consideration other than money | $_____ | $_____ |
> | (iii) total of (i) and (ii) | $_____ | $_____ |
>
> (b) ( ) Change in rights, preferences, privileges or restrictions of or on outstanding securities. ($25.00 fee) (See Rule 260.103.)
>
> 7. Type of filing under Securities Act of 1933, if applicable: _____
> 8. Date of Notice: April 15, 2004
>
> 5th Rock, LLC, a California limited liability co.
> Issuer
> [signature]
> Authorized Signature on behalf of Issuer
> MSP ONE, LLC, a California limited liability co.
> By: Sunil Patel, Manager
> Print name and title of signatory
>
> ( ) Check if issuer already has a consent to service of process on file with the Commissioner.

FAC ¶ 110 alleges that "[a] full, true and correct copy of the Notice of Transaction is attached hereto as Exhibit 1." In fact, a copy of this writing was *not* served or filed. *See* Second Request for Judicial Notice filed herewith; 2d Hayes decl., ¶ 3. This phantom "Exhibit 1" reduces the "plausibility" of Plaintiffs' claims to well below Rule 8(a)'s minimum standards.

**The Plaintiffs' improper reliance on the rental agreement.**  In further defense of the "plausibility" of their claims, Plaintiffs say that BANA had "knowledge" that, pursuant to the terms of the "Rental Management Agreement," "[t]he owners did not get keys to their units, could

only stay there 28 days a year [and] rental of the units was managed exclusively by promoters." [Opp. Br. 7:3-4]. But nowhere do Plaintiffs allege that BANA was supplied with a copy of the Rental Management Agreement. By contrast, the Unit Management and Operation Agreement produced from BANA's files provides, at § 2.1, that the "Unit Owner" had "exclusive authority" over the rental of the unit [RJN, Ex. D, p. 148, Ex. E, p. 172; 1st Hayes decl., ¶ 2]. Moreover, the Purchase Contract, as produced from BANA's files, showed that no "security" was involved:

> 19. PURCHASE NOT AN INVESTMENT. BY PLACING HIS, HER, THEIR INITIALS IN THE SPACE PROVIDED HEREIN BELOW, BUYER EXPRESSLY ACKNOWLEDGES THAT:  (a) BUYER IS PURCHASING THE UNIT FOR ITS REAL ESTATE VALUE AND NOT AS AN INVESTMENT; (b) NEITHER SELLER NOR ANY OF ITS EMPLOYEES OR AGENTS HAVE REPRESENTED OR OFFERED THE PROPERTY AS AN INVESTMENT OPPORTUNITY FOR APPRECIATION OF VALUE OR AS A MEANS OF OBTAINING INCOME FROM THE RENTAL THEREOF; AND (c) NEITHER SELLER NOR ANY OF ITS EMPLOYEES OR AGENTS HAVE MADE ANY STATEMENTS OR REPRESENTATIONS AS TO RENTAL OR OTHER INCOME THAT MAY BE DERIVED FROM THE UNIT OR AS TO ANY OTHER ECONOMIC BENEFIT, INCLUDING POSSIBLE ADVANTAGES UNDER FEDERAL OR STATE TAX LAWS, TO BE DERIVED FROM THE PURCHASE AND/OR OWNERSHIP OF THE UNIT.  (*id.*, ¶ 19) [RJN, Ex. A, 13, Ex. B, 78, Ex. C, 139; 1st Hayes decl., ¶ 2]

**D.    In any event, the First Claim should be dismissed for failure to comply with Rule 9(b).**

Plaintiffs argue that BANA's Rule 9(b) arguments are "misplaced since plaintiffs do not allege a Rule 10(b)5 case." Opp. Br. 8:10-11. Plaintiffs seemingly argue that Rule 9(b) applies only to "a Rule 10(b)5 case" and, therefore, does not apply, *e.g.*, to claims under Corp. Code §25504.1 even though that code section requires a showing that defendant acted "with intent to deceive or defraud." This is wrong.  Rule 9(b) applies if a complaint "sounds in  fraud." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003). Plaintiffs also concede that claims for relief which, standing alone, do not "sound in fraud" nevertheless are subject to Rule 9(b) if they are asserted in a pleading that, as here, "allege[s] a unified course of fraudulent conduct" and "rel[ies] entirely on that course of conduct as the basis of a claim." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009) citing *Vess, supra.*  In this setting, Plaintiffs, incredibly, argue that "[t]he FAC does not *inappropriately* rely on group pleading." Plaintiffs thus ask the Court to ignore Rule 9(b) so as to permit their "group pleading" even though FAC ¶ 38

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

defines BANA as a "promoter" and a "Defendant" and, in conclusory terms, charges BANA with *every* alleged wrongful act of *every* "promoter" and "defendant."

