1  JOHN M. SORICH (CA Bar No. 125223)
   jsorich@adorno.com
2  CHRISTOPHER YOO (CA Bar No. 169442)
   cyoo@adorno.com
3  LAUREN M. TAKOS (CA Bar No. 255164)
   ltakos@adorno.com
4  ADORNO YOSS ALVARADO & SMITH
   A Professional Corporation
5  1 MacArthur Place, Suite 200
   Santa Ana, California 92707
6  Tel: (714) 852-6800
   Fax: (714) 852-6899
7
   Attorneys for Defendant
8  JPMORGAN CHASE BANK, N.A.
   erroneously sued as JPMORGAN CHASE
9
                    UNITED STATES DISTRICT COURT
10
                   SOUTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| TAMER SALAMEH, an individual; REAL ESTATE 4 HOSPITALITY, LLC, a California limited liability company; ALEKSKEY KATS; DIANA KATS; MITCHELL J. PEREIRA; GARY A. TORETTA; ROBERT ALVARENGA; ALEXIS COSIO; CESAR MOTA; DENIS B. ROTHE JR., CHARLENE SCHRUFER; DAVID R. BUSHY; DALE CURTIS; ZONDRA SCHMIDT; DOLORES GREEN; CHRISTY JESKE; TAZIA REYNA; MARY L. WEE SONG; KERRY L. STEIGERWALT; BETH STEIGERWALT; STUART M. WOLMAN; JEFFERY E. LUBIN AND BARBARA L. LUBIN, INDIVIDUALLY AND AS CO-TRUSTEES OF THE LUBIN FAMILY TRUST DATED MARCH 26, 2002; MIKAEL HAVLUCIYAN AND THERESE HAVLUCIYAN INDIVIDUALLY AND AS CO-TRUSTEES OF THE HAVLUCIYAN FAMILY TRUST; SADOUX KIM; individually and on behalf of a Class of all others similarly situated; | CASE NO.: 09-CV-02739-L-NLS<br><br>JUDGE:   Dana M. Sabraw<br><br>**JPMORGAN CHASE BANK, N.A.'S REPLY TO THE OPPOSITION TO THE MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>CTRM:   14<br>DATE:   June 21, 2010<br>TIME:   10:30 a.m.<br><br>**No Oral Argument Requested per Local Rule 7.1(d)(1)**<br><br>Action Filed: December 08, 2009 |
|            Plaintiffs, | |
| v. | |
| TARSADIA HOTEL, a California Corporation; TUSHAR PATEL, an individual; B.U. PATEL, an individual; GREGORY CASSERLY, and individual; 5th ROCK LLC, a Delaware limited liability company; MPK ONE, LLC, a California limited liability company; GASLAMP HOLDINGS LLC, a California limited liability | |

---
1
REPLY TO OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
09-CV-02739-L-NLS

1133760.2

company; PLAYGROUND DESTINATION PROPERTIES, a corporation; EAST WEST BANK, a California Corporation; BANK OF AMERICA, a Delaware Corporation; JPMORGAN CHASE; PROFESSIONAL MORTGAGE PARTNERS, XBR FINANCIAL SERVICES, LLC a California limited liability company; ERSKINE CORP, a California Corporation and DOES 1 to 100, inclusive

Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant JPMorgan Chase Bank, N.A. ("JPMorgan"), erroneously sued as JPMorgan Chase, respectfully submits this Reply to the Opposition to JPMorgan's Motion to Dismiss the first amended complaint ("FAC") of all named plaintiffs in the above-captioned matter ("Plaintiffs").

### I. SUMMARY OF ARGUMENT

Plaintiff's Opposition fails to cure the deficiencies of Plaintiff's FAC. Specifically, all of Plaintiff's claims against JPMorgan are *fatally flawed* and fail for one simple reason—the sale of the condominium units was for the purchase of real estate, and as such does not fall within the scope of security laws. No matter how Plaintiff wants to characterize the mortgage loans as "unregistered and unqualified investment contract securities," Plaintiff should not be allowed to overcome the obvious fact that JPMorgan's sole involvement with the condominium units was that of a lender to certain plaintiffs' condominium mortgage loans. Indeed, the fact that JPMorgan's only participation with the lawsuit involved providing residential loans, secured by deeds of trust encumbering the real property, is indicative of the fact that the transaction was only that of a real estate transaction.

