

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 | TAMER SALAMEH, et al.,                     CASE NO. 09CV2739 DMS (CAB)

12 |                              Plaintiff,    **ORDER GRANTING BANK**
                                               **DEFENDANTS' MOTIONS TO**
13 |      vs.                                   **DISMISS PLAINTIFFS' FIRST**
                                               **AMENDED COMPLAINT**
14

15 | TARSADIA HOTELS, et al.,                  [Docs. 15, 18, 29, & 45.]

16 |                              Defendant.

17          Pending before the Court are four motions to dismiss Plaintiffs' First Amended Complaint

18   ("FAC") brought by Defendants East West Bank, XBR Financial Services, Bank of America, and JP

19   Morgan Chase (collectively "Bank Defendants").  The matter came on for hearing on June 25, 2010.

20   Michael Aguirre, Maria Severson and Chris Morris appeared on behalf of Plaintiffs.    Edward

21   Rosenfeld appeared on behalf of Defendant Bank of America.  Christopher Murphy appeared on behalf

22   of Defendant East West Bank.  Katherine Agbayani appeared on behalf of Defendant JP Morgan

23   Chase.  Frederick Kranz appeared on behalf of Defendant Tarsadia Hotels.  Jennifer Needs appeared

24   on behalf of Defendant XBR Financial Services.  Gregory Borman appeared on behalf of Defendant

25   Erskine Corporation.  For the reasons set forth below, Defendants' motions are granted.

26   / / /

27   / / /

28   / / /

# I.

## BACKGROUND

The Hard Rock Hotel San Diego ("HRHSD") is located in downtown San Diego's Gaslamp Quarter, near the baseball stadium. (FAC ¶ 67.) It is a 12-story building containing 420 guest rooms, 244 studios, 176 suites, and meeting and event space. (*Id.* at ¶ 68.) The public was offered the opportunity to purchase ownership interests in individual HRHSD studios or suites through press releases and public marketing programs, including television commercials. (*Id.* at ¶ 82.) Plaintiffs bring suit on behalf of all persons who purchased such ownership interests. (*Id.* at ¶ 60.)

Plaintiffs purchased ownership interests in individual HRHSD studios or suites at prices ranging from $350,000 to more than $2 million. (*Id.* at ¶¶ 82, 85.) They purchased their ownership units through what Plaintiffs have titled "HRHSD Investment Contracts." (*Id.* at ¶ 82.) The HRHSD Investment Contract consisted of three documents: 1) Purchase Contract and Escrow Instructions, 2) Unit Maintenance and Operating Agreement, and 3) HRHSD Rental Management Agreement. (*Id.* at ¶ 86.)

Plaintiffs allege that once they purchased their units at HRHSD, they had no control over the rental management of the studios and suites. (*Id.* at ¶ 79.) Although they were told the HRHSD Rental Management Agreement was voluntary, it was in fact mandatory. (*Id.* at ¶¶ 76-78.) Plaintiffs were not issued keys to their units, but instead had to obtain keys from the hotel when staying in their units. (*Id.* at ¶ 89.) Plaintiffs were permitted to stay in their units for up to 28 days per year, and if they sold the unit, the unit was subject to the 28-day limitation. (*Id.* at ¶ 88.) HRHSD was managed by Defendant 5th Rock, LLC, and Plaintiffs had to pay 5th Rock a service and management fee when they stayed in their units. (*Id.* at ¶¶ 87, 90.) 5th Rock had a right of first refusal if Plaintiffs chose to sell their interests. (*Id.* at ¶ 94.)

Plaintiffs contend the units were marketed as real estate transactions, and indeed, as part of those real estate transactions Plaintiffs were obligated to pay tens of thousands of dollars in nonrefundable deposits. (*Id.* at ¶ 74.) Plaintiffs allege, however, that the units were actually "securities" and should have been sold pursuant to the laws regulating the sale of securities. (*Id.* at ¶ 74, 95-101.) Plaintiffs bring five claims for relief: 1) violation of § 12(a)(2) of the Securities Act

1  of 1933 for misrepresentation or omission, 2) violation of Cal. Corp. Code §§ 25110, 25503 and

2  25504.1 for sale of unqualified security, 3) violation of Cal. Corp. Code §§ 25401, 25501 and 25504.1

3  for misrepresentation or omission, 4) violation of Cal. Corp. Code 25501.5 for sale by unlicensed

4  broker-seller, and 5) violation of Cal. Corp. Code § 25504 by individual Defendants who controlled

5  the entities.

