1  Michael J. Aguirre, Esq., SBN 060402
   maguirre@amslawyers.com
2  Christopher S. Morris, Esq., SBN 163188
   cmorris@amslawyers.com
3  Maria C. Severson, Esq., SBN 173967
   mseverson@amslawyers.com
4  AGUIRRE, MORRIS & SEVERSON LLP
   444 West C Street, Suite 210
5  San Diego, CA 92101
   Telephone:  (619) 876-5364
6  Facsimile:  (619) 876-5368

7  Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMER SALAMEH, et al.,<br><br>                Plaintiffs,<br><br>   v.<br><br>TARSADIA HOTEL, et al.,<br><br>                Defendants. | Case No.  09-CV-02739-DMS-CAB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT PLAYGROUND DESTINATION PROPERTIES, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................1

    I.    The Court Should Not Adopt Playground's Interpretation of Some of the Transaction Documents by Judicial Notice ..............................................................2

    II.    Playground Sold Securities and Playground's Selected Quotes from Some of the Transaction Documents Does Not Show Otherwise. ........................................2

    III.    Although Playground Falsely Claims Otherwise, Plaintiffs Are Entitled to Relief on Their Four Claims .........................................8

        A.    Plaintiff's First Cause of Action under 12(2) is Not Time Barred ...........................................................................9

        B.    Plaintiffs Second Cause of Action under 25110, 25503, and 25504.1 is Not Time Barred ....................................................9

        C.    Plaintiffs Third Cause of Action for Violation Under §22501 is Not Time Barred............................................................10

        D.    Plaintiffs Fourth Cause of Action for Violation Under §22501.5 is Not Time Barred.........................................................11

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Doody v. E.F. Hutton & Co., Inc.*,
　　587 F. Supp. 829, 832. (D.C. Minn. 1984) .................................................................. 1, 5

*Hocking v. Dubois*,
　　885 F2d. 1449, 1460-61 (9th Cir 1989) ...................................................................... 4, 8

*Jackvony v. Riht Financial Corp*
　　873 F. 2d 411 (5th Cir 1989)............................................................................................ 5

*Matek v. Murat*
　　862 F. 2d 720, 727 (9th Cir. 1988)................................................................................... 2

*Mosesian v. Peat, Marwick, Mitchell & Co.*
　　(9th Cir. 1984) 727 F.2d 873, 879................................................................................... 9

*One-O-One Enterprises v. Caruson*,
　　848 F. 2d 1283 (DCC 1988) ......................................................................................... 5, 6

*Sanguinetti v. Viewlogic Sys., Inc.*,
　　1996 WL 33967 ............................................................................................................... 6

*SEC v. Howey*,
　　328 U.S. 293,298 (1946) ................................................................................................. 3

*Whelan v. Abell*,
　　48 F. 3d 1247, 1258 (DC Cir. 1995) ............................................................................... 5

*Williamson v. Tucker*,
　　645 F.2d 404, 424-25 (5th Cir. 1981) ............................................................................. 4

*Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*,
　　881 F.2d 801, 803 (9th Cir. 1988) ................................................................................... 2

**STATE CASES**

*Deveny v. Entropin, Inc.*,
　　139 Cal. App. 4th 408 (2006) .................................................................................... 9, 10

*Newmark v. H.& H. Products Mfg. Co.*,
　　(1954) 128 Cal App 2d 35, 37-38 ................................................................................... 6

*Pacific State Bank v. Greene*
　　(2003) 110 Cal. App. 4th 375, 378-380 .......................................................................... 6

*Ron Greenspan Volkswagen v. Ford Motor Land Dev. Corp.*
　　(1995) 32 Cal. App. 4th 985, 987-989 ............................................................................ 6

*Silver Hills Country Club v. Sobieski*
　　(1961) 55 Cal. 2d 811, 814 ............................................................................................. 3

*Vogelsang v. Wolper*
    (1964) 227 Cal. App. 2d 102 (1964) ............................................................................... 6

**STATUTES**

Federal Rules of Civil Procedure
    Rule 12(b)(6) .................................................................................................................. 10
    Rule 201 ........................................................................................................................... 2

