1  LA BELLA & MCNAMARA, LLP
   THOMAS W. MCNAMARA (SBN 127280) tmcnamara@labellamcnamara.com
2  DANIEL M. BENJAMIN (SBN 209240) dbenjamin@labellamcnamara.com
   LOGAN D. SMITH (SBN 212041) lsmith@labellamcnamara.com
3  401 West A Street, Suite 1150
   San Diego, California 92101
4  Telephone:  (619) 696-9200
   Facsimile:   (619) 696-9269
5
   Attorneys for:  Defendant Playground Destination Properties, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAMER SALAMEH, et al., | ) Case No.: 09cv2739 DMS (CAB) |
| Plaintiffs, | ) **DEFENDANT PLAYGROUND** |
| | ) **DESTINATION PROPERTIES INC.'S** |
| vs. | ) **REPLY IN SUPPORT OF ITS MOTION TO** |
| | ) **DISMISS UNDER FEDERAL RULE OF** |
| TARSADIA HOTEL, et al., | ) **CIVIL PROCEDURE 12(b)(6)** |
| Defendants. | ) Date:  August 13, 2010 |
| | ) Time:  1:30 p.m. |
| | ) Judge: Hon. Dana M. Sabraw |
| | ) Dept:  Courtroom 10, 2nd Floor |

64538

# INTRODUCTION

Plaintiffs' arguments to survive this motion to dismiss are mutually inconsistent; they cannot both be true. Playground first moved to dismiss because Plaintiffs agreed in numerous signed statements in their Purchase Contracts and Addendums that the condominium units at issue were neither bought nor sold as investments. These statements foreclose any claim that the units are securities. So, to escape the clear legal impact of those statements, Plaintiffs erroneously argue that all of these statements in their contracts were just a fraud, that they were told the condominiums were investments, and that the representations instead are proof that the condominium units were securities.

Plaintiffs' representations in the contracts are binding. *See Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1292-93 (S.D. Fla. 2007) (dismissing claims that condominium units were purchased as securities where contradicted by plain language of representations in contracts). However, if Plaintiffs were right that the representations in the Purchase Contracts are a fraud and proof that the units really were securities, then Plaintiffs cannot possibly prevail on the statute of limitations.

The Court already held that many of the claims in this action are barred by the absolute statutes of limitations that govern some of the securities claims. All the remaining claims are subject to the shorter time limitations that apply to securities claims where a plaintiff has inquiry notice.

It is difficult to think of better inquiry notice than if someone has you sign a contract representing that the condominium you are purchasing is not an investment and is not sold as an investment even while (allegedly, according to Plaintiffs) those same persons orally told you what a great investment the condominium would be and structured the deal as an investment. An allegation that you were told one thing, but then told to sign a contract agreeing to the exact opposite, is the very definition of inquiry notice.

Plaintiffs cannot have it both ways. If the representations in the Purchase Agreements are true, Plaintiffs' claims are barred as a matter of law because they agreed that the

condominiums were neither sold nor purchased as investments. If the representations are not true, Plaintiffs were put on inquiry notice, because they knew the representations were inconsistent with the alleged prior statements made to them. Either way, the claims are barred on their face in a manner that no amount of amendment can save.

## ARGUMENT

### I. Plaintiffs Did Not Purchase the Condominium Units as Securities

Rather than address the plain language of the Purchase Contracts, which on its face completely contradicts Plaintiffs' claims, Plaintiffs attempt to come up with a laundry list of excuses to ignore it.[1] Perhaps most telling is when Plaintiffs argue that their "allegations are modeled on the SEC Release" from 1972 regarding when condominium units are securities. (Opp. at 8:24-25). Drafting a complaint just to make sure it contains every single legal conclusion and label required by an SEC Release is exactly what the Supreme Court held plaintiffs were *not* supposed to be doing any more. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do....") (citation omitted).

Plaintiffs must show that there is some meat on the bone. The problem for Plaintiffs is that their scant allegations of limited substance allege that the condominium units were sold to them as investments and were purchased by them as investments. And those allegations are flatly contradicted by the Purchase Contract's express representations that Plaintiffs read and agreed to (often with their own initials). (*E.g.,* Purchase Contract ¶¶ 19, 20(i)). Allegations that contradict a contract incorporated by reference into a complaint need not be deemed true on a motion to dismiss. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

---

[1] The Court's July 20, 2010 Order granting the bank defendants' motions to dismiss already took notice of the Purchase Contract (as well as additional documents) in deciding those motions to dismiss. (Dock. 72 at 5:27-6:6). Plaintiffs make some reference to whether the Court can take notice without stating a clear position (Opp. at 2:10-21), but the issue is already resolved by the Order.

