1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

TAMER SALAMEH, et al.,

                      Plaintiffs,

     vs.

TARSADIA HOTELS, et al.,

                   Defendants.

CASE NO. 09CV2739 DMS (CAB)

**ORDER GRANTING PLAYGROUND DESTINATION PROPERTIES' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

[Doc. 50]

Pending before the Court is Defendant Playground Destination Properties' ("Playground") motion to dismiss. The matter came on for hearing on August 13, 2010. Michael Aguirre and Maria Severson appeared on behalf of Plaintiffs. Daniel Benjamin and Logan Smith appeared on behalf of Playground. Frederick Kranz appeared on behalf of the Tarsadia Hotel Defendants. Edward Rosenfeld appeared on behalf of Defendant Bank of America. For the reasons set forth below, Defendant's motion is granted.

## I.

## BACKGROUND

The Hard Rock Hotel San Diego ("HRHSD") is located in downtown San Diego's Gaslamp Quarter, near the baseball stadium. (FAC ¶ 67.) It is a 12-story building containing 420 guest rooms, 244 studios, 176 suites, and meeting and event space. (*Id.* at ¶ 68.) The public was offered the

1   opportunity to purchase ownership interests in individual HRHSD studios or suites through press

2   releases and public marketing programs, including television commercials. (*Id.* at ¶ 82.)  Plaintiffs

3   bring suit on behalf of all persons who purchased such ownership interests.  (*Id.* at ¶ 60.)

4       Plaintiffs purchased ownership interests in individual HRHSD studios or suites at prices

5   ranging from $350,000 to more than $2 million.  (*Id.* at ¶¶ 82, 85.)  They purchased their ownership

6   units through what Plaintiffs have titled "HRHSD Investment Contracts."  (*Id.* at ¶ 82.)  The HRHSD

7   Investment Contract consisted of three documents: 1) Purchase Contract and Escrow Instructions, 2)

8   Unit Maintenance and Operating Agreement, and 3) HRHSD Rental Management Agreement

9   ("RMA").  (*Id.* at ¶ 86.)

10      Plaintiffs allege that once they purchased their units at HRHSD, they had no control over the

11  rental management of the studios and suites.  (*Id.* at ¶ 79.)  Although they were told the HRHSD

12  Rental Management Agreement was voluntary, it was in fact mandatory.  (*Id.* at ¶¶ 76-78.)  Plaintiffs

13  were not issued keys to their units, but instead had to obtain keys from the hotel when staying in their

14  units.  (*Id.* at ¶ 89.)  Plaintiffs were permitted to stay in their units for up to 28 days per year, and if

15  they sold the unit, the unit was subject to the 28-day limitation.  (*Id.* at ¶ 88.)  HRHSD was managed

16  by Defendant 5th Rock, LLC, and Plaintiffs had to pay 5th Rock a service and management fee when

17  they stayed in their units.  (*Id.* at ¶¶ 87, 90.)  5th Rock had a right of first refusal if Plaintiffs chose to

18  sell their interests.  (*Id.* at ¶ 94.)

19      Plaintiffs contend the units were marketed as real estate transactions, and indeed, as part of

20  those real estate transactions Plaintiffs were obligated to pay tens of thousands of dollars in

21  nonrefundable deposits.  (*Id.* at ¶ 74.)  Plaintiffs allege, however, that the units were actually

22  "securities" and should have been sold pursuant to the laws regulating the sale of securities.  (*Id.* at

23  ¶ 74, 95-101.)  Defendant Playground was the third-party real estate brokerage company hired by the

24  developer to list and market the condominium units to be developed.  Plaintiffs assert four claims

25  against Playground: 1) violation of § 12(a)(2) of the Securities Act of 1933 for misrepresentation or

26  omission, 2) violation of Cal. Corp. Code §§ 25110, 25503 and 25504.1 for sale of unqualified

27  security, 3) violation of Cal. Corp. Code §§ 25401, 25501 and 25504.1 for misrepresentation or

28  omission, and 4) violation of Cal. Corp. Code 25501.5 for sale by unlicensed broker-seller.

1    Plaintiffs filed the original complaint on December 8, 2009, and the FAC on March 15, 2010.

2    (Docs. 1 & 8.)  Playground filed its motion to dismiss on June 9, 2010.  Plaintiffs filed an opposition

3    and Defendant filed a reply.  (Docs. 77 & 79.)  On July 20, 2010, this Court granted without prejudice

4    four motions to dismiss filed by the Bank Defendants.  (Doc. 72.)

