BRYAN CAVE LLP
Robert E. Boone, California Bar No. 132780
Email: reboone@bryancave.com
Edward M. Rosenfeld, California Bar No. 49943
Email: emrosenfeld@bryancave.com
Timothy L. Hayes, California Bar No. 175958
Email: tlhayes@bryancave.com
120 Broadway, Suite 300
Santa Monica, CA 90401
Telephone: (310) 576-2100
Facsimile: (310) 576-2200

Attorneys for Defendant
BANK OF AMERICA, N.A. erroneously sued as "Bank of America, a Delaware corporation"

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

TAMER SALAMEH, an individual; REAL ESTATE 4 HOSPITALITY, LLC, a California limited liability company; ALEKSEY KATS; DIANA KATS; MITCHELL J. PEREIRA; GARY A. TORRETTA; ROBERT ALVARENGA; ALEXIS COSIO; CESAR MOTA; DENIS B. ROTHE JR; CHARLENE SCHRUFER; DAVID R. BUSHY; DALE CURTIS; ZONDRA SCHMIDT; DOLORES GREEN; CHRISTY JESKE; TAZIA REYNA; MARY L. WEE SONG; KERRY L. STEIGERWALT; BETH STEIGERWALT; STUART M. WOLMAN; JEFFREY E. LUBIN AND BARBARA L. LUBIN, INDIVIDUALLY AND AS CO-TRUSTEES OF THE LUBIN FAMILY TRUST DATED MARCH 26, 2002; MIKAEL HAVLUCIYAN AND THERESE HAVLUCIYAN INDIVIDUALLY AND AS CO-TRUSTEES OF THE HAVLUCIYAN FAMILY TRUST; SADOUX KIM; VITO MICALE, PHILLIP GUTIRREZ, DANON SLINKARD, JOEY CLEMENT, ANDREW PAUL, STEVEN PAUL, MATTHEW HOERR, SYLVIA HOERR, KEVIN HENRY, KIM HENRY, THOMAS BEHRLE, BARABARA BEHRLE, JOSE GALLANOSA, VIRGINIA GALLANOSA, individually and on behalf of a Class of all others similarly situated,

Plaintiffs,

v.

TARSADIA HOTEL, a California

**CASE NO. 09-CV-2739-DMS-CAB**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BANK OF AMERICA, N.A.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR ALLEGED VIOLATIONS OF FEDERAL AND STATE SECURITIES LAWS**

Date: December 10, 2010
Time: 1:30 p.m.
Place: Courtroom of the Honorable Dana M. Sabraw, United States District Judge

Corporation; GASLAMP HOLDINGS LLC, a California Limited Liability Company; TUSHAR PATEL, an individual; B.U. PATEL, an individual; GREGORY CASSERLY, an individual; 5th ROCK LLC, a Delaware limited liability company; MPK ONE, LLC, a California limited liability company; PLAYGROUND DESTINATION PROPERTIES, a corporation; EAST WEST BANK, a California corporation; BANK OF AMERICA, a Delaware Corporation; JP MORGAN CHASE; PROFESSIONAL MORTGAGE PARTNERS, INC.; XBR FINANCIAL SERVICES, LLC, a California limited liability company; ERSKINE CORP., a California Corporation; INDEPENDENT BANK CORPORATION, a Michigan corporation; WINTRUST FINANCIAL CORPORATION, an Illinois corporation; and DOES 1 to 100, inclusive,

Defendants.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**TABLE OF CONTENTS**

Page

INTRODUCTION. ..... 1

I. THE FIRST CLAIM FOR RELIEF SHOULD BE DISMISSED. ..... 8

A. Plaintiffs' Section 12 claims are time-barred under the 1-year limitations period. ..... 8

1. The SAC does not comply with the Ninth Circuit rule. ..... 8

2. The plaintiffs should not be given leave to amend. ..... 9

B. Plaintiffs' Section 12 claims are time-barred under the 3-year limitations period. ..... 9

C. Plaintiffs' Section 12 claims fail because they do not allege that BANA owed them a duty of disclosure. ..... 10

D. Plaintiffs' Section 12 claims fail because they do not allege pre-"sale" "solicitation." ..... 11

E. Plaintiffs' Section 12 claims fail because their "underwriter" allegations do not allege pre-"sale" "solicitation." ..... 11

F. Plaintiffs' Section 12 claims fail because their "preferred lender" allegations do not allege pre-"sale" "solicitation." ..... 12

G. Plaintiffs' Section 12 claims fail because their "appraisal" allegations do not allege pre-"sale" "solicitation." ..... 13

H. Plaintiffs' Section 12 claims fail because their "appraisal" allegations do not satisfy Rule 9(b). ..... 13

I. Plaintiffs' Section 12 claims fail because their "appraisal" allegations do not satisfy Rule 8(a)'s "plausibility" requirement. ..... 15

1. There was no "plausible" basis for projecting future rentals. ..... 15

2. There was no "plausible" reason *not* to use "comparable" unit-sales to appraise the Hard Rock units. ..... 15

3. BANA had no "plausible" reason to inflate its Hard Rock appraisals. ..... 15

4. There is no "plausible" reason plaintiffs themselves did not estimate future net income. ..... 15

5. Plaintiffs omit to address the "plausible" reason for their economic losses. ..... 16

J. Plaintiffs' Section 12 claims fail because their "legal conclusion" allegations do not satisfy Rule 9(b)'s "particularity" requirement. ..... 16

K. Plaintiffs' Section 12 claims fail because their "legal conclusion" allegations do not satisfy Rule 8(a)'s "plausibility" requirement. .......... 17

L. Plaintiffs' Section 12 claims fail because they do not allege that BANA omitted to disclose a "material fact." .......... 18

1. The "appraisal" allegations. .......... 18

2. The "legal conclusion" allegations. .......... 18

3. The risk-shifting allegations. .......... 18

4. The "bank financing" allegations. .......... 19

M. Plaintiffs' Section 12 claims fail under doctrine of "negative causation." .......... 19

N. Plaintiffs' Section 12 claims fail because plaintiffs do not allege they purchased a "security." .......... 20

II. PLAINTIFFS' NEWLY-ADDED SECTION 10(b) CLAIM SHOULD BE DISMISSED WITH PREJUDICE .......... 20

A. The elements of a Section 10(b) claim. .......... 21

B. The impact of 15 U.S.C. § 78u-4(b)(1). .......... 21

C. Plaintiffs' "aiding and abetting" allegations do not state a claim for relief. .......... 21

D. *Stoneridge* requires dismissal of the SAC. .......... 22

E. *Simpson* requires dismissal of the SAC. .......... 22

F. The SAC does not allege *any* required element of a Section 10(b) claim. .......... 23

FIRST ELEMENT: BANA did not misrepresent or omit "material facts." .......... 23

1. Plaintiffs do not allege a "misrepresentation" by BANA. .......... 23

2. Plaintiffs lack standing to complain of alleged "omissions" by BANA. .......... 23

3. The SAC does not address "material facts." .......... 23

SECOND ELEMENT: Plaintiffs do not allege that BANA acted with *scienter* .......... 24

A. The "heightened" pleading requirements under the PSLRA and Rule 9(b). .......... 24

B. The SAC's "state of mind" allegations do not satisfy Rules 8(a) or 9(b) let alone the PSLRA. .......... 25

THIRD ELEMENT: Plaintiffs do not allege "a connection between the misrepresentation or omission and the purchase or sale of a security." .......... 25

FOURTH ELEMENT: Plaintiffs do not allege "reliance." .......... 26

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIFTH ELEMENT: Plaintiffs do not allege "economic loss." ........ 26

SIXTH ELEMENT: Plaintiffs do not allege "loss causation." ........ 26

III. PLAINTIFFS DID NOT CURE THE DEFICIENCIES IN THEIR THIRD AND FOURTH CLAIMS FOR RELIEF. ........ 27

A. The Plaintiffs' claims based on Cal. Corp. Code § 25110 (plaintiffs' "third claim") are time-barred. ........ 27

B. Plaintiffs' claims based on Cal. Corp. Code § 25501 (plaintiffs' "fourth claim") are time-barred under the 2-year "inquiry notice" period. ........ 27

C. In any event, Plaintiffs' do not state a claim for relief under Corp. Code § 25504.1 (third and fourth claim for relief). ........ 28

IV. PLAINTIFFS "SEVENTH" AND "EIGHTH" CLAIMS [FRAUD] SHOULD BE DISMISSED WITH PREJUDICE ........ 28

CONCLUSION. ........ 29

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# TABLE OF AUTHORITIES

Page

## CASES

*Ashcroft v. Iqbal*,
____ U.S. ____, 129 S.Ct. 1937 (2009) ....... 3

*Atlas v. Accredited Home Lenders Holding Co.*,
556 F.Supp.2d 1142 (S.D.Cal. 2008) ....... 12

*Central Bank, N.A. v. First Interstate Bank, N.A.*,
511 U.S. 164 (1994) ....... 22

*Chiarella v. United States*,
445 U.S. 222 (1980) ....... 23

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) ....... 6, 17

*Consolidated Gold Fields, PLC v. Anglo American Corp. of South Africa Ltd.*,
713 F.Supp. 1457 (S.D.N.Y. 1989) ....... 16

*Dura Pharmaceuticals, Inc.* v. *Broudo*,
544 U. S. 336 (2005) ....... 21

*Erickson v. Kiddie*,
1986 WL 544 (N.D.Cal. 1986) ....... 8, 9

*Finkel v. Stratton Corp.*,
754 F.Supp. 318 (S.D.N.Y. 1990), *aff'd in part, rev'd in part on other grounds*, 962 F.2d 169 (2d Cir. 1992) ....... 19, 27

*Garber v. Legg Mason, Inc.*,
537 F.Supp.2d 597 (S.D.N.Y. 2008) ....... 11

*Geiger v. Solomon-Page Group, Ltd.*,
933 F.Supp. 1180 (S.D.N.Y. 1996) ....... 10

*Gonzalez v. First Franklin Loan Services*,
2010 WL 144862 (E.D.Cal. 2010) ....... 4

