LA BELLA & MCNAMARA, LLP
THOMAS W. MCNAMARA (SBN 127280) tmcnamara@labellamcnamara.com
DANIEL M. BENJAMIN (SBN 209240) dbenjamin@labellamcnamara.com
LOGAN D. SMITH (SBN 212041) lsmith@labellamcnamara.com
401 West A Street, Suite 1150
San Diego, California 92101
Telephone:   (619) 696-9200
Facsimile:   (619) 696-9269

Attorneys for:  Defendant Playground Destination Properties, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMER SALAMEH, et al., | ) Case No.:  09cv2739 DMS (CAB) |
| Plaintiffs, | ) **DEFENDANT PLAYGROUND** |
| | ) **DESTINATION PROPERTIES INC.'S** |
| vs. | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT OF ITS** |
| TARSADIA HOTEL, et al., | ) **MOTION TO DISMISS PLAINTIFFS'** |
| | ) **SECOND AMENDED COMPLAINT** |
| Defendants. | ) **UNDER FEDERAL RULE OF CIVIL** |
| | ) **PROCEDURE 12(b)(6)** |
| | ) Date:   December 10, 2010 |
| | ) Time:   1:30 p.m. |
| | ) Judge:  Hon. Dana M. Sabraw |
| | Dept:  Courtroom 10, 2nd Floor |

66286

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND
AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ......................................................................................... 1

ARGUMENT ................................................................................................. 3

   I.   Plaintiffs Have Not Alleged and Cannot Allege the Existence of a Security .............. 3

     A.   Plaintiffs' New Allegations Do Not Show a Common Enterprise ........................ 4

     B.   Plaintiffs' SAC Fail to Allege an Expectation of Profits Produced by the Efforts of Others ........................................................................................................ 6

     C.   Plaintiffs' Three New Causes of Action Do Not Change the Analysis Because They Still Require Showing the Condominiums Were Securities ...................... 12

   II.   Plaintiffs' Claims Are Barred by the Applicable Statutes of Limitations ................. 13

     A.   The First and Third Causes of Action Are Untimely as Established in the Court's Prior Orders ............................................................................................... 14

     B.   Plaintiffs Were on Inquiry Notice as to the Second, Fourth, Seventh, and Eighth Causes of Action ................................................................................. 15

       i.   Plaintiffs Failed to Plead Facts Showing Delayed Discovery .............................. 16

       ii.   Plaintiffs Knew or Should Have Known of the Relevant Facts When They Signed the Purchase Contracts, Addendums, and Operation Agreements ................. 18

     C.   The Fifth Cause of Action under Cal. Corp. Code §25501.5 Is Time-Barred ...... 21

   III.   The Broker-Dealer Claim Improperly Seeks to Create a New Claim in Violation of an Express Statutory Prohibition ............................................................. 23

   IV.   Plaintiffs Fail to Plead the Fraud-Based Claims with the Required Particularity .... 25

     A.   The 10-b Claim Is Not Pled with Particularity ..................................................... 25

     B.   The Fraud Claims Are Not Pled with Particularity ............................................. 27

   V.   Further Leave to Amend Should Be Denied ............................................................. 27

CONCLUSION ............................................................................................. 28

APPENDIX A ............................................................................................... 29

66286

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*389 Orange Street Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1999) ...................................... 17

4

*Aaron v. Aguirre*, 2007 WL 959083 (S.D. Cal. 2007) ............................................................. 28

5

*Amoroso v. Southwestern Drilling Multi-Rig P'ship No. 1*, 646 F. Supp. 141 (N.D. Cal. 1986)

6

.................................................................................................................................................... 14

7

*Armbrister v. Roland Intern. Corp.*, 667 F. Supp. 802 (M.D. Fla. 1987) ............................... 19

8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 4

9

*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798 (2007) ...................................... 13

10

*Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1 (2009) ............. 13

11

*Collins v. Nationalpoint Loan Services*, 2009 WL 3213979 (S.D. Cal. 2009) ...................... 18

12

*Consol. Mgmt. Group, LLC v. Dep't of Corps.*, 162 Cal. App. 4th 598 (2008) ...................... 4

13

*Demarco v. LaPay*, 2009 WL 3855704 (D. Utah 2009) ..................................................... 8, 12

14

*Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408 (2006) ....................................................... 16

15

*Doody v. E.F. Hutton & Co., Inc.*, 587 F. Supp. 829 (D. Minn. 1984) ................................... 12

16

*Finkel v. The Stratton Corp.*, 962 F.2d 169 (2d Cir. 1992) .................................................... 14

17

*Hocking v. Dubois*, 885 F.2d. 1449 (9th Cir 1989) ................................................................. 11

18

*Howard v. Sun Oil Co.*, 404 F.2d 596 (5th Cir. 1968) ............................................................ 18

19

*Huynh v. Chase Manhattan Bank*, 465 F.3d 992 (9th Cir. 2006) ........................................... 13

20

*In re Am. Funds Securities Litig.*, 556 F. Supp. 2d 1100 (C.D. Cal. 2008) ........................... 21

21

*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005) ....................................................... 25, 26

22

*In re Stac Electronics Securities Litig.*, 89 F.3d 1399 (9th Cir. 1996) .................................... 6

23

*Jefferson v. J. E. French Co.*, 54 Cal. 2d 717 (1960) ............................................................. 23

24

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988) ............................................................... 16, 18

25

*Kamen v. Lindly*, 94 Cal. App. 4th 197 (2001) ....................................................................... 24

26

*Kravetz v. U.S. Trust Co.*, 941 F. Supp. 1295 (D. Mass. 1996) ............................................. 19

27

*Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053 (N.D. Cal. 2009) ................................... 21

28

*Lazar v. Super. Court*, 12 Cal. 4th 631 (1996) ....................................................................... 27

66286

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Meadows v. Pac. Inland Secs. Corp.*, 36 F. Supp. 2d 1240 (S.D. Cal. 1999)........................ 21

*Merck & Co., Inc. v. Reynolds*, __ U.S. __, 130 S.Ct. 1784 (2010) ...................................... 16

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) ...................................................................... 13

*Moreland v. Dep't of Corps.*, 194 Cal. App. 3d 506 (1987)..................................................... 4

*Newmark v. H. & H. Products Mfg. Co.*, 128 Cal. App. 2d 35 (1954)..................................... 9

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999) ...................................................................... 18

*Okun v. Morton*, 203 Cal. App. 3d 805 (1988) ...................................................................... 27

*One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C. Cir. 1988) .............................. 9

*Reiswig v. Dep't of Corps.*, 144 Cal. App. 4th 327 (2006) ...................................................... 4

*Rendon v. Countrywide Home Loans, Inc.*, 2009 WL 3126400 (E.D. Cal. 2009)................... 14

*Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000) .................................................................. 9

*Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009 (9th Cir. 1999)..................................... 28

*Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124 (N.D. Cal. 2006) ................................ 26

*S.E.C. v. Rubera*, 350 F.3d 1084 (9th Cir. 2003) ..................................................................... 3

*S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) ....................................................................... 3

*Sanguinetti v. Viewlogic Sys., Inc.*, 1996 WL 33967 (N.D. Cal. 1996)................................... 13

*Silver Hills Country Club v. Sobieski*, 55 Cal. 2d 811 (1961) .................................................. 4

*Simmons v. Cal. Institute of Technology*, 34 Cal. 2d 264 (1974) ............................................. 9

*Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351 (9th Cir. 1996) ...................... 28

*Stansfield v. Starkey*, 220 Cal. App. 3d 59 (1990) ................................................................. 27

*Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293 (9th Cir. 1998) ............................................. 6

*Suckow Borax Mines Consolidated v. Borax Consolidated*, 185 F.2d 196 (9th Cir. 1951) ... 18

*Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308 (2007) ..................................... 26

*Uribe v. Countrywide Financial*, 2009 WL 1953413 (S.D. Cal. 2009)................................... 27

*Warfield v. Alaniz*, 569 F.3d 1015 (9th Cir. 2009) ................................................................... 3

*Yumul v. Smart Balance, Inc.*, __ F. Supp. 2d __, 2010 WL 3359663 (C.D. Cal. 2010) ....... 17

**Statutes**

15 U.S.C. § 77l................................................................................................................... 14

Case No. 09cv2739 DMS (CAB)
**TABLE OF AUTHORITIES**

66286

15 U.S.C. §77m.................................................................................................. 14, 15

15 U.S.C. §78u-4 ................................................................................................ 26

28 U.S.C. §1658 ................................................................................................. 16

Cal. Civ. Code §1351 ............................................................................................ 5

Cal. Code Civ. Proc. § 1856 ................................................................................. 9

Cal. Code Civ. Proc. § 338 ................................................................................. 16

Cal. Corp. Code § 25501.5......................................................................... passim

Cal. Corp. Code § 25506.......................................................................... 22, 23

Cal. Corp. Code § 25510 ...................................................................................... 24

Cal. Corp. Code §25401 ...................................................................................... 16

Cal. Corp. Code §25507................................................................................ 14, 15

Cal. Corp. Code §25510................................................................................ 3, 14, 25

**Rules**

Fed. R. Civ. Proc. 9................................................................................. 17, 25, 27

**Other Authorities**

1 Marsh & Yolk, Practice under the California Securities Laws (2001) § 14.02[1] .............. 24

California Assembly Bill 2167, § 2, 2004 Cal. Legis. Serv. Ch. 575, CA Legis. 575 (2004) 22

SEC No-Action Letter to Intrawest Corporation, 2002 WL 31626919 (Nov. 8, 2002) ........... 6

SEC No-Action Letter to Marco Polo Hotel Inc., 1987 WL 108553 (Sept. 30, 1987)....... 5, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

66286

Defendant Playground Destination Properties, Inc. ("Playground") respectfully submits this memorandum of points and authorities in support of its motion to dismiss Plaintiffs' Second Amended Complaint ("SAC") with prejudice.[1]

**INTRODUCTION**

The Court's Order granting Playground's motion to dismiss Plaintiffs' First Amended Complaint ("FAC") identified two defects: (1) the allegations did not establish the existence of a security because they neither demonstrated a common enterprise nor an expectation of profits from the efforts of others; and (2) the allegations did not demonstrate that the claims were timely.  (*See* Dock. No. 82).  The Court gave Plaintiffs the opportunity to amend. Plaintiffs filed the SAC, but failed to cure these defects.  Given this failure, the case should now be dismissed with prejudice.

