1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | TAMER SALAMEH, et al.,

12 |                                    Plaintiffs,

13 |       vs.

14 | TARSADIA HOTELS, et al.,

15 |                                    Defendants.

CASE NO. 09CV2739 DMS (CAB)

**ORDER GRANTING
DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT**

16

17        Pending before the Court are nine motions to dismiss Plaintiffs' Second Amended Complaint

18 ("SAC") filed by: (1) Bank of America, N.A. ("Bank of America"), (2) East West Bank ("East West"),

19 (3) JPMorgan Chase Bank, N.A. ("JPMorgan"), (4) XBR Financial Services, LLC ("XBR"), (5)

20 Independent Bank Corporation ("Independent"), (6) Erskine Corp. ("Erskine"), (7) Wintrust Financial

21 Corporation ("Wintrust") (1 through 7, collectively, the "Bank Defendants"), (8) Playground

22 Destination Properties, Inc. ("Playground"), and (9) Tarsadia Hotels, Tushar Patel, B.U. Patel, Gregory

23 Casserly, 5th Rock, LLC, MPK One, LLC, and Gaslamp Holdings, LLC (collectively, "Tarsadia").

24 The matter came on for hearing on February 11, 2011.  For the reasons set forth below, (1) the Bank

25 Defendants' motions to dismiss are granted, (2) Tarsadia's motion to dismiss is granted, and (3)

26 Playground's motion to dismiss is granted.

27 //

28 //

# I.

## BACKGROUND

This matter is a proposed class action brought by investors in the Hard Rock Hotel San Diego ("HRHSD"). (SAC ¶¶ 2, 11, 75.) The HRHSD is a 12-story building containing 420 hotel condominium units and commercial space. (*Id.* at ¶¶ 110-11.) The public was offered the opportunity to purchase ownership interests in individual HRHSD studios or suites through press releases and public marketing programs, including television commercials. (*Id.* at ¶ 99.) Plaintiffs bring suit on behalf of all persons who were sold and who purchased such ownership interests. (*Id.* at ¶ 75.)

Plaintiffs purchased ownership units in HRHSD through what Plaintiffs have titled "HRHSD Investment Contracts." (*Id.* at ¶ 2.) Plaintiffs claim to have invested in what constituted the "HRHSD Common Enterprise." (*Id.* at ¶ 82.) According to Plaintiffs, the HRHSD Common Enterprise was framed by a series of documents, including: (1) Purchase Contract and Escrow Instructions ("Purchase Contract"), (2) Unit Maintenance Agreement, (3) HRHSD Rental Management Agreement, (4) Declaration of Restrictions, (5) Association Articles of Incorporation and Bylaws, (6) Deed Restrictions, (7) City of San Diego Restrictions, and (8) California Department of Real Estate Report ("DRE Report"). (*Id.* at ¶ 91.)

Plaintiffs allege that once they purchased their units at HRHSD, they had no control over the rental management of the studios and suites. (*Id.* at ¶ 119.) Although they were told the HRHSD Rental Management Agreement was voluntary, for all practical purposes, it was in fact mandatory. (*Id.* at ¶¶ 101, 116, 129.) Plaintiffs were not issued keys to their units, but instead had to obtain keys from the hotel when staying in their units. (*Id.* at ¶¶ 4, 104.) The units were required to be operated as part of the hotel and, accordingly, Defendants were responsible for the daily management, operation, and marketing of the units. Furthermore, pursuant to a city zoning ordinance, Plaintiffs were permitted to stay in their units for a maximum of 28 days per calendar year. (*Id.* at ¶¶ 4, 89, 110-11.) Plaintiffs contend the units were marketed as real estate transactions, but were actually "securities" and should have been sold pursuant to the laws regulating the sale of securities. (*Id.* at ¶¶ 1-2.)

The SAC asserts eight claims for relief: 1) violation of § 12(a)(2) of the Securities Act of 1933 for misrepresentation and omission, 2) violation of § 10(b) of the Securities Act of 1934 for

misrepresentation and omission, 3) violation of California Corporations Code §§ 25110, 25503, and 25504.1 for sale of an unqualified security, 4) violation of California Corporations Code §§ 25401, 25501, and 25504.1 for misrepresentation and omission, 5) violation of California Corporations Code § 25501.5 for sale by an unlicensed broker-seller, 6) violation of California Corporations Code § 25504 by individual Defendants who controlled the entities, 7) fraud-misrepresentation, and 8) fraud-concealment.