## II.  THE SECOND CLAIM FOR RELIEF SHOULD BE DISMISSED.

**The remnants of the "Second Claim" are time-barred.**  Contrary to FAC ¶ 96, Plaintiffs now say they "do not seek to allege a claim against the Bank under Corp Code § 25503." [Opp. Br. 11:25]. The remnants of the "Second Claim," namely Plaintiffs' claims for relief under Corp. Code § 25504.1, are time-barred by the "absolute" 2-year limitations period established by Corporations Code Section 25507. *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1452-53 (S.D. Cal. 1988). As to the proper start-date for the 2-year limitations period, Plaintiffs say that "[t]he bank relies solely on the date of the purchase contract [in 2006] and does not mention the dates [in 2006 or 2007] of the unit maintenance agreement or the rental agreement." Opp. Br. 11:7-9. But "the dates [in 2006 or 2007] of the unit maintenance agreement or the rental agreement," were more than 24 months before the complaint was filed on December 9, 2009 [see the table in BANA's opening brief at p. 7]. In an effort to breathe life into these stale claims, "Plaintiff[s] contend[] that the sales of the securities were [not] made until after the three agreements were executed *and the sale escrows closed*" (emphasis added). Opp. Br. 11:9-10. This is wrong. Firstly, the "sale escrows closed" when the deeds of trust were recorded more than 2 years before the complaint was filed. See 1st Hayes decl., ¶ 5; RJN Ex. J (Alvarenga Deed of Trust ("DOT") recorded 10-19-07), Ex. K (Havlaciyan DOT recorded 10-22-07) and Ex. L (Green/Schmidt DOT recorded 10-18-07). Secondly, for statute of limitations purposes, "a sale occurs for § 12(2) purposes when the parties obligate themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time." *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2nd Cir. 1992) (internal quotations omitted) (cited by BANA but ignored by Plaintiffs).

**The "Second Claim" does not allege, among other things, "actual knowledge of the primary wrong by the alleged aider and abetter and of his or her role in furthering it."** *In re Alliance Equipment Lease Program Securities Litigation*, 2002 WL 34451621, *12 (S.D.Cal. 2002) (claims under Corp. Code § 25504.1). See Opp. Br. at 8:23-26 where Plaintiffs conceded that, at most, they claim that "Bank knew <u>or</u> <u>should</u> <u>have</u> <u>known</u> that sales were made to plaintiffs

based upon material misrepresentations that the HRHSD investment contracts were required to be registered or qualified by the SEC or the Department of Corporations." This concession was required by FAC ¶¶ 75, 137, 142 and 143.

### III. THE THIRD CLAIM FOR RELIEF SHOULD BE DISMISSED.

Contrary to FAC ¶ 100, Plaintiffs now say they "do not attempt to state a claim against Bank based on a primary liability theory under Corp Code §25401." [Opp. Br. 12:13]. The remnants of the "Third Claim," like the remnants of the "Second Claim," are based on Corp. Code § 25504.1. Under that code section, Plaintiffs, among other things, must plead "actual knowledge of the primary wrong by the alleged aider and abetter and of his or her role in furthering it." *Alliance Equipment, supra,* at *12. Plaintiffs, as noted above, concede that they do not allege actual knowledge but, instead, allege what the bank "knew or should have known."

### IV. PLAINTIFFS SHOULD BE DENIED LEAVE TO RE-PLEAD.

Under Fed.R.Civ.P. 15(a)(2), the court "should freely give leave when justice so requires." Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if an amendment would not correct the deficiencies in the original complaint or otherwise fails to state a claim. *Foman v. Davis,* 371 U.S. 178, 182 (1962). Under *Foman* and *Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 636 (9th 2002), leave to amend will not be granted in the face of undue prejudice, or bad faith or dilatory motive on the part of the plaintiff. Here, any further amendment would be both futile and also improper under the rule in *Madeja* for reasons outlined above. For example, in an effort to keep their case alive by hiding the dates on which they contracted to purchase and pay for their condo units ("securities"), Plaintiffs, at Opp. Br. 4:19-5:4, urged the court not to take judicial notice of the contracts on which they rely, thereby asking the Court to ignore controlling Ninth Circuit case law. *Ritchie*, *supra*, 342 F.3d 903, 908.

DATED:  June 18, 2010　　　　　　　　　　**BRYAN CAVE LLP**

By: s/ Edward M. Rosenfeld
Attorneys for Defendant
BANK OF AMERICA, N.A.

# CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; and that I served the individuals on the service list attached hereto the following documents:

Original of:

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BANK OF AMERICA, N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR ALLEGED VIOLATION OF FEDERAL AND STATE SECURITIES LAWS**

Filed June 18, 2010 on the ECF system and served pursuant to General Order No. 550, with:

- Michael J. Aguirre
  maguirre@amslawyers.com

- Lynn T. Galuppo
  lgaluppo@coxcastle.com

- Bryan D. Sampson
  bsampson@samsonlaw.net

- Maria C. Severson
  mseverson@amslawyers.com

- Spyglass Partners, Inc.
  bsampson@sampsonlaw.net

- Sung-Min Christopher Yoo
  cyoo@adorno.com

- John Nadolenco
  jnadolenco@mayerbrown.com

- Jennifer A. Needs
  jennifer.needs@sgsattorneys.com

- Thomas W. McNamara
  tmcnamara@labellamcnamara.com

          s/ Edward M. Rosenfeld
          Edward M. Rosenfeld
          E-mail: emrosenfeld@bryancave.com