Plaintiffs' Opposition stands primarily for the proposition that the Plaintiffs' condominium purchases were securities, and that as a security, JPMorgan should be liable as an "underwriter" since JPMorgan helped fund the purchases of certain condominiums. However, the fact remains that lenders cannot, under either "strict privity" or "substantial factor" test, be said to have been persons who offered or sold securities in violation of securities laws, or to have aided and abetted any such violations. *See, Wright v. Shock* 571 F.Supp. 642 D.C.Cal. (1983).

Accordingly, while Plaintiffs seek to assert their claims against JPMorgan and the other

2
REPLY TO OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
09-CV-02739-L-NLS

1133760.2

lenders in an effort to reach the "deep pockets" to hopefully recover from the real estate transactions, which Plaintiffs admittedly state is "a bust," all of Plaintiffs' claims fail as asserted against JPMorgan. For these reasons, the FAC must be dismissed.

## II. PLAINTIFFS STILL FAIL TO STATE A CLAIM FOR "SECTION 12 (a)(2) SECURITIES ACT OF 1933 (MISREPRESENTATION AND OMISSION)"

In the Opposition, Plaintiffs state that "[JPMorgan] was in privity with plaintiffs." *See,* Opposition, p. 3: 24. In fact, it is this proposition with which Plaintiff provides the majority of its argument, stating that because the "Bank underwrote the sale of $7,349,895.00 of the HRHSD investment contracts securities…Bank stepped outside the normal bank boundaries and used depositor funds to fund the sale of the HRHSD investment contract." *See,* Opposition, p. 3:25-27.

Plaintiffs' allegations are nonsensical and contradictory because although Plaintiffs believe that JPMorgan "stepped outside of normal bank boundaries," Plaintiffs further support this contention that "JPMorgan was in privity with plaintiffs" by stating "Bank holds a security interest in the HRHSD investment contracts. If a plaintiff decides not to pay the full purchase price, the HRDSD investment contract reverts through foreclosure to the Bank. These allegations sufficiently allege the Bank was a seller of the HRSD investment contract securities." *See,* Id. Indeed, it is hard to see how, based on the facts above, JPMorgan acted in any way *other than a normal bank/financial institution does.*

In fact, Plaintiffs' allegations only *help* to further prove that JPMorgan was acting a mere lender in transactions involving *the purchase and sale of real estate*. Indeed, how, based on the allegations above, does the fact that JPMorgan holds a security interest in certain condominiums (through the recorded deeds of trust, which par for the course, undoubtedly include power of sale in the event of default clauses), indicate that JPMorgan "stepped outside of normal banking boundaries" when providing loans for the purchase of real property is a regular transaction for JPMorgan?

Irrespective, Plaintiffs' claim still fails because an ordinary loan secured by real estate is not a security as defined under the Securities Act or the Exchange Act. Moreover, as indicated above, JPMorgan's, and the other lender defendants' *only* participation with the lawsuit involved providing

<u>mortgage loans, secured by deeds of trust encumbering the real property</u>.

Plaintiffs appear to argue that since the FAC refers to the transactions as "securities" and lays out the factors (of the SEC) tending to show an offering of a security involving condominiums (*See*, Opposition, pp.4-5:17-5), the Court should simply deny JPMorgan's Motion. However, as Justice Frankfurter cautioned in the seminal securities law case *SEC v. Howey*, "Simply because other arrangements may have the appearance of this transaction but employed as an evasion of the Securities Act does not mean that the present contracts are evasive... [N]othing in the Securities Act... indicate[s] that Congress meant to bring every innocent transaction within the scope of the Act simply because a perversion of them is covered by the Act." (Emphasis added). *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946), dissenting opinion.