6          Defendants are: 1) Tarsadia Hotels ("Tarsadia"), HRHSD's operator, 2) 5th Rock, LLC ("5th

7  Rock"), the developer and one of the sellers of the HRHSD Investment Contracts, 3) Gaslamp

8  Holdings, LLC ("Gaslamp"), which owns the land on which HRHSD sits and has a lease agreement

9  with 5th Rock, 4) MPK One, LLC ("MPK"), the controlling entity that manages 5th Rock, 5) Tushar

10  Patel, Chairman of Tarsadia, 6) B.U. Patel, Vice Chairman and founder of Tarsadia, 7) Greg Casserly,

11  President of Tarsadia, 8) Playground Destination Properties ("Playground"), 9) East West Bank ("East

12  West"), 10) XBR Financial Services, LLC ("XBR"), 11) JP Morgan Chase ("Chase"), 12) Professional

13  Mortgage Partners, Inc. ("Professional Mortgage"), 13) Bank of America ("BofA"), and 14) Erskine

14  Corp ("Erskine"). (*Id.* at ¶¶ 40-55.)

15          The present motions to dismiss were filed by four of the banks involved in the action: East

16  West, XBR, Chase, and BofA. The banks provided financing to Plaintiffs to allow them to purchase

17  ownership units. (*Id.* at ¶ 85) Plaintiffs allege East West underwrote $42,726,435 in Investment

18  Contracts. (*Id.* at ¶ 131.) East West also advanced an $88 million construction loan and $30 million

19  in letters of credit to HRHSD. (*Id.* at ¶ 129.) XBR purchased several of Plaintiffs' notes from East

20  West. (*Id.* at ¶ 49.) Chase underwrote $7,349,895 in Investment Contracts. (*Id.* at ¶ 134.) BofA

21  underwrote $14,450,870 in Investment Contracts. (*Id.* at ¶ 137.)

22          Plaintiffs filed the original complaint on December 8, 2009. (Doc. 1.) On March 15, 2010,

23  Plaintiffs filed the FAC. (Doc. 8.) East West filed its motion to dismiss on April 14, 2010. (Doc. 15.)

24  Chase filed its motion on April 29, 2010. (Doc. 18.) On May 5, 2010, the matter was reassigned to

25  this Court. (Doc. 27.) XBR filed its motion to dismiss on May 7, 2010, and BofA filed its motion on

26  May 27, 2010. Plaintiffs filed oppositions to each of the motions, and each Defendant filed replies.

27  (Docs. 53-57, 61-65.)

28  / / /

## II.

## LEGAL STANDARD

In two recent opinions, the Supreme Court established a more stringent standard of review for 12(b)(6) motions. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). The reviewing court must therefore "identify the allegations in the complaint that are not entitled to the assumption of truth" and evaluate "the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.

## III.

## DISCUSSION

Three claims for relief are asserted against each of the Bank Defendants: 1) violation of § 12(a)(2) of the Securities Act of 1933 for misrepresentation or omission ("Section 12(a)(2)"), 2) violation of Cal. Corp. Code §§ 25110, 25503 and 25504.1 for sale of unqualified security, and 3) violation of Cal. Corp. Code §§ 25401, 25501 and 25504.1 for misrepresentation or omission. Defendants contend they are not liable under any of the securities laws because they were not "sellers" of securities and they did not act as underwriters. Defendants further contend that Plaintiffs' claims are barred by the relevant statutes of limitations.[1]

/ / /

---

[1] Although each Defendant filed separate motions to dismiss, many of the arguments overlap. Thus, the Court consolidates the issues and does not reach every argument raised by each Defendant. Further, the Court assumes the transactions at issue involve the sale of a "security" for purposes of the instant motions.

**A.      Judicial Notice**

Initially, Bank Defendants have requested the Court take judicial notice of several documents. East West requests judicial notice of the Purchase Contracts and Escrow Instructions, Unit Maintenance and Operations Agreements, Rental Management Agreements, and promissory notes of each of the Plaintiffs to whom East West provided financing.  XBR also seeks judicial notice of documents from Plaintiffs who received financing from East West, namely, the Purchase Contracts and Escrow Instructions, promissory notes, and Grant Deeds and Deeds of Trust.  BofA similarly requests judicial notice of Purchase Contract and Escrow Instructions, Unit Maintenance and Operations Agreements, Rental Management Agreements, Deeds of Trust and Promissory Notes of Plaintiffs who received financing from BofA. BofA also filed a Second Request for Judicial Notice of a "Notice of Transaction," which is a document filed by Defendant 5th Rock with the California Department of Corporations.  Chase seeks judicial notice of the Deeds of Trust recorded by Plaintiffs who received financing from Chase.