United States Securities Act
    § 12(2) ............................................................................................................................. 1

California Corporations Code (Cal Corp Code)
    § 25110 ............................................................................................................................ 1
    § 25501 ..................................................................................................................... 10, 11
    § 25501.5 .............................................................................................................. 1, 11, 12
    § 25504.1 ........................................................................................................................ 1
    § 25506 ..................................................................................................................... 10, 11
    § 25506 (b) ............................................................................................................... 10, 11
    § 25510 ............................................................................................................................ 9

Code of Civil Procedure
    § 338(a) ..................................................................................................................... 11, 12
    § 338(d) .................................................................................................................... 11, 12
    § 1856(a) ......................................................................................................................... 6
    § 1856(g) ......................................................................................................................... 6

## INTRODUCTION

The FAC[1] alleges in First Claim for Relief that Playground Destination Properties Inc (Playground) made misrepresentations and omitted material facts in connection with the sale of Hard Rock Hotel San Diego (HRHSD) investment contract securities in violation of § 12(2) of the United States Securities Act. (FAC ¶¶ 1-11, 145-147.)

The FAC alleges in the Second Claim for Relief that Playground materially assisted the sale of securities not qualified under the Cal Corp Code § 25110 in violation of Corp Code §§ 25110 and 25504.1 (FAC ¶¶ 1-11, 149-151.)

The FAC alleges in the Third Claim for Relief that Playground materially assisted the sale of securities based upon misrepresentations and omissions of material facts. (FAC ¶¶ 1-11, 153,154.)

The FAC alleges in the Fourth Claim for Relief that Playground was an unlicensed broker-dealer when it offered for sale and sold HRHSD investment contracts to plaintiffs in violation of Cal Corp Code 25501.5. (FAC ¶¶ 1-11, 156-157.) Plaintiffs allege detailed allegations showing the HRHSD interest were securities. (FAC TT 82-94.)

The sale of the securities did not become final until the close of escrow, because under Section 4.2 of the Purchase Contract, Plaintiffs retain the right to withdraw from the contract. Section 4.2 provided plaintiffs with the right to terminate the purchase contract:

> Subject to the provisions of Section 9 hereof, if this Contract is terminated in accordance with this Contract, (i) Escrow shall be automatically cancelled and the parties shall execute cancellation instructions requested by Escrow Holder, (ii) within five (5) days after such termination, Buyer shall deliver to Seller all documents delivered by Seller to Buyer hereunder, (iii) Buyer shall have no further right or interest in the Unites, and (iv) Buyer's indemnities of Seller in this Contract shall survive the termination. (Defendant's Exhibit 1A, page 5 of 15.)

## ARGUMENT

Playground asks the Court to conclude no securities were sold to plaintiffs based on quotes Playground excerpted from some of the transaction documents. Playground concludes the quotes constitute integration and non-reliance clauses that are enforceable under the securities laws which thereby defeats plaintiffs' assertion they bought securities citing *Doody*

---

[1] FAC refers to First Amended Complaint.

1

*v. E.F. Hutton & Co., Inc.*, 587 F. Supp. 829, 832. (D.C. Minn. 1984)

Playground's argument fails for three reasons: (1) the cases Playground relies on involve reliance on misrepresentation issues not whether a security was sold e.g. *Id.* at 832; (2) the cited waivers of violations of federal and state securities laws cited (Playground Memo p. 7) are unenforceable under federal (15 U.S.C. § 77n) and state (Corp Code § 25701) securities laws; (3) The Playground quotes are only part of the record the totality of which shows Playground sold securities.

### I. The Court Should Not Adopt Playground's Interpretation of Some of the Transaction Documents by Judicial Notice

Playground provides the Court with selected excerpts of some of the documents that sound more like a securities transaction, rather than a real estate transaction. Playground was unmindful of the implicit statements contained in its quotations that the unknown drafter was worried about Playground's exposure under the securities laws. As explained below, the quotes demonstrate that the interests purchased were securities, contrary to Playground's assertion.