1 1295-96 (9th Cir. 1998).  And once those allegations are stripped away, there is nothing left
2 but the bare bones of the legal conclusions.

3       Plaintiffs argue that the cases cited by Playground in moving to dismiss involved
4 misrepresentations, not whether a security was sold.[2]  They fail to cite any case law,
5 however, establishing that this distinction makes a difference.  (Opp. at 2:2-3, 5-6).  To the
6 contrary, there is case law establishing that representations and disclaimers in purchase
7 contracts can prevent condominiums from being deemed securities.  For example, in *Garcia*,
8 528 F. Supp. 2d 1283, like here, the purchase contract contained statements such as:

> Purchaser ... represents that Purchaser is purchasing a Unit for the personal use of Purchaser and Purchaser's family members and guests only, to hold for an indefinite time, and with no expectation of investment potential or deriving any profit or tax advantage therefrom whether through income, appreciation or otherwise and with no expectation that Purchaser will receive any assistance from the Developer in the rental of accommodations or the resale of the Purchaser's Unit.
>
>      \*     \*     \*
>
> Developer makes no representations whatsoever regarding short term rentals, rental rates, or the ability to rent the Unit. The purchase of a Unit should be based on its value to the purchaser, and not considered for purposes of acquiring an appreciating or income-producing investment or with an expectation that the Unit may be rented or sold.

*Id*. at 1289-90.  As the court held, based on those statements, there could be no securities claim:  "Plaintiffs stated that they entered into those agreements with no expectation of profits and understanding that any such profits would be realized from the Plaintiffs' own actions and from appreciation in market value wholly outside of Defendants' control.  .... Therefore, the Purchase Contracts are not 'investment contracts' for purposes of the federal securities laws."  *Id*. at 1292-93.

      Similarly, in *Demarco v. LaPay*, 2009 WL 3855704, at *8-9 (D. Utah 2009), even where the defendants promoted the investment benefits of condominium units, the court held

---

[2] As Plaintiffs admit, their third cause of action alleges that Playground "materially assisted the sale of securities based upon misrepresentations and omissions of material fact." (Opp. at 1:9-11 (citing FAC ¶¶ 1-11, 153, 154).  So the case law Playground cited, even under Plaintiffs' spin on the cases, would still bar the third cause of action.

the units could not be securities where the language of the purchase contract provided: "Buyer acknowledges that neither Seller nor any of its agents or employees has made any warranties or representations upon which Buyer has relied concerning: (i) the investment value of the Silver Star residence; (ii) the possibility or probability of profit or loss resulting from ownership or rental of the Silver Star residence…." *Id*. at *8. Any oral representations that occurred were negated by the parties' express agreement that the unit was not sold as an investment. *Id*. at *8-9.

Indeed, Plaintiffs are reading the cases cited in Playground's moving papers far too narrowly. The holdings of the cases cited by Playground are nowhere limited solely to cases of alleged misrepresentations. Instead, the point of each case is that if the parties to a contract make written representations, and enter into an integration clause disclaiming reliance on any other representations, one of the parties cannot later file a complaint premised on contradicting all of the representations made in the contract. *Doody v. E.F. Hutton & Co., Inc*., 587 F. Supp. 829, 832 (D. Minn. 1984); *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988)[3]; *Jackvony v. RIHT Financial Corp.*, 873 F.2d 411, 145-17 (1st Cir. 1989); *Sanguinetti v. Viewlogic Sys., Inc.*, 1996 WL 33967, at *17-18 (N.D. Cal. 1996).