5                                              **II.**

6                                    **LEGAL STANDARD**

7        In two recent opinions, the Supreme Court established a more stringent standard of review for

8    12(b)(6) motions.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v.*

9    *Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss under this new standard, "a complaint

10   must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on

11   its face.'"  *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility

12   when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

13   defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Determining

14   whether a complaint states a plausible claim for relief will ... be a context-specific task that requires

15   the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950 (citing *Iqbal*

16   *v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).  The reviewing court must therefore "identify the

17   allegations in the complaint that are not entitled to the assumption of truth" and evaluate "the factual

18   allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  *Id.* at

19   1951.

20                                             **III.**

21                                       **DISCUSSION**

22       Playground moves to dismiss the FAC on the grounds that the condominium units were not

23   "securities" under the securities laws and Plaintiffs' claims are barred by the relevant statutes of

24   limitations.

25   **A.    Sale of Security**

26       Plaintiffs contend the sale of HRHSD condominium units was an "Investment Contract"

27   subject to state and federal securities laws.  "[A]n investment contract for purposes of the Securities

28   Act means a contract, transaction or scheme whereby a person invests his money in a common

1   enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC*

2   *v. W. J. Howey Co.*, 328 U.S. 293, 298-299 (1946).  There is a three-part test to determine whether or

3   not a transaction is an investment contract: "(1) an investment of money (2) in a common enterprise

4   (3) with an expectation of profits produced by the efforts of others." *Warfield v. Alaniz*, 569 F.3d

5   1015, 1020 (9th Cir. 2009) (quotations omitted).

6       In California, an investment may be a security if it meets the federal test under *Howey*, or if

7   meets the "risk capital" test. *Consolidated Management Group, LLC v. Department of Corporations*,

8   162 Cal. App. 4th 598, 610 (2008).  Four factors are considered in the "risk capital" test: "(1) whether

9   funds are being raised for a business venture or enterprise; (2) whether the transaction is offered

10  indiscriminately to the public at large; (3) whether the investors are substantially powerless to effect

11  the success of the enterprise; and (4) whether the investors' money is substantially at risk because it

12  is inadequately secured." *Reiswig v. Department of Corporations*, 144 Cal. App. 4th 327, 334 (2006)

13  (citations omitted).

14      Defendant argues the transaction was not an "investment contract" because of the plain

15  language of the contracts.  In the Purchase Contract and Escrow Instructions, Plaintiffs were obligated

16  to initial a clause stating:

17      Purchase not an investment.  By placing his, her, their initials in the space
       provided herein below, Buyer expressly acknowledges that: (a) Buyer is
18      purchasing the units for their real estate value and not as an investment; (b) neither
       seller nor any of its employees or agents have represented or offered the property
19      as an investment opportunity for appreciation of value or as a means of obtaining
       income from the rental thereof; and (c) neither seller nor any of its employees or
20      agents have made any statements or representations as to rental or other income
       that may be derived from the units or as to any other economic benefit, including
21      possible advantages under federal or state tax laws, to be derived from the
       purchase and/or ownership of the units.
22

23      Defendant argues that given this language Plaintiffs could not have reasonably relied on any

24  representations that the transaction was an investment.  Plaintiffs, however, argue the economic

25  realities of the transaction make it an investment contract.  In *Hocking v. Dubois*, 885 F.2d 1449, 1461

26  (9th Cir. 1989), the court held there were triable issues of fact as to whether the purchase of a

27  condominium unit in Hawaii was an investment contract, in part because the resort operated like a

28

1    hotel and it would have been impractical, if not impossible, for the investor to manage his one

2    condominium separate from the rental agent at the resort and still receive significant rental income.

3         Here, the units were in a hotel, and Plaintiffs were only permitted to stay in the unit for up to

4    28 days a year.  Thus, any benefit derived from owning the unit largely would come from its rental

5    value, not from Plaintiffs' use of the unit.  While Plaintiffs concede they were not obligated to sign

6    the RMA to have Tarsadia manage the rental of the units, they argue that for all practical purposes, the

7    RMA was necessary if they desired any rental income from their units.  The economic realities of the

8    transaction, according to Plaintiffs, indicate the transaction is an investment contract, despite the plain

9    language of the Purchase Contracts.  Nonetheless, Plaintiffs have failed to allege a common enterprise,

10   and their allegations as to their expectation of profits produced by the efforts of others are conclusory.