*Grant v. Aurora Loan Services, Inc.*,
2010 WL 3517399 (C.D.Cal. 2010) ....... 4

*Greebel v. FTP Software, Inc.*,
939 F.Supp. 57 (D.Mass. 1996) ....... 7

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir. 2007) ....... 23

*Hocking v. Dubois*,
885 F.2d 1449 (9th Cir. 1989) ....... 6, 17

*In re Alamosa Holdings, Inc. Sec. Litig.*,
382 F. Supp. 2d 832 (N.D. Tex. 2005) ....... 19

*In re Alliance Equipment Lease Program Securities Litigation*,
2002 WL 34451621 (S.D.Cal. 2002) ....... 28

*In re Apple Computer Sec. Litig.*,
886 F.2d 1109 (9th Cir. 1989), *cert. denied*, 496 U.S. 943 (1990) ....... 14, 18

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) .......... 11, 24, 25

*In re DNAP Sec. Litig.*,
2000 WL 1358619 (N.D.Cal. 2000) .......... 19

*In re Donald J. Trump Casino Securities Litigation-Taj Mahal Litigation*,
7 F.3d 357 (3rd Cir. 1993) .......... 14

*In re Easysaver Rewards Litigation*,
2010 WL 3259752 (S.D.Cal. 2010) .......... 29

*In re Gas Reclamation, Inc. Securities Litigation*,
733 F.Supp. 713 (S.D.N.Y. 1990) .......... 19

*In re Global Crossing, Ltd. Secs. Litig.*,
471 F.Supp.2d 338 (S.D.N.Y. 2006) .......... 19

*In re Impac Mortgage Holdings, Inc. Securities Litigation*,
554 F.Supp.2d 1083 (C.D.Cal. 2008) .......... 8

*In re Initial Public Offering Securities Litigation*,
341 F.Supp.2d 328 (S.D.N.Y. 2004) .......... 21

*In re Integrated Resources Real Estate Ltd. Partnerships Securities Litigation*,
850 F.Supp. 1105 (S.D.N.Y. 1993) .......... 19, 27

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
272 F.Supp.2d 243 (S.D.N.Y. 2003) .......... 10, 19

*In re Merrill Lynch & Co., Inc.*,
273 F.Supp.2d 351 (S.D.N.Y. 2003) .......... 21

*In re Parmalat Sec. Litig.*,
376 F.Supp.2d 472 (S.D.N.Y. 2005) .......... 22

*In re Rexplore, Inc. Securities Litigation*,
671 F.Supp. 679 (N.D.Cal. 1987) .......... 6

*In re Salomon Analyst Level 3 Litig.*,
373 F.Supp.2d 248 (S.D.N.Y. 2005) .......... 14

*In re Shoretel Inc. Sec. Litig.*,
2009 WL 248326 (N.D.Cal. 2009) .......... 19

*In re Silicon Graphics, Inc. Securities Litigation*,
183 F.3d 970 (9th Cir. 1999) .......... 8, 25

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) .......... 21, 24

*Ivar v. Elk River Partners, LLC*,
705 F.Supp.2d 1220 (D.Colo. 2010) .......... 15

*Jablon v. Dean Witter Co.*,
614 F.2d 677 (9th Cir. 1980) .......... 9

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 29

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005) .......... 19

*Lubin v. Sybedon Corp.*,
688 F.Supp. 1425 (S.D.Cal. 1988) .......... 5

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*Maxwell v. KPMG, LLP,*
520 F.3d 713 (7th Cir. 2008) .......... 20

*Meadows v. Pacific Inland Securities Corp.*,
36 F.Supp.2d 1240 (9th Cir. 1999) .......... 5, 6

*Merck & Co., Inc. v. Reynolds,*
___ U.S. ___, 130 S.Ct. 1784 (2010) .......... 20

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
547 U.S. 71 (2006) .......... 8

*Newgent v. Wells Fargo Bank, N.A.*,
2010 WL 761236 (S.D.Cal. 2010) .......... 4

*Nymark v. Heart Fed. Savings & Loan Assn.,*
231 Cal.App.3d 1089 (1991) .......... 4, 5, 11

*Pareto v. F.D.I.C.,*
139 F.3d 696 (9th Cir. 1998) .......... 17, 18

*Pinter v. Dahl,*
486 U.S. 622 (1988) .......... 2, 11, 12

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce,*
694 F.Supp.2d 287 (S.D.N.Y. 2010) .......... 16

*Powers v. British Vita, P.L.C.,*
57 F.3d at 189 (2d Cir. 1995) .......... 27

*Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*,
482 F. 3d 372 ([5th Cir.] 2007) .......... 22

*Seibert v. Sperry Rand Corp.,*
586 F.2d 949 (2d Cir. 1978) .......... 5, 7, 16, 18

*Simpson v. AOL Time Warner Inc.*,
452 F. 3d 1040 ([9th Cir.] 2006) .......... 22

*Stoneridge Investment Partners, LLC v.Scientific-Atlanta, Inc.*,
552 U.S. 148 (2008) .......... passim

*Suckow Borax Mines Consol. v. Borax Consol.,*
185 F.2d 196 (9th Cir.1950) .......... 3

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) .......... 3, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) .......... 24, 25

*Toombs v. Leone,*
777 F.2d 465 (9th Cir. 1985) .......... 8

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
692 F.Supp.2d 387 (S.D.N.Y. 2010) .......... 14

*Vandenberg v. Adler,*
2000 WL 342718 (S.D.N.Y. 2000) .......... 21

*Velasquez v. Chase Home Finance LLC,*
2010 WL 3211905 (N.D.Cal. 2010) .......... 4

*Vess v. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003) .......... 2, 13

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*Watkinson v. Mortgageit, Inc.*, 2010 WL 2196083 (S.D.Cal. 2010) .......... 4

*Weiss v. Ganz*, 26 F.Supp.2d 655 (S.D.N.Y. 1998) .......... 21

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......... 8, 24, 25

**STATUTES**

12 U.S.C. § 3331 .......... 12

12 U.S.C. § 3339 .......... 12

15 U.S.C. § 77l(a)(2) .......... 2

15 U.S.C. § 77l(b) .......... 19

15 U.S.C. § 77m .......... 8

15 U.S.C. § 77z-1(a)(2)(A)(i) .......... 7

15 U.S.C. § 78j(b) .......... 21

15 U.S.C. § 78u-4(b)(1) .......... 21, 24

15 U.S.C. § 78u-4(b)(2) .......... 24

15 USC § 77b(a)(11) .......... 12

17 C.F.R. § 240.10b-5 .......... 21

28 U.S.C. § 1658(b) .......... 21

Cal. Civ. Proc. Code § 338(d) .......... 30

Cal. Civ. Proc. Code § 580(b) .......... 15

Cal. Corp. Code § 22 .......... 12

Cal. Corp. Code § 25110 .......... 28

Cal. Corp. Code § 25501 .......... 28

Cal. Corp. Code § 25501.5 .......... 7

Cal. Corp. Code § 25504.1 .......... 28, 29

Cal. Corp. Code § 25506(b) .......... 28

Cal. Corp. Code § 25510 .......... 7

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 1, 9

Fed. R. Civ. P. 41(b) .......... 1

Fed. R. Civ. P. 8(a) .......... 5, 6, 26

Fed. R. Civ. P. 8(a)(2) .......... 29

Fed. R. Civ. P. 9 .......... 3

Fed. R. Civ. P. 9(b) .......... passim

Fed. R. Civ. P. 9(f) .......... 3

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**MEMORANDUM OF POINTS AND AUTHORITIES**

Bank of America, N.A., a national banking association ("BANA"), seeks dismissal of plaintiffs' second amended complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6) and 41(b).

**INTRODUCTION**

**The SAC disregards the Court's prior orders.**

Under Rule 41(b), "[i]f the plaintiff fails . . . to comply with . . . a court order, a defendant may move to dismiss the action." In filing the SAC, plaintiffs did not comply with *two* "court orders." The first order, dated July 20, 2010, Docket # 72 ("1st Order"), granted the bank defendants' Rule 12(b)(6) motion to dismiss the first amended complaint ("FAC"). The second order, dated August 24, 2010, Docket # 82 ("2nd Order"), granted Playground's motion to dismiss the FAC. Both orders gave plaintiffs leave to cure deficiencies in the FAC but they did not do so.

**Plaintiffs disregarded the Court's "underwriter" ruling.** Plaintiffs disregarded the Court's ruling [1st Order, at 7] that plaintiffs "do not allege any facts to support the conclusion that Defendants acted as underwriters." Ignoring this, the SAC repeats in *haec verba* plaintiffs' "underwriter" allegations without adding facts to "support the conclusion that Defendants acted as underwriter" [*see* SAC ¶¶ 19, 24, 30, 31, 48, 49, 185, 189, 191, 211 and 219].

**Plaintiffs disregarded the Court's "1-year" limitations ruling.** Plaintiffs disregarded the Court's order [2nd Order, at 6] granting leave to amend in order to allege previously-omitted facts as to how and when, under the "1-year" limitations period, they "discovered" the facts giving rise to their purported claims for relief. Ignoring this, the SAC repeats in *haec verba* plaintiffs' already-rejected "discovery" allegations [the deficient allegations of FAC ¶ 81 now appear, without change, at SAC ¶ 132].

**Plaintiffs disregarded the Court's "3-year" limitations ruling.** Plaintiffs disregarded the Court's dispositive order [1st Order, at 10] that "as to Plaintiffs who executed a Purchase Contract before December 8, 2006, their Section 12(a)(2) claims are time barred." Despite this, the SAC repeats and re-alleges, in *haec verba,* the time-barred claims of plaintiffs "who executed a Purchase Contract before December 8, 2006" [SAC ¶¶ 19, 24, 31 and 31]. Indeed, the SAC adds new plaintiffs who "executed a Purchase Contract before December 8, 2006" [SAC ¶¶ 48 and 49].