The SAC's section containing allegations that purport to show a common enterprise for security law purposes (SAC ¶¶82-91) are patently deficient.  Plaintiffs allege such facts as that the Hard Rock Hotel was a condominium project (a "common interest development") that had common areas and homeowners' association fees.  Obviously, that is not a security, and none of the other allegations in the section show a common enterprise either.  At best, they are conclusory, and at worst they are irrelevant.

The SAC's section that purports to allege an expectation of profits from the efforts of others (SAC ¶92-112) is even more defective.  Many of the allegations address irrelevant issues, such as that the Hard Rock Hotel started as a hotel, and then was changed into a condominium project.  A good portion of the section just contains conclusory allegations of an expectation of profits without factual support – the same defect that existed in Plaintiffs' FAC.  The few allegations that attempt to substantiate an expectation of profits refer to the *optional* Rental Management Agreement that Plaintiffs signed a year or more *after* executing the condominium Purchase Contracts.  If there was no expectation of profits based on the

---

[1] Many other defendants are filing motions to dismiss simultaneous with Playground. Playground hereby joins in all applicable arguments for dismissal raised in those papers.

66286

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

efforts of others until a year or more after the Purchase Contracts were executed and Plaintiffs already agreed to buy the condominiums, there is no security.

And all of this is assumes that Plaintiffs could even make any allegations of expectation of profits or common enterprise at all.  Yet, to the contrary, each Plaintiff expressly agreed in the Purchase Contract that they were "purchasing the unit for its real estate value and not as an investment" and that "neither seller nor any of its employees or agents have represented or offered the property as an investment opportunity."  This language, and the other provisions cited below that reinforced this language, prevent Plaintiffs from maintaining that they bought the condominium units as securities.

The second defect in the FAC identified by the Court – the statute of limitations – has also not been cured.  The Court told Plaintiffs to address the issue of inquiry notice in their amended complaint.  This was because the language of the relevant contracts appeared to put Plaintiffs on inquiry notice more than three years before they filed this lawsuit on December 8, 2009.  Plaintiffs argued to the Court that they would somehow cure this defect by pleading that Playground was a fiduciary or that they were later events that gave them notice of the claims.  However, the two paragraphs of the SAC that purport to address the question of notice (SAC ¶¶132-33) do not plead any meaningful facts at all (nor are they pled elsewhere in the SAC).  Other than talking to a lawyer, there is no indication as to what gave Plaintiffs notice, and the statute of limitations turns on notice of facts, not notice of the law.  Moreover, Plaintiffs have not (because they cannot) pled that Playground is a fiduciary either.  The fact remains that all of the relevant issues Plaintiffs have raised were disclosed in the contracts they signed in 2006, or were matters of public record.  Given the Court's express direction, Plaintiffs' failure to cure their pleadings is fatal.

Plaintiffs have pled three new claims.  One is under Section 10-b of the 1934 Exchange Act; the other two are for fraud.  The new claims are just as defective as the old ones.  They still depend on proving there was a security, which Plaintiffs cannot do.  And they still are subject to two and three year inquiry notice statutes of limitations that Plaintiffs cannot meet.  All three new claims also sound in fraud, yet are not pled with particularity.

2

Case No. 09cv2739 DMS (CAB)

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1   Finally, Plaintiffs' fifth cause of action seeks to state a claim against Playground as an

2   alleged unlicensed broker-dealer under Cal. Corp. Code §25501.5.  That law only permits

3   rescission of a sale of a security that a broker-dealer *once owned*, and only permits damages

4   once rescission is no longer possible because the security has been transferred to a third

5   party.  Here, Playground never owned the alleged "security" (that is, the condominiums).

6   Defendant 5th Rock, LLC was the owner.  Playground was the third-party real estate agent

7   that contracted to sell the units.  Cal. Corp. Code §25510 prohibits the creation of new or

8   additional causes of action for alleged state security statutory violations except as "explicitly"

9   provided in those state security statutes.  Yet, Plaintiffs are trying to create a new cause of

10   action in stating a claim against Playground seeking rescission or damages when there has

11   never been anything to rescind.  The claim is legally improper and should be dismissed.

12   Plaintiffs have filed three separate complaints with this Court.  Despite the Court's

13   clear instructions in its prior Order, Plaintiffs have been unable to cure the deficiencies

14   through amendment.  The case should now be dismissed with prejudice.

15   ## ARGUMENT

16   ### I.   Plaintiffs Have Not Alleged and Cannot Allege the Existence of a Security

17   The Court's prior Order told Plaintiffs what they had to be able to allege to assert that

18   the Hard Rock Hotel condominiums were really securities:  "Plaintiffs have failed to allege a

19   common enterprise, and their allegations as to their expectation of profits produced by the

20   efforts of others are conclusory."  (Dock No. 82 at 5:9-10).[2]  Plaintiffs' new allegations on

21   these issues, SAC ¶¶82-112, fail to cure these defects.

---

23   [2]  These two requirements come directly from the governing case law as to what
    constitutes a security as set out in the Court's Order.  (*See* Dock. No. 82 at 3:26-4:13).  In

24   *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) ("*Howey*"), the Supreme Court established
    the "economic realities" test to determine what constituted a security under federal law.  The

25   Ninth Circuit has distilled *Howey* "into a three-part test requiring '(1) an investment of
    money (2) in a common enterprise (3) with an expectation of profits produced by the efforts

26   of others.'"  *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009) (quoting *S.E.C. v.
    Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003) (alterations in original).

27   In comparison, "California courts have applied, either separately or together, two

28   distinct tests: (1) the 'risk capital' test described in [*Silver Hills Country Club v. Sobieski*, 55

3

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED
COMPLAINT**

### A.    Plaintiffs' New Allegations Do Not Show a Common Enterprise

The total allegations suggesting the existence of a common enterprise are in the section of the SAC titled "Common Enterprise" at SAC ¶¶82-91, and are as follows:

The first and last paragraphs of this section are two conclusory paragraphs that simply announce that there was a common enterprise and that it was based on the parties' real estate contracts.   (*See* SAC ¶¶82, 91).   A conclusory allegation of a common enterprise is insufficient under the governing pleading standard.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do....") (citation omitted).[3]   And the Court has the relevant contracts:  The Purchase Contracts and Addendum referenced in Playground's prior motion, and the Unit Maintenance and Operation Agreements ("Operation Agreement").[4]   These

---

Cal. 2d 811, 815 (1961)], and (2) the federal test described in [*Howey*]." *Consol. Mgmt. Group, LLC v. Dep't of Corps.*, 162 Cal. App. 4th 598, 609-10 (2008).  "A transaction is a security [under California law] if it satisfies either test." *Id.* at 610 (citing *Reiswig v. Dep't of Corps.*, 144 Cal. App. 4th 327, 334 (2006)).  "The 'risk capital' test requires a consideration of the following factors: (1) whether funds are being raised for a business venture or enterprise; (2) whether the transaction is offered indiscriminately to the public at large; (3) whether the investors are substantially powerless to effect the success of the enterprise; and (4) whether the investors' money is substantially at risk because it is inadequately secured." *Reiswig*, 144 Cal. App. 4th at 334 (quoting *Moreland v. Dep't of Corps.*, 194 Cal. App. 3d 506, 519 (1987)).

[3] The Court's prior Order set out the governing standard for Rule 12(b)(6) motions, so Playground will not repeat it here.  (*See* Doc. No. 82 at 3:7-19).

[4] Playground previously filed the Purchase Contract and Addendums with the Court in support of its first motion to dismiss.  (*See* Dock. No. 50-2 to 50-10).  Since then, new Plaintiffs have been added.  And, on this motion, Playground is also asking the Court to consider the Operation Agreement and the Rental Management Agreement.  Accordingly, the new Plaintiffs' Purchase Contracts and Addendums, and all of the Plaintiffs' Operation Agreements and Rental Management Agreements, are being filed with Playground's Request for Judicial Notice filed concurrently herewith.  The Court already recognized its ability to consider these documents on a motion to dismiss.  (*See* Dock. No. 72 at 5:1-6:6).  Playground notes that in a couple instances, the named Plaintiffs such as Barbara Behrle and Kim Henry did not have contracts, but apparently acquired their interests from other Plaintiffs.  However, Plaintiffs have alleged that all of the Plaintiffs are "representative" of the putative class and that their claims are "typical" of the putative class (SAC ¶ 75, 77), so it is fair to conclude that all of their applicable contracts have the same terms and fall within the same time periods unless Plaintiffs make a contrary allegation or produce contrary contracts.

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1   contracts expressly state that Plaintiffs were not promised that they would earn profits from

2   any investment in a common enterprise and were instead told, and *agreed*, that deciding to

3   rent their units was optional.  (Purchase Contract ¶19; Addendum ¶12; Operation Agreement

4   ¶3.4).  Neither the contracts nor conclusory allegations show a common enterprise.