Defendants are: 1) Tarsadia Hotels, HRHSD's operator, 2) 5th Rock, LLC, the developer and one of the sellers of the HRHSD Investment Contracts, 3) Gaslamp Holdings, LLC, which owns the land on which HRHSD sits and has a lease agreement with 5th Rock, 4) MPK One, LLC, the controlling entity that manages 5th Rock and executed the sales documents by which the investment contracts and properties were sold to Plaintiffs, 5) Tushar Patel, Chairman of Tarsadia Hotels, 6) B.U. Patel, Vice Chairman and founder of Tarsadia Hotels, 7) Greg Casserly, President of Tarsadia Hotels, 8) Playground, 9) East West, which provided approximately $42,726,435 in financing for purchases at HRHSD, 10) XBR, which purchased several of Plaintiffs' notes from East West after the filing of this legal action, 11) JPMorgan, which provided approximately $7,349,895 in financing for purchases at HRHSD, 12) Professional Mortgage Partners, Inc. ("PMP"), which provided approximately $38,536,730 in financing for purchases at HRHSD, 13) Bank of America, which provided approximately $14,450,870 in financing for purchases at HRHSD, 14) Wintrust, which acquired certain assets and liabilities of PMP and is named on the basis of successor liability, 15) Erskine, as agent of PMP, and 16) Independent, which purchased approximately 100 HRHSD investment contract loans from PMP.  (SAC at ¶¶ 53-69.)

Plaintiffs filed the original complaint on December 8, 2009.  (Doc. 1.)  On March 15, 2010, Plaintiffs filed the First Amended Complaint ("FAC").  (Doc. 8.)  On July 20, 2010, the Court issued an Order granting the motions to dismiss the FAC made by Defendants East West, XBR, Bank of America, and JPMorgan.  (Doc. 72.)  The Court issued an Order granting Defendant Playground's motion to dismiss the FAC on August 24, 2010.  (Doc. 82.)  Plaintiffs were granted leave to amend and filed the SAC on September 10, 2010.  (Doc. 86.)  Motions to dismiss the SAC have been filed by: (1) the seven Bank Defendants, (2) Playground, and (3) Tarsadia.  (Docs. 91, 93, 96, 98, 99, 111,

113, 122, 132.)  Plaintiffs filed an opposition to each motion to dismiss and replies were filed by each

of the moving Defendants.[1]

## II.

## LEGAL STANDARD

A party may move to dismiss a claim under Rule 12(b)(6) if the claimant fails to state a claim

upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Federal Rules require a pleading to

include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  The Supreme Court, however, recently established a more stringent standard of

review for pleadings in the context of 12(b)(6) motions to dismiss.  *See Ashcroft v. Iqbal*, 129 S. Ct.

1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss under

this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at

570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing

*Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).  The

---

[1]     In connection with their motions to dismiss the SAC, Defendants have requested the Court take judicial notice of several documents, including Purchase Contracts, Promissory Notes, Rental Management Agreements, an appraisal, Deeds of Trust, Modifications and Supplements to Deeds of Trust, the DRE Report, Acknowledgment and Agreement Addendums, and Unit Maintenance and Operation Agreements.  In ruling on a Rule 12(b)(6) motion to dismiss, a district court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  A document that is not attached to the complaint "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Id.*  Judicial notice may be taken of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may take judicial notice of matters of public record.  *Lee v. Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  The Court previously took judicial notice of the Purchase Contracts, Unit Maintenance and Operations Agreements, Rental Management Agreements, Promissory Notes, Grant Deeds, and Deeds of Trust in connection with the motions to dismiss the FAC.  (July 20 Order at 5-6.)  As these and the other documents Defendants seek the Court to take judicial notice of form the basis of Plaintiffs' claims and/or are matters of public record, the Court may properly consider them and Defendants' requests for judicial notice of these documents are granted.

1    reviewing court must therefore "identify the allegations in the complaint that are not entitled to the

2    assumption of truth" and evaluate "the factual allegations in [the] complaint to determine if they

3    plausibly suggest an entitlement to relief." *Id.* at 1951.

**III.**

**DISCUSSION**

**A.    Application of Securities Laws**

7          As a threshold matter, the Court must address whether Plaintiffs have sufficiently alleged the

8    existence of a security.  Playground and Tarsadia move to dismiss the SAC on the basis that Plaintiffs

9    have not sufficiently alleged the HRHSD condominium units constituted a security.[2]  Plaintiffs argue

10   a security need not be in the form of a single, neat contract and that a general scheme of profit-seeking

11   activities may constitute a security. *See Hocking v. Dubois*, 885 F.2d 1449, 1457 (9th Cir. 1989); *see*

12   *also S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).  They allege the security at issue here

13   was comprised of a series of documents, including the Purchase Contract, the Unit Maintenance and

14   Operations Agreement, and the Rental Management Agreement.  (SAC ¶ 91.)  Plaintiffs contend the

15   sale of HRHSD condominium units was an investment contract subject to state and federal securities

16   laws and the economic reality of the project was that the units were required to be managed as part of

17   a common enterprise under the Rental Management Agreement.  The federal securities laws define

18   a security to include an investment contract.  15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10).  A three-

19   part test exists to determine whether or not a transaction constitutes an investment contract: "(1) an

20   investment of money (2) in a common enterprise (3) with an expectation of profits produced by the

21   efforts of others." *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009)(quotations omitted);

22   *Howey*, 328 U.S. at 298-299 ("[A]n investment contract for purposes of the Securities Act means a

23   contract, transaction or scheme whereby a person invests his money in a common enterprise and is led

24   to expect profits solely from the efforts of the promoter or a third party.").