Plaintiffs' Opposition is replete with legal citations but is light on analysis. In fact, the case law cited by Plaintiffs in their Opposition *only* focuses on the issue of whether the investment contracts for the purchase of the condominiums is a "security." *See,* Opposition, p. 3:16-23, p. 15:15-21. However, the cases cited by Plaintiffs fail to establish *how*, even if the real estate transaction was a "security," JPMorgan could have possibly participated in any purported 12(2) violation. Because there is no relationship between JPMorgan and Plaintiffs that would amount to anything other than that of the typical lender-to-borrower, Plaintiffs' claim fails.

JPMorgan does not ignore the fact that the offer and sale of condominium transactions in a hotel-condominium arrangement *can* constitute the offer and sale of "securities" subject to both federal and state securities laws. The problem lies with the fact that Plaintiffs present <u>no facts</u> or case law to indicate that JPMorgan, or any of the other lender defendants, have engaged in *anything* other than normal commercial actions involving real estate

Furthermore, to the extent that Plaintiffs attempt to hold JPMorgan liable for the purported omissions or misrepresentations of other Defendants based on the fact that JPMorgan "acted as an underwriter," (which Plaintiffs fail to address JPMorgan's arguments in their Opposition) Plaintiffs reliance on the term "underwriter" is misplaced. *See,* FAC, p. 146.

As stated in the moving papers, under the applicable Section 2(a) 11 of the 1933 Act, 15 U.S.C. § 77(b)(a)11, an underwriter is defined as "any person who has purchased from an issuer with

a view, to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking…[.]" *See,* 15 U.S.C. § 77(b)(a)11.  The purpose of this statute is to protect persons who purchase securities in the distribution process or on the open market from misstatements or omissions in the registration statements. <u>Liability is fixed upon those who participate in the registration process</u>. Issuers or management must assume primary responsibility for the information disseminated in the registration statement. Professionals and underwriters who participate in the preparation of the registration statement are liable subject to due diligence and reasonable investigation defenses. *See, In re Activision Sec. Litigation* (1985), 621 F. Supp. 415 at 424.

Here, Plaintiffs cannot possibly state a claim against JPMorgan since Plaintiffs' fail to allege any facts beyond conslusory statements that JPMorgan acted as an underwriter.  Plaintiffs do not allege that JPMorgan bought securities from the purported issuer, 5th Rock LLC (*See,* FAC ¶ 110) for further sale or that JPMorgan sold any of the alleged securities to Plaintiffs. For this reason alone, the claim must fail.  Moreover, Plaintiffs' claim should be dismissed without leave to amend because there is no plausible way Plaintiffs can amend their FAC to allege facts that JPMorgan was a participant in the alleged "securities" transactions.  Indeed, initially, Plaintiffs do not allege that JPMorgan "purchased or sold" the securities from the issuer (here, Defendant 5th Rock LLC), nor do Plaintiffs allege that JPMorgan "offered" to sell for the issuer the "investment contracts." Without any involvement in the sales and marketing process, it is inconceivable that JPMorgan solicited or was necessary in bringing about a sale. Plaintiffs therefore cannot allege the elements of participant liability.

To reiterate, the problem with Plaintiffs' FAC, as pled, is that *even if* this Court did perceive the investment contracts to be "securities", JPMorgan's involvement does not rise to the level to purport liability for any alleged Rule 12(2) violation.

Plaintiffs reliance on the case *Pinter v. Dahl,* 486 U.S. 622 (1988) for the proposition that "seller liability extends to those who solicit a purchase of a security when 'motivated at least in part by a desire to serve his own financial interests or those of the securities owner'" lacks merit, since in *Pinter*, the parties involved in the case included an oil and gas producer and registered securities

dealer (Petitioner) and Dahl, a real estate broker, regarding the investments of unregistered fractional undivided interests in oil and gas leases. *See, Pinter v. Dahl,* 486 U.S. 622 (1988). No banks or lenders were involved in this case, nor was there the existence of any real estate transactions requiring loan assistance. Thus, this case is wholly inapplicable given that the case did not involve the purchase of real estate, nor did involve any transaction requiring lending assistance from a financial institution.