Plaintiffs oppose the requests for judicial notice on the grounds that Defendants are attempting to convert the 12(b)(6) motions into motions for summary judgment, and that Defendants are asking the Court to improperly interpret documents and weigh the facts.

In ruling on a Rule 12(b)(6) motion to dismiss, a district court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003).  A document that is not attached to the complaint "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.*  Judicial notice may be taken of facts "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

Here, the Purchase Contract and Escrow Instructions, Unit Maintenance and Operations Agreements, and Rental Management Agreements undoubtedly form the basis of Plaintiffs' claims as

they are the three core writings that allegedly make up the HRHSD Investment Contracts.  (*See* FAC ¶ 86.)  Likewise, the promissory notes memorialize the loans that form the basis of Plaintiffs' claims against Bank Defendants.  The Grant Deeds and Deeds of Trust are matters of public record.  The "Notice of Transaction" in BofA's Second Request is a publicly available document that is referred to in the FAC.  (FAC ¶ 110.)  Plaintiffs do not dispute the authenticity of any of the documents. Accordingly, Bank Defendants' requests for judicial notice are granted.

**B.      Claim 1: Section 12(a)(2)**

Section 12(a)(2) provides that any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact . . . . shall be liable . . . to the person purchasing such security from him . . . ."  15 U.S.C. § 77l(a)(2).  Liability as a "seller" under the statute applies to those who pass title to a security or those who solicit the purchase of a security when motivated by financial gain.  *Pinter v. Dahl*, 486 U.S. 622, 646-47 (1988) (defining "seller" under section 12(a)(1)); *Moore v. Kayport Package Express*, 885 F.2d 531, 535-36 (9th Cir. 1989) (applying *Pinter* to cases brought under section12(a)(2)).  Merely participating in an unlawful sales transaction is insufficient to create liability. *See Pinter*, 486 U.S. 650 (noting that Section 12 fails "to impose express liability for mere participation in unlawful sales transactions").  Being a "substantial factor" in the sale of securities is likewise insufficient.  *Pinter*, 486 U.S. at 654.  "To establish liability under section 12(a)(2), a plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005).

Plaintiffs do not allege that the Bank Defendants passed title to the securities in question. Indeed, 5th Rock is listed as the "Seller" in the Purchase Contracts and Escrow Instructions, and the sales documents were executed by MPK as the controlling entity that manages 5th Rock.  (*See, e.g.*, East West RJN Ex. A; FAC ¶ 42.)  Rather, Plaintiffs premise Bank Defendants' liability on the contention that they solicited the purchase of securities.  The Bank Defendants contend there are no allegations to support such a claim.  The Court agrees.

1    It is clear that East West, BofA, and Chase made loans to Plaintiffs in order for Plaintiffs to

2    purchase the condominium units, and that XBR purchased several of the mortgage notes from East

3    West.  Yet, there are no allegations that Bank Defendants solicited the purchases, or otherwise

4    participated in the sale beyond merely providing financing.  Plaintiffs contend that Bank Defendants

5    are liable under section 12(a)(2) because they were motivated by financial gain, as evidenced by the

6    fact that "[i]f a plaintiff decides not to pay the full purchase price[,] the HRHSD investment contract

7    reverts through foreclosure to the Bank."  (Pls. Opp'n BofA 4.)  But banks typically have a right of

8    foreclosure upon default of such loans.  Here, there are no allegations that the Bank Defendants sought

9    out Plaintiffs or somehow induced Plaintiffs into entering into the particular transactions at issue, or

10   that they assisted in the marketing of the property or the drafting of the Investment Contracts.  Simply

11   put, no allegations exist that Bank Defendants did anything other than what banks traditionally do:

12   loan money.[2]  *See Schlifke v. Seafirst Corp.*, 866 F.2d 935, 940-41 (7th Cir. 1989) (finding bank not

13   liable under section 12(a)(2) where bank did not actively participate in the solicitation of investors);

14   *accord Smith v. American Nat'l Bank & Trust Co.*, 982 F.2d 936 (6th Cir. 1992); *Ackerman v. FDIC*,

15   973 F.2d 1221, 1223 (5th Cir. 1992).