In a case such as this, it is especially important that the Court may take judicial notice of adjudicative facts only when they are "not subject to reasonable dispute" and are "clearly within the domain of the indisputable." Fed Rule Civil Proc Rule 201; See Notes, Fed Rule Civil Proc Rule 201; *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.,* 881 F.2d 801, 803 (9th Cir. 1988) (Court may take judicial notice of statements contained in writings but not of a party's assertion of what the contents mean).

### II. Playground Sold Securities and Playground's Selected Quotes from Some of the Transaction Documents Does Not Show Otherwise.

In examining the issue of whether or not the alleged HRHSD investment contract is a security, substance is the controlling factor, not form. *Matek v. Murat* 862 F. 2d 720, 727 (9th Cir. 1988) The term "investment contract" is undefined by the Securities Act or by relevant legislative reports. But the term was common in many state "blue sky" laws which were in existence prior to the adoption of the federal statute. Although the term was also undefined by the state laws, it

2

had been broadly construed by state courts so as to afford the investing public a full measure of protection. The practical effect is that form was disregarded for substance and emphasis was placed upon economic reality. An investment contract thus came to mean a contract or scheme for the placing of capital or laying out of money in a way intended to secure income or profit from its employment. *SEC v. Howey,* 328 U.S. 293,298 (1946) Under California law a security is defined broadly to protect the public against spurious schemes, however, ingeniously devised, to attract risk capital. To effectuate this purpose the courts look through form and focus exclusively on substance. *Silver Hills Country Club v. Sobieski* (1961) 55 Cal. 2d 811, 814.

Securities & Exchange Commission (SEC) S.E.C. Release No. 33-5347 which lays out the factors the SEC follows to determine if a condominium sale constitutes a security.

In summary, the offering of condominium units in conjunction with any one of the following will cause the offering to be viewed as an offering of securities in the form of investment contracts:

> The condominiums, with any rental arrangement or other similar service, are offered and sold with emphasis on the economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units.
>
> The offering of participation in a rental pool arrangement; and
>
> The offering of a rental or similar arrangement whereby the purchaser must hold his unit available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit. In all of the above situations, investor protection requires the application of the federal securities laws.

The operative complaint alleges: (1) the HRHSD investment contracts shifted the investment risk to plaintiffs. (FAC ¶ 4); (2) the promoters emphasized the economic benefits investors would derive from the promoters managing of the rental of the units. (FAC ¶ 84); (3) the HRHSD agreement gave promoters the right to manage HRHSD with broad exclusive authority. (FAC ¶ 87); (4) investors were not issued keys and all keys were controlled by the promoters (FAC ¶ 89) and investors were limited to staying in the units to 28 days per year (FAC ¶ 88); investors were required to pay the promoters for managing their units (FAC ¶ 90); whether investors made money was dependent on the managerial efforts of promoters (FAC 5); and finally

3

the failure of rental income caused plaintiffs losses. (FAC ¶ 7.)

The Court in *Hocking v. Dubois*, 885 F2d. 1449, 1460-61 (9th Cir 1989), the key Ninth Circuit case, reversed the district court's dismissal of a condominium investment securities case. The Court as a threshold matter noted that an investment contract is not necessarily missing "where the tangible interest which is sold has intrinsic value independent of the success of the enterprise as a whole." *Id.* at 1455. The Court further cited the 1973 SEC Release No. 33-5347 related to condominium securities: "Release 5347 puts developers and promoters on notice of three situations which the SEC views as involving the offering of a security." *Id.* at 1456.