This same result is dictated by the parol evidence rule. As Plaintiffs admit, that rule establishes that "[e]vidence of an oral promise consistent with a written agreement is admissible under the parol evidence rule, **while evidence of an oral promise at variance with the written agreement is not**." (Opp. at 6:20-22 (citing Cal. Code Civ. Proc. § 1856(a) (emphasis added)). This is exactly Playground's point. The Purchase Contract states that the

---

[3] Plaintiffs cite *Whelan v. Abell*, 48 F.3d 1247, 1258 (D.C. Cir. 1995), as allegedly narrowing *One-O-One Enterprises*. (Opp. at 5:15-23). In *Whelan*, the court explained that its case dealt with a situation where a party was trying to bar a fraud allegation simply on the strength of an integration clause. *See Whelan*, 48 F.3d at 1258. It did not involve additional representations in which the party expressly agreed to statements that directly contradicted the alleged misrepresentations. It thus is different in kind from this case, where Playground can rely both on the integration clause and express representations.

1  condominium units were not sold as investments. Plaintiffs want to base their complaint on
2  allegations that the condominium units were sold as investments. This they cannot do.[4]

3  Plaintiffs argue that securities claims cannot be waived in a contract. (Opp. at 2:4-5,
4  7:12-25). Playground is relying on representations of fact made by the Plaintiffs in the
5  contracts and an integration clause disclaiming contrary representations. These are not
6  waivers of securities claims. They are binding representations made by Plaintiffs. *Doody,*
7  *Inc.*, 587 F. Supp. at 832 (representations made in contract "are not a waiver of the applicable
8  securities laws"); *Sanguinetti v. Viewlogic Sys., Inc.*, 1996 WL 33967, at *17-18 (N.D. Cal.
9  1996) (integration clause bars state and federal law securities claims); *Demarco*, 2009 WL
10  3855704, at *8-9 (enforcing representations in contract to bar securities claims).

11  Plaintiffs discuss at length how a condominium hotel unit, sold under the right
12  circumstances, can be a security. (Opp. at 2:24-5:3). This proposition of law alone proves
13  nothing. Practically anything, if marketed and sold under the proper circumstances, can
14  become a security. It is the very breadth of what could be a security that led to the creation
15  of the "economic realities" test that is applicable to the federal and state claims, and the "risk
16  capital" test applicable to the state law claims. As discussed in the moving papers, Plaintiffs'
17  representations in the Purchase Contract that they were not buying the units as investments
18  make satisfaction of those tests impossible. (*See* Playground's MPA ISO MTD at 5-10). If
19  the primary motivation for purchase of a condominium is personal use, "the securities laws
20  do not apply." *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852-53 (1975).

21  Plaintiffs cite to SEC Release No. 33-5347 as to when a condominium hotel unit
22  becomes a security. This Release, of course, is not binding authority but merely persuasive.
23  In any case, it does not apply here. In 2002, the SEC released a subsequent No-Action Letter
24  explicitly adopting the view that a hotel condominium unit would not be treated as a security
25  if it was not sold as an investment, even if the purchaser later agreed to a rental program, so
26  long as the rental program was optional and there was no pooling of rental proceeds. *See*

---

28  [4] Plaintiffs argue that evidence of a misrepresentation as to the contents of a contract at the time of signing is admissible. (Opp. at 6:23-26). The FAC has no such allegation.

SEC No-Action Letter to Intrawest Corporation, 2002 WL 31626919 (Nov. 8, 2002) (no action taken regarding Intrawest's sale of "condominium-hotel" units even though owners might have to commit to rent out their units for as long as five years).

Here, Plaintiffs' representations in their Purchase Contract confirm that the units were not sold or marketed as investments. (Purchase Contract ¶¶ 19, 20(i); Acknowledgment and Agreement Addendum ¶¶ 4, 12, 13). And, there was no pooling of rental proceeds. The Court has before it the Purchase Contract and Escrow Instructions filed by Playground, which contains no pooling arrangement. The bank defendants submitted the Unit Maintenance and Operations Agreements and Rental Management Agreements. None of those creates a rental pooling arrangement. *See* SEC No-Action Letter to Intrawest Corporation, 2002 WL 31626919, at *6 ("Intrawest will not offer unit owners the ability to share in the pooling of rents. Each unit will have separate income and expense accounts and each owner's rental income will be directly tied to the number of days that his, her or its unit or units are rented."). And, the Court can look at the same contracts to confirm that the Rental Managements Agreements were optional – nowhere is their execution required.