11    Accordingly, Plaintiffs' claims are dismissed without prejudice.

12   **B.      Statutes of Limitations**

13        *1.  Claims 1 and 2 - Violation of § 12(a)(2) and Cal. Corp. Code § 25110*

14        Section 12(a)(2) claims are governed by a three year statute of limitations and Cal. Corp. Code

15   § 25110 claims have a two year statute of limitations.  The Court has previously held that the date the

16   Purchase Contract and Escrow Instructions were executed is the date on which the statutes of

17   limitations began to run.  Thus, the claims of many Plaintiffs are time-barred.  Plaintiffs did not move

18   for reconsideration of this ruling.  Rather, Plaintiffs contend they were not bound at the time the signed

19   the Purchase Contract and Escrow Instructions because of a provision in the contract which provided

20   for termination in certain circumstances.  Plaintiffs provide no authority for their position, nor do they

21   contend they attempted to terminate the contract in accordance with the termination provisions.

22   Accordingly, the Court's previous ruling on this issue stands.

23        *2.  Claim 3 - Violation of Cal. Corp. Code § 25501*

24        Claim 3 is governed by the following statute of limitations:

25   (b) For proceedings commencing on or after January 1, 2005, no action shall be
     maintained to enforce any liability created under Section 25500, 25501, or 25502
26   (or Section 25504 or Section 25504.1 insofar as they related to those sections)
     unless brought before the expiration of five years after the act or transaction
27   constituting the violation or the expiration of two years after the discovery by the
     plaintiff of the facts constituting the violation, whichever shall first expire.

28

1  Cal. Corp. Code § 25506(b).

2       The two year statute of limitations is triggered when Plaintiffs have inquiry notice of their

3  claims.  *Deveny v. Entropin, Inc.,* 139 Cal. App. 4th 408, 422-423 (2006).  Defendant contends

4  Plaintiffs were put on inquiry notice at the time of signing the Purchase Contract and Escrow

5  Instructions because registration of securities is a matter of public record; therefore, Plaintiffs should

6  have discovered in 2006 that the units were not registered.  Defendant further argues that if, as alleged,

7  oral representations were made to Plaintiffs that the units *were* investments, such representations

8  would have been contrary to the explicit terms of the Purchase Contracts, and Plaintiffs would have

9  been on inquiry notice of the discrepancy at the time they signed the contracts.

10       The current record is incomplete as to whether Plaintiffs were put on inquiry notice at the time

11  they executed the Purchase Contracts.  Plaintiffs argue they were not put on inquiry notice until after

12  the contracts were signed because later events revealed Defendant's fraud.  Plaintiffs, however, do not

13  explain those events.  Plaintiffs also asserted at oral argument that a fiduciary relationship existed

14  between Plaintiffs and Playground, and that such a relationship blunts Plaintiffs' duty of inquiry, but

15  there are no such allegations in the FAC.  Accordingly, Plaintiffs are granted leave to amend.

16       *3.  Claim 4 - Violation of Cal. Corp. Code § 25501.5.*

17       California Corporations Code section 25501.5 provides for rescission of the purchase of a

18  security from an unlicensed broker-dealer.  There is no specific statute of limitations addressing this

19  claim.  Defendant argues the same statute that applies to Claim 3 applies to Claim 4.  Alternatively,

20  Defendant contends the catch-all statute of limitations in California should apply.  Plaintiffs agree.

21  Under that provision, there is a three-year statute of limitations for:"(a) an action upon a liability

22  created by statute, other than a penalty or forfeiture," and "(d) an action for relief on the ground of

23  fraud or mistake.  The cause of action in that case is not deemed to have accrued until the discovery,

24  by the aggrieved party, of the facts constituting the fraud or mistake."  Cal. Code Civ. Proc. § 338(a)

25  & (d).

26       Defendant argues § 338(a) applies and that the limitations period began when the Purchase

27  Contracts were executed.  Plaintiffs argue § 338(d) should applies because the action involves

28  fraudulent misrepresentation.  Plaintiffs argue that regardless of which section applies, less than three

1  years have elapsed since Plaintiffs discovered the basis for this legal action.  Again, however, Plaintiffs

2  have not pled facts to support their proffered date of discovery.  Neither party has fully briefed the

3  issue of which statute should apply and when it would begin to run.  Because Plaintiffs are granted

4  leave to amend, as set forth above, they also may amend this claim to address the date of discovery.

**IV.**

**CONCLUSION**

For the reasons set forth above, Defendant's motion is granted.[1]  Plaintiffs may file a Second

Amended Complaint on or before September 10, 2010.

**IT IS SO ORDERED.**

DATED:  August 24, 2010

_____

HON. DANA M. SABRAW
United States District Judge

---

[1] Additionally, Plaintiffs filed an "Amendment to Complaint To Substitute True Names for 'Doe' Defendants," which the Court construed as a motion for leave to amend.  (Doc. 62.)  The motion is granted.

09cv2739