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**Plaintiffs disregarded the Court's "date of sale" ruling.** Plaintiffs disregarded the Court's dispositive rulings [1st Order, at 9] that "the execution date of the Purchase Contract and Escrow Instructions is the date of sale" and that "[t]he date of sale is when the parties entered into a binding contract for the sale of a security." Under these rulings ("date of sale" rulings), the "date of sale" for six plaintiffs who borrowed money from BANA ("BANA Plaintiffs") occurred in 2006 [see Request for Judicial Notice ("RJN") Exhibits A, B, C and P]. Under the "date of sale" rulings, BANA is not liable to the BANA Plaintiffs under Section 12(a)(2) of the of the Securities Act of 1933 ("33 Act"), 15 U.S.C. § 77l(a)(2) unless, among other things, *before* the 2006 "date of sale," BANA "solicited" plaintiffs' purchase of the alleged "security." *See* 1st Order, at 6, citing *Pinter v. Dahl,* 486 U.S. 622 (1988), which holds that "solicitation" consists of conduct that (i) was "directed at producing the sale," *id.* at 646, and (ii) occurred at "the first stage" of a transaction when "an investor is most likely to be injured" if not given "full and fair information." *Id.* at 646-647. Ignoring the foregoing, plaintiffs allege that BANA supposedly violated Section 12(a)(2) when engaging in alleged misconduct *after* the 2006 "date of sale" and thus *after* the "solicitation" stage:

> 179. . . . Bank of America officers, agents, and employees, as part of the HRHSD sales team, . . . helped plaintiffs complete the *papers needed to consummate the purchase* of the HRHSD Investment Contract.
>
> 179. . . . Bank of America officers, agents, and employees *participated directly in consummating the sale* while not disclosing to plaintiffs that a hotel revenue based appraisal was not being used as required by the commercial and investment nature of the transaction.

**Plaintiffs disregarded the Court's "Rule 9(b)" ruling hoping to conceal their inability to allege pre-"sale" activities by BANA.** Plaintiffs disregarded the Court's order [1st Order, at 13] that plaintiffs' non-scienter based claims "shall be subject to the pleading requirements of Rule 9(b)." This order, under applicable Ninth Circuit case law, called on plaintiffs to set forth "the who, what, when, where, and how of the misconduct charged,"[1] to "inform each defendant

[1] *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).

separately of the allegations surrounding his alleged participation in the fraud"[2] and to plead how and when he or she discovered the facts constituting his or her claim for relief. This latter point is true even if the expiration of the limitations period is an affirmative defense because Federal Rule of Civil Procedure Rule 9(f) "makes averments of time and place material for the purposes of testing the sufficiency of a complaint." *Suckow Borax Mines Consol. v. Borax Consol.,* 185 F.2d 196, 204 (9th Cir. 1950). However, in violation of Rule 9 and the Court's order, plaintiffs interposed the following deliberately-vague allegations for the dual purposes of concealing the fatal absence of genuine pre-"sale" "solicitation" and concealing the facts outlawing their claims under the applicable statutes of limitations:

> 179. . . Bank of America officers, agents, and employees [at unspecified times in unspecified ways], *as part of the HRHSD sales team* [whatever this means], *vouched* [whatever this means] for the HRHSD investment with plaintiffs
>
> 181. A key player at Bank of America who *participated* [at unspecified times in unspecified ways] *in the sale of the HRHSD Investment Contracts* . . . was Bank of America Senior Vice President for Mortgage Sales Brianne Pham-Lukas.
>
> 181. . . . . Ms. Lukas . . . *encouraged* [at unspecified times in unspecified ways] *plaintiffs to buy* the HRHSD Investment Contracts.
>
> 181. . . . . Ms. Lukas . . . *worked in tandem* [at unspecified times in unspecified ways] *and part of the Playground and Tarsadia HRHSD sales force* [whatever this means]. (Emphasis added).

These conclusory allegations that BANA employees, at unspecified times and in unspecified ways, supposedly "participated in" and "encouraged" "the sale . . . to plaintiffs" and "vouched" for the transaction "are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* ____ U.S. ____, 129 S.Ct. 1937, 1950 (2009). Indeed, the SAC omits to allege that *any* plaintiff *ever* had *any* contact of *any* kind with *any* BANA employees.

2 *Swartz v. KPMG LLP,* 476 F.3d 756, 764-765 (9th Cir. 2007).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**Plaintiffs disregarded the Court's "duty" ruling.** Plaintiffs disregarded the Court's ruling [1st Order, at 7] that "[s]imply put, no allegations exist that [BANA] did anything other than what banks traditionally do: loan money." Thus, despite the addition of more than nine-thousand (9,000) words to their pleading, plaintiffs *still* offer "no allegations . . . that [BANA] did anything other than . . . loan money." Hence, plaintiffs remain subject to the "general rule" that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096 (1991), as applied in *Newgent v. Wells Fargo Bank, N.A.*, 2010 WL 761236, *3 (S.D.Cal. 2010); *Grant v. Aurora Loan Services, Inc.*, 2010 WL 3517399, *10 (C.D.Cal. 2010); *Velasquez v. Chase Home Finance LLC,* 2010 WL 3211905, *5 (N.D.Cal. 2010); and *Gonzalez v. First Franklin Loan Services,* 2010 WL 144862, *8 (E.D.Cal. 2010).

**Plaintiffs abandoned their own "duty" argument.** In the prior proceedings, plaintiffs urged the Court to adopt a 6-part test used in both federal and state court to determine whether to depart from the "general rule" of *Nymark* [*see* plaintiffs' brief at Docket # 53, p. 3 citing, *e.g.*, *Watkinson v. Mortgageit, Inc.*, 2010 WL 2196083, *8-9 (S.D.Cal. 2010)]. However, plaintiffs amended their pleading without interposing any of the allegations needed to satisfy this 6-part test.

**Plaintiffs do not offer a cognizable basis for their non-disclosure claims against BANA.** Despite their omission of allegations sufficient to impose a duty of disclosure on BANA, the SAC sues BANA *solely* on the basis of the following non-disclosures:

**(a) The "appraisal" non-disclosures.** The SAC alleges that BANA failed to disclose "that a . . . revenue based appraisal was not being used" [SAC ¶ 179]. Thus, according to plaintiffs, a "revenue based" appraisal was not provided to them because BANA supposedly knew that, if provided, a "revenue based appraisal" supposedly "would show that" future "rental revenue income" to be derived from owning condo units "would not support the sales price" for these units [SAC ¶182]. These "appraisal" allegations were not set forth in the original complaint or in the FAC. Instead, they were recently contrived in an effort to keep the case alive after the Court dismissed the FAC. In constructing these claims, plaintiffs did not allege they were shown or told

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

the contents of BANA's appraisals. Nor did they allege that BANA's appraisals were even in existence before the "date of sale." In contriving their new "appraisal" allegations, plaintiffs lost sight of the outcome-determinative fact that appraisals are nothing more than educated guesses about the future. Only in rare circumstances do opinions of this nature give rise to claims for relief under the federal securities acts. Thus, as shown below, plaintiffs' "appraisal" allegations do not satisfy the "plausibility" requirements of Rule 8(a) [*see, infra*, pp. 15-16] or the "particularity" requirements of Rule 9(b) [*see, infra*, p. 13-14] nor do they involve a "material fact" [*see, infra*, p. 18]. For example, plaintiffs do not allege facts to explain how BANA could have predicted future "rental revenue income" for a newly-built hotel condo project that had no prior rental history. Nor do they explain how BANA could have foreseen the impending downturn in hotel occupancy rates stemming from the recession that occurred after the "date of sale." Nor do they explain why they themselves did not project future "rental revenue income" so they could decide on their own whether future "rental revenue income" would "support the sales price." Finally, and most importantly, plaintiffs offer no reason to depart from the general rule of *Nymark*, *supra*, 231 Cal.App.3d at 1092, under which "a financial institution acting within the scope of its conventional activities as a lender of money owes no duty of care to a borrower in preparing an appraisal of the security for a loan when the purpose of the appraisal simply is to protect the lender by satisfying it that the collateral provides adequate security for the loan."

**(b) <u>The "legal conclusion" non-disclosures.</u>** The SAC alleges that BANA failed to disclose the legal conclusion of plaintiffs' counsel "that the HRHSD Investment Contracts were required to be . . . registered with the SEC and qualified by the Department of Corporations" [SAC ¶ 181]. But even if BANA *did* owe plaintiffs a duty of disclosure, "there is no duty to disclose information to one who reasonably should already be aware of it." *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978). Here, at all relevant times, plaintiffs were on notice that they were not buying unregistered "securities." *Meadows v. Pacific Inland Securities Corp.*, 36 F.Supp.2d 1240, 1251 (9th Cir. 1999) ("since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities"); *Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1451

(S.D.Cal. 1988) (same); *In re Rexplore, Inc. Securities Litigation*, 671 F.Supp. 679, 687 (N.D.Cal. 1987) (same). But even if, despite the Ninth Circuit rule in *Meadows*, *supra*, BANA nevertheless owed a duty of disclosure to plaintiffs relating to the "registration" issue, the plaintiffs' "legal conclusion" allegations are without merit: "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 -755 (9th Cir. 1994). The FAC offered a superficially plausible basis for alleging that BANA was on notice that the developers were selling a "security." Thus, FAC ¶ 110 alleged that the hotel developer, "in a 28 October 2004 Notice . . . filed with the California Commissioner of Corporations," supposedly "admitted it . . . was selling securities" [Docket # 8 at 18]. But, as BANA pointed out [Docket # 63 at 6], the "28 October 2004 Notice" had absolutely nothing to do with selling condo-related "securities" to plaintiffs or anyone else. Now, conceding this, the SAC no longer contains the spurious allegations of FAC ¶110. As a result, plaintiffs no longer have even a superficially plausible basis for claiming that BANA was on notice that the developer supposedly was selling "securities." As shown below, plaintiffs' "legal conclusion" allegations do not satisfy the "plausibility" requirements of Rule 8(a) [*see, infra*, pp. 17-18] or the "particularity" requirements of Rule 9(b) [*see, infra*, pp. 16-17] nor do they involve a "material fact [*see, infra*, p. 18]. Among other things, plaintiffs do not plausibly explain how BANA could have discerned that the hotel condo project involved a "security" when the Ninth Circuit, sitting en banc, split seven to five when asked to decide the same issue.[3] Likewise, rather than plausibly explain why BANA knew or should have known of the alleged "security," plaintiffs admit that, so far as BANA could tell, the hotel condo project complied with applicable regulatory requirements [plaintiffs concede, at SAC ¶ 83, that the condo project was registered with the California Department of Real Estate and that each plaintiff was provided with a "DRE Report"].