5           Plaintiffs allege that a standard real estate document, a California Department of Real

6   Estate Final Subdivision Parcel Report ("DRE Report") disclosed that the Hard Rock Hotel

7   was a "common interest development."  (SAC ¶83).  A "common interest development" is

8   the legal term for condominium projects and other similar real estate developments.  *See* Cal.

9   Civ. Code §1351(c).  If that showed that there was a security, all condominiums would be

10  securities.   And, the Court can take notice of the fact that a DRE Report is a standard real

11  estate document for new real estate projects in California involving subdivisions, including

12  condominiums.  *See* http://www.dre.ca.gov/sub_publicreports.html (California Department

13  of Real Estate website explaining purpose of DRE reports).

14          Plaintiffs spend several paragraphs alleging that there was a homeowners' association

15  that managed common areas and facilities, and charged maintenance fees.  (SAC ¶¶84-87).

16  Again, a condominium association would be expected in any condominium project, and

17  cannot show a common enterprise.

18          Plaintiffs allege that there was a restriction on occupancy of units (28 days) and that

19  this is based on City of San Diego zoning requirements.  (*See* SAC ¶89).  The SEC has

20  specifically looked at the sale of condominium units where there is a use restriction based

21  upon zoning requirements and issued a No-Action letter stating that these type of restrictions

22  will not transform a condominium into a security.  *See* SEC No-Action Letter to Marco Polo

23  Hotel Inc., 1987 WL 108553, at *1, 3 (Sept. 30, 1987).  Further, Plaintiffs have never cited

24  any case showing that a zoning-based use restriction somehow creates a security.

25          Plaintiffs lastly allege that the Hard Rock Hotel project was a hotel that was then

26  changed mid-development into a condominium project.  (*See* SAC ¶90).  That says nothing

27  about how this was a common enterprise – as established in Playground's prior motion

28  papers and as discussed more *infra*, not all condominium hotels are securities.  *See* SEC No-

5                                    Case No. 09cv2739 DMS (CAB)

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED
COMPLAINT**

Action Letter to Intrawest Corporation, 2002 WL 31626919 (Nov. 8, 2002) (no action letter issued regarding sale of hotel condominium units such that they would not be treated as securities if the units were not sold as investments, even if the purchasers later agreed to a rental program, so long as the rental program was optional and there was no rent pooling).

In sum, despite Plaintiffs devoting an entire section of the SAC to showing a "Common Enterprise," none of the allegations make such a showing.

### B.   Plaintiffs' SAC Fail to Allege an Expectation of Profits Produced by the Efforts of Others

Plaintiffs have a section of their SAC entitled "Expectation of Profits as the Products of Efforts Other than [Hard Rock Hotel] Investors."  (*See* SAC ¶¶92-112).

To begin with, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998) (affirming dismissal of securities class action) (citing *In re Stac Electronics Securities Litig.,* 89 F.3d 1399, 1403 (9th Cir. 1996)).

Here, Plaintiffs' new allegations – to the degree they allege anything of relevance – have to overcome the fact that Plaintiffs specifically disclaimed any such expectation of profits in the Purchase Contracts and Addendum that they signed.  All of the Plaintiffs initialed a paragraph of the Purchase Contract – which they also separately signed – that explicitly represented:

> 19. <u>PURCHASE NOT AN INVESTMENT</u>. BY PLACING HIS, HER**, THEIR INITIALS IN THE SPACE PROVIDED HEREIN BELOW, BUYER EXPRESSLY ACKNOWLEDGES THAT**:
>
> (a)   **BUYER IS PURCHASING THE UNIT FOR ITS REAL ESTATE VALUE AND NOT AS AN INVESTMENT**;
>
> (b)   **NEITHER SELLER NOR ANY OF ITS EMPLOYEES OR AGENTS HAVE REPRESENTED OR OFFERED THE PROPERTY AS AN INVESTMENT OPPORTUNITY FOR APPRECIATION OF VALUE OR AS A MEANS OF OBTAINING INCOME FROM THE RENTAL THEREOF**; AND
>
> (c)   **NEITHER SELLER NOR ANY OF ITS EMPLOYEES OR AGENTS HAVE MADE ANY STATEMENTS OR REPRESENTATIONS AS TO RENTAL OR OTHER INCOME THAT MAY BE DERIVED FROM THE UNIT OR AS TO ANY OTHER ECONOMIC BENEFIT, INCLUDING POSSIBLE ADVANTAGES UNDER FEDERAL OR STATE TAX LAWS,**

TO BE DERIVED FROM THE PURCHASE AND/OR OWNERSHIP OF THE UNIT.

(Purchase Contract at ¶19) (capitalization in original and emphasis added).

The Purchase Contract also goes on to state:

(i)      NO REPRESENTATIONS.   Buyer acknowledges and agrees that, except as specifically set forth in this Contract, Buyer is not relying upon any agreements, understandings, inducements, promises, representations, or warranties, express or implied (collectively "**Representation(s)"**) made by sales person, employee or agent of Seller…   Buyer expressly waive[s] any claim for damages or for cancellation of this Agreement because of any Representations made by Seller['s] agents, employees or sales persons other than as expressly contained in this Agreement.

(*Id*. at ¶20(i) (emphasis in original)).

Further, Plaintiffs signed and acknowledged receipt of the Addendum, which stated:

4.      REPRESENTATIONS AND WARRANTIES. It is understood and agreed that there have been no representations, warranties or inducements made to Buyer except those herein set forth, and that no representation, promise, or warranty has been made by Seller or any duly authorized agent of Seller, including but not limited to (a) Seller obtaining any Loan for Buyer or guaranteeing that Buyer will obtain any Loan; (b) the investment potential of the Unit; or (c) future development or traffic patterns in any area adjacent to Project.

*      *      *

12.      NO RENTAL REPRESENTATIONS.   BUYER HEREBY ACKNOWLEDGES AND AGREES THAT: (A) SELLER AND ITS AGENTS ARE NOT MAKING ANY REPRESENTATIONS AS TO THE FEASIBILITY OF RENTING THE UNIT OR OTHERWISE GENERATING INCOME OR DERIVING ANY OTHER ECONOMIC BENEFIT FROM OWNERSHIP OF THE UNIT; (B) SELLER AND ITS AGENTS HAVE MADE NO REPRESENTATIONS (NOR IS ANYONE AUTHORIZED TO DO SO) CONTRARY TO THIS SECTION WITH RESPECT TO THE TAX TREATMENT OR ANY OTHER ECONOMIC BENEFIT OR CONSEQUENCE RELATING TO THE PURCHASE OF THE UNIT; (C) SELLER MAY, AS A CONDITION OF CLOSING, REQUIRE OF BUYER. ANY BROKERS INVOLVED IN THE SALE OR AGENTS OF SUCH BROKERS. OR ANYONE ELSE CONNECTED IN ANY WAY WITH THE OFFER TO SELL AND THE PURCHASE OF THE UNIT. THE EXECUTION AND DELIVERY TO SELLER OF SUCH WAIVERS, AFFIDAVITS. OR OTHER DOCUMENTS AS MAY FROM TIME TO TIME BE REQUIRED BY SELLER TO SATISFY SELLER THAT THE OFFER TO SELL AND THE PURCHASE OF THE UNIT ARE NOT IN VIOLATION OF ANY FEDERAL OR STATE SECURITIES LAWS OR REGULATIONS.

13. NO ORAL REPRESENTATIONS. BUYER ACKNOWLEDGES AND AGREES THAT BUYER HAS NOT RELIED AND SHALL NOT RELY ON ANY COMMENT, REPRESENTATION OR DESCRIPTION OF THE

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1   PROJECT, ITS AMENITIES, THE COMMON AREAS, OR THE UNIT,
    THAT ARE NOT CONTAINED IN THE CONTRACT OR DOCUMENTS
2   SPECIFICALLY REFERENCED IN THE CONTRACT OR OTHERWISE.
    ANY SUCH COMMENT, REPRESENTATION OR DESCRIPTION NOT
3   CONTAINED IN THE CONTRACT OR REFERENCED DOCUMENTS
    DOES NOT CONSTITUTE A REPRESENTATION OR WARRANTY BY
4   SELLER, NOTWITHSTANDING BY WHOM MADE OR UPON WHOSE
    BEHALF SUCH COMMENT, REPRESENTATION OR DESCRIPTION IS
5   PURPORTED TO BE MADE. NO AGENT OF SELLER IS AUTHORIZED
    BY SELLER TO MAKE, GIVE OR PROVIDE ANY SUCH COMMENT,
6   REPRESENTATION OR DESCRIPTION NOT CONTAINED IN THE
    CONTRACT OR THE REFERENCED DOCUMENTS.

7   (Addendum ¶¶4, 12, 13 (capitalization in original)).

8        Courts have rejected securities claims based on similar representations and statements

9   in purchase contracts.  For example, in *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d

10  1283 (S.D. Fla. 2007), the purchase contract contained statements such as:

11       Purchaser ... represents that Purchaser is purchasing a Unit for the personal
         use of Purchaser and Purchaser's family members and guests only, to hold for
12       an indefinite time, and with no expectation of investment potential or deriving
         any profit or tax advantage therefrom whether through income, appreciation
13       or otherwise and with no expectation that Purchaser will receive any
         assistance from the Developer in the rental of accommodations or the resale of
14       the Purchaser's Unit.

15                              *      *      *

16       Developer makes no representations whatsoever regarding short term rentals,
         rental rates, or the ability to rent the Unit. The purchase of a Unit should be
17       based on its value to the purchaser, and not considered for purposes of
         acquiring an appreciating or income-producing investment or with an
18       expectation that the Unit may be rented or sold.