25

26          [2]     Although the Bank Defendants largely assume for the purpose of their motions to
     dismiss the transactions constituted securities and argue the claims in the SAC should be dismissed
27   nonetheless, JPMorgan and XBR also argue Plaintiffs have not sufficiently alleged the transactions
     constituted securities, as opposed to an ordinary real estate transaction.  (JPMorgan MTD at 8-9; XBR
28   MTD at 7-8.)  For the reasons discussed herein, because Plaintiffs have not sufficiently alleged the
     existence of a security, the securities law claims are also dismissed as to each of the Bank Defendants.

The "investment of money" prong of the test "requires that the investor 'commit his assets to the enterprise in such a manner as to subject himself to financial loss.'" *Warfield*, 569 F.3d at 1021 (quotations omitted).  This requires an "objective inquiry into the character of the instrument or transaction offered based on what purchasers were 'led to expect.'" *Id.* (citations omitted).

The "common enterprise" prong can be met if there is vertical or horizontal commonality. *S.E.C. v. R.G. Reynolds Enters.*, 952 F.2d 1125, 1130 (9th Cir. 1991).  Vertical commonality is an "enterprise common to an investor and the seller, promoter, or some third party" and can be shown when "the fortunes of the investors are linked with those of the promoters." *Id.* (quotation omitted). An example of vertical commonality is when the promoter takes a management fee based on a percentage of the profits, thus making the promoter's profit contingent on the profit of his investors. *Id.*  Horizontal commonality is "an enterprise common to a group of investors," which can be shown when there is a rent pooling agreement among investors.  *Id.*; *Hocking*, 885 F.2d at 1459.

The "expectation of profits" prong involves two concepts: "whether a transaction involves any expectation of profit and whether expected profits are the product of the efforts of a person other than the investor." *Warfield*, 569 F.3d at 1020.  Profits means "either capital appreciation resulting from the development of the initial investment . . . or a participation in earnings resulting from the use of investors' funds." *Id.* at 1023 (quotations omitted).  The expectation of profits concept was used in *Howey* "in the sense of income or return, to include, for example, dividends, other periodic payments, or the increased value of the investment." *S.E.C. v. Edwards*, 540 U.S. 389, 394 (2004).  It can include promises of fixed or variable rates of return.  *Warfield*, 569 F.3d at 1023.

Under California law, an investment may be a security if it meets the federal test under *Howey* or if it meets the "risk capital" test. *Consol. Mgmt. Group, LLC v. Dep't of Corps.*, 162 Cal. App. 4th 598, 609-10 (2008).  Four factors are considered in the "risk capital" test: "(1) whether funds are being raised for a business venture or enterprise; (2) whether the transaction is offered indiscriminately to the public at large; (3) whether the investors are substantially powerless to effect [sic] the success of the enterprise; and (4) whether the investors' money is substantially at risk because it is inadequately secured." *Reiswig v. Dep't of Corps.*, 144 Cal. App. 4th 327, 334 (2006)(quotations omitted).

1    Plaintiffs claim they have satisfied the three prongs of the *Howey* test.  They claim there was

2    an investment of money because their "investment risk capital consisted of the hotel unit purchase

3    price, operation and maintenance assessments, and hotel management fees. . . .  In return, plaintiffs

4    purchased a package consisting of hotel units coupled with collateral agreements that included a unit

5    maintenance agreement and a rental management agreement."  (Opp. to Playground MTD at 3-4.)

6    In the SAC, Plaintiffs also allege they invested in a common enterprise.  Plaintiffs argue a

7    common enterprise is "a venture in which the fortunes of the investor are interwoven with and

8    dependent upon the efforts and success of those seeking the investment . . . .  It is not necessary that

9    the funds of investors are pooled; what must be shown is that the fortunes of the investors are linked

10    with those of the promoters, thereby establishing the requisite element of vertical commonality.  Thus,

11    a common enterprise exists if a direct correlation has been established between success or failure of

12    [the promoter's] efforts and success or failure of the investment."  *S.E.C. v. Eurobond Exch., Ltd.*, 13

13    F.3d 1334, 1339 (9th Cir. 1994)(quotations and citations omitted).  In support of this claim, Plaintiffs

14    allege the following: (1) the DRE Report informed Plaintiffs they were joining a "common interest

15    development" (SAC ¶ 83), (2) Plaintiffs were required to pay for the maintenance of common facilities

16    associated with their condominium units through two owner associations and they had an interest in

17    the common areas (*id.* at ¶¶ 84-85), (3) as part of the common enterprise, Plaintiffs were required to

18    pay their share of assessments and expenses (*id.* at ¶ 88), and (4) the common enterprise was defined

19    by restrictions imposed by the City of San Diego, including that Plaintiffs' units were to be managed

20    as part of the hotel and Plaintiffs' occupancy of the units was limited to 28 days per calendar year (*id.*

21    at ¶ 89).  Defendants counter (1) "common interest development" is a legal term for condominium

22    projects (citing California Civil Code § 1351(c)), (2) it is typical for condominium owners to be

23    required to contribute to fees relating to common areas and for a condominium association to exist,

24    and (3) the zoning requirements were imposed by the city and the S.E.C. has previously issued a no-

25    action letter stating these types of restrictions will not transform a condominium into a security.  (*See*