As set forth in the moving papers, the test with regard to determining "participation" is one of proximate cause. *See, Hill York Corp. v. American International Franchise, Inc.,* (1971) 488 F.2d 680, 692-693. A defendant is considered a substantial factor if he or she "actively solicits an order, participates in the negotiations, or arranges the sale." *Lawler v. Gilliam,* (1978) 569 F.2d 1283 at 1288.

Here, Plaintiffs present no facts or case law to indicate that JPMorgan, or any of the other Lender Defendants, have engaged in *anything* other than normal commercial actions involving real estate. Indeed, the facts Plaintiffs allege in their Opposition only help support JPMorgan's contention that it was acting as it ordinarily does in real estate transactions. The fact remains that lenders, banks and title companies, which provide various routine services to mortgage brokers engaged in marketing of subject promissory notes, cannot, under either "strict privity" or "substantial factor" test, be said to have been persons who offered or sold securities in violation of securities laws, or to have aided and abetted any such violations. *See, Wright v. Shock* (1983) 571 F.Supp. 642 D.C.Cal.

Assuming that the Defendants other than the lender defendants (including JPMorgan), did indeed violate the securities laws, it would be an unprecedented and entirely unwarranted extension of the scope of securities to hold the lender Defendants liable as underwriters.

Thus, the first cause of action must be dismissed as asserted against JPMorgan.

///

///

III. **PLAINTIFFS STILL FAIL TO STATE A CLAIM FOR "VIOLATION OF CORPORATION CODE §§ 25110, 25503, 25504.1 (FAILURE TO QUALIFY, MATERIAL ASSISTANCE)" AND VIOLATION OF CORPORATION CODE §§ 25401, 25501, 25504.1 (MISREPRESENTATION AND OMISSIONS, MATERIAL ASSISTANCE)**

Plaintiffs' second and third claims for various violations of the *California Corporations Code*, are fatally flawed because these violations arise from purported violations in connection with a *security*. Because the residential loans issued by JPMorgan to Plaintiffs do not qualify as a "security", Plaintiffs cannot assert any claims under these various codes of the *California Corporations Code*. However, *even if* this Court did perceive the investment contracts to be "securities", JPMorgan's involvement does not qualify as that of an "underwriter" and therefore, Plaintiffs cannot assert any of the following claims against JPMorgan.

A. **Plaintiffs' Claims for Violation of Corp. Code §§ 25110, 25503, 25504.1 All Fail**

In support of their Opposition, Plaintiffs conclusively assert that the "FAC alleges the Bank materially assisted in the unlawful sale of $7,349,895.00 of unqualified and unregistered HRHSD investment securities with knowledge that the HRHSD investment contracts had not been registered or qualified by acting as the underwriter...in providing the essential financing needed to consummate the sales of HRHSD investment contracts. *See*, Opposition, p. 7:17-24, *See,* FAC, ¶¶137,138,141. However as stated above, if Plaintiffs base their logic that JPMorgan "stepped outside the normal bank boundaries" on the reasoning that the "Bank holds a security interest in the HRHSD investment contracts, it is difficult to see how, based on the facts above, JPMorgan acted in any way *other than a normal bank does.*

Moreover, in their Opposition, Plaintiffs fail to provide any facts in support of their conclusory allegations set forth above. Despite pointing this deficiency out in the moving papers, Plaintiffs still rely on legal conclusions unsupported by any factual allegations. Indeed, there are no facts to support allegation that JPMorgan knew that the HRHSD contracts were unregistered.

Finally, Plaintiffs claim under Section 25100 has expired since Section 25100 has a one year statute of limitations. To refute this fact, Plaintiffs state "Corp. Code § 25507 (a) provides for a 2

year statute of limitations" (*See,* Opposition, p. 6:15); however it is perplexing why Plaintiffs bring up this fact, when in the moving papers, JPMorgan already addressed this issue.

To reiterate, Section 25507, which governs the limitations period for claims under section 25503 (or Section 25504 or Section 25504.1 insofar as they relate to that section), further provides that such claims must be "brought before the expiration of two years after the violation upon which it is based or the expiration of one year after the discovery by the plaintiff of the facts constituting such violation, *whichever shall first expire.*" Cal. Corp. Code § 25507 (a) (emphasis added).