16   Plaintiffs also contend that by providing financing, Bank Defendants served as "underwriters"

17   of the securities.  (FAC ¶ 114; Pls. Opp'n. East West 6.)  An underwriter is "any person who has

18   purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the

19   distribution of any security, or participates or has a direct or indirect participation in any such

20   undertaking, or participates or has a participation in the direct or indirect underwriting of any such

21   undertaking . . . ."  15 U.S.C. § 77b(a)(11).  Other than stating in conclusory fashion that Defendants

22   acted as underwriters by providing financing, Plaintiffs do not allege any facts to support the

23   conclusion that Defendants acted as underwriters.  Moreover, even if one is deemed to be an

24

25   _____

     [2] East West is the only bank alleged to have any relationship with HRHSD outside of the
     financing provided to Plaintiffs. East West made an $88 million construction loan to HRHSD, which

26   was ultimately paid back, and provided HRHSD with a $30 or $33 million letter of credit.  (FAC ¶¶
     129, 133.)  Plaintiffs use this to assign a motive to East West by contending it "materially assisted in

27   the unlawful sale of the HRHSD Investment Contracts with the intent of generating proceeds from
     those sales of HRHSD Investment Contracts in an amount sufficient to pay the $111 million East West

28   Bank had advanced to pay for the construction and development of the HRHSD."  (*Id.* at  ¶ 131.)
     However, there are no allegations that East West actually *solicited* the purchase of securities from
     Plaintiffs.

underwriter, no liability attaches under section 12(a)(2), as section 12(a)(2) requires active solicitation of the purchase of securities. *See Pinter*, 486 U.S. 650 n.26 (noting that if Congress wanted to expand section 12 liability to mere participants, Congress would have written it into the statute, the way it did with underwriter liability elsewhere in the Act).

Plaintiffs, therefore, have failed to state a claim against Bank Defendants under section 12(a)(2). At oral argument, Plaintiffs proffered that they have learned additional facts which indicate that Bank Defendants had a more active role in the transactions. Accordingly, the subject motions are granted with leave to amend Claim 1.

**C.   Claims 2 and 3: California Corporations Code**

Claim 2 of the FAC alleges Defendants violated California Corporations Code section 25110, which provides, in pertinent part: "It is unlawful for any person to offer or sell in this state any security in an issuer transaction . . . , whether or not by or through underwriters, unless such sale has been qualified . . . ." Civil liability for violation of section 25110 is imposed through section 25503 of the Corporations Code. Claim 3 alleges Defendants violated section 25401, which provides, in pertinent part: "It is unlawful for any person to offer or sell a security in this state . . . by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact . . . ." Civil liability for violation of section 25401 is imposed through section 25501.

Plaintiffs do not allege Bank Defendants are primarily liable under these statutes. Rather, Plaintiffs contend Bank Defendants are liable under section 25504.1, which provides, in pertinent part: "Any person who materially assists in any violation of Section 25110 . . .or 25401 . . . with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation." Thus, Bank Defendants may be liable under this section if they "materially assisted" in the sale of unqualified securities or the sale of securities based on a material misrepresentation or omission, with the intent to deceive or defraud.

As with the federal law claim, Plaintiffs contend Bank Defendants "materially assisted" in the securities laws violations by acting as underwriters. Plaintiffs, however, fail to allege any facts demonstrating that Bank Defendants acted as underwriters. An underwriter is defined in California as "a person who has agreed with an issuer or other person on whose behalf a distribution is to be

made (a) to purchase securities for distribution or (b) to distribute securities for or on behalf of such issuer or other person or (c) to manage or supervise a distribution of securities for or on behalf of such issuer or other person." Cal. Corp. Code § 25022.  Plaintiffs allege no facts to support their claim that Bank Defendants had any agreements with the issuers, let alone any agreements to purchase securities for distribution or to distribute or supervise the distribution of securities.  Further, no facts are alleged to support the assertion that Bank Defendants acted with an intent to deceive or defraud.

Plaintiffs fail to state a claim for violations of California Corporations Code section 25504.1. Claims 2 and 3 are therefore dismissed with leave to amend.

**D.      Statutes of Limitations**

Bank Defendants contend that Claims 1 and 2 of the FAC are barred by applicable statutes of limitations.