The *Hocking* court relying on *Williamson v. Tucker,* 645 F.2d 404, 424-25 (5th Cir. 1981) found a security to be present because a condominium was operated as a hotel:

> The third factor suggested in *Williamson* provides the closest fit to an investment in a resort condominium involving an RPA. Hocking's investment is a unit in a resort condominium, allegedly operated as a hotel, with many investors pooling their units together. In order for Hocking to replace HCP, he would have to gain the votes of 75 percent of participating investors. These facts alone create a real question whether Hocking was stuck with HCP as a rental manager. Had Hocking purchased a residential condominium for investment purposes, to be rented out to long-term tenants, then it would have been a relatively easy matter to switch rental agents. Managing a resort operated as a hotel, which solicits guests from the mainland and charges nightly rates for short-term visits, may be a much more difficult service to replace than that of a long-term leasing agent. The commercial viability of a one-room hotel does not strongly argue for separate management. The individual investor may have no choice but to place his condominium in the rental pool, if he is to receive significant rental income. *Hocking v. Dubois* 885 F2d. 1449, 1460-61 (9th Cir, 1989)

Playground ignores the *Hocking* case.  Playground ignores the economic reality of the transaction.  Playground ignores quotes from other transaction documents stating plaintiffs owned and held the property as an investment property. Playground ignores the holdings of the six cases it cites, none of which involves the issue of whether an interest is a security.

*Hocking* is the controlling Ninth Circuit authority on the issue of whether an interest in a condominium is a security.  The operative complaint allegations are modeled on the SEC Release (S.E.C. Release No. 33-5347) the Court in Hocking relied on to determine when condominium purchases are investment contract securities.

The economic reality is that the HRHSD investment contracts were structured so that income was produced by the rental management efforts of the HRHSD (FAC ¶ 5).  Plaintiffs

4

PLAINTIFFS' OPPOSITION TO PLAYGROUND DESTINATION                                                    CASE NO. 09-CV-02739-DMS-CAB
PROPERTIES INC.'S MOTION TO DISMISS

were only allowed to stay in the HRHSD units up to 28 days per year, they were not even given a key to the units (FAC ¶ 4)  In the maze of documents put before the plaintiffs were documents stating that HRHSD property was "owned and held" as "an investment property." [2]

None of the six cases Playground sites support its contention that the alleged HRHSD investment contracts were not securities.  In *Doody v. E.F. Hutton*, 587 F. Supp. 829 (D.C. Minn 1984) plaintiffs' claims against the defendants counterclaims based on an integration clause. Although the Court found a specific integration clause in a subscription agreement was not a void waiver of the securities law protection, it still dismissed the counterclaim on the grounds that it was inconsistent with the protections afforded securities law claims.

What is significant is that the language cited by Playground in documents that were not supposed to involve the sale of securities was found by Playground to be analogous to a securities sales subscription agreement.  Also, *Doody* stands for another proposition.  Inserting an integration clause into the transaction documents known to be false can constitute a deceptive practice by the promoter.  *Id.* at 832. (D.C. Minn 1984)

Playground's reliance on *One-O-One Enterprises v. Caruson*, 848 F. 2d 1283 (DCC 1988) is also misplaced. In *Whelan v. Abell*, 48 F. 3d 1247, 1258 (DC Cir. 1995) the District of Columbia Circuit qualified to some extent its holding in *One-O-One*. Rejecting a "rather broad reading" of that decision, the court in *Whelan* said: [O]ur conclusion in [*One-O-One*] was plainly not intended to say that an integration clause bars fraud-in-the-inducement claims generally or confines them to claims of fraud in execution. . . . Such a reading would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate.  To the extent the *One-O-One* court addressed the issue of whether an interest was a security it reversed the district court's determination that the investment was not a security. Id. at 1287-1288.

Next Playground cites *Jackvony v. Riht Financial Corp* 873 F. 2d 411 (5th Cir 1989) which is wholly inapplicable.  This case did not resolve the question of whether an interest was a security.  Again, Playground, while claiming no security was involved in this case points to disclosures in a security proxy statement warning investors not to rely on oral representations.

---

[2]  Plaintiffs are providing a facsimile of such a document as an offer of proof.

5

Justice Breyer discusses the warning in the context of an exhaustive discussion of evidence not in isolation in a case that was dismissed after the plaintiff rested its case not at a motion to dismiss stage.

The next case, *Sanguinetti v. Viewlogic Sys., Inc.*, 1996 WL 33967 makes clear that the holding of *One-O-One v. Caruso* 848 F. 2d 1283, 1286-1287 (D.C. Cir. 1988) only bar fraud claims based on alleged promises as to future behavior not included in the final agreement. *Sanguinetti v. Viewlogic Sys., Inc.*, 1996 WL 33967 *18. Again, these cases have nothing to do with the issue of whether Playground sold plaintiff a security.