Plaintiffs also discuss the third possible criteria in the 1972 SEC Release that there was a restriction on occupancy of the condominium units to 28 days. However, Plaintiffs' FAC is conspicuously silent as to why the 28 day restriction exists. Perhaps the reason Plaintiffs are avoiding that issue is because the SEC has issued another No-Action Letter permitting the sale of condominium units with limitations on the length of owner-occupancy based upon pre-existing zoning restrictions. *See* SEC No-Action Letter to Marco Polo Hotel Inc., 1987 WL 108553, at *1, 3 (Sept. 30, 1987). This, of course, is an important qualification to the earlier 1972 Release, and if Plaintiffs want to rely on that Release, they need to also be making allegations that demonstrate that their allegation on restrictions on occupancy do not fall within the subsequent No-Action Letters issued by the SEC. Here, Plaintiffs fail to allege that the 28 day occupancy restriction was the result of Defendants' malfeasance and not a result of pre-existing zoning requirements. Playground understands that the location of the Hotel does have an applicable pre-existing zoning restriction. However, if Plaintiffs believe the 28 day

1 restriction saves their complaint, they should be required to actually allege that the 28 day
2 restriction is not a pre-existing zoning restriction that would be permissible under the No-Action
3 Letter to Marco Polo Hotel Inc., 1987 WL 108553.

4 Plaintiffs cite *Hocking v. Dubois*, 885 F.2d. 1449, 1460-61 (9th Cir 1989), where the
5 court held that there was a triable issue as to whether the condominium hotel units at issue in that
6 case were securities. (Opp. at 4:2-26). That case was a rent pooling case. The court found that
7 the *Howey* requirement of a "common enterprise" could only be satisfied because of the alleged
8 existence of rent pooling, and included a requirement that the plaintiff also be able to show that
9 the rental agreement was offered as a package with the sales contract. *Hocking*, 885 F.2d. at
10 1459-60. Here, the contracts already before the Court show that there was no rent pooling and
11 that the Rental Management Agreements were signed subsequent to and separate from the
12 Purchase Contracts, without any requirement that they be executed at all. The requirements
13 of *Hocking* cannot be met in this case, and most certainly are not met based upon the allegations
14 in Plaintiffs' Complaint and the contracts that are incorporated by reference.

## II. Plaintiffs' Claims Are Barred by the Applicable Statute of Limitations

### A. Claims Barred by the Court's Order on the Bank Defendants' Motions

17 The Court's Order on the Banks' motions to dismiss already held that the absolute
18 three year statute of limitations bars the federal Section 12(a)(2) claim in this case by any
19 Plaintiffs who executed a Purchase Contract before December 8, 2006, because the execution
20 date of the Purchase Contract is the date of sale for purposes of the statute of limitations.
21 (Dock. 72 at 10). Thus, the Section 12(a)(2) claims must be dismissed as to all but four of
22 the Plaintiffs, as all of the other Purchase Contracts were executed prior to December 8,
23 2006. (*See* Motion to Dismiss at 12 n.1).[5]

24 Essentially seeking reconsideration, Plaintiffs quote section 4.2 of the Purchase
25 Contract governing what would occur if the contract was terminated as supposedly
26 "provid[ing] plaintiffs with the right to terminate the purchase contract." (Opp. at 1:18-23).

---

[5] There are three contracts signed by four Plaintiffs, but not the Defendants, prior to that date. They create a more complex question as to when those Plaintiffs were bound.

7                                Case No. 09cv2739 DMS (CAB)
**DEFENDANT PLAYGROUND'S REPLY ISO MOTION TO DISMISS**

1   This, Plaintiffs assert, demonstrates that the contract was not yet binding.  But the language
2   of section 4.2 – which Plaintiffs quote – does not give them any type of unilateral right to
3   terminate the contract.  It simply describes what happens if the Contract "is terminated in
4   accordance with this Contract."  Plaintiffs are not pointing to any language at all that creates
5   a unilateral right whereby they could terminate the contract and not be bound at the date of
6   sale.  (*See id.*)

7   The Court's Order also established that Plaintiffs' second cause of action – which is
8   subject to an absolute two year statute of limitations – are barred as all of the Purchase
9   Contracts were executed more than two years before the suit was filed.  (Dock. 72 at 10:20-
10   11:13).  Plaintiffs again argue that section 4.2 of the Contract somehow meant they were not
11   bound.  (Opp. at 10:1-4).  That is not what section 4.2 says.  The second cause of action is
12   barred by the absolute statute of limitations as to all Plaintiffs.