**(c) <u>The "risk" non-disclosure.</u>** The SAC alleges that BANA failed to disclose the self-evident fact that the developer's sale of the condo units to plaintiffs "shifted the risk of their

[3] *See Hocking v. Dubois,* 885 F.2d 1449, 1460-61 (9th Cir. 1989).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

HRHSD investment . . . to investors" [SAC ¶ 4; *see also id.* at ¶¶ 9, 126, 127 and 181]. But even if BANA owed plaintiffs a duty of disclosure, "there is no duty to disclose information to one who reasonably should already be aware of it." *Seibert v. Sperry Rand Corp.,* 586 F.2d 949, 952 (2d Cir. 1978).

**(d) The "licensing" non-disclosure.** The SAC alleges that BANA failed to disclose to plaintiffs "that Playground was selling the HRHSD Investment Contracts without a sales license" in alleged violation of Corp. Code §25501.5 [SAC ¶ 181]. But Corp. Code §25501.5 imposes duties and liabilities on -- but only on -- "a broker-dealer . . . required to be licensed" [*id.*, at sub-part (a)(1)]. Plaintiffs do not allege that BANA was "a broker-dealer . . . required to be licensed." This negates any implied claim for relief against BANA based on Corp. Code §25501.5. See Corp. Code § 25510, which provides that "no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder."

**(e) The "financing" non-disclosure.** The SAC alleges that BANA failed to disclose "that plaintiffs who purchased [condos] via bank financing [supplied by other banks]. . . would have no financing available to refinance their loans" [SAC ¶ 191]. But the plaintiffs who borrowed money from BANA, Alvarenga, Havluciyan, Green, Schmidt and the Gallanosas (collectively, the "BANA Plaintiffs") did not face this risk: BANA granted each of the BANA Plaintiffs a 30-year mortgage [see RJN Exhibits M, N, O and Q].

**Plaintiffs also disregarded the PSLRA.** The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that . . . . states that the plaintiff has reviewed the complaint and authorized its filing." 15 U.S.C. § 77z-1(a)(2)(A)(i). However, despite written request to their counsel for them to do so, the BANA Plaintiffs have refused to file a PSLRA certificate. This is a serious omission. *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 60 (D.Mass. 1996) ("Failure of the named plaintiff to file a certification with the complaint . . . [is] fatal to maintenance of the putative class action"). By adopting the PSLRA, and requiring certificates like the one which the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BANA Plaintiffs have refused to sign, Congress "sought to reduce the volume of abusive federal securities litigation by erecting procedural barriers to fraud claims." *In re Silicon Graphics, Inc. Securities Litigation,* 183 F.3d 970, 977 (9th Cir. 1999). In *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006), the Supreme Court confirmed that Congress adopted the PSLRA to reduce the number of "nuisance filings," the "targeting of deep-pocket defendants," the service of "vexatious discovery requests," and the "manipulation by class action lawyers of the clients whom they purportedly represent," all of which lead to "extortionate settlements."

**ARGUMENT**

**I. THE FIRST CLAIM FOR RELIEF SHOULD BE DISMISSED.**

Sub-paragraphs "A" through "N" below offer fourteen (14) separate and independent grounds for dismissing plaintiffs' claims under Section 12(a)(2) of the 33 Act. "[D]ismissal with prejudice is necessary to promote the goal of the PSLRA, which is to 'raise the pleading standards to eliminate abusive securities litigation.'" *In re Impac Mortgage Holdings, Inc. Securities Litigation,* 554 F.Supp.2d 1083, 1102 (C.D.Cal. 2008), quoting *In re Silicon Graphics, Inc. Sec. Litig.*, *supra*, 183 F.3d at 977. In any event, the plaintiffs' failure to correct deficiencies in their pleading "is a strong indication that the plaintiffs have no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 1007 (9th Cir. 2009).

**A. Plaintiffs' Section 12 claims are time-barred under the 1-year limitations period.**

**1. The SAC does not comply with the Ninth Circuit rule.**

Section 13 of the 33 Act, 15 U.S.C. § 77m, provides that "[n]o action shall be maintained to enforce any liability created under section [12(a)(2)] . . . unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." Section 13 requires plaintiffs to "affirmatively plead sufficient facts in [their] complaint to demonstrate conformity with the statute of limitations." *Toombs v. Leone,* 777 F.2d 465, 468 (9th Cir. 1985). "In order to comply with this obligation, plaintiffs must plead (1) the time and circumstances of discovery of the untrue statement or omission, (2) the reasons why the alleged fraud was not discovered sooner, and (3) their diligence in making such discovery." *Erickson v. Kiddie*, 1986 WL 544, 6 (N.D.Cal. 1986).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

The 2nd Order, at 6, granted plaintiffs leave to amend to allege facts showing that plaintiffs were "not put on inquiry notice" until a date *less than* 12 months from the December 8, 2009 filing date of the complaint. However, plaintiffs filed the SAC without changing a single word of their already-rejected "discovery" allegation [FAC ¶ 81 is now SAC ¶ 132]. In sum, where, as here, the facts alleged in a complaint indicate a claim is time barred, the complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). *Jablon v. Dean Witter Co.,* 614 F.2d 677, 682 (9th Cir. 1980).

**2. The plaintiffs should not be given leave to amend.**

From inception, plaintiffs have deliberately tried to conceal the date of "discovery." SAC ¶ 116 alleges, as did complaint ¶ 34 and FAC ¶ 76, that "[i]t was not feasible, *as plaintiffs were to later discover*, for investors to operate their own rental management system." Plaintiffs, however, do not disclose when this "discovery" took place. Instead, from inception, plaintiffs purposely refused to comply with the rule under which they "must plead (1) the time and circumstances of discovery of the untrue statement or omission, (2) the reasons why the alleged fraud was not discovered sooner, and (3) their diligence in making such discovery." *Erickson v. Kiddie*, *supra*, 1986 WL 544, *6. The original complaint, the FAC and the SAC alleged that the "HRHSD promoters" misled them by means of "documents" that conveyed a "false impression" that condo buyers "had a choice about whether to use the HRHSD promoters to manage rentals" [Complaint ¶ 6, FAC ¶ 8 and SAC ¶ 7]. Further, the complaint, the FAC and the SAC alleged that Tarsadia's "FAQ" created "a false written record that the rental management was not a condition of ownership" [Complaint ¶ 36, FAC ¶ 78 and SAC ¶ 118]. However, on close of escrow, plaintiffs began renting out their units and "discovered" the alleged fact that the "written record" was "false." Thus, "discovery" occurred in October 2007 when escrow closed [see BANA 5-27-10 RJN Ex. K at 321, J at 288 and L at 353 (Docket # 46-4, 46-5)]. At that time, October 2007, plaintiffs also "discovered" their claim that defendants sold them unregistered "securities." *Meadows,* 36 F.Supp.2d at 1251, *Lubin,*, 688 F.Supp. at 1451, *Rexplore, Inc.,* 671 F.Supp. at 687.

**B. Plaintiffs' Section 12 claims are time-barred under the 3-year limitations period.**

Section 13 of the 33 Act provides that "[i]n no event" shall an action under Section

12(a)(2) "be brought . . . more than three years after the sale." Based on this code section, the 1st Order, at 9, held that "as to Plaintiffs who executed a Purchase Contract before December 8, 2006, their Section 12(a)(2) claims are time barred." Now, therefore, BANA is entitled to dismissal of the action in that *all* of the BANA Plaintiffs "executed a Purchase Contract before December 8, 2006," as shown by the following table:

| **Plaintiff** | **Plaintiffs' Execution Date** |
|---|---|
| Havluciyan | 11/27/2006 and 11/29/2006[4] |
| Alvarenga | 11/22/2006 and 12/4/2006[5] |
| Green/Schmidt | 5/4/2006[6] |
| Gallanosa | 11/22/2006[7] |

The 2nd Order, at 5, confirms the holding of the 1st Order that "as to Plaintiffs who executed a Purchase Contract before December 8, 2006, their Section 12(a)(2) claims are time barred." The 2nd Order, at 5, rejected plaintiffs' informal re-argument claim that they "were not bound at the time [they] signed the Purchase Contract and Escrow Instructions because of a provision in the contract which provided for termination in certain circumstances." Based on these holdings, the claims of the BANA Plaintiffs are time-barred.

**C. Plaintiffs' Section 12 claims fail because they do not allege that BANA owed them a duty of disclosure.**

In a non-disclosure case, "[t]o state a claim under Sections 11 and 12(a)(2), a plaintiff must allege that the defendants had a legal obligation to disclose the allegedly omitted information." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F.Supp.2d 243, 248 (S.D.N.Y. 2003); *Geiger v. Solomon-Page Group, Ltd.*, 933 F.Supp. 1180, 1187-88 (S.D.N.Y. 1996) (same);

---

4 RJN Exhibit B at 81, 85, 87 and 102.

5 RJN Exhibit A at 16, 19, 21 and 40.

6 RJN Exhibit C at 142 and 146.

7 RJN Exhibit P at 392, 406, 408 and 423.



BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*Garber v. Legg Mason, Inc.*, 537 F.Supp.2d 597, 610 (S.D.N.Y. 2008) (same). This *is* a non-disclosure case (nowhere in the SAC is BANA accused of making affirmative representations). Hence, because of the absence of duty of disclosure incumbent on BANA, plaintiffs cannot sue BANA under Section 12(a)(2). On the contrary, the plaintiffs are subject to the "general rule" that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark, supra,* 231 Cal.App.3d at 1096.

**D. <u>Plaintiffs' Section 12 claims fail because they do not allege pre-"sale" "solicitation."</u>**

The Court has held that "the execution date of the Purchase Contract and Escrow Instructions is the date of sale" [1st Order, at 9]. Therefore, in order for plaintiffs to allege that BANA "sold" the alleged "security" to them, plaintiffs were obliged to allege the occurrence of contacts between themselves and BANA before "the execution date of the Purchase Contract and Escrow Instructions." *See* 1st Order, at 6:

> Merely participating in an unlawful sales transaction is insufficient to create liability. See *Pinter*, 486 U.S. 650 (noting that Section 12 fails "to impose express liability for mere participation in unlawful sales transactions"). Being a "substantial factor" in the sale of securities is likewise insufficient. *Pinter*, 486 U.S. at 654. "To establish liability under section 12(a)(2), a plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005).