19  *Id*. at 1289-90.  Based on those statements, the district court held that there could be no

20  securities claim:   "Plaintiffs stated that they entered into those agreements with no

21  expectation of profits and understanding that any such profits would be realized from the

22  Plaintiffs' own actions and from appreciation in market value wholly outside of Defendants'

23  control.  ....  Therefore, the Purchase Contracts are not 'investment contracts' for purposes of

24  the federal securities laws."  *Id*. at 1292-93.

25       Similarly, in *Demarco v. LaPay*, 2009 WL 3855704 (D. Utah 2009), even where the

26  defendants promoted the investment benefits of condominiums (which did not occur here),

27  the court held the units could not be securities where the purchase contract provided: "Buyer

28  acknowledges that neither Seller nor any of its agents or employees has made any warranties

or representations upon which Buyer has relied concerning: (i) the investment value of the Silver Star residence; (ii) the possibility or probability of profit or loss resulting from ownership or rental of the Silver Star residence….” *Id.* at *8.  Any oral representations were negated by the express agreement that the units were not sold as investments.  *Id.* at *8-9.

In this case, any claim by Plaintiffs that they purchased the condominium units with an expectation of profits based on the efforts of others is flatly contradicted by the fact that each agreed in the clauses cited above that they had no such expectations and relied on no contrary representations.  Plaintiffs cannot contradict the clear terms of their agreement. *E.g.*, *Newmark v. H. & H. Products Mfg. Co*., 128 Cal. App. 2d 35, 37-38 (1954) (parol evidence rule bars introduction of evidence “directly at variance with the terms of the written instrument”) (citations omitted); Cal. Code Civ. Proc. §1856(a) (parol evidence rule).

Notwithstanding this clear law, Plaintiffs’ “Expectation of Profit” section of their SAC relies upon making allegations to contradict their agreement in the Purchase Contract and Addendum.  Thus, the very first paragraph in the SAC in the “Expectation of Profit” section starts out by alleging that “[t]he economic reality of the HRHSD project led plaintiffs to expect a profit from the efforts of management....”  (SAC ¶92).  But that is not what Plaintiffs agreed.  What they agreed is that they were not expecting such profits.  (Purchase Contract ¶19(A); Addendum ¶12(A)).  To ignore that signed and initialed language would be to make the parties’ contracts not worth the paper they were signed on, and to inject uncertainty into any future real estate transactions as it would be impossible to ever agree to sell property solely for its real estate value, and not for any optional rental income that might be achieved through a separate agreement.  *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988) (Ginsburg, J.) (“Were we to permit plaintiffs’ use of the defendants’ prior representations (and defendants’ nondisclosure of negotiations inconsistent with those representations) to defeat the clear words and purpose of the Final Agreement’s integration clause, ‘contracts would not be worth the paper on which they are written.’”); *Rissman v. Rissman*, 213 F.3d 381, 385 (7th Cir. 2000) (“Contractual language serves its functions only if enforced consistently.  ... If as [Plaintiff] says the extent of his reliance is a

66286

**DEFENDANT PLAYGROUND’S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1   jury question even after he warranted his non-reliance, then the clause has been nullified, and

2   people in [Plaintiff's] position will be worse off tomorrow.").

3       The new allegations of the SAC also do not add anything of substance.  Plaintiffs

4   again admit that the 28-day use restrictions was based on the City's zoning restrictions (SAC

5   ¶¶89, 92, 110, 111), and again the SEC has found such use restrictions based on zoning

6   acceptable.  *See* SEC No-Action Letter to Marco Polo Hotel Inc., 1987 WL 108553, at *1, 3.

7   Indeed, it is not shocking to imagine that people in the market for luxury condominium units

8   as second, third, or fourth homes might well only stay at such homes one month a year, and

9   then either rent them out or not the rest of the time, using the value of the real estate

10  appreciation over time as an incentive to buy.  Similarly, there is no reason why the sellers of

11  condominium hotel units cannot target buyers who are willing to buy on those terms, and

12  without a promise of profits from the efforts of others.

13      The use restriction based on zoning laws also was disclosed upfront in Operation

14  Agreement ¶3.1.  This Agreement was signed at the same time as the Plaintiffs signed the

15  Purchase Contract in which they agreed they were *not* purchasing the units for the rental

16  income potential.  If this restriction changed Plaintiffs' analysis of the economic feasibility of

17  purchasing the units, the solution for Plaintiffs was to not make the purchases – not to wait

18  four years and then try to disown their representations in the contracts.

19      It is telling that when Plaintiffs finally actually allege in the SAC *how* they developed

20  an expectation of profit, they cite to the Rental Management Agreement and how profits

21  were divided under that Agreement.  (*See* SAC ¶¶93-96, 101 (citing division of rental

22  proceeds under Rental Management Agreement and Rental Management Agreement itself as

23  source for their expectation of profit); *id*. at ¶101, 103 (using the FAQ accompanying the

24  Rental Management Agreement as the source for a claim of expectation of profits)).  Thus,

25  for example, SAC ¶95 states that Plaintiffs were "induced to believe they were investing in a

26  common enterprise in which their profits would come from the efforts of others by written

27  representations contained in the Tarsadia Hotels, Inc. (Tarsadia) Hard Rock Hotel Rental

28

66286   **DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Management Agreement....”   (SAC ¶95 (emphasis added); *id.* at ¶96 (again expressly alleging that it was the Rental Management Agreement that led Plaintiffs to expect a profit).

Why does this matter?  As the Court can see from the dates of the Purchase Contracts and Operation Agreements versus the Rental Management Agreement (*see* Appendix A hereto), the rental agreements were signed a year or more after Plaintiffs agreed to buy the condominiums.  In other words, if the Rental Management Agreement is the source of an expectation of profits, then at the time Plaintiffs bought the condominiums, *they did not have such expectations*.

This analysis is consistent with the case on which Plaintiffs primarily have relied, *Hocking v. Dubois*, 885 F.2d. 1449 (9th Cir 1989).  *Hocking* was a rent pooling case that held that there was a triable issue as to whether the condominium units at issue in that case were securities.  The court found that the *Howey* requirement of a “common enterprise” could only be satisfied because of the alleged existence of rent pooling *and* because the plaintiff was able to raise a question as to whether the rental pooling agreement was offered as a package with the sales contract.   *Hocking*, 885 F.2d. at 1459-60 (“whether Hocking can prove horizontal commonality at trial **will depend on whether he can show that Dubois offered a package which included the RPA [rent pooling agreement]**.”) (emphasis added).

In this case, the rental agreement was clearly optional and not a package.  The Operation Agreement signed at the time of Purchase Contract stated in relevant part:

> **Nothing in this Agreement is intended to authorize Developer to solicit, advertise, promote or rent Unit Owner's Unit, and Unit Owner has the exclusive authority to arrange for such use subject** to the management duties and Services of Developer and the other obligations and limitations of the parties set forth herein.

(Operation  Agreement ¶2.1 (emphasis added)).   It was further repeated in the Rental Management Agreement – signed separately a year later – which specifically stated:

> **OWNER HAS NOT BEEN REQUIRED BY ANYONE TO PLACE THE UNIT INTO THE PROGRAM OR RETAIN OPERATOR TO RENT THE UNIT, AND BUT FOR OWNER'S EXECUTION OF THIS AGREEMENT, OWNER WOULD BE FREE TO USE ANY OTHER AGENT FOR THAT PURPOSE SUBJECT TO THE REQUIREMENTS OF THE GOVERNING DOCUMENTS.**

66286          **DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

(Rental Management Agreement ¶VII(c) (emphasis added)).  And, that agreement also went on to confirm that rental income would *not* be pooled:

> **INCOME FROM PARTICIPATING UNITS IN THE PROGRAM IS NOT AND WILL NOT BE POOLED,** AND OWNER WILL RECEIVE OWNER'S SHARE OF INCOME (IF ANY) ATTRIBUTABLE TO THE ACTUAL RENTAL OF THE UNIT AS SET FORTH IN THIS AGREEMENT, AND NOT FROM OTHER PARTICIPATING UNITS.

(Rental Management Agreement ¶VII(d) (emphasis added)).  It also is notable that the rental agreement was limited to three years.  (SAC ¶102).  This is further proof that that the rental program was separate from the purchase of the unit.

When Plaintiffs executed the Purchase Contracts, Addendums, and Operation Agreements, they agreed that they were purchasing the units without an expectation of profits from rental income.  The Rental Management Agreements – which never pooled rents as required for a security under *Hocking* – were signed separately a year or more later and remained optional.  And Plaintiffs can only point to the Rental Management Agreement as creating *at that later time* an expectation of profits from rental income.  On these facts, Plaintiffs cannot allege an expectation of profits from the efforts of others at the time they contracted to purchase the condominium units, and accordingly do not allege a security.[5]

### C.   Plaintiffs' Three New Causes of Action Do Not Change the Analysis Because They Still Require Showing the Condominiums Were Securities

Plaintiffs' FAC consisted of five causes of actions, all predicated on securities laws.  Plaintiffs' SAC adds three new causes of action.  However, the new claims, like the old, require showing that the condominiums were securities.  The new second cause of action is brought under §10(b) of the 1934 Securities Exchange Act for alleged misrepresentations in connection with the sale of an alleged security.  Obviously, this claim requires showing that

---

[5] Plaintiffs will no doubt repeat their argument that securities claims cannot be waived in a contract.  Playground is relying on representations of fact made by the Plaintiffs in the contracts and an integration clause disclaiming contrary representations.  These are not waivers of securities claims.  *Doody v. E.F. Hutton & Co., Inc.*, 587 F. Supp. 829, 832 (D. Minn. 1984) (representations made in contract "are not a waiver of the applicable securities laws"); *Sanguinetti v. Viewlogic Sys., Inc.*, 1996 WL 33967, at *17-18 (N.D. Cal. 1996) (integration clause validly bars state and federal law securities claims); *Demarco*, 2009 WL 3855704, at *8-9 (enforcing representations in contract to bar securities claims).