26    Playground MTD at 5, 10 (citing S.E.C. No-Action Letter to Marco Polo Hotel, Inc., 1987 WL 108553

27    (Sept. 30, 1987)); *see also id.* at 6 (citing S.E.C. No-Action Letter to Intrawest Corp., 2002 WL

28    31626919 (Nov. 8, 2002).)  Plaintiffs argue there was horizontal commonality because of the owner

associations and the maintenance fees Plaintiffs were required to pay.  (*See* SAC ¶ 99 ("The costs of operating the common areas were combined and the individual owners were charged a ratable share of the costs without regard to whether plaintiffs(') units were actually rented.  The offer of the unit together with the offer of an opportunity to participate in such a cost sharing pool involved the offer of investment contracts which should have been, but were not, registered with the [SEC] or qualified by the California Department of Corporations.").)  They argue there was vertical commonality because whether Plaintiffs made money was substantially dependent upon the managerial efforts of the promoters and because the investors and promoters shared in the rental income from the rooms pursuant to the Rental Management Agreement.  (*Id.* at ¶ 94; Opp. to Playground MTD at 5.)

As to their expectation of profits as the result of the efforts of others, Plaintiffs allege, due to the economic reality of the project, they were essentially required to enter into the Rental Management Agreement, and, through the Rental Management Agreement, they were led to expect a profit from the efforts of the management of HRHSD.  (SAC ¶¶ 92-93, 95-96, 101, 104.)  Plaintiffs allege the Frequently Asked Questions handout relating to the Rental Management Agreement made it clear Plaintiffs were looking to Tarsadia to "maximize revenue by renting the participating suites for the most number of nights at the highest possible rate." (*Id.* ¶ 100.)  Tarsadia represented "We've got the team.  We've got the ideas.  We've got the experience.  Now we want you." (*Id.*)  Plaintiffs further allege they had no practical control over the rental management of their units.  (*Id.* at ¶ 98.)

Plaintiffs rely largely on *Hocking* in arguing that their purchases constitute an investment contract and therefore a security.  In that case, the 9th Circuit held there were triable issues of fact as to whether an investment in a condominium project in Hawaii was an investment contract under the *Howey* test.  The court noted "whether the transaction can be considered an investment contract depends on whether the sale and the offering of management services form parts of what is 'essentially one transaction.'" *Hocking*, 885 F.2d at 1458 n.7.  There, when the investor was offered the condominium unit, he was told he could participate in a rental management agreement and a rent pooling agreement.  The court held that the common enterprise element may have been met because, while the simple purchase of real estate lacks any horizontal commonality, the rent pooling agreement may have created horizontal commonality.  *Id.* at 1459.  The court held that the third prong of the test

may have been met because, while the investor was not required to delegate control of the condominium to a rental agent, for all practical purposes he had to: the resort operated like a hotel and it would have been impractical, if not impossible, for the investor to manage his one condominium separate from the rental agent at the resort and still receive significant rental income. *Id.* at 1461. Here, however, there was no rent pooling agreement and the Rental Management Agreement was signed by Plaintiffs at least eight months after they signed the Purchase Contracts. In *Hocking*, in contrast, the plaintiff signed a rental management agreement just six days, and a rent pooling agreement less than two weeks, after signing the purchase agreement. 885 F.2d at 1453, 1458 (noting "these agreements were entered into immediately following the purchase of the condominium"). The plaintiff in *Hocking* further claimed that "but for the availability of the rental pool arrangement he would not have purchased the condominium." *Id.* at 1453. Accordingly, in *Hocking*, the Court found that "Hocking has put forward numerous facts concerning whether the condominium sale and rental agreements were presented to him as parts of one transaction. . . . [These facts] distinguish this case from the situation where, after a purchase and separate from any inducement to purchase, a real estate agent or broker arranges for a rental pool." *Id.* at 1458.

Here, there was a significant gap between execution of the Purchase Contracts, on the one hand, and execution of the Rental Management Agreements, on the other hand. (*See, e.g.,* Playground MTD Appx. A.) Nonetheless, Plaintiffs allege the Purchase Contract and the subsequent Rental Management Agreement form a single transaction. Plaintiffs allege it was only after entering into the Purchase Contracts that they became aware that the practical realities of the transaction made the Rental Management Agreement essentially mandatory. However, the factors that Plaintiffs indicate made the Rental Management Agreement mandatory for all practical purposes, including that the units were required to be managed as part of the hotel and the owners were subject to a 28-day per year use restriction, were known to Plaintiffs at the time they executed the Purchase Contracts. (SAC ¶¶ 89, 111 ("On 30 January 2006 Gaslamp Holdings LLC, the owner of the land on which the HRHSD was under construction, filed a declaration of restrictions for the HRHSD project in connection with the restriction that the approximately 420 hotel condominium units ("Units") may be sold individually only as non-residential condominium units. Owner occupancy in the Units was to be limited to a

maximum of 28 days per calendar year, and at all times the Units were to be managed as part of the Hotel.").)  Plaintiffs further fail to allege sufficient facts regarding the timing of when representations relating to the Rental Management Agreement were made to them.  The Court therefore finds Plaintiffs' allegations do not sufficiently set forth facts indicating they were offered the Purchase Contract and Rental Management Agreement as part of a single package, as opposed to the purchase of condominium units and the subsequent offering of and entry into a rental program.