Here, Plaintiffs' Complaint fails to allege *any* dates to indicate when JPMorgan committed the alleged violations. Indeed, perhaps this omission was purposefully intended, since based upon the dates of the issuance of the mortgage loans by JPMorgan to Plaintiffs, nearly all transactions took place in **2007**, specifically between October and November of 2007. *See,* RJN, Exhibits 1-21. Although Plaintiffs attempt to draw attention to the "three writings that formed the core of the HRHSD investment contracts" (the purchase contract, the unit maintenance agreement, and the rental agreement), JPMorgan was not a party to those contracts, nor was JPMorgan involved in those contracts. *See,* Opposition, p. 6-7:26-3. The fact that the *only* contracts involving JPMorgan and Plaintiffs were limited to the mortgage loans. Thus, the majority of Plaintiffs' transactions, with which they base their claims, are placed outside of the statute of limitations, and thus, *the claim is time-barred.*

Finally, even if Plaintiffs' claim was not time barred, which JPMorgan does not concede, Plaintiffs fail to allege that JPMorgan either, sold, offered, or acquired the "investment contracts" as required by Section 25110. Therefore Plaintiffs cannot assert purported violations of the *California Corporations Code.* Indeed, it appears as if Plaintiffs are attempting to hold JPMorgan and the other lender defendants liable for Plaintiffs' real estate purchases, which according to Plaintiffs' own account, have declined in value and are a "bust". Plaintiffs cannot hold JPMorgan responsible for the current economic downturn. In light of this fact, Plaintiffs fail to state a claim against JPMorgan, and the claim should be dismissed.

///

///

### B. Plaintiffs Claim for Violation of Corp. Code §§ 25401, 25501 and 25504.1 All Fail

Plaintiffs' claim against JPMorgan for misrepresentation and omission under state law arises out of the same set of vague allegations used for their federal claim. *See,* Opposition, p. 8:8-17.

Section 25400 forbids the use of a false or misleading statement "for the purpose of inducing the purchase or sale" of a security if the defendant knew or had reason to know that the statement was false or misleading. Section 25500 sets forth liability for *willful* violations of Section 25400. Liability under these specific sections is limited to those "sellers" found liable under Section 12(2) of the Securities Act.  Thus, to the extent that Plaintiffs attempt to hold JPMorgan liable for Sections 25500 and 25400, Plaintiffs claims fail and remain against other defendants (5th Rock), to the extent that Plaintiffs purchased their purported "securities" from defendants, *other than* JPMorgan.

Moreover, Plaintiffs' Opposition and FAC still fail to allege that JPMorgan had any ill-will towards Plaintiffs. In fact, as the lender to certain Plaintiffs' loans and as the beneficiary of the accompanying deeds of trust, it is nonsensical to think that JPMorgan would *want* to harm Plaintiffs.

Section 25401 prohibits the offer or sale of a security by means of any oral or written communication which contains a materially false or misleading statement. Section 25401 imposes liability on those who "materially assist" violations of Section 25401 "with intent to deceive or defraud." Section 25501 creates the cause of action for a violation of Section 25401.  These sections together are similar to the claim for securities violation 12(a)(2) and require that plaintiffs allege participation (directly or indirectly) in the direct underwriting of the "investment contracts" or "substantial factor" status. *See, Hill York Corp. v. American International Franchise, Inc.,* (1971) 488 F.2d 680, 692-693. *See, Hudson v. Capital Management International, Inc.*, (1984) No. 81-1737, slip op. at 3 n.1.

Here, again, Plaintiffs cannot possibly state a claim against JPMorgan since Plaintiffs' fail to allege any facts beyond conclusory statements that JPMorgan acted as an "underwriter," although, as explained above, and in the moving papers, Plaintiffs' reliance on the term "underwriter" for the

purposes of a securities or Corporations Code violation is misplaced.[1]  For this reason alone, the claim must fail.  Moreover, Plaintiffs' claim should be dismissed without leave to amend because there is no plausible way Plaintiffs can amend their FAC to allege facts that JPMorgan acted as an underwriter.  Indeed, initially, Plaintiffs do not allege that JPMorgan agreed with the issuer of the security to "purchase securities for distribution," to "distribute securities," or to "manage or supervise a distribution of securities." *See,* FAC, *See* Footnote 1.