1.   Claim 1: Section 12(a)(2)

Claims may not be brought under Section 12(a)(2) "unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or . . . *more than three years after the sale.*"  15 U.S.C. § 77m (emphasis added).  The three-year language of this provision is absolute and not subject to equitable tolling.  *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982). The date of sale is when the parties entered into a binding contract for the sale of a security.  *Amoroso v. Southwestern Drilling Multi-Rig Partnership No. 1*, 646 F. Supp. 141, 143 (N.D. Cal. 1986).  This is true "even if the formal performance of their agreement is to be after a lapse of time."  *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992) (quoting *Amoroso*, 646 F. Supp. at 143).[3]

Initially, Plaintiffs argue the date of sale is a question of fact not appropriate for determination at this time.  The cases cited by Plaintiffs involve determining whether there has been a belated discovery of the cause of action.  *See Johnson v. Haberman & Kassoy*, 201 Cal. App. 3d 1468, 1476 (1988).  Here, the three year limitations period is absolute and not based on the date of discovery.  The date of sale may therefore be determined as a matter of law.

---

[3] There is no Ninth Circuit or Supreme Court authority addressing the issue of when the three-year statute of limitations begins to run under Section 12(a)(2).

1    Plaintiffs, without citation to any authority, contend the sales of securities were made after all

2    three agreements of the Investment Contract were executed and the sale escrows closed.  In *Finkel*,

3    however, the Second Circuit held that the "sale" date for a claim under section 12(a)(2) was the date

4    the purchasers lost the ability to withdraw from the deal.  962 F.2d at 172-173.  This was the date the

5    plaintiffs made a 10% down payment of the purchase price, not when the plaintiffs paid the 90%

6    balance of the purchase price and received the security, *i.e.*, a condominium.  *Id.*  Similarly, in this

7    case, Plaintiffs entered into binding contracts for the sale of the HRHSD condominium units when they

8    signed the Purchase Contract and Escrow Instructions.  Plaintiffs made initial deposits with the

9    understanding that the balance was due at a later date.  Indeed, Plaintiffs do not argue that they were

10   not bound at the time they signed the Purchase Contract and Escrow Instructions.[4]  Accordingly, the

11   execution date of the Purchase Contract and Escrow Instructions is the date of sale for purposes of the

12   statute of limitations.

13   The FAC is devoid of allegations relating to the dates of the transactions at issue.  However,

14   according to judicially noticeable documents filed by Bank Defendants, it is evident that many of the

15   Purchase Contracts and Escrow Instructions were executed in May 2006, more than three years before

16   Plaintiffs filed the original complaint on December 8, 2009.  (*See, e.g.*, East West RJN Exs. A-C.)

17   Thus, as to Plaintiffs who executed a Purchase Contract before December 8, 2006, their Section

18   12(a)(2) claims are time barred.

19       2.  Claim 2: California Corporations Code Section 25110

20   Violations of section 25110, as enforced through section 25503, are governed by the following

21   statute of limitations:

22       No action shall be maintained to enforce any liability created under Section 25503 (or
         Section 25504 or Section 25504.1 insofar as they relate to that section) unless brought
23       before the expiration of two years after the violation upon which it is based or the
         expiration of one year after the discovery by the plaintiff of the facts constituting such
24       violation, whichever shall first expire.

25   Cal. Corp. Code § 25507(a).  As with the Section 12(a)(2) claim, the two-year statute of limitations

26   set forth in section 25507 is absolute and not subject to equitable tolling.  *Lubin v. Sybedon Corp.*, 688

27   _____

28       [4] At oral argument, Plaintiffs contended that amendments or modifications to the escrows were
     made during the course of the transactions.  However, this does not change the fact that Plaintiffs were
     bound once they signed the Purchase Contract and Escrow Instructions.

F. Supp. 1425, 1452-53 (S.D. Cal. 1988).  Thus, the longest possible limitations period for Plaintiffs' claim is two years from the date of violation.

Because the alleged violation is the sale of an unqualified security, the statute of limitations is triggered either upon the date of purchase or the date on which the securities should have been registered.  *See Lubin*, 688 F. Supp. at 1453 (date the offering should have been registered); *Koehler v. Pulvers*, 606 F. Supp. 164, 169-170 (S.D. Cal. 1985) (date of purchase).  Bank Defendants contend that in either case, the applicable date is evidenced by the Purchase Contract and Escrow Instructions.[5]  Plaintiffs advance the same argument as before, *i.e.*, that the trigger-date is a question of fact, and that it should be the date the sales escrows closed.

Here, the allegation underlying Plaintiffs' claims is that Defendants sold unqualified securities.  That alleged violation occurred on the date Plaintiffs signed the Purchase Contract and Escrow Instructions.  Accordingly, any Plaintiff who executed a Purchase Contract before December 8, 2007, is time barred and precluded from bringing a claim under Section 25110.