Playground cites the 1954 California case *Newmark v. H.& H. Products Mfg. Co.*, (1954) 128 Cal App 2d 35, 37-38 for the proposition that parol evidence cannot be used to vary a written promise. Ten years after *Newmark*, the Court in *Vogelsang v. Wolper* (1964) 227 Cal. App. 2d 102 (1964) referred to the principle that parol evidence is limited in such cases as a "very much restricted principle."

A written contractual provision stating that no other representations were made will not necessarily preclude a fraud action based on representations that were not included in the written agreement. *Ron Greenspan Volkswagen v. Ford Motor Land Dev. Corp*. (1995) 32 Cal. App. 4th 985, 987-989.

Fraud in obtaining an instrument [*Vogelsang v. Wolpert* (1964) 227 Cal. App. 2d 102, 122] or in inducing a party to enter into a contract by a material false promise may be shown by parol evidence [*see* Code Civ. Proc. § 1856(g)]. Evidence of an oral promise consistent with the written agreement is admissible under the parol evidence rule, while evidence of an oral promise at variance with the written agreement is not [*see* Code Civ. Proc. § 1856(a)].

However, that rule only bars evidence of false promises. For example, parol evidence of a misrepresentation of fact concerning the content of an agreement, made at the time of signing, is admissible to void a contract. *Pacific State Bank v. Greene* (2003) 110 Cal. App. 4th 375, 378-380.

Playground cites statements in the contracts that attempt to characterize plaintiffs' purchase of HRRSD units as not involving an investment with these quotes: "buyer is purchasing

6

the unit for its real estate value and not as an investment." Neither "the seller nor any of its employees or agents have represented or offered the property as an investment opportunity for appreciation of value or as a means of obtaining from the rental thereof." And "neither seller nor any of its employees or agents have made any statements or representations as to rental or other income that may be derived from the unit or as to any other economic benefit." (Playground Memo 6)

The quotes include representations that no representation was made about the investment potential of the condominium units. (Playground Memo 7) Playground cites another statement in the written agreement that sellers and their agents were not making any representations as to the feasibility of renting the unit or otherwise generating income or deriving any other economic benefit from ownership of the unit. (Playground Memo 7.)

Playground moves from representations to outright waivers of any claim for damages or cancellation of agreement because of representations made by sellers' agents. (Playground Memo 7.) Another statement in the written agreement point blank seeks to waive violations of the federal and state securities laws: "seller may, as a condition of closing, require of buyer, any brokers involved in the sale or agents of such brokers, or anyone else connected in any way with the offer to sell and the purchase of the unit the execution and delivery to seller of such waivers, affidavits or other documents as may from time to time be required by seller to satisfy seller the offer to sell and the offer are not in violation of any federal or state securities laws or regulations." (Playground Memo 7.)

These quotes may be divided into two categories. First, statements which do not alter the fact that the interests purchased were securities because they satisfy the test of a security and the quoted statements do not change the economic reality of the transaction. Second, those statements which attempt to waive the protection of the federal and state securities laws and are void because such waivers are unenforceable under federal and state securities laws.

The test of whether the alleged HRHSD investment contracts rests on the question of whether plaintiffs put up capital the return on which rested with the entrepreneurial efforts of the promoters, the answer to that question is clearly "yes". Whether plaintiffs shared in the
7

management of the enterprise, the answer is clearly "no".  The alleged HRHSD investment contracts fall squarely within the parameters of *Hocking v. Dubois*, 885 F2d. 1449 (9th Cir 1989). The extent to which the drafters of the documents Playground quotes went to avoid the appearance they were selling securities is an admission that defendants knew they were, in fact, selling securities. *Id.* at 1460-61.