### B.   Inquiry Notice Bars All Remaining Claims

The only remaining question is whether inquiry notice bars the remaining claims.  It is uncontested that the inquiry notice time period is one year for the first cause of action, two years for the third cause of action, and either two or three years for the fourth cause of action.  What Plaintiffs do contest is whether they were on inquiry notice.

Plaintiffs argue that inquiry notice is a question of fact and should be reserved for the finder of fact.  (Opp. at 9-11).  However, inquiry notice can be grounds for granting a motion to dismiss where the existence of inquiry notice is established by the allegations of the complaint or facts of which the Court may take judicial notice.  *In re American Funds Securities Litig.*, 556 F. Supp. 2d 1100, 1105 (C.D. Cal. 2008) (dismissing securities claims with prejudice under the one year inquiry notice statute of limitations where the complaint and judicially noticeable facts established that the plaintiffs were on notice and not reasonably diligent).  This is a logical conclusion given that the applicable federal and California law both provide that inquiry notice is subject to an "objective" standard – which means that the standard can be determined as a matter of law.  *See In re Stac Electronics*

*Securities Litig.*, 89 F.3d 1399, 1411 (9th Cir. 1996); *Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408, 419-23 (2006).

Here, Playground pointed out the numerous statements in the Purchase Contract and Addendum with regard to whether the units were being purchased as investments. These are obviously statements of which the Plaintiffs had to be aware – they signed the contracts and initialed a number of the applicable provisions as well. Indeed, Plaintiffs argue that the provisions cited by Playground "demonstrate that the interests purchased were securities." (Opp. at 2:13-15). Plaintiffs also claim that "the implicit statements contained" in the sections of the Purchase Agreement quoted by Playground demonstrate that "the unknown drafter was worried about Playground's exposure under the securities laws." (Opp. at 2:12-13). Plaintiffs then also argue that numerous other facts known to them at the time of execution of the Purchase Agreement all show that the units were securities. (*See* Opp. at 4:21-26 (pointing, *inter alia*, to the FAC's allegations that the "promoters emphasized the economic benefits investors would derive" and to the allegation concerning the 28 day occupancy restriction)). If Plaintiffs are correct in these assertions, then all they do is establish that Plaintiffs were on inquiry notice.

Plaintiffs' Opposition also is notably silent as to the central allegation on which all claims rest that the Defendants failed to register the condominium units as securities despite being obligated to do so. Claims that are based upon an alleged failure to register a security – which is a public fact – are by definition claims of which a plaintiff has inquiry notice. *See Meadows v. Pac. Inland Secs. Corp.*, 36 F. Supp. 2d 1240, 1251 (S.D. Cal. 1999) ("since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine . . . .").

Plaintiffs never address how the facts available in the Purchase Contract could not have been discovered at the time of sale. Instead, Plaintiffs refer to unspecified "later events which put the Plaintiffs on notice of fraud" (Opp at. 11). What were these "later events"? Plaintiffs do not exactly say, other than that they "discovered the basis of their legal action

after plaintiffs consulted within counsel." (Opp. at 12).   Inquiry notice turns on the discovery of facts, not the discovery of law.

When considering very similar contexts where dissatisfied real estate purchasers attempted to get out of purchases by claiming the purchases violated securities laws because they were actually "investment contracts," the court in *Garcia*, 528 F. Supp. 2d 1283, held that the purchasers were on inquiry notice based on the information contained in the purchase contracts. The court explained: "[T]he Purchase Contracts clearly relate to-and, indeed, directly contradict-Plaintiffs' misrepresentation claims. Therefore, the Purchase Contracts were more than sufficient to put Plaintiffs on inquiry notice of their asserted securities fraud claims." *Id.* at 1291

Similarly here, under Plaintiffs' own argument, the representations they made and signed in the Purchase Contract put them on inquiry notice.  Thus, the claims are untimely under the governing statutes of limitations.

## **CONCLUSION**

Playground respectfully requests that its motion to dismiss be granted.

DATED: August 6, 2010                                   LA BELLA & MCNAMARA, LLP


By:   **/s/ Daniel M. Benjamin**
Daniel M. Benjamin
Attorneys for Playground Destination Properties, Inc.