The Supreme Court's decision in *Pinter* holds that "solicitation" involves conduct "directed at producing the sale." 486 U.S. at 646-647. As *Pinter* further held, such conduct occurs at "the first stage of a traditional securities sale" when "an investor is most likely to be injured" if "persuaded to purchase securities without full and fair information." *Id*. However, the SAC does not allege contacts between BANA and plaintiffs before the "date of sale." Indeed, the SAC is devoid of *any* allegation that *any* plaintiff had *any* contact with at BANA on *any* topic at *any* time.

**E. <u>Plaintiffs' Section 12 claims fail because their "underwriter" allegations do not allege pre-"sale" "solicitation."</u>**

The plaintiffs' Section 12(a)(2) claims against BANA, as originally interposed in the FAC, were based on conclusory allegations that BANA was an "underwriter" of the condo offering

[FAC ¶¶ 20, 25, 31, 32, 56, 137, 141, 143, 146 and 150]. These allegations were based on plaintiffs' obvious mis-use of the word "underwriter." That word has one meaning when imposing liability under the federal[8] and state[9] securities laws but has a completely different meaning in commercial banking parlance. *Atlas v. Accredited Home Lenders Holding Co.*, 556 F.Supp.2d 1142, 1148 (S.D.Cal. 2008), Huff, J. ("Underwriting refers to the credit analysis preceding the granting of a loan, based on information furnished by the prospective borrower, a credit report and the lender's evaluation of the individual's credit needs and ability to pay.") For good cause, therefore, the 1st Order, at 7-8, rejected plaintiffs' "underwriter" claims, as follows:

> Other than stating in conclusory fashion that Defendants acted as underwriters by providing financing, Plaintiffs do not allege any facts to support the conclusion that Defendants acted as underwriters. Moreover, even if one is deemed to be an underwriter, no liability attaches under section 12(a)(2), as section 12(a)(2) requires active solicitation of the purchase of securities. See *Pinter*, 486 U. S. 650 n.26 (noting that if Congress wanted to expand section 12 liability to mere participants, Congress would have written it into the statute, the way it did with underwriter liability elsewhere in the Act).

The plaintiffs disregarded the Court's above-quoted order by re-alleging in the SAC each and every "underwriter" allegation previously set forth in the FAC [see SAC ¶¶ 19, 24, 30, 31, 48, 49, 71, 178, 191, 211 and 219].

### F. Plaintiffs' Section 12 claims fail because their "preferred lender" allegations do not allege pre-"sale" "solicitation."

The 1st Order, at 7, holds that "[s]imply put, no allegations exist that Bank Defendants did anything other than what banks traditionally do: loan money." Here, the appraisals cited in the SAC were required by applicable federal law, *e.g.,* 12 U.S.C. §§ 3331, 3339. Obtaining appraisals, and thus complying with federal law, did not make BANA a seller of the alleged "securities"

---

8 *See* Section 2(a)(11) of the 33 Act, 15 USC 77b(a)(11) ("The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in . . . any such undertaking . . . .").

9 *See* Corp. Code § 22, which defines and "underwriter" as "a person who . . . agreed with an issuer . . . (a) to purchase securities for distribution or (b) to distribute securities for or on behalf of such issuer or other person or (c) to manage or supervise a distribution of securities for or on behalf of such issuer or other person."



BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

purchased with the proceeds of BANA's loans. It is, therefore, of no moment that, as alleged at SAC ¶ 178, BANA was "a HRHSD project preferred lender" and, at ¶ 184, that, "[b]y the [unspecified] time Bank of America became a preferred HRHSD lender, its underwriting practices in connection with the its subprime and collateralized debt obligation business had [in unspecified ways] broken down."

**G. Plaintiffs' Section 12 claims fail because their "appraisal" allegations do not allege pre-"sale" "solicitation."**

In disregard for the Court's order directing them to comply with Rule 9(b), the SAC adds a series of conclusory allegations ("appraisal" allegations) claiming that BANA "participated in the sale itself" [SAC ¶ 211] by procuring, at some unspecified time, real estate appraisals that did not use the "income" method of appraising BANA's collateral [see SAC ¶¶ 125, 178, 180, 182 and 183]. But plaintiffs do not allege that BANA's appraisals played any role in the transactions or occurrences taking place on or before the "date of sale," as fixed by the Court. Nor can they do so. Plaintiffs acknowledge that the appraisals came into play in "consummating the sale." *See, e.g.*, the following allegations of the SAC:

> 179. . . . . Bank of America . . . participated directly in *consummating the sale* while not disclosing . . . that a hotel revenue based appraisal was not being used . . . .
>
> 179. . . . Bank of America . . . helped plaintiffs complete the papers needed to *consummate the purchase* of the HRHSD Investment Contract.
>
> 181. Mr. Lukas . . . prepared the paper work needed to *complete the sale and purchase* of the HRHSD Investment Contracts.

**H. Plaintiffs' Section 12 claims fail because their "appraisal" allegations do not satisfy Rule 9(b).**

Rule 9(b) required plaintiff to set forth "the who, what, when, where, and how of the misconduct charged,"[10] *e.g.*, by setting forth, with "specificity," "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."[11] Ignoring these rules, plaintiffs interpose the following allegations in support of their unsupportable notion that BANA was under a legal duty to provide them with an "income

---

10 *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).

11 *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

based" appraisal:

> 125. . . . [C]onfidential source No. 1 [who may have worked for BANA] . . . did not use the income method under instructions from the bank defendant for whom he was retained . . . .
>
> 178. . . . . Bank of America . . . knew that the appraisals . . . were not based on the . . . hotel room revenue plaintiffs were to receive [sic].
>
> 179. . . . . Bank of America . . . participated directly in consummating the sale while not disclosing . . . that a hotel revenue based appraisal was not being used.
>
> 180. . . . . Bank of America . . . knew . . . the appraisals supporting the price . . . would be disallowed [if submitted to regulators]. . . .
>
> 182. Ms. Pham-Lukas knew the . . . HRHSD Investment Contracts required a[n] income based appraisal. . . .
>
> 182. Ms. Pham-Lukas knew . . . no such [income-based] appraisal was provided because it would show that the . . . rental revenue income . . . from the HRHSD hotel units would not support the sales price.
>
> 183. . . . [A] Bank of America appraiser . . . papered the HRHSD file with an appraisal that contained knowingly false information . . . .

Rule 9(b) applies to "appraisal" allegations of this nature. *In re Donald J. Trump Casino Securities Litigation-Taj Mahal Litigation*, 7 F.3d 357, 373 (3rd Cir. 1993). In drafting "appraisal" allegations sufficient to comply with Rule 9(b), a plaintiff must come to grips with the fact that an appraisal, like any other judgment as to future real estate values or loan values of collateral, is "a subjective opinion based on the particular methods and assumptions the appraiser uses." *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 692 F.Supp.2d 387, 393 (S.D.N.Y. 2010). The plaintiff complaining of appraisals likewise must address the fact that "valuation models depend so heavily on the discretionary choices of the modeler . . . that the resulting models and their predictions can only fairly be characterized as subjective opinions." *In re Salomon Analyst Level 3 Litig.*, 373 F.Supp.2d 248, 251-52 (S.D.N.Y. 2005). With this body of law in mind, the Ninth Circuit holds that a projection or statement of belief as to future values may be actionable under the federal securities laws if the complaint, in compliance with Rule 9(b), alleges that (1) the statement is not genuinely believed, or (2) there is no reasonable basis for that belief, or (3) the speaker is aware of undisclosed facts tending to seriously undermine the accuracy of the statement. *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113 (9th Cir. 1989), *cert. denied,*

496 U.S. 943 (1990). Here, no such allegations appear in the FAC.

**I. Plaintiffs' Section 12 claims fail because their "appraisal" allegations do not satisfy Rule 8(a)'s "plausibility" requirement.**

**1. There was no "plausible" basis for projecting future rentals.**

The Hard Rock hotel was a new project. Hence, there was no prior history of rental income for BANA's appraisers to rely upon. As a result, an "income-based appraisal," if obtained, would have to have been based on sheer speculation as to future rental income. BANA could not – and of course had no duty to – project the future income stream to be derived by plaintiffs from owning their condo units.

**2. There was no "plausible" reason *not* to use "comparable" unit-sales to appraise the Hard Rock units.**

Despite the absence of a prior history of rental income, BANA's appraisers could, as appraisers routinely do, look to sales prices of comparable condo units to reasonably estimate the value of the Hard Rock units. On these facts, it is not surprising that, as appears from the face of the SAC, the other project lenders, *e.g.*, East West Bank [SAC ¶ 155], JP Morgan Chase [SAC ¶ 162], and Independent Bank [SAC ¶ 174], *also* eschewed an "income-based" approach to appraise the Hard Rock condo units.

**3. BANA had no "plausible" reason to inflate its Hard Rock appraisals.**

Even if a lender, after a judicial foreclosure, *could* obtain a deficiency judgment against a Hard Rock condo purchaser who defaulted on his or her mortgage, *i.e.*, even if Code Civ. Proc. § 580(b) does not apply to a judicial foreclosure, as a practical matter, lenders do not utilize judicial foreclosure proceedings in transactions of this nature, given the length of time from start to finish of foreclosure proceedings (6 to 12 months) and the length of the statutory redemption period (12 months).