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1   the condominium units were securities.  Plaintiffs' other new causes of action are their

2   seventh and eighth causes of action for fraud.  These claims, stated at SAC ¶¶229-38, also

3   rely upon Plaintiffs' allegations that the Purchase Contracts were really securities contracts.

4   (*See id*.)  Thus, these claims must fail for the same reasons as the other securities claims.

5        Indeed, the fraud claims are (if it is possible) even weaker than the statutory securities

6   claims.  Along with requiring proof of the existence of a security, the fraud claims require

7   proving that Plaintiffs <u>actually</u> <u>relied</u> upon Playground's alleged misrepresentations.  *Mirkin*

8   *v. Wasserman*, 5 Cal. 4th 1082, 1089-91 & n.2 (1993).  As discussed *supra*, Plaintiffs

9   expressly agreed in the Purchase Contracts and Addendums that they were *not relying* on any

10  representations outside of the Contracts.  (Purchase Contract ¶¶19, 20(i); Addendum ¶¶4, 12,

11  13)).    Given this record, Plaintiffs cannot maintain their fraud claims because their

12  allegations of reliance cannot survive.  *Steckman,* 143 F.3d at 1295-96 (court is not required

13  to accept conclusory allegations which are contradicted by documents referred to in the

14  complaint).  Such allegations violate the express terms of the contract, the parole evidence

15  rule, and the basic rule that a party cannot allege reliance where such reliance is disclaimed

16  in the contractual documents.  *Sanguinetti*, 1996 WL 33967, at *17-18 ("[w]hen contracts

17  clearly state the nature of the parties' intentions, reliance upon outside representations is

18  unjustifiable").[6]

19  ## II.    Plaintiffs' Claims Are Barred by the Applicable Statutes of Limitations

20       Plaintiffs' FAC also was dismissed based upon the statute of limitations problems that

21  were apparent on the face of the complaint and from documents of which the Court could

22  take notice.  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (affirming

23  dismissal based on statute of limitations with prejudice) (quotation omitted); *Rendon v.*

24

25      [6] The Complaint also alleges non-disclosure of material facts.  Where a claim of fraud
    is predicated on an alleged non-disclosure, "it is necessary to show that the defendant 'was

26  under a legal duty to disclose' the undisclosed fact."  *Citizens of Humanity, LLC v. Costco
    Wholesale Corp*., 171 Cal. App. 4th 1, 21 (2009) (quoting *Buckland v. Threshold Enters.,*

27  *Ltd*., 155 Cal. App. 4th 798, 807 (2007)).  Here, the only such claims put forward are that the
    condominium units were securities that required certain disclosures.  As stated *supra*, the

28  security claims must fail, and with them then must go any non-disclosure theory.

13   Case No. 09cv2739 DMS (CAB)

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED
COMPLAINT**

*Countrywide Home Loans, Inc.*, 2009 WL 3126400, at *3, *8-9 (E.D. Cal. 2009) (dismissal proper where documents that can be considered on a motion to dismiss demonstrate that a claim is untimely) (citation omitted). Although the Court granted Plaintiffs leave to amend, those amendments – or primarily the lack thereof as to the statute of limitations – have made it more clear than ever that Plaintiffs' claims are untimely.

A.     **The First and Third Causes of Action Are Untimely as Established in the Court's Prior Orders**

As established in the Court's prior Orders, Plaintiffs' first cause of action under §12(a)(2) of the Securities Act of 1933 (codified at 15 U.S.C. §77l)  is subject to an absolute three year statute of limitations, while their third cause of action under Cal. Corp. Code §25110 has an absolute two year statute of limitations.  (Dock No. 82 at 5:14-15; Dock. No. 72 at 9:13-15, 10:22-25 (citing 15 U.S.C. §77m and Cal. Corp. Code §25507(a))).[7]

As the Court has held, these three-year and two-year statutes of limitations began to run no later than when Plaintiffs executed the Purchase Contracts.  (Dock. No. 72 at 10:10-12 (holding as to the §12(a)(2) claim that "the execution date of the Purchase Contract and Escrow Instructions is the date of sale for purposes of the statute of limitations"); Dock. No. 72 at 11:11-12 (holding as to the §25110 claim that "the allegation underlying Plaintiffs' claims is that Defendants sold unqualified securities.  That alleged violation occurred on the date Plaintiffs signed the Purchase Contract."); Dock. No. 82 at 5:15-17 ("The Court has previously held that the date the Purchase Contract and Escrow Instructions were executed is the date on which the statutes of limitations began to run")).

This ruling is consistent with the governing law:  "[A] sale occurs for §12(a)(2) purposes when 'the parties obligate themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time.'"  *Finkel v. The Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992) (quoting *Amoroso v. Southwestern Drilling Multi-Rig P'ship No. 1*, 646 F. Supp. 141, 143 (N.D. Cal. 1986)).

---

[7]  The third cause of action in the SAC was previously the second cause of action in the FAC.

Case No. 09cv2739 DMS (CAB)

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

66286

1    All of the Plaintiffs executed their Purchase Contracts more than three years prior to

2  this suit being brought on December 8, 2009.  (*See* Appendix A).  The claims are thus

3  untimely under the three-year and two-year statutes of limitations.

4    Yet, Plaintiffs' SAC seeks to revive the claims by reference to Paragraph 4.2 of the

5  Purchase Contract governing what would occur if the contract was terminated as supposedly

6  proving that the Contract was not final until the close of escrow.  (SAC ¶120).  The Court

7  already correctly rejected that argument when Plaintiffs made it in response to Playground's

8  motion to dismiss:

9      Plaintiffs did not move for reconsideration of th[e] ruling [on the Bank
       Defendants' Motions to Dismiss].  Rather Plaintiffs contend they were not
10      bound at the time they signed the Purchase Contract and Escrow Instructions
       because of a provision in the contract which provided for termination in
11      certain circumstances.  **Plaintiffs provide no authority for their position,
       nor do they contend they attempted to terminate the contract in**
12      **accordance with the termination provisions.  Accordingly, the Court's**
       **previous ruling on this issue stands.**

13  (Dock. No. 82 at 5:17-22 (emphasis added)).[8]   Plaintiffs have provided no ground for

14  reconsideration in raising this issue yet again.  The prior rulings should once again stand and

15  these claims should be dismissed with prejudice.[9]

16
     **B.    Plaintiffs Were on Inquiry Notice as to the Second, Fourth, Seventh, and**
17          **Eighth Causes of Action**

18    The Court held in its prior Order that Plaintiffs had failed to demonstrate how it is

19  that they were not on inquiry notice once they signed the relevant contracts in 2006, but

20  granted them leave to amend to try to cure this deficiency:

21      Defendant contends Plaintiffs were put on inquiry notice at the time of signing
       the Purchase Contract and Escrow Instructions because registration of
22      securities is a matter of public record; therefore, Plaintiffs should have
       discovered in 2006 that the units were not registered. Defendant further argues
23      that if, as alleged, oral representations were made to Plaintiffs that the units
       were investments, such representations would have been contrary to the

24

25    [8] Plaintiffs also cite to a "Hard Rock Guide" that stated that certain facilities,
26  improvements, and programs were not final.  (SAC ¶ 121).  That guide (which is not even
    part of the contracts) does not state that the Purchase Contracts were any less binding; it
27  simply states that certain amenities could change.  (*See id.*)

    [9] These claims also are subject to inquiry notice statute of limitations, *see* 15 U.S.C.
28  §77m and Cal. Corp. Code §25507(a), and are untimely under those statutes as well.

66286    **DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED**
                                    **COMPLAINT**

explicit terms of the Purchase Contracts, and Plaintiffs would have been on inquiry notice of the discrepancy at the time they signed the contracts.

The current record is incomplete as to whether Plaintiffs were put on inquiry notice at the time they executed the Purchase Contracts. **Plaintiffs argue they were not put on inquiry notice until after the contracts were signed because** _later events_ **revealed Defendant's fraud.** Plaintiffs, however, do not explain those events. **Plaintiffs also asserted at oral argument that a** _fiduciary relationship_ **existed between Plaintiffs and Playground, and that such a relationship blunts Plaintiffs' duty of inquiry,** but there are no such allegations in the FAC. Accordingly, Plaintiffs are granted leave to amend.

(Dock. No. 82 at 6:3-15 (emphasis added)).

In the SAC, Plaintiffs have stated four causes of action that are subject to an inquiry notice statute of limitations analysis: (1) The second cause of action under §10(b) of the 1934 Securities Exchange Act for alleged misrepresentations in connection with the sale of an alleged security, which is subject to a two year inquiry notice of limitations that expires two years after actual discovery or after "a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation.'" _Merck & Co., Inc. v. Reynolds_, __ U.S. __, 130 S.Ct. 1784, 1789-90 (2010) (citing 28 U.S.C. §1658(b)(1)); (2) The fourth cause of action under Cal. Corp. Code §25401, which is governed by a two-year inquiry notice statute of limitations under Cal. Corp. Code §25506(b) (_see_ Dock. No. 82 at 6:1-3 (citing _Deveny v. Entropin, Inc._, 139 Cal. App. 4th 408, 422-423 (2006)); and (3) The seventh and eighth causes of action for fraud, which are governed by statutes of limitations that run out three years after discovery of the claim could have occurred (_i.e._, after there is inquiry notice). _See_ Cal. Code Civ. Proc. §338(d); _Jolly v. Eli Lilly & Co_., 44 Cal. 3d 1103, 110-11 (1988) ("Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.... So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."). As will be shown, Plaintiffs' SAC has not cured the deficiencies in their allegations concerning inquiry notice of these claims.