In addition, the Court finds Plaintiffs have not sufficiently alleged facts supporting an expectation of profits from the efforts of others, as is necessary to establish the existence of an investment contract.  Playground's and Tarsadia's primary arguments that there was no "investment contract," and no security, are based on the plain language of the contracts.  The Purchase Contract states, in all caps:

> Purchase not an investment. By placing his, her, their initials in the space provided herein below, Buyer expressly acknowledges that: (a) Buyer is purchasing the unit for its real estate value and not as an investment; (b) neither Seller nor any of its employees or agents have represented or offered the property as an investment opportunity for appreciation of value or as a means of obtaining income from the rental thereof; and (c) neither Seller nor any of its employees or agents have made any statements or representations as to rental or other income that may be derived from the unit or as to any other economic benefit, including possible advantages under federal or state tax laws, to be derived from the purchase and/or ownership of the units.

(See, e.g., Tarsadia RJN Exs. 2-27 at ¶ 19.)  Plaintiffs had to specifically initial this portion of the Purchase Contract.  Additionally, the Purchase Contract provides that, in entering into the Contract, the Buyer is not relying on any representations, other than those contained in the Purchase Contract itself.  (See, e.g., id. at ¶ 20(i)("Buyer acknowledges and agrees that, except as specifically set forth in this Contract, Buyer is not relying upon any agreements, understandings, inducements, promises, representations or warranties, express or implied (collectively, "Representation(s)") made by sales person, employee or agent of seller . . . .").)  Buyers further represented in the Addendum to the Purchase Contract that they were not relying on any additional representations, including representations regarding the feasibility of renting the unit. (See, e.g., Tarsadia RJN Exs. 28-53 at ¶¶ 4, 12-13.)

Defendants argue, because of these clauses, it is clear that the units were not being marketed or sold as securities and Plaintiffs could not have been expecting a profit based upon the efforts of

09cv2739

others at the time they entered into the Purchase Contracts.  Playground cites two district court cases in which the courts held that contracts for the purchase of condominium units were not "investment contracts."  In *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1292-93 (S.D. Fla. 2007), the court held that purchase contracts were not "investment contracts" because "[i]n the Purchase Contracts, Plaintiffs stated that they entered into those agreements with no expectation of profits and understanding that any such profits would be realized from the Plaintiffs' own actions and from appreciation in market value wholly outside of Defendants' control."  Similarly, in *Demarco v. LaPay*, No. 09cv190 TS, 2009 WL 3855704, at *8-9 (D. Utah Nov. 17, 2009), the court held that, because of plain language in the contracts indicating that the buyer was not relying on any representations of the seller concerning the investment value of the property or the possibility of profit from rental, "even if representations were made, it was inappropriate for Plaintiff to rely on them and, without a subsequent or collateral agreement, no investment contract can exist."  In response to Defendants' argument regarding the representations in the contracts, Plaintiffs allege in the SAC, "[a]lthough there was some boilerplate disclaimers that plaintiffs were not investing in HRHSD, those disclaimers were not contained in the other documents [*i.e.*, the Rental Management Agreement].  Such disclaimers are contradicted by the economic reality of the investment terms."  (SAC ¶ 100.)

In light of the representations and disclaimers set out in the parties' contracts, the Court is not persuaded that Plaintiffs had an expectation of profits from the efforts of others when they entered into the Purchase Contracts.  When Plaintiffs executed the Purchase Contracts and Addendums, they specifically represented they were not purchasing the units for investment purposes and were not relying on any external representations regarding the rental value of the units.  Accordingly, Plaintiffs may only claim that any expectation of profits from the efforts of others they developed was as a result of the Rental Management Agreement, which they entered into months later and which Plaintiffs have not sufficiently alleged formed part of a single transaction with the Purchase Contract.  Even setting aside Plaintiffs' express representations in the Purchase Contracts and Addendums, the SAC is devoid of allegations regarding the timing of representations made to or the expectations of Plaintiffs when they entered into the Purchase Contracts.  Rather, the allegations indicate Plaintiffs' expectations of profits as a result of the efforts of others arose as a result of the Rental Management Agreement and

the Frequently Asked Questions handout relating to the Agreement.  Furthermore, at the hearing on the pending motions to dismiss, it was represented to the Court that not all purchasers of the HRHSD condominium units elected to enter into the Rental Management Agreement.  (Feb. 11 Tr. at 49:21-24.)