As Plaintiffs have failed to state a claim under Corporations Code §§ 25401, 25501 and 25504.1 and because there is no relationship between JPMorgan and Plaintiffs that would amount to anything other than that of the typical lender-to-borrower, Plaintiffs' second and third claims against JPMorgan fail and must be dismissed without leave to amend.

## IV. CONCLUSION

Based on the foregoing, JPMorgan respectfully requests that the Court enter an order dismissing the FAC as to all claim asserted against JPMorgan, without leave to amend, pursuant to FRCP Rule 12(b)(6).

DATED: June 18, 2010

ADORNO YOSS ALVARADO & SMITH
A Professional Corporation


By: /s/ S. Christopher Yoo
    JOHN M. SORICH
    CHRISTOPHER YOO
    LAUREN M. TAKOS
    Attorneys for Defendant
    JPMORGAN CHASE BANK, N.A. erroneously sued as JPMORGAN CHASE

---

[1] Under California Corporations Code § 25022: "Underwriter" means a person who has agreed with an issuer or other person on whose behalf a distribution is to be made (a) to purchase securities for distribution of (b) to distribute securities for or on behalf of such issuer or other person or (c) to manage or supervise a distribution of securities for or on behalf of such issuer or other person.

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF ORANGE
*Salameh, et al v. Tarsadia Hotel et al.*
U.S.D.C. San Diego 3:09-cv-02739-DMS -CAB

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is **ADORNO YOSS ALVARADO & SMITH, 1 MacArthur Place, Santa Ana, CA 92707.**

On June 18, 2010, I served the foregoing document described as **JPMORGAN CHASE BANK, N.A.'S REPLY TO THE OPPOSITION TO THE MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** on the interested parties in this action.

☒ by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **BY REGULAR MAIL:** I deposited such envelope in the mail at 1 MacArthur Place, Santa Ana, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODUCED ON PAPER PURCHASED AS RECYCLED.**

☐ **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

☒ **BY OVERNIGHT MAIL:** I deposited such documents at the Overnite Express or Federal Express Drop Box located at 1 MacArthur Place, Santa Ana, California 92707. The envelope was deposited with delivery fees thereon fully prepaid.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on June 18, 2010, at Santa Ana, California.

_____
MICHELLE E AULT

PROOF OF SERVICE

1125819.1

## SERVICE LIST

*Salameh, et al v. Tarsadia Hotel et al.*
Salameh, et al v. Tarsadia Hotel et al.

| | |
|---|---|
| Michael J Aguirre<br>Maria C Severson<br>Aguirre Morris & Severson LLP<br>444 West C Street<br>Suite 210<br>San Diego, CA 92101-3597 | (619)876-5364<br>Fax: (619)876-5368<br>Email: mseverson@amslawyers.com<br><br>Attorney for Plaintiffs, Mary L Wee Song, et al. |
| Lynn T Galuppo<br>Cox Castle & Nicholson<br>19800 MacArthur Boulevard<br>Suite 500<br>Irvine, CA 92612 | (949)260-4641<br>Fax: (949)476-0256<br>Email: lgaluppo@coxcastle.com<br><br>Attorneys for Defendant, Gaslamp Holdings, Tarsadia Hotel Tushar Patel, B.U. Patel, Gregory Casserly, 5th Rock LLC, and MPK One, LLC |
| John Nadolenco<br>Mayer Brown LLP<br>350 South Grand Avenue<br>Suite 2500<br>Los Angeles, CA 90071-1503 | (213)229-5173<br>Fax: (213)625-0248<br>Email: jnadolenco@mayerbrown.com<br><br>Attorneys for Defendant, East West Bank |
| Bryan D Sampson<br>Sampson and Associates<br>2139 First Avenue<br>San Diego, CA 92101-2013 | (619)557-9420<br>Fax: (619)557-9425<br>Email: bsampson@sampsonlaw.net<br><br>Attorneys for Defendant, Spyglass Partners, Inc. |

PROOF OF SERVICE

1125819.1