**E.    Defendant XBR**

Defendant XBR is included in the discussion above.  However, the Court notes that XBR's connection to this litigation is even more attenuated than the other Bank Defendants.  XBR did not make any loans to Plaintiffs.  Rather, after the filing of the original complaint, East West notified several Plaintiffs that XBR purchased their notes from East West.  (FAC ¶ 49.)  Thus, even if the primary lenders could be held liable for alleged securities violations, it is unclear how XBR's liability attaches.

Plaintiffs contend XBR's liability is governed by *Finalco, Inc. v. Roosevelt*, 235 Cal. App. 3d 1301 (1991).  *Finalco*, however, does not support Plaintiffs' claims.  Indeed, *Finalco* held that the assignee of a note was not liable for federal and state securities violations because there was no evidence the assignee acted as a "seller" of a security or was liable for the wrongdoing of the original seller.  *Id.* at 1304.  Plaintiffs' attempts to distinguish *Finalco* are unpersuasive.  Plaintiffs contend that the instant case is distinguishable because here the note was assigned after the case was filed.

---

[5] Chase argues that any of its alleged violations would have occurred when the mortgage loans were issued.  Because the underlying violation is the sale of an unqualified security, the date of sale is the appropriate trigger date for statute of limitations purposes.

1   Plaintiffs' allegations do not support this argument as they allege only that they were notified about

2   the assignments after the case was filed, not that the notes were actually assigned after the case was

3   filed.  Plaintiffs also argue that XBR is not a holder in due course, whereas the court in *Finalco* found

4   the assignee to be a holder in due course.  Here, there are no allegations regarding whether XBR is or

5   is not a holder in due course.  XBR's motion to dismiss is therefore granted on these additional

6   grounds.

7   **F.      Rule 9(b)**

8           The parties dispute whether the heightened pleading standards of Rule 9(b) of the Federal

9   Rules of Civil Procedure apply to Plaintiffs' claims.  Because the FAC fails to comply with even the

10   more lenient pleading requirement of Rule 8, the FAC must be dismissed as to the moving Defendants.

11   Nonetheless, because the Court grants leave to amend, a discussion of whether Rule 9(b) applies is

12   appropriate.

13          "In alleging fraud or mistake, a party must state with particularity the circumstances

14   constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may

15   be alleged generally." Fed. R. Civ. Proc. 9(b).  Where fraud is not an essential element of a claim,

16   Rule 9(b) may nonetheless apply if the claim is "grounded in fraud" or "sounds in fraud." *Vess v.*

17   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  A claim is grounded in fraud where the

18   plaintiff alleges a unified course of fraudulent conduct and relies on that course of conduct as the basis

19   of a claim.  *Id.*  Where a complaint relies on the same factual allegations to support both a fraud-based

20   claim, and a non-fraud based claim, the complaint sounds in fraud.  *Rubke v. Capitol Bancorp, Ltd.*,

21   551 F.3d 1156, 1161 (9th Cir. 2009).  In California, the essential elements of a fraud claim are false

22   representation, knowledge of falsity, intent to defraud, justifiable reliance and damages. *Vess*, 317

23   F.3d at 1105.

24          Fraud is not an essential element of a Section 12(a)(2) claim; however, Plaintiffs' state law

25   claims are based on California Corporations Code § 25504.1, which requires material assistance "with

26   intent to deceive or defraud." Bank Defendants contend that, at a minimum, the state law claims sound

27   in fraud.  Further, since the same conduct underlies both the federal and state claims, Bank Defendants

28   argue Rule 9(b) applies to all claims.  The FAC alleges Defendants knowingly made material

misrepresentations or omissions as to (a) the nature of the transaction at issue (that it was a real estate transaction and not a security), and (b) the terms of the transaction (that the rental program was voluntary when in fact it was mandatory).  (FAC ¶¶ 73-74, 76-77.)  Thus, if Plaintiffs amend the complaint to allege an intent to deceive or defraud, such claims shall be subject to the pleading requirements of Rule 9(b).

## IV.

## CONCLUSION

For the reasons set forth above, Defendants East West, XBR, BofA, and Chase's motions to dismiss are granted without prejudice.  Plaintiffs may file their Second Amended Complaint after the Court rules on Defendant Playground's pending motion to dismiss.  That motion is scheduled to be heard on August 13, 2010.  Accordingly, Plaintiffs shall file their amended complaint within 20 days of the Court's ruling on Defendant Playground's motion to dismiss.

**IT IS SO ORDERED.**

DATED:  July 20, 2010

HON. DANA M. SABRAW
United States District Judge