The quotes do not negate or touch upon the rental agreement but refer only to the condominium units.  Moreover, other transaction documents specifically state that the units are being purchased as investment properties.  Playground does not dispute the fact that plaintiffs could not live in the condominiums.  Plaintiffs were limited to 28 days a year and the condominiums do not have kitchens.  The HRHSD is managed by the promoters.  The only rental agreement is with the promoters.  To the extent there is any question about the nature of the interest plaintiff purchased that would have to be resolved as a fact question which is not appropriate at the motion to dismiss stage.

**III.     Although Playground Falsely Claims Otherwise, Plaintiffs Are Entitled to Relief on Their Four Claims**

The Court has previously ruled that:

Claims may not be brought under Section 12(a)(2) "unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or . . . *more than three years after the sale.*" 15 U.S.C. § 77m (emphasis added). The three-year language of this provision is absolute and not subject to equitable tolling. *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982). The date of sale is when the parties entered into a binding contract for the sale of a security. *Amoroso v. Southwestern Drilling Multi-Rig Partnership No. 1*, 646 F. Supp. 141, 143 (N.D. Cal. 1986). This is true "even if the formal performance of their agreement is to be after a lapse of time." *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992) (quoting *Amoroso*, 646 F. Supp. at 143). (20 July 2010 Order Granting Motion to Dismiss)

Plaintiffs argue that they were not bound at the time they signed the Purchase Contract and Escrow Instructions. (Section 4.2 of the Purchase Contract, Defendant's Exhibit 1A, page 5

8

of 15.) Accordingly, the execution date of the Purchase Contract and Escrow Instructions should not be the date of sale for purposes of the statute of limitations under section 12 (2). Plaintiffs did not discover the facts upon which this action was based until after consulting with counsel, which was less than a year before the filing of this operative complaint. (FAC, paragraph 81) The contract did not become binding on the Plaintiffs until after the escrows closed.

**A.   Plaintiff's First Cause of Action under 12(2) is Not Time Barred**

The original complaint was filed on 8 December 2009. A § 12(2) claim must be brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence, or no more than three years after the sale. See, 15 U.S.C. § 77m. In this action, the plaintiffs are alleged to have discovered the untrue statements after consulting with counsel, which was less than a year before the filing of the operative complaint – in this case, the date by which the contract for sale of the HRHSD securities became binding when the escrow closed. (Section 4.2 of the Purchase Contract, Defendant's Exhibit 1A, page 5 of 15.)

As to the reasonable diligence requirement of § 12(2), the court in *Deveny v. Entropin, Inc.,* 139 Cal. App. 4th 408 (2006), explains that the Ninth Circuit "generally views the question of when a reasonably diligent investor should have discovered a claim as one appropriate for the factfinder to determine after trial rather than one for a judge to decide as a matter of law on summary judgment." (*Deveny* at 428, *citing* Luksch v. Latham (N.D.Cal. 1987) 675 F. Supp. 1198, 1201); *see also* Mosesian v. Peat, Marwick, Mitchell & Co. (9th Cir. 1984) 727 F.2d 873, 879 ["The question of what a reasonably prudent investor should have known is particularly suited to a jury determination"].)

**B.   Plaintiffs Second Cause of Action under 25110, 25503, and 25504.1 is Not Time Barred**

The court has found that any plaintiff who executed a Purchase Contract before December 8, 2007 is time-barred and precluded from bringing a claim under Cal. Corp. Code § 25510. (20 July 2010 Order Granting Motion to Dismiss, page 11.)

///

Plaintiffs ask the court to consider whether the fact that the sale was not final on the date by which the contract for sale of the HRHSD securities became binding when the escrow closed makes a difference in when the statute of limitation starts. (Section 4.2 of the Purchase Contract, Defendant's Exhibit 1A, page 5 of 15.)

### C. Plaintiffs Third Cause of Action for Violation Under §22501 is Not Time Barred

Under Cal. Corp. Code §25506 (b), no action shall be maintained to enforce any liability created under §§ 25501 unless brought before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire. Plaintiffs are admittedly within the 5 year period.

The complaint alleges plaintiffs discovered the basis of their legal action after plaintiffs consulted legal counsel within 3 years of the sale of the investment contracts. (FAC§ 81) The Court need not consider Playground's query as to whether the statute has run as it has clearly not.