**4. There is no "plausible" reason plaintiffs themselves did not estimate future net income.**

"[T]here is no claim that Plaintiffs were precluded by anyone from obtaining their own appraisal prior to purchase." *Ivar v. Elk River Partners, LLC*, 705 F.Supp.2d 1220, 1238-1239 (D.Colo. 2010). Indeed, here, plaintiffs concede they "were provided with the . . . revenue projections" that are re-printed in ¶ 93 of the SAC. These so-called "revenue projections" consist

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

of nothing more than a list of the charges that condo owners would pay after taking title to their condo unit. But armed with this listing of these charges, each plaintiff could have calculated the future net revenue to be derived from owning his or her unit if he or she had undertaken to project future gross revenues. The Hard Rock developers, and certainly BANA, could safely assume that plaintiffs made their own calculation as to whether, in the future, monthly revenue would equal or exceed monthly expenses. In other words, even if there was a disclosure duty incumbent on BANA, "there is no duty to disclose information to one who reasonably should already be aware of it." *Seibert v. Sperry Rand Corp.,* 586 F.2d 949, 952 (2d Cir. 1978). "[I]t is not necessary that [issuers of securities] treat their investors like children." *Consolidated Gold Fields, PLC v. Anglo American Corp. of South Africa Ltd.*, 713 F.Supp. 1457, 1471 (S.D.N.Y. 1989).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**5. Plaintiffs omit to address the "plausible" reason for their economic losses.**

Plaintiffs did not lose money because BANA did not give them, or they themselves did not calculate, an "income-based" appraisal. Instead, plaintiffs lost money because the country experienced a "tumultuous economic downturn" [*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F.Supp.2d 287, 303 (S.D.N.Y. 2010)] in which, among other things, hotel occupancy, and thus hotel room rentals, declined precipitously. The SAC fatally omits to address the impact of the "tumultuous economic downturn" upon hotel rental projections created before the 2006 "date of sale." Before the 2006 "date of sale," in the absence of the proverbial "crystal ball," no one could have predicted what would happen to the hospitality industry. Hence, it is "implausible" for plaintiffs now to blame BANA for not creating, in 2006, an "income-based" valuation that would have alerted them to the impending "tumultuous economic downturn."

**J. Plaintiffs' Section 12 claims fail because their "legal conclusion" allegations do not satisfy Rule 9(b)'s "particularity" requirement.**

The SAC alleges that BANA should have disclosed the legal conclusions of plaintiffs' counsel that the developer had sold them unregistered and unqualified "securities," as follows:

- "the HRHSD Investment contracts were required to be registered with the SEC and qualified by the California Department of Corporations." SAC ¶ 180.

- "if the HRHSD Investment Contracts were provided to the SEC and Department of Corporations . . . the appraisals . . . would be disallowed." *Id.*
- "once there was full disclosure a qualification permit would not be issued." *Id.*
- "Playground was selling the HRHSD Investment Contracts without a sales license." *Id.*
- "the HRHSD Investment Contracts were required to be but were not registered with the SEC and qualified by the Department of Corporations." *Id.*
- "sales were made to plaintiffs based upon material misrepresentations that the HRHSD Investment Contracts were not required to be registered or qualified by the SEC and [DOC]. . . ." SAC ¶ 185.
- "the . . . co-defendants were misrepresenting . . . the rental program . . . to conceal . . . an unlawful public offering . . . in violation of the California and federal securities laws." SAC ¶ 188.

However, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 -755 (9th Cir. 1994). "[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Plaintiffs do not plead with the requisite particularity how BANA supposedly was on notice of the hotel developer's alleged duty to register and qualify the Hard Rock contracts as a "security." When the Ninth Circuit was called on to decide if a hotel condo project involved a security, the Court, sitting *en banc*, divided 7 to 5 on the issue. *Hocking v. Dubois,* 885 F.2d 1449, 1460-61 (9th Cir. 1989). Similarly, when plaintiffs brought this issue before this Court, they "failed to allege a common enterprise," etc. [2nd Order, at 5].

**K. <u>Plaintiffs' Section 12 claims fail because their "legal conclusion" allegations do not satisfy Rule 8(a)'s "plausibility" requirement.</u>**

Plaintiffs concede that the condo project *appeared* to comply with applicable regulatory requirements. Thus, SAC ¶ 83 acknowledges that sale of these units was registered with the California Department of Real Estate and, as a result, each plaintiff was provided with a "DRE Report." Moreover, the SAC alleges, at ¶ 118, that the "written record" indicated "that the rental management was not a condition of ownership." Confirming this, SAC ¶ 7 alleges that the "documents . . . provided . . . to potential purchasers" indicated "that . . . investors had a choice

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

about whether to use the HRHSD promoters to manage rentals of investors' HRHSD investment properties." Likewise, SAC ¶ 116 alleges that it was not "feasible" to "discover" how the "rental management system" operated. In this setting, plaintiffs do not offer a "plausible" basis for claiming that BANA was able "discover" a legal conclusion which they themselves did not "discover" before close of escrow. Nor do plaintiffs offer a "plausible" explanation as to how BANA could conclude that the hotel condominium project involved the sale of a "security" when, as noted above, the Ninth Circuit, sitting *en banc*, divided 7 to 5 on the issue and, likewise, when plaintiffs brought this issue before this Court, they themselves "failed to allege a common enterprise," etc. [2nd Order, at 5].

**L. Plaintiffs' Section 12 claims fail because they do not allege that BANA omitted to disclose a "material fact."**

**1. The "appraisal" allegations.**

The plaintiffs' "appraisal" allegations [*e.g.*, SAC ¶¶ 125, 178, 180, 182, and 183] do not involve a "material fact" but, instead, involve a mere opinion as to future economic values without the requisite allegations that (1) the valuation opinion was not genuinely believed, or (2) there was no reasonable basis for the valuation opinion, or (3) that BANA was aware of undisclosed facts tending to seriously undermine the accuracy of its opinion. *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113 (9th Cir. 1989), *cert. denied,* 496 U.S. 943 (1990).

**2. The "legal conclusion" allegations.**

The plaintiffs' "legal conclusion" allegations [*e.g.*, SAC ¶¶ 180, 185 and 188] do not involve a "material fact" but, instead, are "conclusory allegations of law" that "are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir. 1998).

**3. The risk-shifting allegations.**

The plaintiffs' allegations that BANA failed to disclose the self-evident fact that "[t]he HRHSD promoters shifted the risk of their HRHSD investment . . . to investors" [SAC ¶ 4] do not involve a "material fact." It is self-evident that the seller of a condo unit shifts the risk of ownership to the buyer of the unit upon close of escrow. Thus, even if there *was* a duty to disclose, "there is no duty to disclose information to one who reasonably should already be aware of it." *Seibert v. Sperry Rand Corp.,* 586 F.2d 949, 952 (2d Cir. 1978).

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**4. The "bank financing" allegations.**

The "bank financing" allegation [SAC ¶ 191] "that plaintiffs who purchased [condos] via bank financing [supplied by other banks] . . . would have no financing available to refinance their loans" does not involve a "material" fact (the SAC does not allege that the mortgages issued by BANA were not 30-year mortgages and, in fact, they *were* 30-year mortgages [see RJN Exhibits M, N, O and Q]).

**M. Plaintiffs' Section 12 claims fail under doctrine of "negative causation."**

Section 12(b) of the 33 Act, 15 U.S.C. § 77l(b), adopts the "loss causation" doctrine for claims arising under Section 12(a)(2). Accordingly, in order for plaintiffs to obtain relief against BANA under Section 12(a)(2), there must be evidence that BANA was a "but for" cause of their loss and, additionally, that plaintiffs' economic losses were caused by facts and circumstances which BANA omitted to disclose. *See, e.g., In re Integrated Resources Real Estate Ltd. Partnerships Securities Litigation*, 850 F.Supp. 1105, 1144 (S.D.N.Y. 1993) and *Finkel v. Stratton Corp.*, 754 F.Supp. 318, 330 (S.D.N.Y. 1990), *aff'd in part, rev'd in part on other grounds,* 962 F.2d 169 (2d Cir. 1992). In *Finkel*, the District Judge explained the difference between "but for" causation and "loss causation," as follows:

> The complaint alleges in essence that if defendants had not said the things they said and had said what they omitted, plaintiffs would not have invested. *This is "but for" or loss transaction pleading, which by itself is insufficient.* Plaintiffs must also allege that the specified misrepresentations and omissions "proximately relate to the alleged reasons for the investors' losses." *In re Gas Reclamation, Inc. Securities Litigation,* 733 F.Supp. 713, 722 (S.D.N.Y. 1990). That is loss causation. [*Id.* at 330] (Emphasis added.)

In a claim for relief under Section 10(b) of the '34 Act, plaintiffs must affirmatively plead "loss causation" [see part II below]. However, in a claim under Section 12 of the '33 Act, "loss causation" provides grounds for dismissal at the pleading stage if the complaint on its face shows an absence of loss causation.[12] That is true here: The loss suffered by plaintiffs was not caused, for

12 *In re Shoretel Inc. Sec. Litig.*, 2009 WL 248326, at *5 (N.D.Cal. 2009); *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 865-66 (N.D. Tex. 2005); *In re DNAP Sec. Litig.*, 2000 WL 1358619, *3 (N.D.Cal. 2000); *In re Global Crossing, Ltd. Secs. Litig.*, 471 F.Supp.2d 338, 347-48 (S.D.N.Y. 2006); *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 272 F.Supp.2d 243, 253-54 (S.D.N.Y. 2003); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005).

example, by an inaccurate appraisal or by the developer's alleged failure to obtain a permit from the Department of Corporations. Instead, the plaintiffs' loss was caused by a decline in the market value of hotel rooms available for rent in San Diego resulting from a huge and unexpected downturn in the economy. *See Maxwell v. KPMG, LLP,* 520 F.3d 713, 717 (7th Cir. 2008) (emphasis added).

> Suppose an issuer of common stock misrepresents the qualifications or background of its principals, and if it had been truthful the plaintiff would not have bought any of the stock. The price of the stock then plummets, not because the truth is discovered *but because of a collapse of the market for the issuer's product wholly beyond the issuer's control*. There is 'transaction causation,' because the plaintiff would not have bought the stock, and so would not have sustained the loss, had the defendant been truthful, but *there is no 'loss causation*,' because the kind of loss that occurred was not the kind that the disclosure requirement that the defendant violated was intended to prevent. *To hold the defendant liable for the loss would produce overdeterrence by making him an insurer against conditions outside his control. Also, it is bad policy to encourage people harmed in some natural or financial disaster to cast about for someone on whom to lay off the consequences who had, however, committed only a technical breach of duty. The legal system is busy enough without shouldering the burden of providing insurance against business risks*. (Emphasis added.)

**N. Plaintiffs' Section 12 claims fail because plaintiffs do not allege they purchased a "security."**

The 2nd Order, at 5, holds that "Plaintiffs have failed to allege a common enterprise, and their allegations as to their expectation of profits produced by the efforts of others are conclusory." Despite the addition of upwards of nine thousand words to their pleading, Plaintiffs still fail to allege a "common enterprise" and likewise "their allegations as to their expectation of profits produced by the efforts of others are conclusory."