### i.     Plaintiffs Failed to Plead Facts Showing Delayed Discovery

Plaintiffs' SAC has not addressed the defects in their allegations. First of all, despite the claim at argument on Playground's motion to dismiss that Playground was a fiduciary

(Dock. 82 at 6:13-14), Plaintiffs have made no such allegation in their amended complaint. (*See* SAC).  While Plaintiffs deserve credit for abandoning an untenable position they never could have supported factually, one of their promised grounds to save their complaint disappeared.  The SAC also fails to explain what "later events" somehow revealed Plaintiffs' claims to them.  (*See* Dock. 82 at 6:11-13).  That, of course, is because there are no such later events that revealed any *facts*.  Instead, the section of Plaintiffs' SAC entitled "Discovery of Plaintiffs Claims" consists of two conclusory paragraphs that read:

> 132. Plaintiffs are bringing this action within: one (1) year after discovery of the untrue statements or the omissions of material facts alleged herein; within one (1) year after discovery of the untrue statements and omissions should have been made by the exercise of reasonable diligence; and within three (3) years of the sale of the HRHSD Investment Contracts. Plaintiffs did not discover the facts on which this action is based until after consulting with counsel, which was less than a year before the filing of this operative complaint.

> 133. Plaintiffs were subjected to a barrage of false and misleading statements by the Tarsadia and Playground Defendants designed to keep plaintiffs from discovering facts supporting the need to bring these claims. One device was to slowly reduce plaintiffs' hotel room revenue while gradually increasing costs.

(SAC ¶¶132-33).

These allegations are far too conclusory to be anything approaching allegations of facts that show that Plaintiffs could not have discovered the claims earlier as required by the modern pleading standard. (*See* Doc 82 at 3:7-19 (setting out pleading standard)).  Certainly, it is not enough to claim that there were a "barrage" of false statements by the Tarsadia defendants and Playground that prevented discovery (*see* SAC ¶133) without explaining what those were or how they prevented discovery.  This is even truer since these are allegations of fraud, which thus must meet the heightened pleading standard of Fed. R. Civ. Proc. 9(b).  *Yumul v. Smart Balance, Inc.*, __ F. Supp. 2d __, 2010 WL 3359663, at *11 (C.D. Cal. 2010) ("The Ninth Circuit has previously held that a claim that fraudulent concealment tolls an applicable state statute of limitations must be pled with particularity under Rule 9(b)....") (citing, *inter alia*, *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999); *Suckow Borax Mines Consolidated v. Borax Consolidated*, 185 F.2d

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

196, 209 (9th Cir. 1951); *Collins v. Nationalpoint Loan Services*, 2009 WL 3213979, *3 (S.D. Cal. 2009)).  The allegations here nowhere meet that requirement.[10]

Indeed, the final sentence of SAC ¶132 (quoted above) is quite candid as to what really occurred here – Plaintiffs were perfectly aware of the relevant *facts*, it is just that they only talked to a lawyer and learned the *law* in the last year.  But ignorance of the law is no excuse – it is suspicion or knowledge of the facts that starts the statute of limitations. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) ("the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof - when, simply put, he at least 'suspects ... that someone has done something wrong' to him") (citing *Jolly*, 44 Cal. 3d at 1110)); *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5th Cir. 1968) ("The Howards had all of the possession information that was available, the instruments involved were spread upon the public records, and nothing was concealed by Sun. The only thing that the Howards now claim to have discovered after almost twenty years is that their lawyer advised them that they had some legal rights and some title to the land that they didn't know they had. Even if this advice had been sound, which it was not, the Howards' ignorance of their legal rights, or failure to seek legal advice, did not toll the statute of limitations.").

### ii. Plaintiffs Knew or Should Have Known of the Relevant Facts When They Signed the Purchase Contracts, Addendums, and Operation Agreements

This is more than just a situation where a plaintiff failed to adequately plead non-discovery (though that alone supports dismissal).  This is a situation where it is demonstrable that the Plaintiffs here already knew sufficient facts to put a reasonable person on notice.  As of the time that Plaintiffs signed the Purchase Contracts, Addendums, and Operation Agreements (which were all signed by Plaintiffs as of December 8, 2006, more than three

---

[10] The only specific allegation made is the cryptic assertion that room rates were slowly decreased while costs increased.  (*See* SAC ¶ 133).  Playground is at a loss as to how this somehow prevented discovery that (allegedly) the condominium units were securities.

years before this lawsuit was brought), the following facts were known or knowable to Plaintiffs:

•   Known Facts Regarding Alleged Investment Income:   According to Plaintiffs' SAC, Plaintiffs were sold the condominium units as income and rental revenue investments, *i.e. as securities.*   (*E.g.* SAC ¶¶2, 3, 5, 82, 95).   Yet, Plaintiffs knew that the Purchase Contract and Addendum had specifically told them not rely on such alleged representations and that no representations were being made as to rental income.   (Purchase Contract ¶19, Addendum ¶12).  This type of alleged contradiction creates inquiry notice.  *See Garcia*, 528 F. Supp. 2d at 1291 ("[T]he Purchase Contracts clearly relate to-and, indeed, directly contradict-Plaintiffs' misrepresentation claims. Therefore, the Purchase Contracts were more than sufficient to put Plaintiffs on inquiry notice of their asserted securities fraud claims."); *Kravetz v. U.S. Trust Co*., 941 F. Supp. 1295, 1305-09 (D. Mass. 1996) ("as a result of numerous offering documents that they received . . . , which specifically contradicted the oral representations allegedly made by the defendants, the [plaintiffs] were placed on inquiry notice of their claims").

•   Known Facts Regarding 28 Day Use Restriction:   According to the SAC, one factor that supposedly made the condominiums into securities was that occupancy was limited to 28 days based on zoning restrictions.  (*E.g.* SAC ¶¶4, 89, 92-93, 104, 110-11). However, this fact was disclosed in the Operation Agreement that Plaintiffs signed when they purchased the units.  (Operation Agreement ¶3.1 ("as mandated by the City of San Diego, Unit Owner acknowledges and agrees that ... occupancy of the Unit by Unit Owner and its transferees, successors and assigns shall be limited to an aggregate maximum of twenty-eight (28) days during each calendar year").  *See Armbrister v. Roland Intern. Corp*., 667 F. Supp. 802, 813-14 (M.D. Fla. 1987) (holding that plaintiffs were on notice as to fraud claims as of the date they signed contracts, if not before, where contract disclosed potential issues and plaintiffs failed to investigate at that time).  Indeed, Plaintiffs admit that the 28 day restriction was also disclosed in the public documents concerning the project, creating yet more notice.

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

(*E.g.* SAC ¶¶89 & n.1 (admitting that this issue was disclosed in a January 2006 declaration of restrictions filed with the San Diego Recorder's Office)).

- <u>Known Facts Regarding Control of, and Access to, Units:</u>   According to Plaintiffs, the owner and operator's level control of the unit and access to keys to the unit were factors that made the units into securities.  (SAC ¶¶4, 92, 104, 112, 119).  They go so far as to argue that the rental program was not optional because "[i]t was not feasible, as plaintiffs were later to discover, for investors to operate their own rental management system separate from the HRSD given the control 5th Rock LLC exercised over investors' studios and suites **under the terms of the Operations Agreement**."  (SAC ¶116 (emphasis added)).  The underlined language proves the point – all of this was disclosed in the Operation Agreement signed back in 2006.  (*See* Operation Agreement ¶2.1 (expressly disclosing the extent of the developer's control of the unit and keys)[11]; *id.* at ¶2.3 (developer to provide housekeeping); *id.* at ¶3.1 (defining when developer may access the unit); *id.* at ¶3.4 (establishing occupancy procedures); *id.* at ¶3.6 (stating procedures as to keys for the unit)).

- <u>Known Facts Regarding Homeowners' Association and Fees:</u>   According to Plaintiffs, the homeowners' association and fees were factors that made the units securities.  (*E.g.* SAC ¶¶84-87, 98).  But all of these factors (and more) were disclosed in the Operation Agreement and the earlier DRE Report.  (Operation Agreement ¶4.1 (setting forth the fee schedule, just as it is alleged in ¶98 of the SAC), SAC ¶¶84-87 (admitting disclosure of

---

[11]  Paragraph 2.1 reads:  "Developer, by and through the Hotel, shall have the exclusive authority and right to (a) accept reservations by, from and through Unit Owner and/or its agents for the use of the Unit, (b) enforce check-in and check-out procedures, ( c) perform the housekeeping services specified in Section 2.3 hereof, (d) issue room keys (including to Unit Owner), (e) collect service and other charges payable to the Hotel, (f) at Developer's election (as provided hereinbelow), collect and remit transient occupancy taxes on behalf of Unit Owner for any rental by Unit Owner of the Unit, and (g) perform such additional services and procedures as Developer may elect, from time to time (collectively, the "Services").  Nothing in this Agreement is intended to authorize Developer to solicit, advertise, promote or rent Unit Owner's Unit, and Unit Owner has the exclusive authority to arrange for such use subject to the management duties and Services of Developer and the other obligations and limitations of the parties set forth herein.").

Case No. 09cv2739 DMS (CAB)

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

66286

condominium association and common area procedures in the DRE Report)).  *See Armbrister*, 667 F. Supp. at 813-14.