In light of the above, the Court finds Plaintiffs have not sufficiently alleged facts supporting the claim that the real estate sale and the rental agreement at issue here formed a single transaction, nor have they sufficiently alleged an expectation of profits from the efforts of others at the time they agreed to purchase the condominium units.  The Court therefore finds Plaintiffs have failed to allege a plausible claim that the relevant HRHSD transactions constituted securities.  Defendants' motions to dismiss Plaintiffs' claims for 1) violation of § 12(a)(2) of the Securities Act of 1933,[3] 2) violation of § 10(b) of the Securities Act of 1934,[4] 3) violation of California Corporations Code §§ 25401, 25501 and 25504.1,[5] 4) violation of California Corporations Code 25501.5,[6] and 5) violation of

---

[3]    Section 12(a)(2) provides that any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), . . . shall be liable . . . to the person purchasing such security from him . . . ."  15 U.S.C. § 77l(a)(2).

[4]    Plaintiffs state a claim in the SAC against all Defendants for violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. (SAC ¶¶ 213-16.) "Section 10(b) of the Securities Exchange Act of 1934 forbids (1) the 'use or employ[ment] . . . of any . . . deceptive device,' (2) 'in connection with the purchase or sale of any security,' and (3) 'in contravention of' Securities and Exchange Commission 'rules and regulations.' 15 U.S.C. § 78j(b). Commission Rule 10b-5 forbids, among other things, the making of any 'untrue statement of material fact' or the omission of any material fact 'necessary in order to make the statements made . . . not misleading.' 17 C.F.R. § 240.10b-5 (2004)." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

[5]    Claim four alleges Defendants violated § 25401 of the California Corporations Code, which provides in pertinent part: "It is unlawful for any person to offer or sell a security in this state . . . by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made . . . not misleading."

[6]    Plaintiffs' fifth claim is against Playground only and alleges a violation of California Corporations Code § 25501.5.  Section 25501.5(a)(1) states that a person who "purchases a security from or sells a security to a broker-dealer that is required to be licensed and has not [been so licensed] at the time of the sale or purchase . . . may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages."

California Corporations Code § 25504[7] are therefore granted.  Plaintiffs indicated at oral argument on the motions to dismiss they were not opposed to the dismissal of their third claim for violation of California Corporations Code §§ 25110, 25503, and 25504.1.  Accordingly, this claim is dismissed as to all Defendants.  (Feb. 11 Tr. at 11:21-12:10.)

Notably, even if the Court were to find Plaintiffs have sufficiently alleged the existence of a security, many of Plaintiffs' claims would nonetheless be time-barred under the applicable statutes of limitations.  For the Court to find Plaintiffs have sufficiently alleged the existence of a security, Plaintiffs would have had to sufficiently allege facts indicating the purchase of the land and the rental program were offered to Plaintiffs by Defendants as a single package.  Plaintiffs therefore would have entered into the purchase of the alleged security when they entered into the Purchase Contracts, even if they did not sign the Rental Management Agreements until a later date.  Claims under § 12(a)(2) are subject to a three-year absolute statute of limitations that begins to run from the date of sale, which is when the parties entered into a binding contract for the sale of a security, and to a one-year statute of limitations from the discovery of the untrue statement or omission or when such discovery should have been made by the exercise of reasonable diligence.  15 U.S.C. § 77m; *Amoroso v. Southwestern Drilling Multi-Rig P'ship No. 1*, 646 F. Supp. 141, 142-43 (N.D. Cal. 1986).  Accordingly, any Plaintiff who entered into the Purchase Contract prior to December 8, 2006 would be time-barred from bringing a Section 12(a)(2) claim under the three-year absolute statute of limitations.

Furthermore, at the time Plaintiffs entered into the Purchase Contracts, they were aware of the limited control they would have over the units, that the units were required to be operated as part of the hotel, of the 28-day per year owner occupancy restriction, and that the units were not registered as securities.  Yet Plaintiffs still signed documents representing they were not relying on any representations made outside of the documents themselves, were not purchasing the units for investment purposes, and that rental of the units was voluntary.  In light of these contradictions, Plaintiffs discovered or reasonably should have discovered the facts giving rise to their claims at the

---

[7]      Plaintiffs sixth claim is against individual Defendants B.U. Patel, Tushar Patel, and Gregory Casserly for control person liability.  California Corporations Code § 25504 states in relevant part: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503 . . . [is] also liable jointly and severally with and to the same extent as such person . . . ."

time they entered into the Purchase Contracts.  A claim for violation of § 10(b) "may be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."  28 U.S.C. § 1658(b); *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1790 (2010).  The two-year statute of limitations expires two years after actual discovery or after "a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation.'"  *Merck*, 130 S. Ct. at 1789-90.  Similarly, Plaintiffs' claim for violation of California Corporations Code §§ 25401, 25501, and 25504.1 is governed by a five-year absolute statute of limitations and a two-year discovery statute of limitations, which is triggered when Plaintiffs have inquiry notice of their claims.  Cal. Corp. Code § 25506(b); *Deveny v. Entropin, Inc.,* 139 Cal. App. 4th 408, 422-23 (2006).  Accordingly, these claims would be time-barred as to any Plaintiff who entered into the Purchase Contract prior to December 8, 2007.

As to Plaintiffs' claim for violation of California Corporations Code § 25501.5 against Playground only, there is little case law regarding the statute and it is unclear what statute of limitations applies to claims brought under it.  Playground argues one of two statutes of limitations applies: a two-year discovery statute of limitations under California Corporations Code § 25506 or an absolute three-year statutory bar under California Code of Civil Procedure § 338(a).  However, the Court need not decide which statute of limitations applies because, as discussed above, Plaintiffs' claim for violation of § 25501.5 would be time-barred no matter which limitations period applies.