Furthermore, in their memorandum of points and authorities in support of its motion to dismiss under F.R.C.P. 12(b)(6), Defendant Playground concedes the five year absolute statute of limitations has yet to run, but questions whether "two years have passed since the Plaintiffs have discovered facts constituting such [a] violation" [of §25506]. (Playground's Motion to Dismiss, p.15.) Playground asserts that the standard in interpreting the statute of limitations of §25506 is one of "inquiry" notice as described in the California Court of Appeal decision of *Deveny v. Entropin, Inc.,* 139 Cal. App. 4th 408, 419-23 (2006). (Playground Memo p.15.)

As Playground describes in their Motion to Dismiss, *Deveny* states that "inquiry notice is sufficient to trigger the running of the limitations period under section 25506." *Id.* at 423. We concur. However, Playground takes this isolated finding and proceeds to apply their own interpretation of "inquiry" notice to the present facts, completely overlooking an additional, yet essential part of *Deveny'*s "inquiry" notice analysis.

Subsequently in the analysis, *Deveny* goes on to describe more about what it means to be put on "inquiry" notice. As previously stated, Defendant Playground failed to take these findings

10

into account when they continued on with *their* application of the present facts to *their* "inquiry" notice analysis. Playground alleges plaintiffs were put on "inquiry" notice because certain actionable facts which were centered around the "misrepresentation…that the Defendants held out the condominium units as real estate…around the Purchase Contracts they signed back in 2006 to purchase their units." (Def. Mot. to Dismiss, pg. 16.) While Plaintiffs agree that "inquiry" notice starts the tolling of the statute of limitations, Plaintiffs disagree with Playground's interpretation of the facts. In fact, Plaintiffs point to later events which put the Plaintiffs on notice of fraud, thus triggering the statute of limitations. Nonetheless, these arguments are futile at this stage of the proceeding. As the Ninth Circuit and other courts have noted, the factual dispute as to when a reasonable person *should have* known they had a claim for fraud is an issue for the jury. This Court, per Ninth Circuit precedent and *stare decisis*, should let the factfinder decide on factual disputes and their relation to the triggering of the statute of limitations.

### D.   Plaintiffs Fourth Cause of Action for Violation Under §22501.5 is Not Time Barred

Again, the complaint was filed 8 December 2009. Corp Code §25506 (b) provides that no action shall be maintained to enforce any liability created under §25501 unless brought before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire. However, Cal Corp Code §25506 does not expressly control the actions for §25501.5, and thus, applying §25506 and its five year/two year statute of limitations, as proposed by Playground, would be unfounded at this stage.

Alternatively, the claim would be covered by the statute, the Code of Civil Procedure §338(a) or §338(d). Cal. Civ. P. §338 states the statute of limitations is three years for claims of: (a) an action upon a liability created by statute, other than a penalty or forfeiture; and (b) an action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake. Playground's Motion to Dismiss also suggests an alternative solution to cover the

1  §25501.5 claim by using Cal. Civ. P. §338(a), but Plaintiffs feel as though the action involves
2  fraudulent misrepresentation, §338(d) might also serve as a viable alternative, though they both
3  have the same three year statute of limitation period.
4      Even under §338, the complaint alleges plaintiffs discovered the basis of their legal action
5  after plaintiffs consulted legal counsel within 3 years of the sale of the investment contracts.
6  (FAC§ 81). The Court need not consider Playground's query as to whether the statute has run as
7  it has clearly not.

                                                    Respectfully submitted,

                                                    AGUIRRE, MORRIS & SEVERSON LLP

Dated:  July 30, 2010                               ___/s/Michael J. Aguirre_____
                                                    Michael J. Aguirre
                                                    maguirre@amslawyers.com

12

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; and that I served the individuals on the attached service list the following documents:

**PLAINTIFFS' OPPOSITION TO DEFENDANT PLAYGROUND DESTINATION PROPERTIES, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Filed on the ECF system and served pursuant to General Order No. 550.