## II. PLAINTIFFS' NEWLY-ADDED SECTION 10(b) CLAIM SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs' claims for relief under Section 10(b) of the Securities and Exchange Act of 1934 ("34 Act"), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), are time-barred under 28 U.S.C. § 1658(b), which bars Section 10(b) claims "2 years after the discovery of the facts constituting the violation." *Merck & Co., Inc. v. Reynolds*, ___ U.S. ___, 130 S.Ct. 1784, 1790 (2010). Under 28 U.S.C. § 1658(b), plaintiffs "must affirmatively plead facts demonstrating that they have sued in a timely fashion." *In re Initial Public Offering Securities Litigation*, 341

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

F.Supp.2d 328, 350 (S.D.N.Y. 2004); *Weiss v. Ganz*, 26 F.Supp.2d 655, 658 (S.D.N.Y. 1998) (dismissing Section 10(b) complaint because it failed to allege "when plaintiff discovered the alleged fraud and why, in the exercise of due diligence, he could not have done so earlier"); *Vandenberg v. Adler*, 2000 WL 342718, *6 (S.D.N.Y. 2000) (same); *In re Merrill Lynch & Co., Inc.*, 273 F.Supp.2d 351, 379, n.63 (S.D.N.Y. 2003) (same). Here, plaintiffs do not, and cannot, allege they filed their complaint within "2 years after the discovery of the facts constituting the violation." Here, "the facts constituting the violation" were known to plaintiffs upon close of escrow in 2007 when plaintiffs knew or were chargeable with knowing, *e.g.*, their condo contract supposedly was an "unregistered security," that no one had given them a "revenue-based" (or other) appraisal and that the "written record" describing the rental process supposedly was "false." But even if their claims are not time-barred, plaintiffs have no claim for relief under Section 10(b), as shown below.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**A. The elements of a Section 10(b) claim.**

The elements of a claim for relief under Section 10(b) and Rule 10b-5 are set forth in *Stoneridge Investment Partners, LLC v.Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008):

> In a typical §10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. See *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U. S. 336, 341–342 (2005).

**B. The impact of 15 U.S.C. § 78u-4(b)(1).**

Under the PSLRA, the complaint must specify each statement alleged to have been false or misleading, specify the reason or reasons why each such statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u-4(b)(1). Matters that are not alleged on personal knowledge are considered to be alleged on information and belief. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085, n.3 (9th Cir. 2002).

**C. Plaintiffs' "aiding and abetting" allegations do not state a claim for relief.**

Plaintiffs allege, at SAC ¶¶ 51, 66, 179, 181, 183, 185, 186, 211 and 219, that BANA "assisted" and "participated in" the sale of the alleged "securities." For example, at ¶ 66, the SAC

alleges that BANA "materially assisted in the unlawful sale of approximately $14,450,870 of the unregistered and unqualified HRHSD Investment Contracts." These allegations ("aiding and abetting" allegations) do not support a Section 10(b) claim for relief against BANA. In *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164 (1994), the Supreme Court barred private suits for aiding and abetting another's violation of Section 10(b). *Central Bank*, 511 U. S., at 184 ("Even assuming . . . a deeply rooted background of aiding and abetting tort liability, it does not follow that Congress intended to apply that kind of liability to the private causes of action in the securities Acts"). In 2008, the Supreme Court, in *Stoneridge Investment Partners, LLC, supra,* 552 U.S. 148, re-confirmed its holding in *Central Bank.*

**D. *Stoneridge* requires dismissal of the SAC.**

In *Stoneridge*, Justice Kennedy noted that "[d]ecisions of the Courts of Appeals are in conflict respecting when, if ever, an injured investor may rely upon §10(b) to recover from a party that neither makes a public misstatement nor violates a duty to disclose but does participate in a scheme to violate §10(b). Compare *Simpson v. AOL Time Warner Inc.*, 452 F. 3d 1040 ([9th Cir.] 2006), with *Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F. 3d 372 ([5th Cir.] 2007). We granted certiorari. 549 U. S. ___ (2007)." *Stoneridge* effectively resolved this conflict by rejecting the idea that a person can be "liable under §10(b)" simply by committing "a deceptive act in the process of providing assistance." 549 U.S. at 162-163. Justice Kennedy explained that, if adopted, "this construction of §10(b) . . . would revive in substance the implied cause of action against all aiders and abettors except those who committed no deceptive act in the process of facilitating the fraud." *Id.*

**E. *Simpson* requires dismissal of the SAC.**

Even before *Stoneridge*, the Ninth Circuit had applied essentially this same approach as applied in *Stoneridge*. In *Simpson v. AOL Time Warner Inc., supra,* 452 F.3d at 1050, Judge Gould cited with approval U.S. District Judge Kaplan's decision in *In re Parmalat Sec. Litig.*, 376 F.Supp.2d 472, 505 (S.D.N.Y. 2005) (granting motion to dismiss Section 10(b) claims against banks who committed deceptive acts in furtherance of another's deceptive scheme) (footnote omitted):

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

> At worst, the banks designed and entered into the transactions knowing or even intending that Parmalat or its auditors would misrepresent the nature of the arrangements. That is, they substantially assisted fraud with culpable knowledge - in other words, they aided and abetted it. Under *Central Bank,* of course, that is not a basis for private civil liability. The complaint therefore will be dismissed insofar as it seeks to hold the defendant banks liable for participating in these transactions.

Likewise in *Stoneridge,* the Supreme Court affirmed an order dismissing all claims against a secondary actor. As held in *Stonebridge*, "[t]he conduct of a secondary actor must satisfy each of the elements or preconditions for liability." 549 U.S. at 158.

**F. The SAC does not allege *any* required element of a Section 10(b) claim.**

**FIRST ELEMENT: BANA did not misrepresent or omit "material facts."**

**1. Plaintiffs do not allege a "misrepresentation" by BANA.**

As noted above, the SAC does not allege a *single* "misrepresentation" by BANA. Thus, for example, plaintiffs do not allege that the allegedly deceptive "appraisals" were supplied to plaintiffs.

**2. Plaintiffs lack standing to complain of alleged "omissions" by BANA.**

The *sine qua non* of Section 10(b) nondisclosure claims is a pre-existing disclosure duty extending from defendant to plaintiff. *Chiarella v. United States*, 445 U.S. 222, 228 (1980) ("one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so"). The duty to disclose "arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Id.* at 228-29 (quotation marks omitted; alteration in original). See *Higginbotham v. Baxter Int'l Inc.,* 495 F.3d 753, 760 (7th Cir. 2007) (Easterbrook, J.) (" ("Silence is not 'fraud' *without a duty to disclose.*") (emphasis added). Here, as noted above, plaintiffs amended the FAC does not even try to satisfy the 6-part test for establishing a disclosure duty on BANA's part even though they themselves brought the test to the attention of the Court [see Docket # 53 at 3].

**3. The SAC does not address "material facts."**

As noted above, at pp. 18 to 19, plaintiffs do not allege the "misrepresentation" or "omission" to disclose "material facts."

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**SECOND ELEMENT: Plaintiffs do not allege that BANA acted with *scienter*.**

**A. The "heightened" pleading requirements under the PSLRA and Rule 9(b).**

A Section 10(b) complaint must comply with the pleading requirements of the PSLRA, whose "purpose . . . was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'" *In re Vantive Corp. Sec. Litig., supra*, 283 F.3d 1079 at 1084-85. The PSLRA requires that a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The PSLRA requires that the plaintiff "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Zucco Partners,* 552 F.3d at 991 (quoting 15 U.S.C. § 78u-4(b)(2)). "To adequately demonstrate that the 'defendant acted with the required state of mind,' a complaint must 'allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness.' " *Id.* (quoting *In re Daou Sys., Inc.,* 411 F.3d 1006, 1014-15 (9th Cir. 2005)).

"[D]eliberate recklessness" requires a plaintiff to plead facts demonstrating "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents of danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (internal quotations and citations omitted).

The court should "conduct a dual inquiry" when it evaluates scienter. *Zucco Partners,* 552 F.3d at 991-92. First, a court should determine "whether any of the plaintiff's allegations, standing alone are sufficient to create a strong inference of scienter." *Id.* at 992. Second, "if no individual allegations are sufficient," a court should "conduct a 'holistic' review of the same allegations to determine whether the individual allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id.*

"'[I]n determining whether the pleaded facts give rise to a strong inference of scienter, the court must take into account plausible opposing inferences.' " *Zucco Partners,* 552 F.3d at 992 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 310 (2007)). A plaintiff sufficiently alleges *scienter* "only if a reasonable person would deem the inference of scienter

cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 551 U.S. at 324. The inquiry "is inherently comparative." *Id.*

"A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco Partners,* 552 F.3d 991 (citing *Tellabs,* 551 U.S. at 324).

Facts that establish a motive and opportunity, or circumstantial evidence of "simple recklessness" are not sufficient to create a strong inference of deliberate recklessness. *See Silicon Graphics,* 183 F.3d at 979. Instead, plaintiffs "must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Id.*

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**B. The SAC's "state of mind" allegations do not satisfy Rules 8(a) or 9(b) let alone the PSLRA.**

The SAC does not allege facts suggesting "deliberate recklessness" or "actual intent" by BANA. No fact is alleged to demonstrate "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents of danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Daou Sys., Inc.,* 411 F.3d at 1014-15 (internal quotations and citations omitted). On the contrary, as shown above, at pp. 15-16, plaintiffs do not even "plausibly" allege that BANA's "appraisals" were inaccurate. But even assuming otherwise, plaintiffs also do not "plausibly" allege that BANA acted in bad faith in omitting to disclose the contents of appraisals as to which BANA owed no disclosure duty to plaintiffs. Likewise, for example, plaintiffs do not "plausibly" allege that BANA had reason to know the condo project was a "security" or, alternatively, that BANA acted with an illicit state of mind when omitting to give legal advice to borrowers to whom BANA owed no disclosure duties.