• Knowable Facts Regarding Lack of Registration:  According to Plaintiffs' SAC, the lack of registration of the units as securities was a deception.  (*E.g.* SAC ¶¶2-3, 114).  But lack of registration is a public fact that is easily discoverable and thus cannot delay the running of the statute of limitations.  *See Meadows v. Pac. Inland Secs. Corp.*, 36 F. Supp. 2d 1240, 1251 (S.D. Cal. 1999) ("since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities").

• Knowable Facts Regarding Decision to Make the Project a Hotel-Condominium Project:  According to Plaintiffs, the fact the Hard Rock Hotel project started as a hotel project and became a hotel condominium project is somehow relevant to the deception or securities issues.  (*E.g.* SAC ¶¶90, 106-11).  But Plaintiffs' SAC bases this allegation on the 2006 and earlier public records showing this decision.  (*See id.*).  Plaintiffs could have accessed these records at any time, so they further demonstrate the existence of inquiry notice.  *Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1059 (N.D. Cal. 2009) (finding inquiry notice in securities case based upon publicly available facts) (citing *In re Am. Funds Securities Litig.*, 556 F. Supp. 2d 1100 (C.D. Cal. 2008)).

In sum, this is a clear case of inquiry notice.  Plaintiffs failed to plead facts showing how they were not on notice, and the actual facts show that they were on notice more than three years before this lawsuit was brought.  Because the governing standard for these causes of action are two years (as to the second and third causes of action) or three years (as to the seventh and eighth causes of action), these claims are untimely and should be dismissed.

**C.    The Fifth Cause of Action under Cal. Corp. Code §25501.5 Is Time-Barred**

Plaintiffs' fifth cause of action is asserted solely against Playground.  It alleges that Playground violated California Corp. Code §25501.5 because its salespersons (who were licensed real estate agents) were not licensed as securities broker-dealers.  As addressed in

66286

prior briefing, Corp. Code §25501.5 is a new statute, and there is little case law interpreting it.  Further, there is no express reference to which statute of limitations is intended to apply to this clause of action.  In a different case, this could require the Court to try to sift through the possibly applicable statutes of limitations.  However, in this case, Playground believes that the claims are barred no matter which statute of limitations applies.

Cal. Corp. Code §25501.5(a)(1) states that a violation occurs when a person "purchases a security from or sells a security to a broker-dealer that is required to be licensed and has not [been so licensed], at the time of the sale or purchase...."  (Emphasis added).  The underlined language is significant because it establishes when a violation occurs (that is, when a claims accrues) –"at the time of the sale."  And, the Court's prior Orders already established that the time of sale in this case is the date when the Plaintiffs signed their purchase contracts.  (Dock. No. 72 at 10:6-8 ("in this case, Plaintiffs entered into binding contracts for the sale of the HRHSD condominium units when they signed the Purchase Contract and Escrow Instructions"); Dock. No. 82:15-17).  All of these dates are more than three years prior to the filing of this action on December 8, 2009.  (*See* Appendix A).  This matters because three different possibly applicable statutes of limitations have been suggested by the parties, all of which had run by December 8, 2009:

First, in the prior briefing, Playground has pointed out that Corp. Code §25501.5 was a new cause of action adopted as part of California Assembly Bill 2167, §2, 2004 Cal. Legis. Serv. Ch. 575, CA Legis. 575 (2004).  That same law applied the five year/two year statute of limitations set forth in Cal. Corp. Code §25506 to claims under Corp. Code §25501, and it thus appears that it was intended also to apply to claims under Corp. Code §25501.5.  This approach makes common sense – other statutory securities claims set forth in the Corporations Code are assigned absolute and inquiry notice statutes of limitations of five-years/two-years or two-years/ one-year.  *See* Cal. Corp. Code §§25506, 25507.  It makes no sense to suggest that the Legislature wanted alleged unlicensed broker dealers to face a different type of statute of limitations than is faced by another class of securities defendants.  Indeed, California's courts have recognized that where a statute of limitations is not given,

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

the courts should look at the gravamen of the complaint. *Jefferson v. J. E. French Co.*, 54 Cal. 2d 717, 718 (1960) (citations omitted) ("the nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations"). Here, the claim is plainly a securities claim, and thus it makes sense to apply the securities statute of limitations. For these reasons, the statute of limitations set forth in Corp. Code §25506 (the same statute as applies to the SAC's fourth cause of action) should apply here.

Second, also in the prior briefing, Playground has pointed out that where a newly created statutory claim fails to give a statute of limitations, Code of Civil Procedure §338(a) can apply. Section 338(a) provides that there is a three year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." Assuming the Court declines to apply Corp. Code §25506, the logical, plain language approach would be to apply §338(a).

Third, Plaintiffs have asserted that instead the three year fraud statute of limitations in Code of Civil Procedure §338(d) should apply. Plaintiffs have not, however, provided any reasoned basis for applying that statute to a new statutory cause of action.

In sum, the parties have presented the Court with three possible positions: (1) a two year inquiry notice statute of limitations under Corp. Code §25506; (2) a straightforward three year statute of limitations from the time of the incident under Code of Civil Procedure §338(a); and (3) a three year inquiry notice statute of limitations under Code of Civil Procedure §338(d). At some point some court will have to decide this issue. But this Court need not. As already demonstrated above, the Plaintiffs here had inquiry notice at least three years before this case was filed on December 8, 2009. So no matter what statute of limitations applies, this claim should be dismissed.

## III.   The Broker-Dealer Claim Improperly Seeks to Create a New Claim in Violation of an Express Statutory Prohibition

The fifth cause of action alleging that Playground was an unlicensed broker-dealer under Cal. Corp. Code §25501.5 should be dismissed for an additional reason. In relevant part, section 25501.5 provides as follows:

(a)(1) A person who purchases a security from or sells a security to a broker-dealer that is required to be licensed and has not, at the time of the sale or purchase, applied for and secured from the commissioner a certificate under Part 3 (commencing with Section 25200), that is in effect at the time of the sale or purchase authorizing that broker-dealer to act in that capacity, **may bring an action for rescission of the sale or purchase or**, *if the plaintiff or the defendant no longer owns the security*, **for damages**.

(2) **Upon rescission and tender of the security, a purchaser may recover the consideration paid for the security plus interest at the legal rate**, less the amount of any income received on the security.

(3) **Upon rescission and tender of the consideration paid for the security plus interest at the legal rate**, a seller may recover the security plus the amount of any income received by the defendant on the security.

(Emphasis added).  In other words, section 25501.5 entitles a successful plaintiff to rescind a sale of a security, or *if rescission is no longer possible* because they sold the security, they can seek damages.

However, as confirmed in the Purchase Contracts, it was Defendant 5th Rock, LLC that owned and sold the condominium units.  Playground never owned the units, but simply acted as the alleged broker.  (*See* Purchase Contract; SAC ¶¶53, 60).  Therefore, there is nothing to rescind.  Playground did not sell Plaintiffs the condominiums, Defendant 5th Rock, LLC did.  Because Playground never owned the condominium units, the statutorily prescribed remedy for a violation of the statute can never be achieved.

This matters because, under Cal. Corp. Code §25510, there is no civil liability under California's statutory securities laws except as the specifically provided in those laws.  As it states:  "Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder."  Cal. Corp. Code §25510.  Thus, under this provision, "the judiciary is not authorized to invent causes of action inconsistent with or additional to those provided in the statute."  1 Marsh & Yolk, Practice under the California Securities Laws (2001) §14.02[1], p. 14-14 (emphasis added).  *See Kamen v. Lindly*, 94 Cal. App. 4th 197, 203 (2001) ("courts afford great deference" to the Marsh & Yolk treatise "when interpreting California securities law").

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

66286

1    Here, Plaintiffs' SAC states that it seeks "rescission and/or damages" as to the Cal.

2 Corp. Code §25501.5 claim.  (SAC ¶226).  But rescission is clearly impossible as Playground

3 never owned the condominium units and never contracted to sell them to Plaintiffs, and thus

4 there is nothing to rescind.  Moreover, damages are only allowed under the statutes when

5 rescission has *become* impossible.  *See* Cal. Corp. Code §25501.5(a).  Here, however,

6 rescission as between Playground and Plaintiffs was never possible in the first place because

7 Playground never owned the condominium units.

8    What Plaintiffs are really trying to do here is to create a new cause of action where

9 they can seek damages against an alleged broker-dealer even though the alleged broker-

10 dealer never owned the alleged security.  But that attempt to create a new cause of action

11 runs afoul of the prohibition in Cal. Corp. Code §25510 against creating new or additional

12 causes of action except as "[e]xplicitely" provided in the statute.  The fifth cause of action

13 should be dismissed with prejudice for this additional reason.

14 **IV.    Plaintiffs Fail to Plead the Fraud-Based Claims with the Required Particularity**

15    For all of the reasons already given, all of Plaintiffs' claims should be dismissed with

16 prejudice.  However, it must be noted that the SAC's three new causes of action – the second

17 cause of action alleging a Section 10b violation, and the seventh and eighth alleging fraud –

18 are all claims that must be pled with particularity.  And Plaintiffs have not met this burden.

19 **A.    The 10-b Claim Is Not Pled with Particularity**

20    Section 10(b) claims must be pled with particularity.  *See In re Daou Sys., Inc*., 411

21 F.3d 1006, 1014 (9th Cir. 2005) ("It is well established that claims brought under Rule 10b-5

22 and section 10(b) must meet the particularity requirements of Federal Rule of Civil

23 Procedure 9(b).").  This requirement is particularly stringent because of the Private Securities

24 Litigation Reform Act ("PSLRA").  That law "significantly altered pleading requirements in

25 private securities fraud litigation by amending the 1934 Exchange Act to require that a

26 complaint '**plead with particularity both falsity and scienter**.'"  *Id*. (citation omitted and

27 emphasis added).  "A securities fraud complaint must 'specify each statement alleged to have

28 been misleading, [and] the reason or reasons why the statement is misleading....'"  *Id*.