Moreover, in its August 24 Order granting leave to amend, the Court noted Plaintiffs did not sufficiently allege the events they contend revealed Defendants' fraud after signing of the Purchase Contracts.  (Aug. 24 Order at 6, 7.)  In the SAC, however, Plaintiffs merely allege they "did not discover the facts on which this action is based until after consulting with counsel, which was less than a year before the filing of this operative complaint." (SAC ¶ 132.) They further allege "Plaintiffs were subjected to a barrage of false and misleading statements by the Tarsadia and Playground Defendants designed to keep plaintiffs from discovering facts supporting the need to bring these claims.  One device was to slowly reduce plaintiffs' hotel room revenue while gradually increasing costs." (*Id.* at ¶ 133.)  These conclusory allegations as to discovery are insufficient.  Accordingly, even if the Court were to find Plaintiffs have sufficiently alleged the existence of a security, Plaintiffs's claims for

1  violation of § 12(a)(2); § 10(b); §§ 25401, 25501, and 25504.1; and § 25501.5 would be time-barred

2  pursuant to the applicable statutes of limitations.

3  **B.      Remaining Claims**

4       Plaintiffs' seventh and eighth claims for relief in the SAC are for fraudulent misrepresentation

5  and fraudulent concealment, respectively.  Defendants argue these claims should also be dismissed

6  because Plaintiffs have not sufficiently alleged the existence of a security.  Because these claims are

7  not strictly claims for violations of the securities laws, the Court addresses them separately.

8       Federal Rule of Civil Procedure 9(b) requires a party alleging fraud or mistake to "state with

9  particularity the circumstances constituting fraud or mistake" and is applied by a federal court to both

10  federal law and state law claims. Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

11  1102-03 (9th Cir. 2003).  A pleading will be "sufficient under Rule 9(b) if it identifies the

12  circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Fecht v.*

13  *Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995)(quotations and citation omitted).  The same is true for

14  allegations of fraudulent conduct. *Vess*, 317 F.3d at 1103-04.  In other words, fraud allegations must

15  be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Id.* at 1106

16  (quotations and citation omitted).

17       The elements of a claim for fraudulent misrepresentation are: (1) a false representation of a

18  material fact, (2) knowledge of the falsity, (3) intent to induce another into relying on the

19  representation, (4) reliance on the representation, and (5) resulting damages. *Ach v. Finkelstein*, 264

20  Cal. App. 2d 667, 674 (1968).  The elements of a claim for fraudulent concealment are: (1)

21  concealment or suppression of a material fact, (2) which the defendant had a duty to disclose to

22  plaintiff, (3) defendant intentionally concealed the fact with the intent to defraud the plaintiff, (4)

23  plaintiff was unaware of the fact and would not have acted as he did if had known of the fact, and (5)

24  resulting damages. *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612 (1992).

25       **1.      Bank Defendants**

26       Plaintiffs argue they have satisfied the particularity requirements with regard to their

27  allegations of fraud as to the Bank Defendants because they have sufficiently pled "one coherent

28  scheme to defraud, the entire purpose of which was to shift the investment risk of the Hard Rock Hotel

to plaintiffs without disclosing" the material risks of the investment.  (Opp. to East West MTD at 29.)  However, Plaintiffs' only claims of affirmative misrepresentations by the Bank Defendants are that they vouched for and confirmed the financial viability of the HRHSD project.  Plaintiffs do not plead with the requisite particularity the who, what, where, when, and how of these statements.  They generally do not allege who specifically made the alleged misstatements or to whom, when, or where the statements were made.

As to the facts Plaintiffs allege the Banks Defendants concealed from Plaintiffs–that incorrect appraisal methods were being used and co-Defendants were misrepresenting that the HRHSD rental program was not mandatory in order to conceal that they were making a public offering of investment securities–the Bank Defendants argue they had no duty to disclose such information to Plaintiffs.  *See Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)("[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.").  Plaintiffs argue, if a person undertakes to speak, a duty arises to disclose facts necessary to make the statements made not misleading.  (Opp. to JPMorgan MTD at 23 (citing *Brownlee v. Vang*, 235 Cal. App. 2d 465, 477 (1965).)  Plaintiffs further argue an affirmative duty to disclose existed because the six factors necessary for such a duty to arise are met.  (*Id.* at 18 (citing *Watkinson v. MortgageIT, Inc.*, No. 10-cv-327-IEG (BLM), 2010 WL 2196083, at *8-9 (S.D. Cal. June 1, 2010).)  Regardless of whether a duty to disclose existed, Plaintiffs' allegations regarding the use of improper appraisal methods assert that the methods used were improper because the condominium units were in fact investment properties and thus, should have been appraised for their projected rental income.  In light of the Court's holding that Plaintiffs have not sufficiently alleged the existence of an investment security, and because Plaintiffs fail to specify the contents of the appraisals or to allege that the appraisals were for Plaintiffs' benefit or were provided to Plaintiffs for them to rely upon, the Court finds this alleged omission cannot support a plausible claim for fraud as to the Bank Defendants.  Plaintiffs also allege the Bank Defendants omitted that the transactions involved investment securities and were therefore required to be, but were not, registered and qualified pursuant to the securities laws.  The Court similarly finds this allegation insufficient to state a plausible claim for fraud in light of its

1  holding herein.  Accordingly, the Bank Defendants' motions to dismiss Plaintiffs' claims for fraud are

2  granted.