AGUIRRE, MORRIS & SEVERSON LLP

Dated: July 30, 2010         /s/Michael J. Aguirre
Michael J. Aguirre
maguirre@amslawyers.com

# SERVICE LIST

*Tamer Salameh, et al., v. Tarsadia Hotel, et al.*
Case No. 09-CV-02739-DMS-CAB

Scott R. Albrecht
Samuels Green and Steel LLP
19800 MacArthur Boulevard, Suite 1000
Irvine, CA 92612
(949)263-0004
(949) 263-0005 (fax)
scott.albrecht@sgsattorneys.com
(*Attorneys for XBR Financial Services, LLC*)

Jennifer A. Needs
Samuels, Green & Steel, LLP
19800 MacArthur Boulevard, Suite 1000
Irvine, CA 92612
(949) 263-0004
Fax: (949) 263-0005
Email: jennifer.needs@sgsattorneys.com
*(Attorneys for XBR Financial Services, LLC)*

Lynn T Galuppo
Cox Castle & Nicholson
19800 MacArthur Boulevard, Suite 500
Irvine, CA 92612
(949)260-4641
(949)476-0256 (fax)
lgaluppo@coxcastle.com
(*Attorneys for 5th Rock LLC, Gaslamp Holdings, LLC, MPK One, LLC, Tarsadia Hotel, B.U. Patel, Gregory Casserly, Tushar Patel*)

John Nadolenco
Mayer Brown LLP
350 South Grand Avenue, Suite 2500
Los Angeles, CA 90071-1503
(213)229-5173
(213)625-0248 (fax)
jnadolenco@mayerbrown.com
(*Attorneys for East West Bank*)

Sung-Min Christopher Yoo
Adorno Yoss Alvarado and Smith
1 MacArthur Place, Suite 200
Santa Ana, CA 92707
(714)852-6800
(714)852-6899 (fax)
cyoo@adorno.com
(*Attorneys for JP Morgan Chase*)

| | |
|---|---|
| 1 | Bryan D Sampson<br>Sampson and Associates |
| 2 | 2139 First Avenue<br>San Diego, CA 92101-2013 |
| 3 | (619)557-9420<br>(619)557-9425 (fax) |
| 4 | bsampson@sampsonlaw.net<br>(*Attorneys for Spyglass Partners, Inc.*) |
| 5 | |
| 6 | Edward M. Rosenfeld<br>Bryan Cave LLP |
| 7 | 120 Broadway, Suite 300<br>Santa Monica, CA 90401 |
| 8 | (310) 576-2104<br>Fax: (310)576-2200 |
| 9 | emrosenfeld@bryancave.com<br>(*Attorneys for Bank of America*) |
| 10 | Benjamin J.B. Allen<br>Bryan Cave LLP |
| 11 | 120 Broadway, Suite 300<br>Santa Monica, CA 90401 |
| 12 | (310) 576-2395<br>Fax: (310) 576-2200 |
| 13 | ben.allen@bryancave.com<br>(*Attorneys for Bank of America*) |
| 14 | |
| 15 | Daniel M. Benjamin<br>La Bella & McNamara LLP |
| 16 | 401 West A Street<br>Suite 1150 |
| 17 | San Diego, CA 92101<br>(619)696-9200 |
| 18 | Fax: (619)696-9269<br>dbenjamin@labellamcnamara.com |
| 19 | (*Attorneys for Playground Destination Properties*) |
| 20 | Thomas W McNamara<br>LaBella McNamara |
| 21 | 401 West A Street, Suite 1150<br>San Diego, CA 92101 |
| 22 | (619)696-9200<br>Fax: (619)696-9269 |
| 23 | tmcnamara@labellamcnamara.com<br>(*Attorneys for Playground Destination Properties*) |
| 24 | Logan Smith<br>LaBella & McNamara LLP |
| 25 | 401 West A Street, Suite 1150<br>San Diego, CA 92101 |
| 26 | (619)696-9200<br>Fax: (619)696-9269 |
| 27 | lsmith@labellamcnamara.com<br>(*Attorneys for Playground Destination Properties*) |
| 28 | |

15