**THIRD ELEMENT: Plaintiffs do not allege "a connection between the misrepresentation or omission and the purchase or sale of a security."**

As noted in *Stoneridge*, plaintiffs must allege "a connection between the misrepresentation or omission and the purchase or sale of a security." 552 U.S. at 157. Here, as shown above, there was no such "connection." Thus, as already fixed and determined by the 1st Order, at 10, the "sale"

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

at issue here took place in 2006, which was long before any alleged misconduct by BANA. Moreover, here, plaintiffs do not, and cannot, "plausibly" allege that BANA had any reason to believe a "securities" transaction was involved.

**FOURTH ELEMENT: Plaintiffs do not allege "reliance."**

The Supreme Court in *Stoneridge* affirmed the lower court's dismissal of a Section 10(b) claim of a shareholder of "Charter" that was suing "Scientific-Atlanta" and "Motorola." The Court held that the plaintiff had not alleged facts sufficient to establish reliance even though its complaint alleged an elaborate scheme involving "Charter," "Scientific-Atlanta" and "Motorola" to enable "Charter" to issue fraudulent financial statements that would deceive plaintiff as to "Charter's" net income. Plaintiff plausibly alleged that "Scientific-Atlanta" and "Motorola" "knew or were in reckless disregard of Charter's intention to use the transactions to inflate its revenues and knew the resulting financial statements issued by Charter would be relied upon by research analysts and investors." 552 U.S. at 155. The Court nevertheless affirmed dismissal of the plaintiff's complaint, writing as follows:

> [R]eliance is tied to causation, leading to the inquiry whether respondents' acts were immediate or remote to the injury. . . . [W]e conclude respondents' deceptive acts, which were not disclosed to the investing public, are too remote to satisfy the requirement of reliance. It was Charter, not respondents, that misled its auditor and filed fraudulent financial statements; nothing respondents did made it necessary or inevitable for Charter to record the transactions as it did. [552 U.S. at 160-161 (emphasis added)]

Here as well, it was the someone other than BANA that sold the underlying "security" to plaintiff.

**FIFTH ELEMENT: Plaintiffs do not allege "economic loss."**

*Stoneridge* confirms that plaintiffs must allege "economic loss" as a result of defendant's conduct. Here, however, plaintiffs cannot allege they suffered "economic loss" as a result of conduct by BANA. Plaintiffs were contractually bound to buy their condo before entering into their loan agreements with BANA [see RJN Exhibits A, B, C and P (purchase contracts executed by plaintiffs in 2006) and M, N, O and Q (loan agreements executed by plaintiffs in 2007)].

**SIXTH ELEMENT: Plaintiffs do not allege "loss causation."**

*Stoneridge* confirms that plaintiff in a Section 10(b) case must plead "loss causation." *See,*

*e.g., Powers v. British Vita, PLC*, 57 F. 3d 176, 189 (2nd Cir. 1995) (holding that no loss causation exists where losses were caused, e.g., by an economic recession); *In re Integrated Resources Real Estate Ltd. Partnerships Securities Litigation*, *supra*, 850 F.Supp. at 1144 (S.D.N.Y. 1993) ("To plead loss causation, Plaintiffs must allege that those misstatements or omissions are the reasons why Plaintiffs investments did not pan out"); and *Finkel v. Stratton Corp*., *supra*, 754 F.Supp. at 330 (S.D.N.Y. 1990), *aff'd in part, rev'd in part on other grounds,* 962 F.2d 169. Here, plaintiffs have made no effort to plead "loss causation." *See, e.g.*, SAC ¶¶ 216, 233 and 238.

## III. PLAINTIFFS DID NOT CURE THE DEFICIENCIES IN THEIR THIRD AND FOURTH CLAIMS FOR RELIEF.

Plaintiffs "third" and "fourth" claims for relief are based on Cal. Corp. Code § 25504.1, which provides that "[a]ny person who materially assists in any violation of Section 25110 . . . or 25401 . . . with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation." As the court previously noted, "Plaintiffs do not allege Bank Defendants are primarily liable under these statutes" [1st Order at p. 8].

### A. The Plaintiffs' claims based on Cal. Corp. Code § 25110 (plaintiffs' "third claim") are time-barred.

The 1st Order, at p. 11, held that "any Plaintiff who executed a Purchase Contract before December 8, 2007, is time barred and precluded from bringing a claim under Section 25110." As shown in the table at p. 10, above, each of the BANA Plaintiffs executed his or her Purchase Contracts in 2006; hence, their claims under Corp. Code §§ 25504.1 and 25110 (plaintiffs' "third claim") are time-barred.

### B. Plaintiffs' claims based on Cal. Corp. Code § 25501 (plaintiffs' "fourth claim") are time-barred under the 2-year "inquiry notice" period.

Plaintiffs "fourth claim" is subject to the limitations period specified in Corp. Code § 25506(b), which provides, as relevant here, that, "[f]or proceedings commencing on or after January 1, 2005, no action shall be maintained to enforce any liability created under Section . . . 25501 . . . ( . . . or Section 25504.1 insofar as they relate[] to [that] section[]) unless brought before . . . the expiration of two years after the discovery by the plaintiff of the facts constituting the violation." The 2nd Order, at 6, granted plaintiffs leave to amend to allege facts showing that they

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

were "not put on inquiry notice until after the contracts were signed because later events revealed Defendant's fraud." However, plaintiffs re-filed their pleading without changing a single word of their already-rejected "discovery" allegation [FAC ¶ 81 is now SAC ¶ 132]. *See* pp. 8-9, *supra*. Accordingly Plaintiffs fourth claim for relief is time-barred.

**C. <u>In any event, Plaintiffs' do not state a claim for relief under Corp. Code § 25504.1 (third and fourth claim for relief).</u>**

Under Corp. Code § 25504.1, "[a]ny person who materially assists in any violation of Section 25110 . . . or 25401 . . . with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation." The elements of these claims for relief were outlined by Judge Jones in *In re Alliance Equipment Lease Program Securities Litigation*, 2002 WL 34451621, *12 (S.D.Cal. 2002):

> In order to assert a violation of § 25504.1, a plaintiff must prove (1) the existence of an independent primary wrong; (2) actual knowledge of the primary wrong by the alleged aider and abetter and of his or her role in furthering it; and (3) substantial assistance in the wrong. [Citations omitted] Notably, § 25504.1 specifically requires "an intent to deceive or defraud" . . . .

Here, however, plaintiffs do not plead, as required by Rules 8(a)(2) and 9(b), "the existence of an independent primary wrong." Plaintiffs do not, for example, plead facts sufficient to show that the Hard Rock condominium offering involved the sale of a "security." Nor do Plaintiffs, in the manner required by Rules 8(a)(2) and 9(b), plead "actual knowledge of the primary wrong by the alleged aider and abetter and of his or her role in furthering it." Likewise, Plaintiffs do not plead "substantial assistance in the wrong." The judicially noticeable facts show that the alleged "wrong" took place months before BANA lent money to Plaintiffs [see RJN Exhibits A, B, C and P (purchase contracts executed by plaintiffs in 2006) and M, N, O and Q (loan agreements executed by plaintiffs in 2007)]. Most importantly, as shown above, at pp. 24-25, plaintiffs do not plead, as required by Corp. Code § 25504.1, "an intent to deceive or defraud."

**IV. <u>PLAINTIFFS "SEVENTH" AND "EIGHTH" CLAIMS [FRAUD] SHOULD BE DISMISSED WITH PREJUDICE.</u>**

The prior orders of the Court establish that plaintiffs' "seventh claim" ["fraud misrepresentation"] (SAC ¶¶ 229-232) and their "eighth" claim ["fraud - concealment"] (SAC ¶¶

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

234-238), are both time-barred under the applicable 3-year limitations period [Code Civ. Proc. § 338(d)]. Thus, plaintiffs do not, as required by the 2nd Order, p. 6, allege they were "not put on inquiry notice until after the contracts were signed" in 2006. *See* pp. 8-9, *supra*. In any event, plaintiffs do not allege the elements of "fraud misrepresentation" or "fraud concealment" claim, which are substantially identical to the elements of a Section 10(b) claim.[13] No "misrepresentations" are alleged in the SAC, which is the *sine qua non* of "seventh" claim ("fraud misrepresentation").[14] Nor do plaintiffs allege any of the elements of their "eighth" claim ("fraud concealment").[15] Thus, plaintiffs do not allege (1) concealment of a "material fact" [*see* pp. 18 to 19]; or (2) "a duty to disclose" [*see* pp. 4, 10-11, 23]; or (3) an "intent to defraud" [*see* pp. 24 to 25]; or (4) that plaintiffs "would not have acted as [they] did if [they] had known of the concealed or suppressed fact" [*see* pp. 25 to 26]; or (5) damage "as a result of the concealment" [*see* pp. 26 to 27].

## CONCLUSION

The SAC should be dismissed with prejudice.

DATED: October 8, 2010

**BRYAN CAVE LLP**

By: s/ Edward M. Rosenfeld
Attorneys for Bank of America, N.A.

---

[13] *See Stoneridge Investment Partners, supra,* 552 U.S. at 157

[14] *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 -1127 (9th Cir. 2009) ("To determine if the elements of fraud have been pleaded to state a cause of action we look to state law. *Vess,* 317 F.3d at 1105-06. The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or *nondisclosure* ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'").

[15] *See In re Easysaver Rewards Litigation*, 2010 WL 3259752, *13 (S.D.Cal. 2010) ("The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.").

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; and that I served the individuals on the service list attached hereto the following documents:

Original of:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BANK OF AMERICA, N.A.'s MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR ALLEGED VIOLATIONS OF FEDERAL AND STATE SECURITIES LAWS**

Filed October 8, 2010 on the ECF system and served pursuant to General Order No. 550, with:

- Michael J. Aguirre
  maguirre@amslawyers.com
- Lynn T. Galuppo
  lgaluppo@coxcastle.com
- Maria C. Severson
  mseverson@amslawyers.com
- Spyglass Partners, Inc.
  Bryan D. Sampson
  bsampson@sampsonlaw.net
- Sung-Min Christopher Yoo
  cyoo@adorno.com
- John Nadolenco
  jnadolenco@mayerbrown.com
- Jennifer A Needs
  jennifer.needs@sgsattorneys.com
- Thomas W. McNamara
  tmcnamara@labellamcnamara.com

s/ Edward M. Rosenfeld
Edward M. Rosenfeld
E-mail: emrosenfeld@bryancave.com