66286

1    (citation omitted); *accord* 15 U.S.C. §78u-4(b)(1)).   The facts alleged in a complaint only

2    give rise to a sufficient inference of scienter if it is "more than merely plausible or reasonable

3    – it must be cogent and at least as compelling as any opposing inference of nonfraudulent

4    intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

5    Here, there are simply no such allegations as to Playground.   The SAC hardly refers

6    to Playground by name at all (as compared to just referring to the defendants generally).   And

7    most of the allegation that do name Playground just identify Playground as a defendant,

8    allege in conclusory terms that it was a promoter or gave material assistance, or the like.

9    (*E.g.* SAC ¶¶51, 60, 130, 138, 205, 206).   None of the allegations ever identify specific,

10   allegedly untrue statements by Playground.   The most effort made is in SAC ¶133, which

11   states in relevant part, "Plaintiffs were subjected to a barrage of false and misleading

12   statements by the Tarsadia and Playground Defendants designed to keep plaintiffs from

13   discovering facts supporting the need to bring these claims."   Obviously, a claim that there

14   was a "barrage" of false or misleading statements by several defendants is not a specific

15   allegation of a single specific fraudulent allegation by Playground; such a pleading cannot

16   possibly survive under Rule 9(b) and the PLRSA.   *See In re Daou Sys.*., 411 F.3d at 1014.

17   Further, only a single paragraph, SAC ¶131, even tries to allege scienter, stating:

18   These Playground representatives knew the HRHSD project had been shifted
     from a hotel project to a commercial non-residential condominium and that

19   plaintiffs were not receiving the information they needed about the projected
     performance underlying the HRHSD Investment Contracts. These agents of

20   Playground knew the HRHSD Investment Contracts were required to be
     registered with the SEC and qualified by the Department of Corporations from

21   their training as real estate brokers and agents. These Playground agents knew
     they were required to be registered as broker dealers before they could

22   lawfully sell the HRHSD Investment Contracts. These Playground agents
     were highly compensated and were motivated by the lure of financial gain to

23   violate their legal duties.

24   Again, this is an obviously inadequate allegation.   Plaintiffs announce that Playground

25   "knew" various facts without alleging any specific facts to show that such knowledge

26   existed.  This fails under the PLRSA. *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124,

27   1151 (N.D. Cal. 2006) (scienter allegations inadequate if they do not explain "the who, what,

28   where, when").  Accordingly, the claim should be dismissed on this additional ground.

66286

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED
COMPLAINT**

## B.     The Fraud Claims Are Not Pled with Particularity

A claim of fraud "shall be stated with particularity." Fed. R. Civ. Proc. 9(b). The seventh and eighth causes of action assert fraud under California law, and this requires that a plaintiff plead: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Okun v. Morton*, 203 Cal. App. 3d 805, 828 (1988). A defendant must fully understand the nature of the charge. *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 73 (1990). Plaintiffs must allege "how, when, where, to whom, and by what means the representations were tendered." *Id*. (citation omitted). "A plaintiff's burden in asserting fraud against a corporate employer is even greater. In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Lazar v. Super. Court*, 12 Cal. 4th 631, 645 (1996) (quotation omitted).

As discussed above as to the Section 10-b claim, there are no such allegations as to Playground. Plaintiffs simply announce that all of the defendants collectively engaged in fraud without differentiation and without any specific allegations as to Playground, much less any allegations that specify specific fraudulent acts by specific Playground employees. (*See* SAC ¶¶229-238). The SAC does not allege fraud by Playground with any form of particularity at all, and the claims should be dismissed on this additional ground.

## V.     Further Leave to Amend Should Be Denied

The Court's prior Order was clear – Plaintiffs needed to be able to offer non-conclusory allegations establishing the existence of a security, and they needed to demonstrate that their claims were timely under the governing statutes of limitations. (Dock No. 82 at 3-7). The Court granted Plaintiffs leave to amend to attempt to meet these basic requirements. (*See id*. at 5, 7). They have failed to do so. Accordingly, this time dismissal should be with prejudice. *Uribe v. Countrywide Financial*, 2009 WL 1953413, at *7 (S.D. Cal. 2009) (recognizing that "[t]he Court's discretion to deny leave to amend is particularly broad where plaintiff has previously been permitted to amend his complaint" and ruling that

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

first amended complaint would be dismissed with prejudice because "[p]laintiffs, who are represented by counsel, ha[d] made two efforts to provide a feasible complaint" but had failed to be able to do so) (citing, *inter alia*, *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996)); *Aaron v. Aguirre*, 2007 WL 959083, at *4-5 (S.D. Cal. 2007) (denying further leave to amended where plaintiffs failed to demonstrate that claims were timely under inquiry notice statute of limitations in amending prior complaints) (citing *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016-17 & n. 9 (9th Cir. 1999)).

<u>**CONCLUSION**</u>

Plaintiffs have failed to satisfy the Court's prior Orders that granted them leave to amend and have failed to demonstrate that they have viable claims.  Playground respectfully requests the Court dismiss this case with prejudice.[12]

DATED: October 8, 2010                    LA BELLA & MCNAMARA, LLP

                              By:___**/s/ Daniel M. Benjamin**_____
                                    Daniel M. Benjamin
                                    Attorneys for Playground Destination
                                     Properties, Inc.

---

[12] The claims in this action may be subject to arbitration and/or judicial reference. Playground reserves the right to file a motion to compel arbitration or reference if the claims are not dismissed.

66286
**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**APPENDIX A**

| Plaintiff Buyers | Date Buyer Executed Purchase | Date Buyer Excuted UMA | Date Buyer Executed RMA |
|---|---|---|---|
| Alvarenga, Robert | November 22, 2006 | December 4, 2006 | August 13, 2007 |
| Behrle, Barbara | Not located | Not located | Not located |
| Behrle, Thomas | May 11, 2006 | May 18, 2006 | August 15, 2007 |
| Bushey, David R. | May 6, 2006 | May 18, 2006 | November 16, 2007 |
| Clement, Joey | May 7, 2006 | May 8, 2006 | Not located |
| Cosio, Alexis | May 10, 2006 | May 10, 2006 | August 1, 2007 |
| Curtis, Dale | May 6, 2006 | May 9, 2006 | August 30, 2007 |
| Gallanosa, Jose | November 22, 2006 | November 27, 2006 | August 3, 2007 |
| Gallanosa, Virginia | November 22, 2006 | November 27, 2006 | August 3, 2007 |
| Green, Dolores | May 4, 2006 | May 5, 2006 | August 21, 2007 |
| Gutirrez, Phillip | Not located | Not located | Not located |
| Havluciyan, Mikael | November 27, 2006 | November 30, 2006 | August 9, 2007 |
| Havluciyan, Therese | November 27, 2006 | November 30, 2006 | August 9, 2007 |
| Henry, Kevin | May 11, 2006 | May 18, 2006 | August 15, 2007 |
| Henry, Kim | Not located | Not located | Not located |
| Hoerr, Matthew | May 11, 2006 | May 18, 2006 | August 15, 2007 |
| Hoerr, Sylvia | June 29, 2006 | May 18, 2006 | August 15, 2007 |
| Jeske, Christy | May 18, 2006 | May 18, 2006 | July 30, 2007 |
| Kats, Aleksey | May 18, 2006 | May 18, 2006 | August 8, 2007 |
| Kats, Diana | Assignment and Assumption of Purchase Contract between Alexksey and Diana Kats | | |
| Kim, Sadoux | May 9, 2006 | May 11, 2006 | July 30, 2007 |
| Lubin, Barbara L. | May 10, 2006 | May 10, 2006 | Not located |
| Lubin, Jeffrey E. | May 10, 2006 | May 10, 2006 | Not located |
| Micale, Vito | Not located | Not located | Not located |
| Mota, Cesar | May 10, 2006 | May 10, 2006 | August 1, 2007 |
| Paul, Andrew | May 11, 2006 | May 18, 2006 | January 24, 2008 |
| Paul, Steven | May 11, 2006 | May 18, 2006 | January 24, 2008 |
| Pereira, Mitchell J. | May 5, 2006 | May 18, 2006 | August 7, 2007 |
| Reyna, Tazia | November 30, 2006 | December 7, 2006 | July 25, 2007 |
| Rothe, Jr., Denis B. | May 6, 2006 | May 6, 2006 | July 27, 2007 |
| Salameh, Tamar | November 29, 2006 | Not located | Not located |
| Schmidt, Zondra | May 4, 2006 | May 18, 2006 | August 21, 2007 |
| Schrufer, Charlene | May 6, 2006 | May 6, 2006 | July 27, 2007 |
| Slinkard, Danon | May 7, 2006 | May 8, 2006 | N/A |
| Steigerwalt, Beth | May 11, 2006 | May 18, 2006 | February 8, 2008 |
| Steigerwalt, Kerry L. | May 11, 2006 | May 18, 2006 | February 8, 2008 |
| Torretta, Gary A. | May 5, 2006 | May 18, 2006 | August 7, 2007 |
| Wee Song, Mary L. | May 10, 2006 | May 18, 2006 | October 10, 2007 |
| Wolman, Stuart M. | May 15, 2006 | May 18, 2006 | Executed, but no date |

**DEFENDANT PLAYGROUND'S MPA ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

66286