3      **2.      Playground**

4      Playground argues Plaintiffs have not pled their fraud claims with particularity, as required by

5  Rule 9(b).  Playground argues "Plaintiffs simply announce that all of the defendants collectively

6  engaged in fraud without differentiation and without any specific allegations as to Playground, much

7  less any allegations that specify specific fraudulent acts by specific Playground employees."

8  (Playground MTD at 27.)  The Court agrees.  The SAC contains very few allegations specific to

9  Playground.   There are no allegations regarding misstatements or omissions made directly by

10  Playground other than that "Plaintiffs were subjected to a barrage of false and misleading statements

11  by the Tarsadia and Playground Defendants designed to keep plaintiffs from discovering facts

12  supporting the need to bring these claims." (SAC ¶ 133.)  Plaintiffs further allege "[t]hese Playground

13  representatives knew the HRHSD project had been shifted from a hotel project to a commercial non-

14  residential condominium and that plaintiffs were not receiving the information they needed about the

15  projected performance underlying the HRHSD Investment Contracts.  These agents of Playground

16  knew the HRHSD Investment Contracts were required to be registered with the S.E.C. and qualified

17  by the Department of Corporations from their training as real estate brokers and agents.  These

18  Playground agents knew they were required to be registered as broker dealers before they could

19  lawfully sell the HRHSD Investment Contracts." (*Id.* at ¶ 131.)  These allegations do not satisfy the

20  pleading requirements of Rule 9(b).  Playground's motion to dismiss Plaintiffs' claims for fraud is

21  therefore granted.

22      **3.      Tarsadia**

23      Plaintiffs allege various misrepresentations and correlating omissions by "Tarsadia and its

24  affiliated persons and entities," including that the Hard Rock Guide omitted the fact that HRHSD had

25  been shifted from a hotel to a condominium-style complex after "defendants determined that the risks

26  of developing the hotel were too great and could be shifted to investors."  (SAC ¶ 113.)  Plaintiffs

27  further state "[t]he key misrepresentation and omission revolved around the defendants' rental

28  management agreement and program.  Defendants falsely represented that defendant Tarsadia's rental

program was not mandatory and not a condition of ownership. However, as a matter of economic and practical reality, the Tarsadia rental program was mandatory and a condition of ownership. It was not feasible, as plaintiffs were to later discover, for investors to operate their own rental management system separate from the HRHSD given the control 5th Rock LLC exercised over investors' studios and suites under the terms of the Operation Agreement." (*Id.* at ¶ 116.) Plaintiffs further allege the reason Defendants made these misrepresentations was to conceal the fact that they were making an offering of securities. (*Id.* at ¶ 118.)

Tarsadia argues Plaintiffs cannot show justifiable reliance on Defendants' alleged fraudulent statements because they were signatories to representations and warranties that directly contradict the alleged misstatements. (Tarsadia MTD at 27-28.) Tarsadia further argues Plaintiffs have failed to plead facts supporting these claims with the requisite particularly under Rule 9(b), as the SAC contains allegations that lump all Defendants together. (*Id.* at 28-29.) The Court agrees. Plaintiffs have not sufficiently alleged the HRHSD transactions constituted a security and, therefore, Plaintiffs' allegations of misrepresentations and omissions relating to the fact that Defendants were offering securities are not sufficient to support a fraud claim. Furthermore, Plaintiffs have not sufficiently alleged reasonable reliance on any of the alleged misrepresentations made to them prior to or in connection with their execution of the Purchase Contracts, given their representations and warranties in the Purchase Contracts and Addendums that they were not relying on any representations not contained in those agreements. Finally, at the time Plaintiffs entered into the Purchase Contracts, they had knowledge of the factors they allege later made them aware that the Rental Management Agreement was in fact mandatory, namely, the owner occupancy restrictions and that the units were required to be operated as part of the hotel. Accordingly, Plaintiffs have not sufficiently alleged they were unaware of this alleged omission at the time they entered into the Purchase Contracts. Tarsadia's motion to dismiss the fraud claims is granted.

**IV.**

**CONCLUSION**

For the foregoing reasons, (1) the Bank Defendants' motions to dismiss are granted, (2) Tarsadia's motion to dismiss is granted, and (3) Playground's motion to dismiss is granted. Plaintiffs

1    have had ample opportunity to properly plead a case and have failed to do so.  Therefore, Plaintiffs'

2    Second Amended Complaint is dismissed with prejudice and Plaintiffs are denied leave to amend.

3         **IT IS SO ORDERED.**

4    DATED:  March 22, 2011

5

6                  HON. DANA M. SABRAW

7                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28